Nicholas Ranallo
nranallo@mavrolaw.com
MAVRONICOLAS & DEE LLP
2443 Fillmore St., #380-7508
San Francisco, CA 94115
T: (831) 607-9229
F: (831) 533-5073

Peter Dee (*pro hac vice* to be filed)
pdee@mavrolaw.com
MAVRONICOLAS & DEE LLP
3 Park Avenue, 15th Floor
New York, NY 10016
T: (646) 770-1256
F: (866) 774-9005

*Attorneys for Plaintiff Social Technologies LLC*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOCIAL TECHNOLOGIES LLC, a Georgia limited liability company, <br><br> Plaintiff, <br><br> vs. <br><br> APPLE INC., a California corporation, <br><br> Defendant. | Case Number: 18-cv-5945 <br><br> **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF LAW IN SUPPORT** |

## NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION

**TO APPLE INC. AND ITS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that as soon as the matter may be heard, Plaintiff, Social Technologies LLC, by and through its undersigned counsel, will, and hereby does, move this Court for a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure and Civil Local Rules 7-2 and 65-2. The hearing date and time cannot be set because the assigned judge is unknown and because an administrative motion to shorten time for this motion will be filed. In support of this motion, Plaintiff submits the accompanying Memorandum of Points and Authorities, the Declarations of Peter Dee and Samuel Bonet, and all other information properly considered.

Plaintiff hereby moves for a preliminary injunction enjoining Defendant, Apple Inc., from any use of the MEMOJI trademark or any confusingly similar mark, as more fully set forth in the proposed preliminary injunction order submitted with this motion.

Dated: September 27, 2018

Respectfully Submitted,

/s/ Nicholas Ranallo
Nicholas Ranallo
nranallo@mavrolaw.com
MAVRONICOLAS & DEE LLP
2443 Fillmore St., #380-7508
San Francisco, CA 94115
T: (831) 607-9229
F: (831) 533-5073

Peter Dee (*pro hac vice* to be filed)
pdee@mavrolaw.com
MAVRONICOLAS & DEE LLP
3 Park Avenue, 15th Floor
New York, NY 10016
T: (646) 770-1256
F: (866) 774-9005

*Attorneys for Plaintiff*
*Social Technologies LLC*

1

Plaintiff's Notice of Motion & Motion for Prelim. Injunction; Memo of Ps & As     Case No. 18-5945

# TABLE OF CONTENTS

I.     INTRODUCTION.................................................................................................1

II.    STATEMENT OF FACTS....................................................................................3

       A. Social Technologies Files Intent-to-Use Trademark Application
       For MEMOJI, Introduces the MEMOJI App and
       Protects the MEMOJI Mark.................................................................................3

       B. Apple's Deliberate and Willful Infringement Overwhelms
       Social Technologies' MEMOJI Mark, Creates Confusion
       And Harm to Social Technologies........................................................................5

       C. Lucky Bunny Lacked Market Penetration, Continuous Use
       And Goodwill, Resulting in an Ineffective Assignment to Apple.........................8

       D. Apple Ignores Social Technologies' Request for Information. .......................9

III.   ARGUMENT......................................................................................................10

       A. Social Technologies Is Likely to Succeed on the Merits................................11

              1. Social Technologies Has a Valid MEMOJI Mark Entitled to Protection............11

                     a. Apple is not a Senior User Because
                     It Lacks Continuous Use..................................................................12

                     b. Apple's Lack of Market Penetration in Any Specific
                     Geographic Area................................................................................13

                     c. Lucky Bunny's Assignment to Apple
                     Was an Assignment in Gross.............................................................16

              2. Social Technologies Has Established Likelihood of Confusion.........................18

       B. Social Tech Will Likely Suffer Irreparable Harm in the Absence of a
       Preliminary Injunction.......................................................................................21

       C. The Balance of Hardships Weighs in Social Technologies' Favor................22

       D. A Preliminary Injunction Would Serve the Public Interest...........................23

       E. Social Technologies Should Not Be Required to Post Security......................24

IV.    CONCLUSION..................................................................................................25

i

Plaintiff's Notice of Motion & Motion for Prelim. Injunction; Memo of Ps & As      Case No. 18-5945

1

## **TABLE OF AUTHORITIES**

2

**Cases**

3    *Adray v. Adray-Mart, Inc.*, 76 F.3d 984 (9th Cir. 1995).............................................13, 14

4    *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011).........................11

5    *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979).............................................18

6
     *Apple Computer, Inc. v. Franklin Computer Corp.,* 714 F.2d 1240 (3d Cir. 1983)......................23
7
     *Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc.,* 457 F.3d 1062 (9th Cir. 2006)..............20
8
9    *Barahona-Gomez v. Reno*, 167 F.3d 1228 (9th Cir. 1999)................................................24

10   *Brantley v. Maxwell-Jolly*, 656 F. Supp. 2d 1161 (N.D. Cal. 2009)...........................24-25

11   *Brookfield Communications, Inc. v. West Coast Entertainment Corp.,*
     174 F.3d 1036 (9th Cir. 1999).................................................................11, 19-21
12
13   *Caesars World, Inc. v. Milanian,* 247 F. Supp.2d 1171 (D. Nev. 2003)........................23

14   *Casual Corner Assocs., Inc. v. Casual Stores of Nev., Inc.*, 493 F.2d 709 (9th Cir. 1974).......12, 13

15   *Coca–Cola Co. v. Overland, Inc.*, 692 F.2d 1250 (9th Cir. 1982).................................11

16   *Concrete Machinery Co., Inc. v. Classic Lawn Ornaments, Inc.,* 843 F.2d 600 (1st Cir. 1988).....22

17   *Credit One Corp. v. Credit One Fin., Inc.*, 661 F. Supp. 2d 1134 (C.D. Cal. 2009)......................13

18   *Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.,* 109 F.3d 1394 (9th Cir. 1997)..............11

19   *Dreamwerks Production Group, Inc. v. SKG Studio*, 142 F.3d 1127 (9th Cir. 1998)....................18

20   *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280 (9th Cir. 1992)...............................16, 17

21
     *Glow Indus., Inc. v. Lopez*, 252 F. Supp. 2d 962 (C.D. Cal. 2002).....................................13, 15-16
22
23   *Gold Club-SF, LLC v. Platinum SJ Enter.*, No. 13-cv-03797-WHO,
     2013 U.S. Dist. LEXIS 134379, (N.D. Cal. Sept. 18, 2013).........................................12-14

24   *Golden Door, Inc., v. Odisho,* 646 F.2d 347 (9th Cir. 1980)...........................................20

25   *Hanginout, Inc. v. Google, Inc.*, 54 F.Supp. 3d 1109 (S.D. Cal. 2014)................................12, 14-16

26   *In re Viterra Inc.*, 671 F.3d 1358 (Fed. Cir. 2012)....................................................19

27   *Johnson v. Couturier*, 572 F.3d 1067 (9th Cir. 2009)..................................................24
28

ii

Plaintiff's Notice of Motion & Motion for Prelim. Injunction; Memo of Ps & As        Case No. 18-5945

*Jorgensen v. Cassiday*, 320 F.3d 906 (9th Cir. 2003).................................................................24

*Lahoti v. Vericheck, Inc.* 636 F.3d 501 (9th Cir. 2011)...........................................................18-20

*Marketquest Group, Inc. v. BIC Corp.,* 862 F.3d 927 (9th Cir. 2017)........................................21

*Maxim Integrated Products, Inc. v. Quintana,* 654 F. Supp. 2d 1024 (N.D. Cal. 2009)................21

*MERSCORP Holdings, Inc. v MERS, Inc.*, No. 16-cv-04380-BLF,
2016 U.S. Dist. LEXIS 129165, (N.D. Cal. Sep. 21, 2016)........................................................23

*Mister Donut of America, Inc. v. Mr. Donut, Inc.*, 418 F.2d 838 (9th Cir. 1969).....................16-17

*Moroccanoil, Inc. v. Zotos, Int'l, Inc.*, 230 F. Supp. 3d 1161 (C.D. Cal. 2017)...........................24

*Optimal Pets, Inc. v. Nutri-Vet, LLC*, 877 F. Supp. 2d 953 (C.D. Cal. 2012)..............................13

*Perfumebay.com Inc v eBay, Inc.* 506 F.3d 1165 (9th Cir. 2007)............................................18, 20

*Playboy Enterprises, Inc. v. Baccarat Clothing Co.*, 692 F.2d 1272 (9th Cir. 1982).....................23

*Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113 (9th Cir. 2005)............................................24

*Sega Enterprises Ltd. v. Accolade, Inc.,* 977 F.2d 1510 (9th Cir. 1992)........................................23

*Spin Master, Ltd. v. Zobmondo Entm't, LLC*, 944 F. Supp.2d 830 (C.D. Cal. 2012).....................12

*Stone Creek, Inc. v. Omnia Italian Design, Inc.,* 875 F.3d 426 (9th Cir. 2017)..............................2

*Sugar Busters LLC v. Brennan*, 177 F.3d 258, 265, 50 U.S.P.Q.2d 1821 (5th Cir. 1999)..............17

*Watec Co. v. Liu*, 403 F.3d 645 (9th Cir. 2005)........................................................................12

*Well Care Pharmacy II, LLC v. W'Care, LLC*, No. 2:13-cv-00540-GMN-VCF,
2013 WL 3200111, (D. Nev. June 24, 2013)..............................................................................22

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008)....................................................10

**Statutes**

15 U.S.C. § 1057.........................................................................................................................11

15 U.S.C. § 1060.........................................................................................................................17

**Other Authorities**

4 MCCARTHY, J. THOMAS, MCCARTHY ON TRADEMARKS AND
UNFAIR COMPETITION (5th ed. 2017)........................................................................................24

iii

Plaintiff's Notice of Motion & Motion for Prelim. Injunction; Memo of Ps & As      Case No. 18-5945

## MEMORANDUM AND POINTS OF AUTHORITIES

### I. INTRODUCTION

This case is about Defendant Apple Inc.'s ("Apple") deliberate and willful infringement of Plaintiff Social Technologies LLC's ("Social Tech") trademark.  Social Tech applied for and received a federal trademark registration from the U.S. Patent and Trademark Office ("PTO") for its MEMOJI mark.  Social Tech used and promoted that mark in connection with its MEMOJI-branded mobile app, which allows users to edit and send photos and videos as real-life emoji messages.  Social Tech filed an intent-to-use trademark application on April 1, 2016 and began courting investors the same month. Social Tech has been marketing its app under the MEMOJI mark on the Internet since January 4, 2017.  The U.S. Patent & Trademark Office ("PTO") registered the MEMOJI mark on September 18, 2018, creating a strong presumption of validity and ownership as of April 1, 2016.

Apple holds no registered mark in "Memoji."  Yet, on June 4, 2018, Apple announced its new iPhone operating system, including a new feature it calls Memoji that allows users to make caricatures of their own chosen features (hereinafter the "Infringing Memoji").  Apple could have picked any name in the world for a new emoji messaging feature; instead, they choose the Infringing Memoji mark despite notice of Social Tech's intent-to-use application.  Indeed, two weeks before Apple's announcement, an anonymous caller, believed to be directed by Apple, attempted to purchase Social Tech's rights in the MEMOJI mark.  Social Tech rejected the overture.

On the same day as Apple's June 4 announcement, Apple became the assignee of the purported goodwill connected to an unsuccessful, forgotten, and abandoned app released in October 2014, also called "Memoji".  Apple took this assignment through a subsidiary from co-assignors Lucky Bunny, LLC and Big 3 ENT, LLC (together "Lucky Bunny").  As described further herein, however, Lucky Bunny failed to achieve sufficient market penetration in any geographic region to

1

Plaintiff's Notice of Motion & Motion for Prelim. Injunction; Memo of Ps & As        Case No. 18-5945

establish common law trademark rights in the "Memoji" mark.  Even if at some point Lucky Bunny had established common law rights somewhere (which it did not), it failed to continuously use the Memoji mark, abandoning its app almost as soon as it was released.  As such, Apple could not receive by assignment what its assignors did not have – goodwill – resulting in an ineffective assignment in gross to Apple.  Without continuous use and market penetration, Apple cannot establish common law rights prior to Social Tech's constructive use date of April 1, 2016.  As described further below, the assignment is also ineffective because Apple's Infringing Memoji lacks continuity with Lucky Bunny's app, with substantially different characteristics such that confusion would result if Lucky Bunny had any goodwill or customers at all.

Social Tech brings the instant motion for a preliminary injunction to force Apple to do what it should have done in the first place: pick another name for its service.  Consumers have already expressed confusion and frustration with Social Tech because its app is not Apple's.  Social Tech's marketing efforts have been drowned by the attention to Apple's Infringing Memoji feature.  If Apple is allowed to continue use the Infringing Memoji mark as part of its new operating system, Social Tech will continue to lose more control of its MEMOJI brand and reputation, given the consumer confusion.  Apple must be stopped before Social Tech is further irreparably harmed.  As the Ninth Circuit held, "[s]lam-dunk evidence of a conceptually strong mark together with the use of identical marks on identical goods is difficult to surmount."  *Stone Creek, Inc. v. Omnia Italian Design, Inc.,* 875 F.3d 426, 436 (9th Cir. 2017).

Apple knew, or certainly should have known, about Social Tech's prior use of the MEMOJI mark before making its much-anticipated announcement of its Infringing Memoji feature.  Indeed, Lucky Bunny's trademark application, which was assigned to Apple's subsidiary on May 31, 2018, was suspended in 2017 based on Social Tech's pending intent-to-use application.  Further, on June 13, 2018, Social Tech sent Apple a letter informing it of its intent to carry through with the

registration and to enforce its trademark rights.  Apple chose to continue to promote and release its feature with the Infringing Memoji mark nonetheless.

The preliminary injunction remedy in trademark cases exists to prevent exactly this type of deliberate, willful infringement. Social Tech respectfully requests that the Court enter a preliminary injunction and require Apple to immediately stop using the Infringing Memoji mark to promote its new product and stop infringing on Social Tech's rights.

## II. <u>STATEMENT OF FACTS</u>

A.    **Social Technologies Files Intent-to-Use Trademark Application for MEMOJI, Introduces the MEMOJI App and Protects the MEMOJI Mark**

Social Tech is a Georgia limited liability company focused on providing consumers with new methods to personalize and enhance messaging sending capabilities.  (Bonet Decl. ¶ 2.)  Social Tech's first release into the marketplace was in 2017 with "Hellojis," a downloadable suite of emojis with the enhanced-capability of movement.  (*Id.* at ¶ 3.) Social Tech's related, second concept under development since 2016 is "MEMOJI" – the subject of this case.  (*Id.* at ¶ 4.)   Social Tech's MEMOJI app allows consumers to use their device's camera to capture and edit a photo or video of themselves or their surroundings to send a personalized, moving emoji.  (*Id.*)   Social Tech's MEMOJI app was released on the Google Play App Store for use on Android devices on June 28, 2018.  (*Id.*)

Social Tech came up with the name MEMOJI in 2016 and filed an intent-to-use trademark application on April 1, 2016 for a stylized wording of MEMOJI.  (Bonet Decl. ¶ 5, 7) (Dee Decl. ¶ 2, Ex. 1.)  Prior to adopting the name, Samuel Bonet of Social Tech searched the PTO website for "memoji" to make sure no one else had registered the mark.  (*Id.* ¶ 6.)    That search revealed an abandoned 2014 application for "Memoji", U.S. Serial Number 86438926, filed by Big 3 ENT, LLC

3

Plaintiff's Notice of Motion & Motion for Prelim. Injunction; Memo of Ps & As        Case No. 18-5945

and Lucky Bunny, LLC (together "Lucky Bunny").  (*Id.*) (Dee Decl. ¶ 7, Ex. 6.) Social Tech also conducted a web search and found Lucky Bunny's unsuccessful mobile application with the name "MEmoji" which appeared to have been released in 2014 but abandoned almost immediately thereafter.  (*See supra* § II. C.)  (Bonet Decl. ¶ 6.)    Social Tech therefore settled on the MEMOJI name after seeing that the name was not in use.  (*Id.*)

Upon filing its intent-to use application, Social Tech created a thorough presentation and began seeking investors for MEMOJI in April 2016.  (Bonet Decl. ¶ 8.)  Social Tech began promoting    MEMOJI    online    on    Social    Tech's    website    as    of    January    4,    2017 (https://www.socialtechnologiesllc.com/memoji),    and    with    two    promotional    videos    posted    to YouTube,    also    on    January    4,    2017    (https://youtu.be/lb7EeFNJy2U    and https://youtu.be/cPEwDXIYaEA). (*Id.*)

On November 15, 2017, the PTO issued a Notice of Publication for Social Tech's MEMOJI trademark, advising the public that the mark would be published on December 5, 2017.  (Dee Decl. ¶ 3, Ex. 2)  No opposition was filed by any party.  (*Id.* ¶ 3.)  The PTO entered a Notice of Allowance for Social Tech's application on January 30, 2018, giving Social Tech six months to use MEMOJI in commerce and file a Statement of Use.  (*Id.*)  Social Tech released its MEMOJI app through the Google Play online app store on June 28, 2018 and filed a Statement of Use on June 30, 2018. (Bonet Dec. ¶ 12) (Dee Decl. ¶ 3).  Social Tech received a PTO registration for its stylized MEMOJI mark on September 18, 2018 (Reg. No. 5,566,242).  (Dee Decl. ¶¶ 3-4, Ex. 3.)

Meanwhile, on May 21, 2018, an unknown person, now believed to be acting at the direction of Apple, left a message with Social Tech inquiring about MEMOJI.  (Bonet Decl. ¶ 9.)  Social Tech's Mr. Bonet returned the call and the same person answered, and inquired whether Social Tech had any interest in selling its rights in MEMOJI.  (*Id.*)  After the person refused to identify the company he worked for, Mr. Bonet indicated that MEMOJI was not for sale.  (*Id.*)  Nonetheless,

4

Plaintiff's Notice of Motion & Motion for Prelim. Injunction; Memo of Ps & As        Case No. 18-5945

within days after that seemingly random call, and despite Social Tech's allowed and pending intent-to-use application for MEMOJI, Apple announced on June 4, 2018 that it was planning to offer its own messaging feature using the Infringing Memoji mark.   (Bonet Decl. ¶ 10) (Dee Decl. ¶ 12., Ex. 11.)

**B.** **Apple's Deliberate and Willful Infringement Overwhelms Social Technologies' MEMOJI Mark and Creates Confusion and Harm to Social Technologies**

Apple's launch of the Infringing Memoji swamped Social Tech's efforts to associate the MEMOJI mark with its own brand.  Apple's June 4, 2018 press release highlighted the Infringing Memoji as part of the new operating system for iPhones and iPads.  (Dee Decl. ¶ 12, Ex. 11.)  At an "Apple Special Event," on June 4, 2018, several top Apple executives personally promoted the Infringing Memoji.  (Dee Decl. ¶ 13.)  Apple's announcements quickly attracted widespread media commentary, with articles highlighting the Infringing Memoji feature in The Verge, CBS News, Wired, TechCrunch, and many more.  (Dee Decl. ¶ 14, Ex. 12.)

The sheer size of Apple compared to small startup Social Tech made it difficult for Social Tech to protect its MEMOJI brand and reputation, and to develop goodwill and identity.   Social Tech realized immediately that it was losing control of the MEMOJI brand they had worked hard to plan and cultivate.  (Bonet Decl. ¶ 11.)  Swamped by the wave of publicity for Apple's Memoji feature, Social Tech cut its funding and development process short to advance the timeline for its MEMOJI app in an effort to stem whatever loss it could from Apple's use of the Infringing Memoji.  (Bonet Decl. ¶ 12.)  Social Tech therefore released a basic but functional version of its MEMOJI app through the Google Play store on June 28, 2018.  (Bonet Decl. ¶ 12.)  Social Tech has also been active in promoting its MEMOJI app by purchasing Facebook advertisements, and posting on Facebook, Instagram, and YouTube.  (Bonet Decl. ¶ 13.)  Social Tech also engaged a company to enhance search engine optimization (SEO) for Social Tech's MEMOJI app, but these efforts have

5

yielded none of the expected results given Apple's towering presence and complete domination of Social Tech's MEMOJI mark.  (*Id.*)

Before Apple announced its Infringing Memoji, a search for Memoji would have turned up Social Tech's MEMOJI at or near the top of search results. (Bonet Decl. ¶ 11.)  A YouTube search, for instance, would have displayed Social Tech's promotional MEMOJI video as the first result. (*Id.*)  Now that is all gone.  Despite Social Tech's marketing and SEO efforts, its promotional video is now at approximately the 190th result in a YouTube search for MEMOJI.  (*Id.*)  Likewise, Social Tech's MEMOJI does not appear even after many pages of Google search results for MEMOJI. (*Id.*)

Of the few who have found Social Tech's MEMOJI, many have expressed confusion and have left negative comments on Social Tech's MEMOJI Facebook page and on its Google Play site, illustrating clearly how Apple's Infringing Memoji is negatively affecting Social Tech's reputation, brand, and goodwill with respect to its MEMOJI trademark. (Bonet Decl. ¶ 14.)  For example:

- On September 17, 2018, the same day that Apple's Infringing Memoji feature became available to the general public, a user, apparently expecting Apple's version, asked Social Tech via Facebook: "What kind of app is this??  This app looks nothing like the app on iPhone! . . . When will y'all make the memoji app look and function like this memoji app on iPhones? Picture above."  (Bonet Decl. ¶ 15 (showing a picture of an Infringing Memoji.));

- The same user also left a searing negative review on Social Tech's Google Play site because she didn't find the Apple Infringing Memoji functionality she was looking for, calling Social Tech's  MEMOJI app "Trash! No emoji transformation whatsoever.  Nothing like the memoji update on the iPhone!!!  Please don't even waste your time downloading. . . ."  (Bonet Decl. ¶ 16.);

6

- Two separate people sent messages on Social Tech's Memoji Facebook page on September 18 and 19, 2018, just after Apple's release on September 17 of the Infringing Memoji, asking: "can I use this app on the iPhone 7s Plus please?" and "What iPhone is Memoji for" (Social Tech's MEMOJI is only offered on Android phones through the Google Play store) (Bonet Decl. ¶ 17.);

- Another message to Social Tech's Memoji Facebook page on September 1, 2018, while Apple's Infringing Memoji was available as a beta version, asked "How do I create my own Memoji on my iphone x?" (Bonet Decl. ¶ 18.)

Social Tech's MEMOJI app has been completely drowned out by Apple, the "most valuable company in history,"[1] and its wrongful promotion of the Infringing Memoji.  Social Tech is further harmed because Apple controls one of the two main marketplaces for apps via the Apple App Store.  Given the instant dispute, Social Tech has not attempted to enter its MEMOJI app into the Apple App Store for use on iPhones and iPads because of Apple's anticompetitive contract of adhesion which Social Tech would have to agree to and which purports to require waivers of important rights and remedies.  (Bonet Decl. ¶ 19.)  If Apple had not announced and released its Infringing Memoji product, Social Tech could have proceeded with the full development of the MEMOJI app on its planned schedule and released a more complete product on both Google Play and the App Store, rather than having to rush to a limited market with a more basic product and confused and frustrated consumers.

---

[1] *Apple Now Most Valuable Company in History*, FORBES:  BENZINGA INSIGHTS (Aug. 21, 2012, 8:35 AM)  https://www.forbes.com/sites/benzingainsights/2012/08/21/apple-now-most-valuable-company-in-history/#70605953bf67

1

2

**C.      Lucky Bunny Lacked Market Penetration, Continuous Use and Goodwill,**

**Resulting in an Ineffective Assignment to Apple**

3

4

Rebuffed in May 2018 in its effort to purchase Social Tech's MEMOJI mark and legitimate

federal trademark protections, Apple instead became the assignee of purported goodwill connected

5

6

to Lucky Bunny's forgotten and abandoned mobile application, and a suspended trademark

application that went along with it.  (Dee Decl. ¶ 10, Ex. 8.)  Apple apparently attempted to conceal

7

8

its identity in that transaction by forming a company called Memofun Apps LLC ("Memofun") to

take the initial assignment on May 31, 2018.  (Dee Decl. ¶ 10, Ex. 9.)  Memofun then made the same

9

10

assignment to Apple on June 4, the day of Apple's announcement.  (Dee Decl. ¶ 11, Ex. 10.)  As

described herein, although Lucky Bunny's defunct Memoji app was released in 2014 and predated

11

12

Social Tech's 2016 intent-to-use application, the assignment carried no goodwill due to Lucky

Bunny's failure to penetrate the market in any geographical area prior to April 1, 2016 (Social

13

14

Tech's application date), and its failure to continuously use the Memoji mark prior to the assignment

15

16

to Memofun.   (Dee Decl. ¶ 15.)

17

Lucky Bunny filed its first trademark application for Memoji in October 2014, shortly after

18

its app named Memoji became available on Apple's App Store.  (Dee Decl. ¶¶ 5, 17.)  Within one-

19

20

month, Lucky Bunny ceased promotion of the app on Twitter.  Indeed, the last post promoting its

app was in November 2014.  (Dee Decl. ¶ 16, Ex. 13.)  Lucky Bunny likewise failed to provide any

21

22

updates to its app after the first month of its release.[2] (Dee Decl. ¶ 17, Ex. 14.)  Having given  up on

23

its app, Lucky Bunny also abandoned its PTO application despite having received multiple warnings

24

25

26

27

---

[2] Apple stresses the importance of keeping apps updated on its website, encouraging developers to continue "Engaging Users with App Updates" and noting that "Regular app updates can help you stay competitive on the App Store, as each new release is an opportunity to reengage existing users and attract new users."  (Dee Decl. ¶ 18.)    For example, Lucky Bunny performed 16 updates to its other app "Stitch It" between 2013 and 2016.  (Dee Decl. ¶ 19.) Likewise, Social Tech has continued to promote and enhance its HELLOJIS app with the addition of new features and updates through nine different versions within the first nine months of its release.  (Bonet Decl. ¶ 3.)

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

and chances to comply with the requirements to see its application through to registration. (Dee Decl. ¶¶ 6-7, Exs. 5-6.) Lucky Bunny plainly had no intention to follow through or resurrect its application.

Only after Social Tech filed its intent-to-use application in April 2016 did Lucky Bunny file, in April 2017, a second application for the Memoji trademark. (Dee Decl. ¶¶ 2, 8.) This second Lucky Bunny application was deemed "suspended" by the PTO examiner in June 2017, explicitly based on Social Tech's prior pending intent-to-use application and the likelihood of confusion that would be caused by Lucky Bunny's use of the mark. (Dee Decl. ¶ 9, Ex. 8.) Even after receiving express notice of Social Tech's pending application in June 2017, Lucky Bunny took no action to oppose Social Tech's application during the opposition period starting on December 5, 2017 (or otherwise). (Dee Decl. ¶ 3.)

**D.    Apple Ignores Social Technologies' Request for Information**

After Apple's June 4 announcement of the Infringing Memoji, Social Tech's counsel sent a letter to Apple on June 13, 2018, informing Apple of Social Tech's intention to release its MEMOJI app and carry through with its pending PTO application by filing a Statement of Use to obtain a registered trademark for its MEMOJI mark. (Dee Decl. ¶ 20.) Apple responded through counsel on June 14, 2018, asserting that it has "common law rights in the MEMOJI mark" predating Social Tech's April 1, 2016 filing date by virtue of the Lucky Bunny assignment. Apple warned that Social Tech should "therefore abandon its application and any plans it may have to use MEMOJI." (Dee Dec. ¶ 21.) Social Tech responded by email dated June 22, 2018, noting Lucky Bunny's failed and abandoned Memoji app, but also requesting in good faith from Apple:

> any further information that you are able to provide regarding the alleged common law rights asserted by your clients. As such, please provide us with the specific geographic market(s) within which common law rights are asserted and on behalf of which entity, Apple and/or Memofun Apps. Please also provide information regarding your client(s) market penetration such that common law trademark rights could inure in such market(s), including the volume and dates

9

> of sales (or downloads); location of sales or downloads; extent of use by users; amount and timing of any advertising in connection with the alleged use of the Mark; and/or any other information you deem relevant to the rights asserted by your clients.

(Dee Dec. ¶ 22.)   Social Tech received no response from Apple for the obvious reason that Apple lacked facts to show market penetration and/or continuous use that would prove common law rights anywhere in the country.  (Dee Decl. ¶ 23.)  Apple could not credibly dispute that Lucky Bunny's app was fully abandoned long before any purported assignment.  Yet, Apple continues to promote the Infringing Memoji without regard to Social Tech's trademark rights.

Despite Social Tech's registration and notice thereof, Apple has not changed the name of the Infringing Memoji feature or stopped its willful, deliberate infringement of Social Tech's MEMOJI mark.  Apple is a classic willful infringer. Apple knew about Social Tech's senior rights to MEMOJI, both as a matter of registration with the PTO and as a matter of use by Social Tech in commerce. Apple knew that its Infringing Memoji feature was such a closely related service to Social Tech's MEMOJI app that confusion was virtually certain. Yet, Apple still went ahead and used the MEMOJI mark anyway. This is the paradigm of deliberate, willful infringement.

On September 17, 2018, Apple released its new iPhone and new operating system to the general public with the infringing Memoji feature included. This release has only exacerbated the confusion that Apple started with its June 4, 2018 product announcement and has resulted in the further association of Memoji with Apple even though the name belongs to Social Tech.   As discussed below, Apple must be stopped immediately.

### III.   ARGUMENT

Social Tech is entitled to a preliminary injunction if it establishes that it is likely to succeed on the merits, likely to suffer irreparable harm in the absence of preliminary relief, the balance of equities tip in their favor, and an injunction is in the public interest. *See Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008).  The Ninth Circuit evaluates these factors using a "sliding scale

1  approach" such that "serious questions going to the merits and a balance of hardships that tips

2  sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff

3  also shows that there is a likelihood of irreparable injury and that the injunction is in the public

4  interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

5  **A.    Social Technologies Is Likely to Succeed on the Merits**

6          Social Tech has alleged claims for trademark infringement under the Lanham Act and

7  California state law as well as a California statutory unfair competition claim.   Although these

8  claims may differ for some purposes, each requires a showing that (1) Social Tech has a valid mark

9  entitled to protection, and (2) Apple's use of the Infringing Memoji mark will likely cause confusion.

10  *See Brookfield Communications, Inc. v. West Coast Entertainment Corp.,* 174 F.3d 1036, 1046 (9th

11  Cir. 1999); *Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.,* 109 F.3d 1394, 1403 (9th Cir.

12  1997) ("Likelihood of confusion is the basic test for both common law trademark infringement and

13  federal statutory trademark infringement.").

14

15          **1.    <u>Social Technologies Has a Valid MEMOJI Mark Entitled to Protection</u>**

16          Social Tech's registration of the MEMOJI mark on the Principal Register in the PTO (Reg.

17  No. 5,566,242) constitutes *prima facie* evidence of the validity of the registered mark and of Social

18  Tech's exclusive right to use the mark on the goods and services specified in the registration.  *See*

19  15 U.S.C. §§ 1057(b), 1115(a).  Social Tech is therefore entitled to a presumption that it owns a

20  valid mark dating to the filing date of the application for federal registration.  *See* 15 U.S.C. §

21  1057(c) (filing of trademark application "shall constitute constructive use of the mark, conferring a

22  right of priority, nationwide in effect"); *Brookfield,* 174 F.3d at 1051 n.13 (federal registration

23  entitles owner to presumptive first-use date equivalent to application filing date); *Coca–Cola Co. v.*

24  *Overland, Inc.*, 692 F.2d 1250, 1254 (9th Cir. 1982) ("Federal registration of a trademark endows it

25  with a strong presumption of validity.").

26

27

28

11

Since Apple does not have a federal trademark registration, it bears the burden to prove valid common law ownership rights in the mark at the time of Social Tech's registration. *Gold Club-SF, LLC v. Platinum SJ Enter.*, No. 13-cv-03797-WHO, 2013 U.S. Dist. LEXIS 134379, at *19 (N.D. Cal. Sept. 18, 2013) (citation omitted).  To establish common law trademark rights, Apple must establish two things: (1) that it is the senior user, and (2) legally sufficient market penetration in a certain geographic market to establish those trademark rights. *Hanginout, Inc. v. Google, Inc.*, 54 F.Supp. 3d 1109, 1118 (S.D. Cal. 2014); *Gold Club-SF,* at *20 (N.D. Cal. Sept. 18, 2013).  To be clear, these are two independent showings. *Hanginout,* 54 F.Supp. 3d at 1118.

### a.      Apple is not a Senior User Because It Lacks Continuous Use

"The Ninth Circuit has imposed a strict 'continuous use' requirement to demonstrate common law priority: 'To be a continuous use, the use must be maintained without interruption.'" *Spin Master, Ltd. v. Zobmondo Entm't, LLC*, 944 F. Supp.2d 830, 851 (C.D. Cal. 2012) (quoting *Casual Corner Assocs., Inc. v. Casual Stores of Nev., Inc.*, 493 F.2d 709, 712 (9th Cir. 1974)).  In other words, "a litigant claiming . . . senior rights in a mark must show: (1) that his or her 'use of the mark began before its registration and publication'; and (2) 'that there has been **continuing use** since that time.'" *Watec Co. v. Liu*, 403 F.3d 645, 653 (9th Cir. 2005)(emphasis added).  Because the Ninth Circuit has imposed such a strict standard, "even short periods of nonuse can break the chain of continuous use." *Spin Master*, 944 F. Supp.2d at 851.

For example, in *Casual Corners*, the court held that the nonuse of a trademark for a year was enough to establish a break in continuous use, and thus defeat any assertions of priority. *Casual Corner Assocs., Inc.*, 493 F.2d at 712.  Similarly, in *Conversive*, the court held that a two-year period of nonuse defeated priority. *Conversive, Inc.*, 433 F. Supp.2d at 1089.

Here, while Lucky Bunny released its Memoji app to Apple's App Store in October 2014, it discontinued use of the mark by ceasing promotion of the app by November 2014 (Dee Decl. ¶ 16,

12

1  Ex. 13.)  and failing to provide any updates to its app after November 2014. (Dee Decl. ¶ 17, Ex.

2  14.)  Even Apple stresses the importance of keeping apps updated on its website, encouraging

3  developers to continue "Engaging Users with App Updates" and noting that "Regular app updates

4  can help you stay competitive on the App Store, as each new release is an opportunity to reengage

5  existing users and attract new users." (Dee Decl. ¶ 18.)  Lucky Bunny itself performed 16 updates

6  to its other app "Stitch It" between 2013 and 2016.  (Dee Decl. ¶ 19.)[3]

7
   As in *Casual Corners* and *Converse*, Apple / Lucky Bunny's nonuse of the Memoji mark

8
   defeats priority over Social Tech here.

9

10              **b.       Apple's Lack of Market Penetration in Any Specific Geographic Area**

11              Even if Apple manages to prove seniority based on its assignment from Lucky Bunny

12  (which it cannot) it still cannot show the requisite market penetration in a specific geographic area

13  to establish common law trademark rights.  *See Adray v. Adray-Mart, Inc.*, 76 F.3d 984, 989 (9th

14  Cir. 1995); *Gold Club-SF*, U.S. Dist. LEXIS 134379, at *20 (N.D. Cal. Sept. 18, 2013); *Glow Indus.,*

15  *Inc. v. Lopez*, 252 F. Supp. 2d 962, 983 (C.D. Cal. 2002) ("Generally, the senior user of a mark is

16  entitled to assert trademark rights in all areas in which it has legally sufficient market penetration.");

17  *see also Optimal Pets, Inc. v. Nutri-Vet, LLC*, 877 F. Supp. 2d 953, 959 (C.D. Cal. 2012) ("To

18  establish enforceable common law trademark rights in a geographical area, a plaintiff must prove

19  that, in that area, (1) it is the senior user of the mark, and (2) it has established legally sufficient

20  market penetration."); *Credit One Corp. v. Credit One Fin., Inc*., 661 F. Supp. 2d 1134, 1138 (C.D.

21  Cal. 2009) ("A party asserting common law rights must not only establish that it is the senior user,

22  it must also show that it has 'legally sufficient market penetration'").

23

24

25  ---

26  [3] Having given  up on its app, Lucky Bunny also abandoned its PTO application despite having
    received multiple warnings and chances to comply with the requirements to see its application
27  through to registration.  (Dee Decl. ¶¶ 6-7, Exs. 5-6.)  Lucky Bunny plainly had no intention to
    follow through or resurrect its trademark application given that it ceased using the mark by
28  abandoning its mobile app.

1    Market penetration is evaluated by "the volume of sales, the positive and negative growth

2    trends, the number of people who purchased the party's goods in relation to the number of potential

3    customers, and the amount of advertising." *Adray*, 76 F.3d at 989; *accord Hanginout*, 54 F. Supp.

4    3d at 1121; *Gold Club-SF*, 2013 U.S. Dist. LEXIS 134379 at *20. Notably, the burden to prove

5    sufficient market penetration is on Apple, the party presumably asserting common law

6    rights. *Hanginout*, 54 F. Supp. 3d at 1121; *Gold Club-SF*, 2013 U.S. Dist. LEXIS 134379 at *20.

7    In the *Hanginout* case, the court found that Hanginout proved that it was the senior user

8    before turning to the market penetration prong. *Hanginout*, 54 F. Supp. 3d at 1122. When analyzing

9

10   that prong, however, the court held that Hanginout failed to prove market penetration in any

11   geographical area as it simply couldn't meet its burden on three of the four factors:

12       First, with regard to total sales, or in this case registered users,
         although Hanginout represented that it had over 200 registered users
13       of its web-based platform as of May 2011, and nearly 8,000 registered
         users of its iTunes application as of the filing of the preliminary
14       injunction, Hanginout has never identified the state of residence of
         these alleged registered users. . . . Hanginout's evidence of 'site
15       visits' fairs no better. Although this evidence pins down the state (and
         city within California) of the consumer that viewed Hanginout's
16       mobile profile, the Court is at a loss as to how these statistics identify
         the location of Hanginout's registered users. Therefore, although
17       evidence of site visits shows that consumers are actually looking at
         Hanginout's website and/or products, and supports Hanginout's
18       seniority of use argument, it is insufficient to show actual
         sales/registration for Hanginout's product necessary to establish
19       market penetration.

20       Second, with regard to actual growth trends of the product at issue,
         although Hanginout never specifically commented on this factor, the
21       Court finds the evidence submitted by Hanginout speaks for itself.
         For example, the . . . dramatic decline in the overall number of views
22       of the HANGINOUT application, with the number of visits the
         highest in or around October 2012, then nearly flat-lining in or around
23       October 2013. This analysis is then confirmed by sales statistics that
         were reported to Hanginout by iTunes. These sales reports indicate
24       that 6,926 individuals downloaded the HANGINOUT application in
         2012, and that 1,235 individuals downloaded the HANGINOUT
25       application in 2013. This represents a 82.17% decline in the number
         of registered users, or 5,691 fewer registered users from 2012 to 2013.
26       Therefore, based on these statistics, all of which were produced by
         Hanginout, there appears to be a negative growth trend for the
27       HANGINOUT product.

28

                                                14

Third, with regard to the actual number of consumers actually purchasing/ registering for the product in relation to the total number of potential consumers, Hanginout once again did not produce or direct the Court to any evidence indicative of this factor. Instead, the only evidence the Court is left to consider is that 6,926 individuals registered for the HANGINOUT iTunes application in 2012, 1,235 individuals registered for the HANGINOUT iTunes Application in 2013, and that 61,601 individuals viewed HANGINOUT Mobile between September 2012 and December 23, 2013. However, as these numbers do not directly overlap, nor did Hanginout present any evidence regarding its market share, this weighs against finding Hanginout had sufficient market penetration to warrant immediate injunctive relief.

However, with regard to marketing and advertising, Hanginout fares much better. . . .

Although the Court finds the evidence presented above exemplifies Hanginout's marketing and intent to use the HANGINOUT mark in commerce, none of the evidence is sufficient to support a finding of market penetration in a specific geographic market. Therefore, because marketing and advertising is but one factor to consider in determining market penetration of an unregistered mark, without evidence as to the actual location of Hanginout's registered users, the Court cannot determine Hanginout's market penetration. Accordingly, although the Court is cognizant of the complexities posed by the use of Internet, the Court does not agree with Hanginout that marketing, advertising, and promoting an unregistered mark over the Internet is sufficient to find nationwide market penetration. The Court also does not agree with Hanginout that it has sufficient market penetration in Southern California by virtue of the location of its office and/or the number of site views originating out of Southern California.

As a result, the Court finds Hanginout had not presented sufficient evidence to permit the Court to determine its market penetration in a specific geographic area, and as a result, the Court need not consider Hanginout's natural zone of expansion.

*Hanginout*, 54 F. Supp. 3d at 1122-1124 (citations and footnotes omitted).

Likewise, in *Glow Industries v. Lopez*, Glow Industries was found likely to be the senior user using the GLOW trademark for body and facial care products. *See Glow Indus. v. Lopez*, 252 F. Supp. 2d 962 (C.D. Cal. 2002).  However, despite clearly making sales of the GLOW trademarked products in commerce, it wasn't able to prove market penetration:

Glow, Inc. offers little evidence regarding the market penetration or sales of the three products at issue. Specifically, it has proffered no

15

1
2
3
4
5

> evidence detailing the volume of products it has sold. Similarly, save for the InStyle and Los Angeles magazine pieces, it has adduced no evidence regarding the manner in which the products have been advertised. The majority of the evidence it has submitted, which concerns the advertising and sale of GLOW products generally, also provides little information that would assist the court in quantifying market penetration, sales levels, growth trends, or the number of people who purchased the company's products in relation to the number of potential customers.

6

*Id.* at 984.

7
8
9
10

As in *Hanginouts* and *Glow*, Apple will be unable to prove its predecessor Lucky Bunny's market penetration in any specific geographic area prior to Social Tech's constructive use date of April 1, 2016.  Having failed to successfully launch a viable product, Lucky Bunny had no reason

11
12
13
14
15

to follow through with its trademark application (*see* Dee Decl. ¶ 7, Ex. 6), oppose Social Tech's application (*see id.* ¶ 3), or to continue marketing or performing important app updates (as it did with its other app, Stitch It) (*see* Dee Decl.¶¶ 16-19, Exs. 13-16).  Likewise, Apple's counsel refused to respond to a genuine request by Social Tech for details regarding the geographic scope of Apple's alleged common law rights and market penetration.  (*Id.* ¶¶ 22-23.)

16
17

### c.    Lucky Bunny's Assignment to Apple Was an Assignment in Gross

18
19
20
21
22
23
24
25
26
27

As described herein, the purported assignment of the common law rights to the word mark Memoji from Lucky Bunny to Apple, through Memofun, was in gross.  As a general rule, "assignments of trademarks in gross are traditionally invalid." *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1289 (9th Cir. 1992).  The reason for this is because "there are no rights in a trademark alone." *Mister Donut of America, Inc. v. Mr. Donut, Inc.*, 418 F.2d 838, 842 (9th Cir. 1969).  The assignment of the trademark must be accompanied by the goodwill of the business which used the trademark in order to be valid.  The Lanham Act itself is clear in providing that a mark is only "assignable with the goodwill of the business in which the mark is used, or with that part of the goodwill of the business connected with the use of and symbolized by the mark." 15

28

16

U.S.C. § 1060. The Ninth Circuit has noted "[t]he purpose behind requiring that goodwill accompany the assigned mark is to maintain the continuity of the product or service symbolized by the mark and thereby avoid deceiving or confusing consumers." *E. & J. Gallo Winery*, 967 F.2d at 1289.

In *Mister Donut of America, Inc. v. Donut, Inc.*, the Court determined that the assignment of the trademark was in gross because the trademark assignment occurred in 1955, but the business with which the trademark was associated had effectively shut down in 1951. *Mister Donut of America, Inc. v. Donut, Inc.*, 418 F.2d 838, 842 (9th Cir. 1969). "There was no pretense that the estate transferred any customer lists, merchandise, equipment, recipes, decals or other goods." *Id.* The Court justifiably noted that as such, "the assignor estate had no good will and therefore assigned none." *Id.* Thus, the Court concluded that "the assignment was in gross and that the recording thereof was ineffective to grant any rights in the trademark." *Id.*

Here, Lucky Bunny abandoned the mobile app with which its mark was associated in 2014, leaving its assignment to Apple in 2018 devoid of any goodwill. Indeed, Apple appears to have taken no steps to transfer any goodwill or other intangible or tangible assets from Lucky Bunny.

Furthermore, there is a lack of continuity between Lucky Bunny's app and Apple's Infringing Memoji feature. *See Sugar Busters LLC v. Brennan*, 177 F.3d 258, 265, 50 U.S.P.Q.2d 1821, 1824 (5th Cir. 1999) (no goodwill transferred in the assignment in question because the assignor's SUGAR-BUSTERS retail store services were not sufficiently similar to the assignee's SUGAR BUSTERS! book to prevent consumer confusion). Lucky Bunny's app was a far more basic product, shown by the specimens provided with its trademark applications. (*See* Dee Decl. Ex. 4, p. 8; Ex. 7, pp. 9-16). Apple's Infringing Memoji uses far more technologically advanced augmented reality capabilities of the newer iPhones (which are probably not even compatible with Lucky Bunny's app) to provide real-time facial animation, including tongue detection. (*See* Dee

Decl. Ex. 11, pp. 1-3; Ex. 12).  With such an exciting new and cutting-edge feature, Apple did not want any association with Lucky Bunny's inferior and defunct product.

### 2. Social Technologies Has Established a Likelihood of Confusion

Social Tech agrees with Apple when it states: "Given the similarity of the parties' respective goods and marks, [Social Tech's] use of the Registered Mark in connection with [Social Tech's] goods is likely to cause confusion as to the source of [Social Tech's] goods."  Dee. Decl. ¶ 24, Ex. 15.

An analysis of the *Sleekcraft* factors supports this conclusion.  Likelihood of confusion is assessed by:  (1) the strength of the marks, (2) the proximity of the goods, (3) the similarity of the marks, (4) evidence of actual confusion, (f) marketing channels used, (6) type of foods and the degree of care likely to be exercised by the purchaser, (7) defendants' intent, and (8) likelihood of expansion of the product lines. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979); *see also Perfumebay.com Inc. v. eBay, Inc.* 506 F.3d 1165, 1173 (9th Cir. 2007) (in the Internet context, the three most important *Sleekcraft* factors are similarity of marks, relatedness of goods and services, and simultaneous use of the Web as a marketing channel).  Here, every factor favors confusion.

Strength of the marks:  MEMOJI is an example of a "fanciful mark…a coined word or phrase, such as Kodak, invented solely to function as a trademark." *Dreamwerks Production Group, Inc. v. SKG Studio*, 142 F.3d 1127, 1130 n.7 (9th Cir. 1998).  Like "Dreamwerks," another made-up word, MEMOJI is an "arbitrary and fictitious mark deserving of strong protection." *Id.* at 1130.  Even if the MEMOJI mark is not considered fanciful or arbitrary, it is at the very least suggestive – that is, there is some degree of "imaginativeness" involved in going from the mark to the goods, such as SLEEKCRAFT for boats or VERICHECK for check verification services. *Sleekcraft*, 599 F.2d at 349; *Lahoti v. Vericheck, Inc.* 636 F.3d 501, 506 (9th Cir. 2011).

The PTO determined MEMOJI was a valid mark deserving of protection, which is why they

18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

published it and eventually registered it.  The Court should accord deference to the examining attorneys' conclusion that the mark is entitled to protection. *See Lahoti v. Vericheck, Inc.* 586 F.3d 1190, 1199 (9th Cir. 2009) (holding "[d]eference to the PTO's classification decision" of a similar-though-different mark to the mark under consideration was "sensible because the PTO has special expertise that we lack on this fact-intensive issue.").  Even if the marks here were not strong, the Ninth Circuit has held that where the "products involved are closely related" and the parties are using "nearly identical" names, "the strength of the mark is of diminished importance in the likelihood of confusion analysis." *Brookfield Communications Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1058-59 (9th Cir. 1999).  That Social Tech holds a design mark is irrelevant; the dominant feature is the word "MEMOJI" and therefore confusion is just as likely. *See In re Viterra Inc.*, 671 F.3d 1358, 1366 (Fed. Cir. 2012) (noting that "the verbal portion of a word and design mark likely will be the dominant portion.").

Proximity of the goods:  Both parties' products consist of software applications for mobile devices that enable images and moving images of the users to be transformed or edited and sent as text messages. (*See Sleekcraft*, 599 F.2d at 348) (high-speed waterskiing racing boats and family-oriented recreational boats).

Similarity of the marks:  The marks here are more than similar. They are nearly identical, the only difference being the minor design element of Social Tech's mark.  This factor – combined with the close similarity of the goods – makes confusion nearly inevitable. *See Brookfield,* 174 F.3d at 1056 ("In light of the virtual identity of marks, if they were used with identical products or services likelihood of confusion would follow as a matter of course.").

Actual confusion:  Social Tech need not show actual confusion to show a likelihood of confusion.  "The failure to *prove* instances of actual confusion is *not* dispositive against a trademark plaintiff, because actual confusion is hard to prove; difficulties in gathering evidence of actual

19

Plaintiff's Notice of Motion & Motion for Prelim. Injunction; Memo of Ps & As      Case No. 18-5945

confusion make its absence generally unnoteworthy." *Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc.,* 457 F.3d 1062, 1077 (9th Cir. 2006) (quoting *Brookfield*, 174 F.3d at 1050).  The Ninth Circuit has affirmed preliminary injunctions even without any finding of actual confusion. *See, e.g., Perfumebay.com Inc.,* 506 F.3d at 1175-76; *Golden Door, Inc., v. Odisho,* 646 F.2d 347, 351 (9th Cir. 1980).

In any event, here, though Apple's Memoji feature was only released on September 17, 2018, Social Tech provides multiple examples of actual confusion.  (*See* Bonet Decl. ¶¶ 14-18.)

Marketing channels: "Convergent marketing channels increase the likelihood of confusion." *Sleekcraft,* 599 F.2d at 353.  Here, both parties market something called MEMOJI for mobile devices via web based mobile app stores, so the marketing channels could not be closer. As the Ninth Circuit has recognized, the use generally of Internet marketing will contributing to likelihood of confusion. *See Brookfield,* 174 F.3d at 1057 (use of the Internet for marketing is "a factor that courts have consistently recognized as exacerbating the likelihood of confusion.").

Here, both parties market using the Internet.  (*See* Dee Decl. ¶¶ 12-13, Ex. 11; Bonet Decl. ¶¶ 8-13.)

Type of good and degree of care:  These are consumer software applications, not expensive products where a high degree of care would be exercised, which weighs in favor of likelihood of confusion. *Lahoti,* 636 F.3d at 509.

Defendants' intent:  The intent factor "favors the plaintiff where the alleged infringer adopted his mark with knowledge, actual or constructive, that it was another's trademark." *Brookfield,* 174 F.3d at 1059.  The Ninth Circuit has held that, under a reverse confusion theory, intent can be shown in many ways, including "by evidence that, for example, the defendant knew of the mark, should have known of the mark, intended to copy the plaintiff, failed to conduct a reasonably adequate trademark search, or otherwise culpably disregarded the risk of reverse

20

Plaintiff's Notice of Motion & Motion for Prelim. Injunction; Memo of Ps & As      Case No. 18-5945

confusion." *Marketquest Group, Inc. v. BIC Corp.,* 862 F.3d 927, 934-35 (9th Cir. 2017) (internal quotation marks and citations omitted).  Here, the facts more than establish culpable intent:  Apple knew or should have known about Social Tech's mark, as a simple trademark search would have revealed the intent-to-use application.  Apple also had express notice of Social Tech's application from the PTO by virtue of the suspension of Lucky Bunny's application because of the likely confusion with Social Tech's MEMOJI (Dee Decl. Ex. 8), and Apple was all but certainly behind the telephone call attempting to buy Social Tech's rights in MEMOJI just prior to announcing its Infringing Memoji.  (Bonet Decl. ¶¶ 9-10).

Likelihood of expansion of product lines:  This factor is not relevant as the products are already in the same category.

## B.   Social Tech Will Suffer Irreparable Harm in the Absence of a Preliminary Injunction

"In trademark cases, irreparable harm is typically found in a plaintiff's loss of control over their business reputation, loss of trade and loss of goodwill.  Irreparable injury exists where a court reasonably concludes that continuing infringement will result in loss of control over the plaintiff's reputation and good will." *Maxim Integrated Products, Inc. v. Quintana,* 654 F. Supp. 2d 1024, 1035-36 (N.D. Cal. 2009).  "In reverse confusion cases, the senior user may suffer harm where the junior user 'overwhelms' the  senior user in the marketplace because 'the senior user loses the value of the trademark, its product identity, corporate identity, control over its goodwill and reputation, and ability to move into new markets.'" *Equinox Hotel Mgt. v Equinox Holdings, Inc.,* No. 17-cv-06393-YGR, 2018 U.S. Dist. LEXIS 16914, at *22-23 (N.D. Cal. Feb. 1, 2018) (*quoting Attrezzi, LLC v. Maytag Corp.,* 436 F.3d 32, 39 (1st Cir. 2006).

Here, Social Tech is suffering exactly the types of harm courts have previously held to be irreparable. (*See* Bonet Decl. ¶¶ 11-18.) Social Tech has not attempted to enter its MEMOJI app

into Apple's App Store given Apple's contract of adhesion which, given the instant dispute, could have resulted in a waiver of significant rights. (*Id.* ¶ 19.)  Apple's marketing using the Infringing Memoji mark has already dominated Internet search results, pushing down all efforts by Social Tech into relative obscurity, whereas Social Tech had, prior to Apple's Keynote address on June 4, displayed prominently in search results for the term Memoji. (*Id.* ¶ 11.)  Consumers have expressed confusion and frustration with Social Tech because its app is not Apple's.  (*Id.* ¶¶ 14-18.)

Courts have recognized that this particular type of consumer confusion – between near identical marks in an identical market – naturally risks the senior user's reputation in an irreparable way, which is exactly what is happening here. *See Well Care Pharmacy II, LLC v. W'Care, LLC*, No. 2:13-cv-00540-GMN-VCF, 2013 WL 3200111, at *8 (D. Nev. June 24, 2013) ("[T]he similarities between the marks and the identical market in which the parties operate will result in consumer confusion. Such confusion poses an ongoing risk of irreparable injury to Plaintiff's goodwill and reputation.").

Social Tech has, is, and will continue to suffer irreparable harm unless Apple is stopped.

## C.   The Balance of Hardships Weighs in Social Technologies' Favor

As outlined above, Social Tech suffers irreparable harm from Apple's deliberate decision to use the Infringing Mark.  On the other side of the balance, injunctive relief would simply require Apple to do something it should have done from the outset – use a different name for its software feature, something Apple could do quite easily.  Any "hardship" Apple would suffer from changing the name is of Apple's own making.  It should not be permitted to claim hardship from solving a problem it created with its infringing conduct in the first place.  "Where the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense merits little equitable consideration." *Concrete Machinery Co., Inc. v. Classic Lawn Ornaments, Inc.,* 843 F.2d 600, 612 (1st Cir. 1988) (quotation marks omitted).  Apple

itself established this principle many years ago. *See Apple Computer, Inc. v. Franklin Computer Corp.,* 714 F.2d 1240, 1255 (3d Cir. 1983) ("Nor can we accept the district court's explanation, which stress the 'devastating effect' of a preliminary injunction on [infringer's] business.  If that were the correct standard, then a knowing infringer would be permitted to construct its business around its infringement, a result we cannot condone.") (citation omitted).  Accordingly, this factor cuts strongly in Social Tech's favor.

Moreover, Apple, the most valuable company in history, has created an immense dilemma for Social Tech, a tiny startup company, and its use of MEMOJI.   Social Tech should be afforded the ability to carry through with its plans to offer and promote its MEMOJI app, where it had the foresight and diligence to file an intent-to-use trademark application, unhindered by Apple which willfully decided to usurp the name despite the obvious problems with its purported rights, without consideration whatsoever.

**D.     A Preliminary Injunction Would Serve the Public Interest**

The public interest also weights in Social Tech's favor.  "Public policy favors granting an injunction when there is a likelihood of consumer confusion."  *MERSCORP Holdings, Inc. v MERS, Inc.*, 2016 U.S. Dist. LEXIS 129165, at *12 (N.D. Cal. Sep. 21, 2016, No. 16-cv-04380-BLF) (citing *Playboy Enterprises, Inc. v. Baccarat Clothing Co.*, 692 F.2d 1272, 1275 (9th Cir. 1982) ("In addition to the harm caused the trademark owner, the consuming public is equally injured by an inadequate judicial response to trademark infringement.")); *Caesars World, Inc. v. Milanian,* 247 F. Supp.2d 1171, 1205 (D. Nev. 2003) ("An important factor in protecting trademarks is to avoid consumer confusion, which is in the public interest.") (citing *Sega Enterprises Ltd. v. Accolade, Inc.,* 977 F.2d 1510, 1523 (9th Cir. 1992) (in the context of copyright infringement)).

Social Tech establishes that Apple's use of the mark will cause the consumer to be confused as to the source of the produces and services offered by Social Tech.  This is the very "paradigm

case" of reverse confusion described by McCarthy when "a knowing junior user with much greater economic power who saturates the market with advertising of a confusingly similar mark, overwhelming the marketplace power and value of the senior user's mark." 4 MCCARTHY § 23:10 at 23-104.

**E.      Social Technologies Should Not Be Required to Post Security**

Federal Rules of Civil Procedure Rule 65(c) provides "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper . . ." Fed. R. Civ. Pr. 65 (c). The Ninth Circuit has noted that "[d]espite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)). "[T]he purpose of the bond is to safeguard a defendant if the Court later determines that a defendant has been wrongfully enjoined." *Moroccanoil, Inc. v. Zotos, Int'l, Inc.*, 230 F. Supp. 3d 1161, 1178-79 (C.D. Cal. 2017). However, as was noted, "[t]he district court has discretion to dispense with the security requirement, or to request mere nominal security, where requiring security would effectively deny access to judicial review." *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1126 (9th Cir. 2005) (quoting *Cal. ex rel. Van De Kamp v. Tahoe Reg'l Planning Agency*, 766 F.2d 1319, 1325 (9th Cir. 1985) (finding proper the district court's exercise of discretion in allowing environmental group to proceed without posting a bond)). For instance, in *Barahona-Gomez v. Reno*, the Ninth Circuit determined that a nominal bond of $1,000.00 was appropriate in a class-action law suit where it was clear from the evidence that the vast majority of the class would be unable to post bond. *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999). Similarly, in *Brantley v. Maxwell-Jolly*, the District Court for the Northern District of California determined that plaintiffs would not have to post any bond in

24

order to ensure their ability to access to the courts. *Brantley v. Maxwell-Jolly*, 656 F. Supp. 2d 1161, 1178 (N.D. Cal. 2009).  Here, similar to the cases cited, given Social Tech is an underfunded startup company with the many hardships that accompany a new business, it would be appropriate for the district court to set a nominal bond amount or no bond at all, as anything higher would effectively deny access to judicial review.  (Bonet Decl. ¶ 20.)

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, the Court should preliminarily enjoin Apple, as well as any related entity or person acting in concert with them, from any use of the MEMOJI mark or any confusingly similar mark, until trial or other disposition of this action.

Dated:  September 27, 2018

Respectfully submitted,

   /s/Nicholas Ranallo
Nicholas Ranallo, Attorney at Law
nranallo@mavrolaw.com
Of Counsel, Mavronicolas & Dee LLP
2443 Fillmore St. #380-7508
San Francisco, CA 94115
P: (831) 607-9229
F: (831) 533-5073

Peter Dee (*pro hac vice* to be filed)
pdee@mavrolaw.com
3 Park Avenue, 15th Floor
New York, NY 10016
T: (646) 770-1256
F: (866) 774-9005

*Attorneys for Plaintiff Social Technologies LLC*