PAGES 1 - 23

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE VINCE CHHABRIA

SOCIAL TECHNOLOGIES LLC, A GEORGIA )
LIMITED LIABILITY COMPANY,          )
                                    )
          PLAINTIFF,                )
                                    )
   VS.                              ) NO. CASE NO.18-CV-05945 VC
                                    )
APPLE, INC., A CALIFORNIA           )
CORPORATION,                        )
                                    )  SAN FRANCISCO, CALIFORNIA
          DEFENDANT.                )  THURSDAY
                                    )  NOVEMBER 1, 2018
_____)

**TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND**

**RECORDING  10:42 A.M. - 11:10 A.M.**

**APPEARANCES:**

**FOR PLAINTIFF**          MAVRONICOLAS AND DEE, LLP
                          3 PARK AVE., 15TH FLOOR
                          NEW YORK, NEW YORK 10016
                    **BY:  PETER CARO DEE, ESQUIRE**

                          MAVRONICOLAS & DEE LLP
                          2443 FILLMORE STREET, SUITE 380-7508
                          SAN FRANCISCO, CALIFORNIA 94115
                    **BY: NICHOLAS RANALLO, ESQUIRE**

(FURTHER APPEARANCES ON FOLLOWING PAGE)

*TRANSCRIBED BY:  JOAN MARIE COLUMBINI, CSR #5435, RPR*
              *RETIRED OFFICIAL COURT REPORTER, USDC*

**APPEARANCES(CONTINUED):**

**FOR DEFENDANT**        KIRKLAND ELLIS LLP
                        601 LEXINGTON AVENUE
                        NEW YORK, NEW YORK 10022
                  BY:   **DALE CENDALI, ESQUIRE**
                        **MARY C. MAZZELLO, ESQUIRE**


                        KIRKLAND & ELLIS LLP
                        333 SOUTH HOPE STREET
                        LOS ANGELES, CA 90071
                  BY:   **DIANA MARIE TORRES, ESQUIRE**

1    THURSDAY, NOVEMBER 1, 2018                    10:42 A.M.

2    (TRANSCRIBER'S NOTE: DUE AT TIMES TO COUNSELS' FAILURE TO

3    IDENTIFY THEMSELVES WHEN SPEAKING, CERTAIN SPEAKER

4    ATTRIBUTIONS ARE BASED ON EDUCATED GUESS.)

5                          ---O0O---

6                          PROCEEDINGS

7         **THE CLERK:**  CALLING CASE NO. 18-CV-5945, SOCIAL

8    TECHNOLOGIES, LLC, VERSUS APPLE, INC.

9         COUNSEL, PLEASE STEP FORWARD AND STATE YOUR

10   APPEARANCES FOR THE RECORD.

11        **MR. DEE:**  GOOD MORNING.  PETER DEE WITH THE LAW FIRM

12   MAVRONICOLAS AND DEE, LLP, FOR THE PLAINTIFF SOCIAL

13   TECHNOLOGIES.

14        **THE COURT:**  GOOD MORNING.

15        **MR. DEE:**  GOOD MORNING.

16        **MR. RANALLO:**  NICHOLAS RANALLO FOR THE PLAINTIFF

17   SOCIAL TECHNOLOGIES, AS WELL.

18        **MS. CENDALI:**  GOOD MORNING, YOUR HONOR.  DALE CENDALI

19   FROM KIRKLAND & ELLIS, COUNSEL FOR APPLE.  WITH ME ARE MY

20   COLLEAGUES DIANA TORRES AND MARY MAZZELLO.

21        **THE COURT:**  HELLO.

22        OKAY.  LET ME START, I GUESS, WITH THE PLAINTIFFS.

23        I MEAN, I THINK WE COULD PROBABLY GET INTO A

24   DISCUSSION ABOUT, YOU KNOW, WHETHER YOU HAVE SHOWN A LIKELIHOOD

25   OF SUCCESS ON THE MERITS.  BUT I'M NOT SURE IT'S NECESSARY,

1  BECAUSE I'M NOT -- IF THERE IS IRREPARABLE HARM HERE THAT CAN'T

2  BE COMPENSATED BY MONEY DAMAGES, I'M NOT WRAPPING MY BRAIN

3  AROUND IT.

4          I MEAN, THE OTHER THING TO SAY IS THAT THERE SEEMS IN

5  THIS CONTEXT, IN THESE TYPES OF CASES THERE SEEMS TO BE QUITE A

6  BIT OF OVERLAP BETWEEN THE MERITS AND THE ISSUE OF IRREPARABLE

7  HARM.  SO A LOT OF WHAT WE DISCUSS ON THE ISSUE OF IRREPARABLE

8  HARM I THINK ALSO SHEDS LIGHT ON WHETHER YOU HAVE A LIKELIHOOD

9  OF SUCCESS ON THE MERITS.

10          BUT I THINK WE CAN KIND OF -- MY PRELIMINARY SENSE IS

11  THAT WE CAN LIMIT OUR DISCUSSION -- OR I CAN LIMIT MY RULING TO

12  THE ISSUE OF IRREPARABLE HARM BECAUSE YOU HAVEN'T SHOWN IT.  SO

13  I WANT TO GIVE YOU ONE MORE CRACK AT EXPLAINING TO ME HOW YOU

14  HAVE SHOWN IRREPARABLE HARM THAT CANNOT BE COMPENSATED BY MONEY

15  DAMAGES IN THIS CASE.

16          **MR. DEE:**  THANK YOU, YOUR HONOR.

17          IRREPARABLE HARM HERE IS SHOWN IN THE SENSE THAT

18  SOCIAL TECHNOLOGIES HAS A VALID FEDERAL TRADEMARK REGISTRATION.

19  THEY HAVE A PRESUMPTION OF OWNERSHIP AND A PRESUMPTION OF

20  EXCLUSIVE --

21          **THE COURT:**  OKAY.  BUT YOU HAVE NOT -- I MEAN,

22  LET'S -- LET'S ASSUME FOR THE SAKE OF ARGUMENT THAT YOU HAVE A

23  VALID TRADEMARK REGISTRATION.  I MEAN, YOU -- AS FAR AS I CAN

24  TELL, YOU HAVE NOT ACTUALLY DEVELOPED OR ACCUMULATED ANY SORT

25  OF GOODWILL OR BUSINESS REPUTATION BASED ON THE POSSESSION OF

1    THAT REGISTRATION, WHICH MAY SPEAK TO WHETHER IT'S A VALID

2    REGISTRATION.  BUT, LIKE I SAID, I DON'T THINK WE NEED GO THERE

3    BECAUSE YOU HAVEN'T -- IN OTHER WORDS, IF IT'S RIGHT THAT YOU

4    HAVEN'T REALLY ACCUMULATED ANY GOODWILL OR BUSINESS REPUTATION

5    OR -- IN ANY MEANINGFUL SENSE, AS A RESULT OF HAVING MADE THAT

6    REGISTRATION WITH THE PTO, THEN HOW CAN THERE BE ANY

7    IRREPARABLE HARM?

8            **MR. DEE:**  YOUR HONOR, THE CASE LAW RECOGNIZES THAT A

9    LOSS OF CONTROL OVER THE ABILITY TO USE A TRADEMARK, THE

10   ABILITY TO DEVELOP GOODWILL IS THE SAME THING AS A LOSS OF

11   GOODWILL IN THE CONTEXT OF --

12           **THE COURT:**  WELL, WAIT A MINUTE.  YOU'RE SAYING IT'S

13   LOST OPPORTUNITY --

14           **MR. DEE:**  YES.

15           **THE COURT:**  -- TO DEVELOP GOODWILL.

16           **MR. DEE:**  THAT'S CORRECT, BUT I ALSO --

17           **THE COURT:**  BUT HOW -- BUT HOW, I MEAN I -- WHAT CASE

18   SAYS -- WHAT CASE STANDS FOR THE PROPOSITION THAT A COMPANY

19   THAT HASN'T DEVELOPED ANY GOODWILL AND IS MERELY LOSING AN

20   OPPORTUNITY TO PROFIT FROM ITS -- FROM A PARTICULAR MARK CAN BE

21   IRREPARABLY HARMED?  BECAUSE WHAT I -- IT SEEMS TO ME THAT IF

22   IT IS SOMEHOW TRUE THAT YOU HAVE A -- YOU HAVE A VALID INTEREST

23   IN THIS NAME, AND APPLE IS USING IT AND PROFITING FROM IT, THEN

24   WE CAN JUST GO FIGURE OUT THE EXTENT TO WHICH APPLE IS

25   PROFITING FROM THE USE OF THE NAME AND COMPENSATE YOU TO THAT

1  EXTENT, BECAUSE THAT'S -- YOU KNOW, THAT'S -- OR YOU CAN

2  PRESENT EXPERT TESTIMONY ABOUT HOW -- THIS IS HOW MUCH WE WOULD

3  HAVE PROFITED USING IT OURSELVES IF APPLE HADN'T GONE AND

4  STARTED USING IT.

5         AND SO -- BUT AS IT STANDS NOW, YOU -- IT DOESN'T

6  SEEM THAT YOU'VE LOST ANYTHING OTHER THAN AN OPPORTUNITY.  AND

7  SO IF WHAT YOU'RE SAYING IS A LOST OPPORTUNITY IS ENOUGH TO GET

8  A PRELIMINARY INJUNCTION, ENOUGH TO SHOW IRREPARABLE HARM, TELL

9  ME WHAT THAT CASE IS.

10         **MR. DEE:**  YES, YOUR HONOR.  FOR EXAMPLE, IN *STUHLBARG*

11  *INTERNATIONAL SALES VERSUS JOHN D. BRUSH AND CO.* -- THIS IS

12  CITED IN PAGE 11 OF OUR REPLY PAPERS.  IT'S A NINTH CIRCUIT

13  CASE, 240 F3D 832.  THE NINTH CIRCUIT RECOGNIZED IRREPARABLE

14  HARM MAY BE SHOWN THROUGH:  "EVIDENCE OF THREATENED LOSS OF

15  PROSPECTIVE CUSTOMERS OR GOODWILL."

16         **THE COURT:**  BUT THAT'S -- I THINK THAT PRESUMES THAT

17  YOU ALREADY HAVE GOODWILL AND THAT YOU ALREADY HAVE CUSTOMERS.

18  YOU HAD NEITHER.

19         **MR. DEE:**  LOSS OF PROSPECTIVE CUSTOMERS OR GOODWILL.

20         **THE COURT:**  WELL, RIGHT.  BUT ONCE YOU -- BUT ONCE

21  YOU'VE ALREADY -- YOU ALREADY HAVE A POSITION IN THE MARKET, I

22  ASSUME, RIGHT.

23         **MR. DEE:**  TO THE POINT ABOUT WHETHER OR NOT WE HAD

24  GOODWILL --

25         **THE COURT:**  WHAT CASE IS THAT AGAIN?

1          **MR. DEE:**  THAT'S *STUHLBARG*, 240 F3D 832.  AND ALSO IN

2    *EQUINOX HOTEL MANAGEMENT*, WHICH IS A NORTHERN DISTRICT CASE --

3          **THE COURT:**  YEAH, BUT THAT WAS A CASE IN WHICH --

4    THAT WAS A CASE IN WHICH JUDGE GONZALEZ ROGERS CONCLUDED THERE

5    WAS NO IRREPARABLE HARM --

6          **MR. DEE:**  RIGHT.

7          **THE COURT:**  -- ON FACTS FAIRLY SIMILAR TO THIS ONE, I

8    THINK.

9          **MR. DEE:**  THE FACTS THERE WERE DISTINGUISHABLE.

10   THERE THERE WAS NO FINDING OF CONFUSION OR LIKELIHOOD OF

11   CONFUSION.  HERE THAT'S CONCEDED BY APPLE.  IN FACT, THEY FILED

12   COUNTERCLAIMS, AND THEY FILED A PETITION TO --

13         **THE COURT:**  WELL, NO, BUT, I MEAN, AGAIN -- MY --

14   MY -- I MEAN, I READ IT LAST NIGHT.  MAYBE I'M MISREMEMBERING

15   IT.  BUT MY RECOLLECTION OF HER DECISION WAS IT RESTED LARGELY

16   ON THE FACT THAT THE PLAINTIFF DID NOT PRESENT SUFFICIENT

17   EVIDENCE THAT THERE WAS -- OR LET ME PUT IT THIS WAY:  THE

18   EVIDENCE THAT THE PLAINTIFF PRESENTED ABOUT CONFUSION WAS VERY

19   SIMILAR TO THE EVIDENCE THAT YOU'VE PRESENTED HERE ABOUT

20   CONFUSION, AND THAT IN BOTH CASES -- AND THIS IS SOMETHING THAT

21   JUDGE GONZALEZ ROGERS DIDN'T DISCUSS THAT MUCH, BUT I THINK IS

22   PROBABLY IMPORTANT -- AND YOU CAN CORRECT ME IF I'M WRONG --

23   BUT THAT THE PLAINTIFF HAD NOT ACTUALLY DEVELOPED ANY GOODWILL

24   YET IN THE PRODUCT.

25         **MR. DEE:**  IN *EQUINOX* THE COURT NOTED THAT IN -- THE

1    FIRST OVERARCHING RULING WAS THERE WAS NO LIKELIHOOD OF

2    SUCCESS, NO SHOWING OF CONFUSION.  HERE'S THAT'S CONCEDED.  SO

3    CONFUSION IS A MAIN ISSUE IN TERMS OF FINDING IRREPARABLE HARM.

4          **THE COURT:**  YOU MEAN -- WHAT'S CONCEDED HERE?

5          **MR. DEE:**  THAT THE COMPETING MARKS AS USED BY THE

6    PARTIES CREATING -- CAUSED CUSTOMER CONFUSION.

7          **THE COURT:**  WELL, VERY MINIMAL, RIGHT?  I MEAN, TO

8    THE POINT -- AND, ACTUALLY, I MEAN, I DON'T THINK -- I THINK IF

9    YOU WOULD ASK THEM, THEY WOULD SAY, NO, WE DON'T CONCEDE THAT;

10   WHAT WE SAY IS THAT THERE WAS NO CONFUSION, BECAUSE, YOU KNOW,

11   THE FEW PEOPLE WHO POSTED COMMENTS ABOUT THIS SAID THAT THE

12   PLAINTIFFS MEMOJI SUCKS COMPARED TO APPLE'S, RIGHT; IT DOESN'T

13   WORK.

14         **MR. DEE:**  THAT GOES TO THE ISSUE OF THE JUNIOR USER'S

15   PRODUCT DAMAGING THE REPUTATION AND PROSPECTIVE USER BASE.

16   IT'S -- IT'S ESSENTIALLY A JUNIOR USER COMING IN AFTER AN

17   INTENT TO USE APPLICATION HAS BEEN FILED --

18         **THE COURT:**  FORGIVE MY -- SORRY.  FORGIVE MY

19   IGNORANCE OF THE TERMINOLOGY.  BUT "JUNIOR USER" MEANS THE

20   PERSON WHO USED IT -- THE COMPANY WHO USED IT SECOND?

21         **MR. DEE:**  YES, SO PRESUMES --

22         **THE COURT:**  SO APPLE IS THE JUNIOR USER IN THIS --

23         **MR. DEE:**  YES.

24         **THE COURT:**  OKAY.

25         **MR. DEE:**  PRESUMING, AS YOU NOTED, FOR THESE PURPOSES

1    THAT SOCIAL TECHNOLOGY CAN MAKE A SHOWING OF LIKELIHOOD OF

2    SUCCESS ON THE MERITS, THAT WOULD PRESUME IT'S A SENIOR USER.

3         IN THIS CASE WE HAVE A JUNIOR USER COMING IN, WHILE

4    THERE'S AN INTENT-TO-USE APPLICATION PENDING, COMPLETELY

5    DESTROYING THE ABILITY OF THE HOLDER OF THE INTENT-TO-USE

6    APPLICATION FROM BRINGING ITS PRODUCT TO MARKET.  IT FILED ITS

7    INTENT-TO-USE APPLICATION.  IT'S MADE PLANS.  IT HAS MADE

8    PROMOTIONAL VIDEOS.  IT HAS GENERATED GOODWILL, MAYBE NOT A

9    TON, BUT IT MADE PROMOTIONAL VIDEOS --

10        **THE COURT:**  LET'S ASSUME FOR THE SAKE OF ARGUMENT

11   THAT IT HASN'T REALLY GENERATED ANY GOODWILL IN ANY MEANINGFUL

12   SENSE, BECAUSE I THINK YOU -- YOU WON'T -- YOU'RE NOT GOING TO

13   CONCEDE THAT, BUT YOU ALMOST JUST CONCEDED IT.

14        **MR. DEE:**  I WOULD SAY THAT GOODWILL WAS GENERATED.

15   THERE WAS EXTENSIVE EFFORTS PUT IN TO MAKE PROMOTIONAL VIDEOS

16   POSTED ONLINE.

17        **THE COURT:**  THAT DOESN'T ESTABLISH -- I MEAN, NO

18   PRODUCT WAS LAUNCHED, RIGHT?

19        **MR. DEE:**  CORRECT, BUT --

20        **THE COURT:**  OKAY.  SO --

21        **MR. DEE:**  GOODWILL CAN BE GENERATED ON MARKETING.

22        **THE COURT:**  SO I GUESS WHAT I DON'T UNDERSTAND --

23   THIS IS AN EQUITABLE QUESTION, RIGHT?  THIS IS AN EQUITABLE

24   QUESTION.  AND I UNDERSTAND THAT IF THE PLAINTIFF HAD BROUGHT

25   THE -- BROUGHT A PRODUCT TO MARKET, HAD, YOU KNOW, DEVELOPED A

```
 1   LOYAL OR EVEN SEMI-LOYAL CUSTOMER BASIS ON THIS PRODUCT, AND

 2   WAS RECEIVING -- WAS PROFITING ON A WEEKLY, DAILY, MONTHLY

 3   BASIS, WHATEVER, ON THIS PRODUCT, AND THEN APPLE COMES IN AND

 4   INTRODUCES A SIMILAR PRODUCT WITH THE SAME NAME, AND SOWS A

 5   BUNCH OF CONFUSION, YOU HAVE THIS REAL RISK THAT YOUR COMPANY

 6   IS GOING TO GO OUT OF BUSINESS OR LOSE GOODWILL, OR MARKET

 7   SHARE, OR WHATEVER IN A -- IN A VERY MEANINGFUL AND PERMANENT

 8   OR SEMIPERMANENT WAY, PEOPLE ARE GOING TO LOSE JOBS, YOU KNOW,

 9   ALL THAT KIND OF STUFF.  BUT IN THIS CASE NOTHING'S BEEN

10   LAUNCHED --

11            MR. DEE:  THAT ONLY --

12            THE COURT:  SO WITH NOTHING HAVING BEEN LAUNCHED AND

13   WITH THIS BEING AN EQUITABLE QUESTION, WHY ISN'T THE ANSWER:

14   OKAY, YOU WERE SITTING THERE, YOU WERE IN SILICON VALLEY, OR

15   WHEREVER YOU WERE, TRYING TO GET INVESTORS FOR THIS, AND THEN

16   APPLE CAME IN AND USED THE NAME, AND THAT INTERFERED WITH YOUR

17   ABILITY TO LAUNCH.  BUT YOU CAN PRESENT EXPERT TESTIMONY ON

18   THAT, AND IF IN WHAT I THINK IS THE FAIRLY UNLIKELY EVENT THAT

19   YOU WOULD WIN ON THE MERITS, YOU COULD SAY -- YOU COULD PRESENT

20   EXPERT TESTIMONY WHICH SAYS EITHER, YOU KNOW, THIS PERCENTAGE

21   OF APPLE'S REVENUES CAN BE ATTRIBUTED TO STEALING THIS NAME,

22   AND WE ARE ENTITLED TO THAT, OR CAN PRESENT EXPERT TESTIMONY

23   WHICH SAYS, HERE IS HOW MUCH MONEY WE WOULD HAVE MADE IF WE

24   WOULD HAVE BEEN ABLE TO LAUNCH THIS PRODUCT WITHOUT APPLE

25   INTERFERING BY LAUNCHING A SIMILAR PRODUCT WITH THE SAME NAME.
```

1     **MR. DEE:**  THERE'S NO DOUBT --

2          **THE COURT:**  WHY CAN'T THAT HAPPEN?

3     **MR. DEE:**  THERE'S NO DOUBT IN THAT CONTEXT THAT APPLE

4  WOULD BE ARGUING ANY ATTEMPT TO PROVE DAMAGES IS PURE

5  SPECULATION --

6          **THE COURT:**  I'M SURE THEY WOULD, BUT WHY WOULD IT --

7  WHY WOULD THEY BE RIGHT ABOUT THAT?  I MEAN, WE HAVE THOSE

8  KINDS OF DAMAGES MODELS.  I MEAN, I'M NOT FAMILIAR WITH IT IN

9  THE TRADEMARK CONTEXT, BUT IN PATENT CASES, WE HAVE THOSE KIND

10 OF DAMAGES MODELS CREATED BY EXPERTS ALL THE TIME.

11     **MR. DEE:**  CERTAINLY DAMAGES -- WE WOULD MAKE A STRONG

12 EFFORT TO PROVE UP THE DAMAGES.  BUT IT ALSO GOES TO THE POINT

13 OF THE PUBLIC'S ASSOCIATION IN THEIR MINDS WITH THE NAME -- THE

14 MARK "MEMOJI" WITH APPLE.  THE LONGER THIS GOES ON, THE MORE

15 IMPOSSIBLE IT'S GOING TO BE TO UNWIND THAT.

16          AND, OF COURSE, THERE'S A CERTAIN AMOUNT OF

17 CORRECTIVE ADVERTISING THAT COULD BE DONE, BUT APPLE ITSELF

18 ADMITS THAT ONCE THIS SOFTWARE WITH THE NAME "MEMOJI" IS ON A

19 USER'S PHONE, IT'S NOT A GUARANTEE THAT IT'S ABLE TO BE TAKEN

20 OFF.  IN OTHER WORDS, IT WOULD BE SIMPLE TO PUSH AN UPDATE TO

21 THE APP, BUT NOT EVERYONE HAS TO IMPLEMENT THAT UPDATE.

22          **THE COURT:**  BUT I MEAN, IT'S ALREADY -- I MEAN,

23 IT'S -- IS IT ANY HARDER NOW THAN IT WOULD BE -- SORRY.  IS

24 IT -- IS IT ANY EASIER NOW THAN IT WOULD BE -- I MEAN, WE CAN

25 HAVE A TRIAL IN NINE MONTHS IF YOU WANT.

1            IS IT ANY EASIER NOW TO UNRING THE BELL, AS YOU SAY,

2   THAN IT WOULD BE NINE MONTHS FROM NOW?

3            **MR. DEE:**  IT WOULD BE, BECAUSE EVERY SINGLE DAY THAT

4   GOES ON, EVERY NEW USER THAT HAS THIS ON THEIR DEVICE, THE MORE

5   THE NAME IS ASSOCIATED IN THE PUBLIC'S MIND, AND THAT GOES TO

6   THE CENTRAL ISSUE OF TRADEMARK LAW SO.

7            **THE COURT:**  YEAH, BUT, AGAIN, YOU CAN GET -- WHY

8   CAN'T YOU GET DAMAGES FOR THAT?

9            **MR. DEE:**  WE CAN, BUT LOSS OF CONTROL IN THIS CONTEXT

10  IS -- IS IRREPARABLE HARM.  IF AN INTENT TO USE --

11           **THE COURT:**  BUT IT SOUNDS LIKE WHAT YOU'RE SAYING IS

12  WHENEVER -- WHENEVER THERE'S A LIKELIHOOD OF SUCCESS ON THE

13  MERITS, YOU AUTOMATICALLY GET AN INJUNCTION.

14           **MR. DEE:**  NOT NECESSARILY.  I WOULD SAY THAT IN THIS

15  CONTEXT, IF THERE WAS NO EVIDENCE AS TO THE OVERWHELMING IN THE

16  MARKET PLACE --

17           **THE COURT:**  AND BY THE WAY -- SORRY TO INTERRUPT.

18           MAYBE IN THIS AREA OF THE LAW, THAT SHOULD BE

19  CORRECT.  I MEAN, MAYBE -- MAYBE IN THIS AREA OF THE LAW, IT

20  SHOULD BE THAT IF YOU SHOW A LIKELIHOOD OF SUCCESS, YOU GET A

21  PRELIMINARY INJUNCTION BECAUSE THE -- BECAUSE THE -- YOU KNOW,

22  THE INQUIRY OVERLAPS, INTERLOCKS --

23           **MR. DEE:**  CERTAINLY.

24           **THE COURT:**  -- SUBSTANTIALLY.  BUT, OF COURSE, THE

25  NINTH CIRCUIT HAS SAID SOMETHING DIFFERENT ABOUT THAT.

1          IF THAT -- IF THAT WERE THE LAW, THEN WE WOULD BE

2    HAVING AN ARGUMENT ABOUT WHETHER YOU COULD SHOW A LIKELIHOOD OF

3    SUCCESS.  I QUESTION WHETHER YOU COULD, BUT -- BUT WHAT'S --

4    FOR PURPOSES OF THIS MOTION -- RIGHT, THE NINTH CIRCUIT HAS

5    MADE CLEAR THAT YOU ARE NOT AUTOMATICALLY ENTITLED TO A

6    PRELIMINARY INJUNCTION JUST BECAUSE YOU SHOW A LIKELIHOOD OF

7    SUCCESS.  YOU'RE SAYING THERE'S GOING TO BE CONFUSION, AND WHAT

8    I'M SAYING IS YOU CAN BRING IN EXPERTS WITH DAMAGES MODELS

9    TO -- DAMAGES MODELS TO COMPENSATE YOU FOR THAT.

10         **MR. DEE:**  MY RESPONSE TO THAT IS:  ALLOWING APPLE TO

11   CONTINUE TO OVERWHELM THE MARKETPLACE WITH THE NAME, IT

12   GENERATES A COMPLETE LOSS OF CONTROL OF SOCIAL TECH'S ABILITY

13   TO USE THAT TRADEMARK FOR ITS OWN BENEFIT, AND IT HAS THE RIGHT

14   TO DO SO.  THE PRESUMPTION IS IT HAS THE RIGHT TO DO SO.

15         ALLOWING APPLE TO CONTINUE WITH ITS OVERWHELMING OF

16   THE MARKETPLACE IS IRREPARABLE HARM.  THE *EQUINOX* CASE STANDS

17   FOR THE FACT THAT IN REVERSE CONFUSION CASES --

18         **THE COURT:**  SO WHAT WOULD BE THE SCENARIO -- CAN YOU

19   GIVE ME A SCENARIO WHERE A TRADEMARK PLAINTIFF COULD SHOW A

20   LIKELIHOOD OF SUCCESS BUT WOULD STILL NOT BE ENTITLED TO AN

21   INJUNCTION, THAT THERE WOULD NOT BE IRREPARABLE HARM?

22         **MR. DEE:**  SO, FOR EXAMPLE, IN THIS CASE, IF WE WERE

23   ABLE TO SHOW A LIKELIHOOD OF SUCCESS ON THE MERITS, WHICH WE

24   CAN, BUT THERE'S NO EVIDENCE SHOWING THE OVERWHELMING -- THE

25   SWAMPING IN THE MARKETPLACE BY THE JUNIOR USER, THAT MAY BE A

1    SITUATION WHERE YOU WOULD SEARCH FOR PROOF OF THE OVERWHELMING,

2    WHICH IS IRREPARABLE HARM, AND NOT FINDING IT.

3          BUT HERE WE HAVE THAT PROOF.  APPLE'S PAPERS ARE FULL

4    OF THE EXTENT TO WHICH THIS NAME HAS GONE NATIONWIDE, WORLDWIDE

5    BASED ON APPLE'S BROAD MARKETING REACH.

6          IN SHORT, AN INTENT-TO-USE APPLICANT, IF YOU FOLLOW

7    APPLE'S ARGUMENT, WOULD NEVER BE ABLE TO ENJOIN A JUNIOR USER

8    IN A REVERSE CONFUSION CASE, AND WE DON'T THINK THAT THE

9    PURPOSE OF TRADEMARK POLICY STANDS FOR THAT PROPOSITION.

10          INTENT-TO-USE APPLICATIONS ARE ALLOWED.  THEY PUT THE

11   WORLD ON NOTICE OF THIS PARTY'S RIGHT TO USE THIS NAME GOING

12   FORWARD.  THE CONSTRUCTIVE USE DATE IS APRIL 1ST, 2016.  AND IF

13   APPLE IS ALLOWED TO CONTINUE DOING WHAT THEY'RE DOING, THERE'S

14   A COMPLETE LOSS OF BUSINESS OPPORTUNITY IN TERMS OF ABILITY TO

15   GET THEIR NAME OUT THERE.

16          AND THE *EQUINOX* CASE STANDS FOR THAT.  IT'S A REVERSE

17   CONFUSION CASE, WHICH I THINK IS IMPORTANT TO NOTE, WHICH

18   *EQUINOX* WAS, BUT THERE THE FACTS ARE DIFFERENT.  HERE WE HAVE

19   THE SAME NAME IN THE SAME SIMILAR USE, APPS, MESSAGING APPS.

20   IN THE *EQUINOX* CASE, THERE WAS A HOTEL COMPANY THAT PROVIDED

21   SERVICES, BUSINESS TO BUSINESS, VERSUS THE FITNESS COMPANY THAT

22   WANTED TO BRAND ITS OWN HOTELS IN A DIFFERENT LOCATION.  SO

23   THERE'S A GEOGRAPHIC DISTINCTION TO THAT CASE, AND THERE WAS A

24   DISTINCTION IN TERMS OF THE SERVICES.

25          HERE THAT'S COMPLETELY LACKING.  APPLE'S TRYING TO

1   RELY ON NATIONWIDE COMMON LAW RIGHTS IN THE INTERNET CONTEXT,

2   WHICH HERE IT WOULD BE COMPLETELY ADVERSE TO THE PRINCIPLES OF

3   U.S. TRADEMARK LAW TO ALLOW THEM TO JUST RELEASE AN APP, NEVER

4   PROMOTE IT, NEVER DO ANYTHING SINCE 2014 TO GENERATE THE

5   INTEREST AND GOODWILL THAT IS REQUIRED FOR A CONTINUOUS USE.

6          THERE'S NO SUBSEQUENT ACTIVITIES SINCE 2014 SHOWING

7   THAT LUCKY BUNNY, THE PREDECESSOR TO APPLE, AND TO MEEMO

8   (PHONETIC) FUND, THE INTERMEDIARY, INTENDED OR CONDUCTED ANY

9   ACTIVITIES TO PLACE --

10          **THE COURT:**  I UNDERSTAND THOSE ARGUMENTS.

11          **MR. DEE:**  OKAY.

12          **THE COURT:**  I UNDERSTAND THOSE ARGUMENTS.

13          **MR. DEE:**  IF I COULD JUST WRAP UP A FEW POINTS ON THE

14   IRREPARABLE HARM?

15          THE GENERATION OF INTEREST AND GOODWILL THAT SOCIAL

16   TECH HAD ACCOMPLISHED WITH ITS PROMOTIONAL VIDEOS, WITH ITS

17   PRESENTATIONS THAT IT PRESENTED TO INVESTORS WITH ITS

18   INTENT-TO-USE APPLICATION, PRESERVING THE NAME, IT'S -- THERE'S

19   EVIDENCE IN THE RECORD IN THE BONET DECLARATION AT PARAGRAPH 11

20   TO 18 SHOWING THAT THE SEARCH RESULTS WERE ESSENTIALLY

21   DECIMATED.  IT WOULD HAVE COME UP FIRST ON A YOUTUBE SEARCH,

22   BECAUSE IT HAD TWO VIDEOS ON THERE, AND NOW IT'S COMPLETELY

23   BURIED.

24          AND, YES, IT MAY BE DIFFERENT FOR DIFFERENT USERS,

25   BUT ANYONE CAN GO AND SEARCH THE NAME ON LINE AND SEE WHAT'S

```
 1    HAPPENED THERE.  THERE WERE SCREENSHOTS TO CUSTOMER CONFUSION.

 2    AND COUPLED WITH APPLE'S ANNOUNCEMENT AND ACKNOWLEDGMENT OF ITS

 3    SWAMPING, UNDER THE CASE LAW AND UNDER THE REVERSE CONFUSION

 4    DOCTRINE, THERE IS OVERWHELMING AND THERE IS IRREPARABLE HARM,

 5    AND IT'S INADEQUATE IN TERMS OF ITS RIGHT TO REMEDY THAT UNDER

 6    THE LAW.

 7             THE COURT:  THANK YOU.

 8             MS. CENDALI:  YOUR HONOR, THEY CAN'T SHOW IRREPARABLE

 9    INJURY UNDER THE HERB REED TEST FOR THREE REASONS, THEN I

10    BRIEFLY WANT TO TALK ABOUT THE EQUINOX CASE.

11             THE COURT:  OKAY.

12             MS. CENDALI:  THEY CAN'T SHOW IT UNDER THE HERB REED

13    TEST, WHICH IS THE LAW OF THIS CIRCUIT, BECAUSE UNHAPPILY FOR

14    THEM, THAT CASE ELIMINATED THE PRESUMPTION OF IRREPARABLE

15    INJURY.  SO THEY HAVE TO DO MORE.

16             SECOND, THE COURT SPECIFICALLY SAID YOU CAN'T USE

17    LIKELIHOOD OF CONFUSION -- AND WE ACCEPT YOUR HONOR'S -- WHAT

18    WE WOULD SAY WITH REGARD TO THAT POINT.  BUT YOU CAN'T USE

19    LIKELIHOOD OF CONFUSION TO ESTABLISH IRREPARABLE INJURY BECAUSE

20    IT WOULD BE DOUBLE COUNTING OF THE FACTOR OF THE LIKELIHOOD OF

21    SUCCESS ON THE MERITS.

22             THIRD --

23             THE COURT:  DON'T YOU THINK -- DON'T YOU THINK THAT'S

24    WRONG.  I MEAN, IT'S NINTH CIRCUIT LAW, BUT IT SEEMS WRONG,

25    DOESN'T IT?
```

1           **MS. CENDALI:** WELL --

2           **THE COURT:** IN THIS CONTEXT. I MEAN, IT'S LIKE THIS

3   AUTOMATIC IMPORTATION OF WHAT THE SUPREME COURT SAID IN THE

4   PATENT LAW CONTEXT TO THE TRADEMARK CONTEXT. IT DOESN'T SEEM

5   RIGHT TO ME.

6           **MS. CENDALI:** EXCEPT, YOUR HONOR, THERE'S DIFFERENT

7   KINDS OF CONFUSION THAT COMES UP IN DIFFERENT WAYS. IT'S VERY

8   FACT SPECIFIC. AND ESPECIALLY IN A PRELIMINARY INJUNCTION

9   CONTEXT WHERE THERE'S NO SURVEYS OR ANYTHING LIKE THAT, I THINK

10  PART OF WHAT *HERB REED* WAS GETTING AT WAS IT'S IPSO FACTO; IN

11  OTHER WORDS, JUST LOOK AT ONE THING, AND, UNDER THEIR THEORY,

12  ANY REVERSE CONFUSION CASE WOULD AUTOMATICALLY CONSTITUTE A

13  FINDING OF IRREPARABLE INJURY.

14          **THE COURT:** BUT YOU -- AND I'M NOT AN EXPERT IN THIS

15  AREA OF THE LAW BY ANY STRETCH OF THE IMAGINATION, BUT DOESN'T

16  IT SEEM REASONABLE TO SAY THAT THERE IS A PRESUMPTION OF

17  IRREPARABLE HARM, THAT IN THE RUN OF CASES THERE WILL BE

18  IRREPARABLE HARM IN THE SENSE THAT TRADEMARK LAW SORT OF

19  CONTEMPLATES THAT CONCEPT?

20          **MS. CENDALI:** THERE ARE PEOPLE IN THE BAR WHO ARE

21  ARGUING STRENUOUSLY FOR THAT POINT OF VIEW. UNFORTUNATELY, THE

22  SUPREME COURT AND THE COURTS OF APPEALS DISAGREE, AND UNTIL

23  THAT LAW IS CHANGED, IF IT IS CHANGED --

24          **THE COURT:** WELL, I DON'T KNOW IF THE SUPREME COURT

25  DISAGREES, BECAUSE THE SUPREME COURT SAID THAT IN THE PATENT

1   CONTEXT, RIGHT?

2          **MS. CENDALI:**  FAIR ENOUGH.  BUT AS APPLIED AND

3   INTERPRETED BY THE COURTS --

4          **THE COURT:**  YEAH.

5          **MS. CENDALI:**  I'M NOT AWARE OF A SINGLE --

6          **THE COURT:**  NO, NO.  THIS DISCUSSION YOU AND I ARE

7   HAVING ARE ENTIRELY ACADEMIC FOR PURPOSES OF THIS MOTION; I

8   UNDERSTAND THAT.

9          **MS. CENDALI:**  YEAH.  THE POINT IS I'M NOT AWARE OF A

10  SINGLE -- AND I FOLLOW THIS VERY CLOSELY -- A SINGLE COURT OF

11  APPEALS THAT HAS HELD ON TO THE PRESUMPTION OF IRREPARABLE

12  INJURY.

13         BUT EVEN BEYOND THAT, LET'S TALK ABOUT THE THIRD

14  POINT WHY *HERB REED* CONTROLS, WHICH IS THE NUTS AND BOLTS,

15  WHICH IS IT SAYS YOU CAN'T JUST BE CONCLUSORY; YOU CAN'T JUST

16  SAY THINGS.

17         AND HERE EVEN GOING TO THE, WELL, YOU KNOW, WE THINK

18  WE'RE NOT AS GOOD IN THE SEARCH RANKINGS.  THEY JUST SAID THAT

19  IN A DECLARATION.  THEY DIDN'T PUT IN WHAT THE SEARCH RANKINGS

20  WERE BEFORE AND AFTER.  AND THE *SEAWORLD* CASE SIMILARLY

21  REJECTED A SIMILAR ARGUMENT BECAUSE OF THE INCHOATE AND

22  VARIABLE NATURE OF SEARCH RANKINGS.

23         SIMILARLY, WHEN THEY TALK ABOUT -- WE SAID IN OUR

24  BRIEF THEY DIDN'T HAVE ANY GOODWILL.  AND WHAT'S STRIKING -- I

25  ALWAYS LOOK AT A REPLY BRIEF TO SEE WHAT DID PEOPLE NOT

```
 1    COUNTER.  THEY DIDN'T COUNTER THE FACT THEY DIDN'T HAVE ANY

 2    GOODWILL.  AND THAT'S A PRETTY SIGNIFICANT THING, BECAUSE

 3    THAT'S WHAT TRADEMARKS ARE SUPPOSED TO PROTECT.

 4          THE COURT:  BUT THAT -- SO IS -- BUT IS THAT -- I

 5    MEAN, IT SORT OF RELATES BACK TO THE COMMENT I MADE ABOUT HOW

 6    MUCH THEY OVERLAP, BUT IS THAT A -- IS THAT A MERITS QUESTION,

 7    OR AN IRREPARABLE HARM QUESTION, OR BOTH?

 8          MS. CENDALI:  I THINK IN THIS CASE SINCE WE'RE

 9    NARROWING OUR DISCUSSION TO IRREPARABLE HARM, IT MIGHT BE -- IT

10    MIGHT BE BOTH BECAUSE THEIR ABSENCE OF GOODWILL ALSO SHOWS THAT

11    THEY DON'T HAVE RIGHTS TO PROTECT ON THE MERITS.  BUT IT ALSO

12    SHOWS THAT THE ABSENCE OF GOODWILL MEANS FOR THE DRACONIAN

13    REMEDY THAT THEY SEEK ON AN EXPEDITED BASIS FOR THE COURT, THEY

14    DON'T EVEN HAVE A TREE THAT'S ABOUT TO BE CUT DOWN, WHICH IS

15    WHAT I ALWAYS ENVISION FOR AN INJUNCTION.  WHERE'S THEIR TREE?

16    THEY DON'T HAVE A TREE.

17          AND THAT'S WHY I WANT TO END WITH *EQUINOX*, WHICH WAS

18    MY CASE.  I WAS FORTUNATE ENOUGH TO REPRESENT THE DEFENDANTS IN

19    THAT CASE.  AND I KNOW IT WELL.  IT WAS A REVERSE CONFUSION

20    CASE.  THE OPINION WAS VERY THOUGHTFUL, VERY CLEAR, VERY

21    MEASURED, GOING THROUGH DIFFERENT FACTORS.

22          AND YOUR HONOR IS ABSOLUTELY CORRECT.  THE PRINCIPLE

23    REASON THAT MOTION WAS DENIED WAS FAILURE TO ESTABLISH

24    IRREPARABLE INJURY.  IT WAS A REVERSE CONFUSION CASE, BUT

25    NOTABLY --
```

1          **THE COURT:** WELL, I DON'T KNOW.  I MEAN, I THOUGHT

2     SHE -- MY RECOLLECTION IS SHE SPENT A TON OF PAGES EXPLAINING

3     WHY THERE WAS NO LIKELIHOOD OF SUCCESS, AND THEN THERE WAS

4     ACTUALLY A PRETTY SHORT SECTION ON IRREPARABLE HARM, WHICH JUST

5     REFERENCED BACK TO THE STUFF SHE SAID IN THE SECTION ON THE

6     LIKELIHOOD OF SUCCESS.

7          **MS. CENDALI:** TRUE, BUT TWO POINTS WITH THAT.  ONE IS

8     SHE DID NOT SUGGEST, AS PLAINTIFFS ARE ESPOUSING HERE, THAT

9     THERE SHOULD BE A DIFFERENT STANDARD IN REVERSE CONFUSION

10    CASES.  THERE'S CERTAINLY NOTHING IN *HERB REED* THAT SAYS THERE

11    SHOULD BE A DIFFERENT STANDARD.  THAT'S ONE POINT.

12          AND, TWO, IF ANYTHING, THAT WAS A FAR MORE COMPELLING

13    CASE BECAUSE MY ADVERSARIES IN THAT CASE HAD BEEN USING THE

14    MARK FOR ALMOST 20 YEARS IN THEIR MOM-AND-POP BUSINESS.  THEY

15    TRULY HAD GOODWILL --

16          **THE COURT:** OKAY.

17          **MS. CENDALI:** -- AND THEY TRULY BELIEVED THEY WOULD

18    BE HARMED.

19          AND I GUESS THE LAST POINT TO MAKE, JUST GIVEN THEIR

20    ARGUMENT THAT SOMEHOW THEY WOULD BE HARMED BECAUSE THEIR APP

21    ISN'T AT GOOD AS APPLE'S, AND PEOPLE ARE COMPLAINING THEIR APP

22    CRASHES AND ISN'T AS GOOD -- I HAVE NEVER IN A TRADEMARK CASE

23    HEARD SOMEONE SAY THEY WOULD BE HARMED BECAUSE THE OTHER GUY

24    WAS BETTER.

25          BOTTOM LINE, GOING BACK TO WHAT YOUR HONOR SAID FROM

1   THE BEGINNING, THERE'S LEGAL REASONS WHY WE'D WIN, BUT THERE'S

2   ALSO EQUITABLE REASONS WHY WE WIN, AND TO ENJOIN APPLE AT THIS

3   POINT ON THIS RECORD WE THINK IS JUST NOT WARRANTED.

4           **THE COURT:**  WELL, I THINK THAT IF -- IF IT WERE

5   PARTICULARLY CLEAR THAT APPLE -- I MEAN, MAYBE THAT'S -- MAYBE

6   WHAT I'M ABOUT TO SAY SHOWS THAT THERE SHOULD BE A DISCUSSION

7   OF -- YOU KNOW, IF I WERE TO DENY THE MOTION FOR PRELIMINARY

8   INJUNCTION, I SHOULD DISCUSS LIKELIHOOD OF SUCCESS ON THE

9   MERITS AS WELL, BECAUSE IF -- IF, IN FACT, THERE WERE A CLEAR

10  AND OBVIOUS TRADEMARK VIOLATION, THEN I THINK THE FACT THAT

11  APPLE -- THAT IT WOULD BE A TOTAL NIGHTMARE FOR APPLE TO

12  UNWIND, THIS WOULD NOT MATTER, RIGHT.  I MEAN, WOULD YOU AGREE

13  WITH THAT?

14          **MR. RASKIN:**  NO, BECAUSE ON A PRELIMINARY INJUNCTION,

15  YOU STILL HAVE TO CONSIDER THE BALANCE OF HARDSHIPS TO --

16          **THE COURT:**  YEAH, BUT IF IT'S SO -- SUCH A CLEAR AND

17  OBVIOUS AND BLATANT TRADEMARK VIOLATION, THEN I WOULD THINK

18  THAT THAT WOULD OVERWHELM -- THAT THAT WOULD INFLUENCE THE

19  PUBLIC INTEREST FACTOR IN THE BALANCE OF HARMS FACTOR.

20          **MS. CENDALI:**  YOU CAN ENVISION A CASE LIKE THAT,

21  ESPECIALLY IF -- BUT THIS JUST ISN'T THAT CASE.

22          **THE COURT:**  OKAY.  DO YOU WANT TO HAVE THE LAST WORD,

23  BRIEFLY?

24          **MR. DEE:**  YES, YOUR HONOR.

25          THIS IS NOT CASE THAT *HERB REED* WAS TALKING ABOUT

1    WHEN IT MENTIONED THE CONCLUSORY AFFIDAVITS WILL NOT SUPPORT A

2    FINDING OF IRREPARABLE HARM.  THERE'S MUCH MORE THAN A MERE

3    CONCLUSORY SUGGESTION BY SOCIAL TECHNOLOGIES THAT WILL SUFFER

4    IRREPARABLE HARM.  IT OUTLINES THE SEARCH RESULTS ISSUE.  IT

5    OUTLINES ITS EFFORTS THAT IT HAD UNDERTAKEN PRIOR TO --

6    BEFOREHAND AND AFTER ITS FILING OF THE ITU APPLICATION, AND

7    IT -- THERE'S EVIDENCE SUBMITTED BY BOTH SIDES OF THE

8    OVERWHELMING NATURE OF APPLE'S INFRINGING USE, AND THAT, IN AND

9    OF ITSELF, IS MORE THAN MERE CONCLUSORY ALLEGATION IN A

10   DECLARATION.

11         THIS IS PROOF.  IT'S UNCONTROVERTED.  IT'S SUPPORTED

12   BY APPLE'S SUBMISSIONS.  AND IT SHOWS THE VERY ESSENCE OF

13   IRREPARABLE HARM IN A REVERSE CONFUSION CASE.

14         AND I'D JUST LIKE TO POINT OUT THAT APPLE SUGGESTS

15   THAT IT HAD DONE ITS DUE DILIGENCE IN PICKING THE NAME.  IT

16   ONLY STARTED IN MAY TO TRY TO REACH OUT TO ANY OF THESE

17   PURPORTED PRIOR USERS.  CLEARLY, IT HAD ITS MARKETING.

18   EVERYTHING WAS PREPARED.  IT WAS GOING TO USE THIS NAME NO

19   MATTER, JUST LIKE IT DID WITH THE ANIMOJI LAST YEAR, RESULTING

20   IN A LAWSUIT.

21         AND LUCKY BUNNY, THE PREDECESSOR, ABANDONED ITS

22   APPLICATION AFTER NOT DOING ANYTHING TO PROMOTE ITS APP, WHEN

23   IT COULD HAVE TAKEN A FEW SIMPLE STEPS TO GET FEDERAL TRADEMARK

24   REGISTRATION.  WHEN IT FILED A SECOND ONE IN 2017, FOR WHATEVER

25   REASON IT WAS SUSPENDED, AND THEY WERE GIVEN NOTICE OF SOCIAL

1    TECHNOLOGIES' PRIOR APPLICATION BEFORE THE OPPOSITION PERIOD,

2    AND THEY DIDN'T DO ANYTHING ABOUT IT.  FOR APPLE TO COME IN NOW

3    AND SUGGEST LUCKY BUNNY PRESERVE ITS RIGHTS JUST FLIES IN THE

4    FACE OF THE EVIDENCE.

5              **THE COURT:**  OKAY.  I'LL GIVE IT A LITTLE FURTHER

6    THOUGHT.

7              **MR. DEE:**  THANK YOU, YOUR HONOR.

8              **MS. CENDALI:**  THANK YOU, YOUR HONOR.

9              (PROCEEDINGS ADJOURNED AT 11:10 A.M.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          <u>**CERTIFICATE OF TRANSCRIBER**</u>

2

3          I CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT

4    TRANSCRIPT, TO THE BEST OF MY ABILITY, OF THE ABOVE PAGES OF

5    THE OFFICIAL ELECTRONIC SOUND RECORDING PROVIDED TO ME BY THE

6    U.S. DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA, OF THE

7    PROCEEDINGS TAKEN ON THE DATE AND TIME PREVIOUSLY STATED IN THE

8    ABOVE MATTER.

9          I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR,

10   RELATED TO, NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTION IN

11   WHICH THIS HEARING WAS TAKEN; AND, FURTHER, THAT I AM NOT

12   FINANCIALLY NOR OTHERWISE INTERESTED IN THE OUTCOME OF THE

13   ACTION.

14

15                    *JMCOLUMBINI*

16                    JOAN MARIE COLUMBINI

17                    FEBRUARY 28, 2019

18

19

20

21

22

23

24

25