Diana M. Torres (S.B.N. 162284)
diana.torres@kirkland.com
Lauren J. Schweitzer (S.B.N. 301654)
lauren.schweitzer@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400

Dale M. Cendali (S.B.N. 1969070)
dale.cendali@kirkland.com
Mary Mazzello (*pro hac vice*)
mary.mazzello@kirkland.com
Megan L. McKeown (*pro hac vice*)
megan.mckeown@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800

Attorneys for Defendant Apple Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| SOCIAL TECHNOLOGIES LLC, a Georgia limited liability company,<br><br>　　　　　　　Plaintiff,<br><br>　　vs.<br><br>APPLE INC., a California corporation,<br><br>　　　　　　　Defendant. | ) CASE NO.: 3:18-cv-05945-VC<br>)<br>) Hon. Vince Chhabria<br>)<br>) **RESPONSE TO CHRISTOPHER**<br>) **ANTHONY'S MOTION FOR LEAVE TO**<br>) **INTERVENE**<br>)<br>) Date: April 25, 2019<br>) Time: 10:00 a.m.<br>) Courtroom: 4, 450 Golden Gate Ave.<br>) |

Apple Inc. ("Apple") hereby submits this response to Christopher Anthony's Motion for Leave to Intervene, Dkt. No. 65.

## I. APPLE'S POSITION WITH RESPECT TO MR. ANTHONY'S MOTION

On March 11, 2019, Christopher Anthony moved for leave to intervene in this action. Dkt. No. 65. To intervene, Mr. Anthony must show that (1) he has a significant protectable interest relating to the property or transaction that is the subject of the action, (2) the disposition of the action may, as a practical matter, impair or impede his ability to protect its interest, (3) the application is timely, and (4) the existing parties may not adequately represent his interest. *Chamness v. Bowen*, 722 F.3d 1110, 1121 (9th Cir. 2013). Mr. Anthony does not meet the first three factors of this standard,[1] but as detailed below, Apple proposes a compromise to promote judicial efficiency.

### A. Mr. Anthony Cannot Show a Legally Protectable Interest

On the first factor, Mr. Anthony cannot show that he has a significant, protectable interest in the property at issue, namely, the trademark MEMOJI. As a preliminary matter, Mr. Anthony named his app "Memoji-Emoji Yourself," not "Memoji." *See* Declaration of Diana Torres, dated March 25, 2019 ("Torres Decl.") Exs. A–D. In addition, in the Ninth Circuit, in order to have a protectable interest in a common law trademark, the alleged trademark owner must show "that its use of the mark[] was continuous and not interrupted." *See Dep't of Parks & Rec. v. Bazaar del Mundo Inc.*, 448 F.3d 1118, 1126 (9th Cir. 2006); *see also Chance v. Pac-Tel Teletrac*, 242 F.3d 1151, 1157 (9th Cir. 2001) (citing *Avakoff v. S. Pac. Co.*, 765 F.2d 1097, 1098 (Fed. Cir. 1985)). Mr. Anthony admits that his app was not available on the App Store from August 2016 through November 2018, Anthony Compl. ¶¶ 8–9, a gap of more than two years during which he was not offering a product under the MEMOJI mark. This gap shows that Mr. Anthony cannot demonstrate the "continuous and not interrupted" use required to demonstrate the existence of common law trademark rights. *See e.g.*, *Casual Corner Assocs., Inc. v. Casual Stores of Nev., Inc.*, 493 F.2d 709, 712 (9th Cir. 1974) (no continuous use where the defendant closed all of its stores and there was "complete nonuse of the mark for [a] one-year period"). Moreover, Mr. Anthony's app actually was

---

[1] Apple acknowledges that the existing parties do not represent Mr. Anthony's interests.

removed from the App Store in *mid-2015* because he failed to pay his required developer fee and renew his developer agreement, so the period during which he did not use the MEMOJI mark was even longer than he admits. Consumers, therefore, could not download, or even see the app in the App Store, for over three years.

In an attempt to avoid the obvious consequences of his extensive period of nonuse, Mr. Anthony asserts that he "continued reaching out to consumers on Facebook and Twitter to tell them that his Memoji app was being updated." Mot. at 3; Anthony Compl. ¶ 8. Mr. Anthony did not actually "continue[] reaching out to consumers" as he claims. As shown through printouts of those social media pages, Mr. Anthony mentioned his app six times on his Facebook page in September and October of 2014, and twice on his Twitter pages (only one of which is dedicated to his Memoji - Emoji Yourself app) in August and September of 2014. Torres Decl. Exs. A–C. Mr. Anthony never used those platforms again to promote his app until November 2018, a gap of over four years. There were no posts on the "Memoji-emoji yourself" Facebook page between October of 2014 and December 2018 related to the promotion of Mr. Anthony's app. Torres Decl. Ex. A. On Mr. Anthony's dedicated @memojiphoneapp Twitter page, there were no posts on the page *at all* between August 19, 2014 and November 25, 2018. Torres Decl. Ex. B. Similarly, on the @Iphoneappidea Twitter page, there was no mention of the "Memoji-emoji yourself" app after the announcement of the app's launch on September 3, 2014. Torres Decl. Ex. C. In other words, not only did Mr. Anthony not use his claimed mark in commerce, he did not actively promote his app in *any* way between September 2014 and November 2018, let alone in a way that one would expect if he truly intended to continue to use the mark despite having no product to sell, and hence no sales, for such an extended period of time.

Mr. Anthony also implies that Apple did something improper by removing his app from the App Store, thus attempting to deflect blame for his nonuse from himself to Apple. Apple did not. Apple treated Mr. Anthony just like any other developer and took down his app only as part of its routine procedures, having nothing to do with this dispute. Specifically, Apple first took down Mr. Anthony's app in July 2015, years before this conflict arose, because Mr. Anthony did not renew his developer membership or pay the required annual fee. This is Apple's usual practice when

developers do not renew their memberships.  Torres Decl. Ex. E.  In November 2018, long after Apple's use of the MEMOJI mark was public, Anthony finally renewed his membership and put his app back on the App Store.  Mr. Anthony's app, which had not been updated in over four years, was taken down the second time, in January 2019, as part of Apple's App Store Improvements program.  Torres Decl. Ex. F.  Before removing the app, Apple gave Mr. Anthony a 30-day notice, which stated: "*To keep your app on the App Store, submit an updated version for review and make sure it follows the latest App Review Guidelines.*"  Mr. Anthony did not update his app, claiming in communications with Apple that he could not obtain the necessary information to update the app from his developer.

Moreover, in addition to lacking continuous use, Mr. Anthony's proposed Complaint for trademark infringement and cancellation of trademark registrations, Dkt. No. 65-01, is facially deficient because Mr. Anthony does not allege that his mark had any, let alone sufficient, market penetration in any given market to enforce his trademark rights.  Ninth Circuit law is clear, however, that an alleged common law mark holder must have sufficient market penetration in a geographic area to be able to enforce any rights in that region.  *See, e.g.*, *Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 989 (9th Cir. 1996) (mark holder not entitled to enforce rights in geographic region in which he lacked market penetration); *Gold Club-SF, LLC v. Platinum SJ Enter.*, No. 13-CV-03797-WHO, 2013 WL 5273070, at *6 (N.D. Cal. Sept. 18, 2013) ("A party asserting common law rights must not only establish that it is the senior user, it must also show that it has 'legally sufficient market penetration' in a certain geographic market to establish those trademark rights."); *Glow Indus., Inc. v. Lopez*, 252 F. Supp. 2d 962, 983 (C.D. Cal. 2002) ("the senior user of a mark is entitled to assert trademark rights in all areas in which it has legally sufficient market penetration").  This too means that Mr. Anthony does not have the type of legally protectable trademark rights to bring a claim.

> B.   **Even if Mr. Anthony Had a Legally Protectable Interest, the Disposition of the Action Will not Impair or Impede His Ability to Protect that Interest**

Mr. Anthony also does not meet the second factor required to show that he is entitled to intervene, *i.e.*, that the disposition of the action may, as a practical matter, impair or impede his ability to protect his interest.  Mr. Anthony argues that if Apple or Social Tech's "trademark

registrations are upheld as valid" and Apple or Social Tech "are found by this Court to be entitled to exclusive use of the Memoji mark," then Mr. Anthony "***could be*** prohibited from the rightful use of the mark." Mot. at 7 (emphasis added). In fact, this litigation will not impede or impair Mr. Anthony's supposed rights because it concerns only Apple's trademark rights in MEMOJI vis-à-vis those of Plaintiff Social Technologies LLC ("Social Tech") in its MEMOJI design mark. A determination that Apple has priority over Social Tech, or vice versa, does not impact whether Mr. Anthony has priority over either or both parties. Moreover, while Mr. Anthony argues that he "***may*** be deemed to have acquiesced, or otherwise slept on [his] enforcement obligations" if he does not intervene in this lawsuit, Mot. at 7 (emphasis added), he does not explain (because he cannot) why he could not now bring his claims against Apple and Social Tech in a separate lawsuit. Thus, Mr. Anthony's alleged trademark rights would not be impaired if he did not intervene.

### C. Mr. Anthony's Motion to Intervene Is Not Timely

In considering whether a motion to intervene as of right is timely, courts consider three factors: (1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay. *See Chavez v. PVH Corp.*, No. 13-CV-01797 LHK, 2014 WL 6617142, at *3 (N.D. Cal. Nov. 20, 2014). In terms of the stage of the proceeding and prejudice to the parties, discovery is already underway. *See* Dkt. No. 53. Indeed, Social Tech and Apple have already served and responded to discovery requests, and discovery is set to close in less than three months, on June 4, 2019. *Id.* The existing parties will be prejudiced if resolution of their claims against one another is delayed. *See Am. Int'l Specialty Lines Ins. Co. v. United States*, No. CV 09-01734 AHM RZX, 2009 WL 1872975, at *1 (C.D. Cal. June 22, 2009) (noting prejudice to the existing parties resulting from intervention where discovery cut-off was less than three months away). Moreover, as he admits, Mr. Anthony has known about this litigation since *at least* January 9, 2019, when he sent Apple a cease and desist letter referencing this litigation, Mot. at 8, and the schedule in this case is publicly available. Mr. Anthony could have intervened at least two months ago, in January, but chose not to do so. Thus, under the circumstances, Mr. Anthony's motion is not timely. *See e.g.*, *Ashford v. City of Milwaukee*, No. 13-

C-0771, 2014 WL 11430844, at *1 (E.D. Wis. Aug. 15, 2014) (motion arguably not timely where it was "not filed until after discovery . . . commenced").

## II.  APPLE'S PROPOSAL FOR MR. ANTHONY'S INTERVENTION

Although Apple does not believe that Mr. Anthony's claims belong in any Court given, among other things, his lack of continuous use and hence his lack of trademark rights, Apple is aware of the liberal standard for granting a motion to intervene and understands the need for efficiency in litigation.  *See generally* Fed. R. Civ. P. 24(a)–(b).  Because Mr. Anthony, like Social Tech, is asserting claims against Apple's MEMOJI mark, consolidating the cases for discovery would further judicial economy and improve efficiency.  Therefore, as described in more detail below, Apple does not object to intervention, provided that (1) the schedule remains materially the same, including bifurcation, and (2) Mr. Anthony's claims are addressed separately from Social Tech's for purposes of summary judgment and trial to avoid the confusion and prejudice to Apple that would result from lumping Mr. Anthony's claims with those of Social Tech.

### A.  The Schedule Should Not Change Materially if Mr. Anthony Intervenes

Because Mr. Anthony has chosen to intervene, after months of delay, he should abide by the current schedule.  *See Am. Int'l Specialty Lines Ins. Co.*, 2009 WL 1872975, at *1 (granting motion to intervene where intervenor could "abide by the existing schedule"); *Ashford*, 2014 WL 11430844, at *1 (granting motion to intervene where the proposed intervenors' claims could be "integrated into the existing discovery schedule").  Otherwise, Apple (and presumably Social Tech) will be prejudiced because resolution of the current claims will be delayed.  Moreover, given the weaknesses in Mr. Anthony's case, described above, and the fact that discovery concerning damages has no bearing on liability, bifurcation is appropriate with respect to Mr. Anthony's claims, just as it was appropriate with respect to Social Tech's.

### B.  Summary Judgment and Trial on Mr. Anthony's and Social Tech's Claims Should be Addressed Separately

Separate summary judgment briefing and trials for Mr. Anthony's and Social Tech's claims against Apple would prevent the inevitable confusion that will result from addressing all of the parties' claims in the same brief and same trial.  Although Social Tech and Mr. Anthony both claim

that Apple's use of the MEMOJI mark infringes their alleged rights, there are important distinctions in their claims that impact the legal analysis. For example, Social Tech is asserting rights based on a registration, whereas Mr. Anthony is asserting common law rights. Apple also is defending itself against Social Tech's claim on the basis that Apple acquired prior rights from a third party, whereas its primary defense with respect to Mr. Anthony is that Mr. Anthony has no rights at all due to his lack of continuous use. It will be challenging to address these disparate issues in a single summary judgment brief without running afoul of the page limit, and Apple should not be required to compromise its defense of either party's claims simply because two separate plaintiffs, alleging different claims, would be bringing those claims in the same case. Indeed, Apple needed a full 25 pages to oppose Social Tech's motion for a preliminary injunction. Although Apple endeavors to brief any summary judgment motion as succinctly as possible, Apple expects that it will need more than the allotted 25 pages to address adequately both parties' claims.

With respect to trial, courts routinely consolidate cases while keeping trials separate where a single trial would confuse the jury or prejudice a party. *See e.g.*, *Spin Master Ltd. v. Your Store Online Silverlit Toys Manufactory Ltd.*, No. CV 09-2121 CAS (JCX), 2010 WL 11549549, at *2 (C.D. Cal. May 28, 2010) (consolidating copyright, trademark, and patent infringement actions for all purposes ***except*** trial where consolidation would confuse the jury and prejudice the plaintiff); *see also* Fed. R. Civ. P. 42(b) ("For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, ***or third-party claims***." (emphasis added)). Here, there is a significant risk of juror confusion and prejudice if all claims are tried simultaneously because, for example, Social Tech's and Mr. Anthony's alleged rights are based on different legal theories that could easily be confused. A juror could erroneously apply the standard for maintaining a trademark registration, which does not require continuous use, to Mr. Anthony's common law claim, which does. Similarly, a juror could also confuse the distinction between needing priority to *defeat* an infringement claim and needing market penetration, which is required only to *pursue* such a claim. The timeline of events also is complicated if three parties' claims are litigated simultaneously. Jurors also may be more inclined to fall into the trap of assuming Apple must have done something wrong if two plaintiffs are suing it.

Having separate trials will reduce confusion and the risk of a legally erroneous judgment.

Dated: March 25, 2019

Respectfully submitted,

KIRKLAND & ELLIS LLP

*/s/ Dale M. Cendali*
Dale M. Cendali (S.B.N. 1969070)

Attorney for Defendant Apple Inc.

Case 3:18-cv-05945-VC   Document 67   Filed 03/25/19   Page 9 of 9

## **CERTIFICATE OF SERVICE**

On March 25, 2019, I electronically filed the foregoing with the Clerk of the Court by using CM/ECF system which will send a notice of electronic filing to all persons registered for ECF. All copies of documents required to be served by Fed. R. Civ. P. 5(a) and L.R. 5-1 have been so served.

                                             */s/ Dale M. Cendali*
                                             Dale M. Cendali

**CERTIFICATE OF SERVICE**      **CASE NO. 3:18-cv-05945-VC**