**Pierce Bainbridge Beck Price & Hecht LLP**
John M. Pierce (SBN 250443)
jpierce@piercebainbridge.com
Brian Dunne (SBN 275689)
bdunne@piercebainbridge.com
355 S. Grand Avenue, 44th Floor
Los Angeles, CA 90071
(213) 262-9333

David L. Hecht (pro hac vice)
dhecht@piercebainbridge.com
Melody McGowin (pro hac vice)
mmcgowin@piercebainbridge.com
277 Park Avenue, 45th Floor
New York, NY 10172
(212) 484-9866

*Attorneys for Plaintiff Social Technologies LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SOCIAL TECHNOLOGIES LLC,<br><br>   Plaintiff,<br><br> v.<br><br>APPLE INC.,<br><br>   Defendant.<br><br>APPLE INC.,<br><br>   Counter-Claimant,<br><br> v.<br><br>SOCIAL TECHNOLOGIES LLC,<br><br>   Counter-Defendant. | CASE NO.: 3:18-cv-05945-VC<br><br>**NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PARTIAL SUMMARY JUDGMENT BY PLAINTIFF SOCIAL TECHNOLOGIES, INC.**<br><br>**Hearing:**<br>Date:   December 12, 2019<br>Time:   10:00 a.m.<br>Courtroom: 04<br><br>Complaint Filed: September 27, 2018<br>Trial Date:  February 10, 2020 |

1

## NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT

2

**TO APPLE INC. AND ITS ATTORNEYS OF RECORD:**

3

   **PLEASE TAKE NOTICE** that on December 12, 2019, at 10:00 a.m., or as soon thereafter

4

as the matter may be heard, in Courtroom 4 of the United States District Court for the Northern

5

District of California, located at 450 Golden Gate Ave. 17th Floor, San Francisco, CA 94102, before

6

the Honorable Vince Chhabria, Plaintiff Social Technologies LLC ("Plaintiff" or "Social Tech")

7

will, and hereby does, move the Court pursuant to Federal Rule of Civil Procedure 56, Civil Local

8

Rule 7, and Civil Local Rule 56, for partial summary judgement.

9

   This Motion is based upon this Notice of Motion and Motion, the accompanying

10

Memorandum of Points and Authorities, the Declaration of David L. Hecht in Support of Motion for

11

Partial Summary Judgement ("Hecht Decl."), the pleadings on file in this action, and upon all other

12

matters presented to the Court at the time of the hearing.

13

14

15

Dated: October 3, 2019                    Respectfully submitted,

16

                                          PIERCE BAINBRIDGE BECK
                                          PRICE & HECHT LLP

17

                                          /s/ David L. Hecht
18
                                          David L. Hecht (admitted pro hac vice)
                                          dhecht@piercebainbridge.com
19
                                          277 Park Avenue, 45th Floor
                                          New York, New York 10172
20
                                          Attorney for Plaintiff Social
                                          Technologies LLC
21

22

23

24

25

26

27

28

### TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................... ii

II.  STATEMENT OF FACTS ................................................................................2

    A.  Christopher Anthony's Memoji - Emoji Yourself App............................3

    B.  Lucky Bunny's MEmoji - GIF selfies with emoji accessories! App.....................4

    C.  Social Tech's MEMOJI Trademark Application and App Release .......................4

    D.  Apple's Attempts to Purchase the MEMOJI Name and Release of the Memoji Feature ........................................................................................5

    E.  Apple Releases Its Memoji Operating System Software Feature ..........................6

III.  LEGAL STANDARD FOR SUMMARY JUDGMENT......................................8

IV.  ARGUMENT .................................................................................................9

    A.  Summary Judgment Should Be Granted in Favor of Social Tech Regarding Apple's Fifth Affirmative Defense of Priority ...........................9

        1.  Social Tech Has Priority In MEMOJI At Least Through Its April 1, 2016 Intent-to-Use Application ..................................10

        2.  Apple Cannot Show Continuing Consumer Impression to Tack The Lucky Bunny MEmoji Mark to the Infringing Memoji .........................11

    B.  Summary Judgment Should Be Granted in Favor of Social Tech Regarding Apple's Counterclaim for Trademark Infringement.............................21

    C.  Social Tech Is Entitled to Summary Judgment on Apple's Laches, Estoppel, and Acquiescence Affirmative Defenses...........................................22

        1.  Laches Is Inapplicable Because Social Tech Did Not Unreasonably Delay in Bringing Its Claims ..................................22

        2.  Acquiescence Is Inapplicable....................................................24

        3.  Estoppel Is Inapplicable .............................................................24

V.  CONCLUSION ...............................................................................................25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

*Adidas-Am., Inc. v. Payless Shoesource, Inc.*,
    546 F. Supp. 2d 1029 (D. Or. 2008) .................................................................................25

*Am. Petrofina, Inc. v. Petrofina of Cal., Inc.*,
    596 F.2d 896 (9th Cir. 1979) ..........................................................................................21

*Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242 (1986) ...........................................................................................................8

*Big Blue v. IBM*,
    19 U.S.P.Q.2d 1072, 1991 WL 326549 (Trademark Tr. & App. Bd.1991) ...........................18

*Boston Sci. Corp. v. Cordis Corp.*,
    422 F. Supp. 2d 1102 (N.D. Cal. 2006) ...............................................................................8

*Brady v. Grendene USA, Inc.*,
    No. 3:12-CV-0604-GPC-KSC, 2015 WL 3539702 (S.D. Cal. June 3, 2015) ........................16

*Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*,
    174 F.3d 1036 (9th Cir. 1999) ...........................................................................................18

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ...........................................................................................................8

*Clark & Freeman Corp. v. Heartland Co.*,
    811 F. Supp. 137 (S.D.N.Y. 1993) ...............................................................................16, 17

*Data Concepts, Inc. v. Digital Consulting, Inc.*,
    150 F.3d at 623–24 ..........................................................................................................20

*Dunn Computer Corp. v. Loudcloud, Inc.*,
    133 F. Supp. 2d 823 (E.D. Va. 2001) ................................................................................23

*Eat Right Foods Ltd. v. Whole Foods Mkt., Inc.*,
    880 F.3d 1109 (9th Cir. 2018) ...........................................................................................24

*Echo Drain v. Newsted*,
    307 F. Supp. 2d 1116 (C.D. Cal. 2003) ...............................................................................8

*Fifth Ave. of Long Island Realty Assocs. v. Caruso Mgmt. Co.*,
    718 F. Supp. 2d 292 (E.D.N.Y. 2010) ...............................................................................20

*Glow Indus., Inc. v. Lopez*,
    273 F. Supp. 2d 1095 (C.D. Cal. 2003) .............................................................................16

*Hana Fin., Inc. v. Hana Bank,*
    574 U.S. 418 (2015) ................................................................................ 18, 19

*Hana Fin., Inc. v. Hana Bank,*
    735 F.3d 1158 (9th Cir. 2013) ................................................................. 18, 19

*Hansen Beverage Co. v. Cytosport, Inc.,*
    No. CV 09-0031-VBF(AGRX), 2009 WL 5104260 (C.D. Cal. Nov. 4, 2009) ..................... 19

*Haymaker Sports, Inc. v. Turian,*
    581 F.2d 257 (C.C.P.A. 1978) ................................................................... 15

*Internet Specialties W., Inc. v. Milon-DiGiogio Enters., Inc.,*
    559 F.3d 985 (9th Cir. 2009) ..................................................................... 23

*Kaufman & Broad Monterey Bay v. Travelers Prop. Cas. Co. of Am.,*
    No. 5:10-CV-02856-EJD, 2013 WL 144491 (N.D. Cal. Jan. 11, 2013) ................... 9

*Kelly Servs., Inc. v. Creative Harbor, LLC,*
    124 F. Supp. 3d 768 (E.D. Mich. 2015) ...................................................... 23

*Levi Strauss & Co. v. GTFM, Inc.,*
    196 F. Supp. 2d 971 (N.D. Cal. 2002) ........................................................ 21

*Marketquest Grp., Inc. v. BIC Corp.,*
    316 F. Supp. 3d 1234 (S.D. Cal. 2018) ....................................................... 8

*Marshak v. Green,*
    746 F.2d 927 (2d Cir. 1984) ...................................................................... 16

*Money Store v. Harriscorp Fin., Inc.,*
    689 F.2d 666 (7th Cir. 1982) ..................................................................... 16

*Navistar Int'l Transp. Corp. v. Freightliner Corp.,*
    No. 96 C 6922, 1998 WL 911776 (N.D. Ill. Dec. 28, 1998) ........................... 18, 19

*Newmark Realty Capital, Inc. v. BGC Partners, Inc.,*
    No. 16-CV-01702-BLF, 2017 WL 8294175 (N.D. Cal. Nov. 16, 2017), *order suspended*, No.
    16-CV-01702-BLF, 2017 WL 8314663 (N.D. Cal. Dec. 18, 2017), and *appeal dismissed,* No.
    18-15776, 2019 WL 1975883 (9th Cir. Jan. 7, 2019) ..................................... 20

*Nexsan Techs., Inc. v. EMC Corp.,*
    260 F. Supp. 3d 68 (D. Mass. 2017) .......................................................... 9

*Novadaq Techs., Inc. v. Karl Storz GmbH & Co. K.G.,*
    143 F. Supp. 3d 947 (N.D. Cal. 2015) .................................................. 22, 23, 25

*Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. DE C.V.,*
    188 F. Supp. 3d 22 (D.D.C. 2016), *aff'd*, 743 F. App'x 457 (D.C. Cir. 2018) ........... 19, 20, 21

*Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.*,
   69 F. Supp. 3d 175 (D.D.C. 2014) ..................................................................... 9

*Pepsico, Inc. v. Grapette Co.*,
   416 F.2d 285 (8th Cir. 1969) ......................................................................... 17

*Reno Air Racing Ass'n v. McCord*,
   452 F.3d 1126 (9th Cir. 2006) ....................................................................... 23

*Seller Agency Council, Inc. v. Kennedy Ctr. for Real Estate Educ., Inc.*,
   621 F.3d 981 (9th Cir. 2010) ......................................................................... 24

*Spin Master, Ltd. v. Zobmondo Entm't, LLC*,
   944 F. Supp. 2d 830 (C.D. Cal. 2012) ........................................................... 21

*Summers v. Teichert & Son, Inc.*,
   127 F.3d 1150 (9th Cir. 1997) ......................................................................... 8

*Syntex Labs., Inc. v. Norwich Pharmacal Co.*,
   315 F.Supp. 45 (S.D.N.Y.1970) ..................................................................... 16

*Talent Mobile Dev., Inc. v. Headios Grp.*,
   No. EDCV180156DOCDFMX, 2018 WL 3830904 (C.D. Cal. June 4, 2018) ...... 19

*WarnerVision Entm't Inc. v. Empire of Carolina Inc.*,
   919 F. Supp. 717 (S.D.N.Y. 1996) ................................................................. 10

**Federal Statutes**

15 U.S.C. § 1051 ...................................................................................... 10, 11

15 U.S.C. § 1057 ........................................................................................... 10

15 U.S.C. § 1063 ........................................................................................... 10

15 U.S.C. § 1127 ........................................................................................... 18

**State Statutes**

Cal. Bus. & Prof. Code ¶ 17200 ...................................................................... 23

**Federal Rules**

Fed. R. Civ. P. 56 ............................................................................................ 8

**Other Authorities**

3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 17:26
   (4th ed. 2014) ....................................................................................... 11, 18

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

## I.      INTRODUCTION

3

4          Defendant Apple Inc. ("Apple") hopes to pull the wool over this Court's eyes with the

5  fiction that it can "step into the shoes" of Lucky Bunny LLC and Big 3 Ent LLC ("Lucky Bunny"),

6  which released an app in 2014 called MEmoji – GIF Selfies and Emoji Accessories! (the "MEmoji

7  App" or "Lucky Bunny's App") that consumers would not understand to be anything like Apple's

8  software feature or use of "Memoji."  What is in fact true is that Apple knowingly usurped Plaintiff

9  Social Technologies LLC's ("Social Tech") rights in its *registered* MEMOJI trademark (the

10 "MEMOJI mark") through Apple's widespread and unapologetic use of "Memoji" for its operating

11 software feature and marketing efforts related to Apple Music (the "Infringing Memoji").

12         Social Tech brings this motion for partial summary judgment to narrow and simplify the

13 triable issues in this trademark infringement case.  Social Tech is entitled to summary judgment

14 on Apple's following affirmative defenses and counterclaim as a matter of law: 1) Apple's

15 affirmative defense of priority in Memoji; 2) Apple's counterclaim for trademark infringement;

16 and 3) Apple's affirmative defenses of laches, acquiescence, and estoppel.

17         First, the Court should grant summary judgment on Apple's affirmative defense and legal

18 defense that it has priority in the Memoji mark.  Despite knowing that Social Tech had no intention

19 of relinquishing its rights to its own MEMOJI trademark intent-to-use application – a fact Social

20 Tech told Apple's agent – and later registered trademark, Apple attempted to work around Social

21 Tech's trademark rights by purchasing alleged trademark rights in Memoji from third-party app

22 owner Lucky Bunny.  However, Apple's purchase of alleged trademark rights from Lucky Bunny

23 does not override Social Tech's priority in the MEMOJI mark. Apple has set forth *no evidence*

24 that consumers view Lucky Bunny's MEmoji as equivalent to Apple's Infringing Memoji.  And

25 even if Lucky Bunny had "nationwide" common law trademark rights in MEmoji – which it did

26 not and could not under the law – the assignment from Lucky Bunny was "in gross" because it did

not accompany any goodwill allegedly established in the MEmoji mark through Lucky Bunny's app.  Thus, Apple's affirmative and legal defenses of priority fail as a matter of law.

Second, because Apple cannot establish that it has priority over Social Tech's constructive use date of April 2016, Apple's counter-claim for trademark infringement necessarily fails as a matter of law.  Social Tech is therefore also entitled to summary judgement on this counterclaim.

Third, Social Tech is entitled to summary judgment on Apple's affirmative defenses of laches, acquiescence, and estoppel.  These defenses are based on Social Tech's alleged unreasonable delay in filing this action. But Social Tech first learned of Apple's intended infringing use in June 2018 and filed suit a mere three months later and only nine days after the United States Patent and Trademark Office ("PTO") registered Social Tech's MEMOJI mark – periods so short that laches is simply inapplicable.  Furthermore, because Social Tech filed this lawsuit well within the applicable statute of limitations, there is a strong presumption that any delay in filing was reasonable.  Even if Social Tech had delayed in filing suit, Apple's laches affirmative defense would fail because it has no evidence of prejudice caused by the alleged delay. The affirmative defenses of acquiescence and estoppel must fail for the same reasons.

## II.     STATEMENT OF FACTS

### A.     Social Tech Applies for Its MEMOJI Trademark Application on April 1, 2016, Releases Its MEMOJI App, and Registers Its MEMOJI Trademark.

In 2015, Samuel Bonet and Robert Long, the co-founders of Social Tech, came up with an idea for an app that would allow users to send their actual facial expressions in messages. Declaration of David L. Hecht ("Hecht Decl.") ¶ 2, Ex. A at 181:14-182:11.   They intended to call this app MEMOJI.  On April 1, 2016, Social Tech filed an intent-to-use application with the PTO.   Hecht Decl. ¶ 3, Ex. B at APL-STECH_00000170-175.   Immediately after filing the application, Social Tech began making presentations to investors to fund the development of their planned MEMOJI app.  Dkt. 4-16 ¶ 8; *see, e.g.*, Hecht Decl. ¶ 4, Ex. C.   These presentations

included proof of demand for the planned app as well as a mockup of the planned app and even videos showing the planned app concept.  Ex. C at SocialTech_0000655-667.  Social Tech also drafted a processing flow for the app in May 2016 and worked on videos that would publicize the planned app.  Hecht Decl. ¶¶ 5-6, Exs. D-E.

The trademark was published for opposition on December 5, 2017.  Ex. B at APL-STECH_00000214.  On January 30, 2018, the PTO sent a notice of allowance.  *Id.* at APL-STECH_00000215-16. On March 21, 2018, Social Tech filed for an extension of time to file a Statement of Use with the PTO, which was approved on March 23, 2018.  *Id.* at APL-STECH_00000217-20, 225.  On June 28, 2018, Social Tech released its MEMOJI app on the Google Play Store for public consumption.  Hecht Decl. ¶ 7, Ex. F at 202:11-13; 213:15-24.  On June 30, 2018, Social Tech filed its statement of use.  Ex. B at APL-STECH_00000228-29.  On September 18, 2018, Social Tech was granted a registered trademark in the MEMOJI mark.  *Id.* at APL-STECH_00000248.

## B.     Christopher Anthony Releases His Memoji - Emoji Yourself App in September 2014.

In September 2014, downloads began for an app called Memoji – Emoji Yourself (the "Anthony App"), which was released on the Apple App Store by an independent app developer named Christopher Anthony.  Hecht Decl. ¶ 8, Ex. G at 150:16-24.  Mr. Anthony began developing his app with the help of a contracted developer in April of 2014, with a proposal from the app developer on April 27, 2014.  *Id.* at 238:10-239:17; *see generally* Hecht Decl. ¶ 9, Ex. H.  Mr. Anthony created a website and Facebook page to advertise the Anthony App.  Ex. G at 30:9-12; 35:12-36:3; Hecht Decl. ¶ 10, Ex. I at 1 (showing the Anthony App Facebook page creation date of June 5, 2014).  Despite Apple's removal of the Anthony App from the Apple App Store in 2015, Mr. Anthony continued to attempt to update the Anthony App's code, reaching out to several developers and seeking investors when his initial app developer refused to hand him the code that

Mr. Anthony owned. Ex. G at 105:2-17; 108:3-110:15; 125:6-20 ("Q: Did you ever contact any other app developers . . . in connection with your Memoji-Emoji Yourself app? . . . Ever? A: Ever, yes. Q: When?  . . . .  A: 2014, 2015, 2017, 2018."); 170:14-173:17.  Further, even while the Anthony App was down, the Facebook page was active and consumers could continue to access their already downloaded versions including on new devices. Ex. I; Hecht Decl. ¶ 9, Ex. J at 143:6-21.  In late 2018, consumers continued to download the Anthony App from the Apple App Store. *See* Ex. K at Anthony.0069; Ex. G at 62:21-64:8.  In May of 2019, Mr. Anthony assigned to Social Tech, inter alia, any rights he had in the Memoji mark.  Ex. F at 243:18-22.

### C.    Lucky Bunny's MEmoji - GIF selfies with emoji accessories! App

Following the release of the Anthony App, on October 22, 2014, Lucky Bunny released the MEmoji App on Apple's App Store.  Hecht Decl. ¶ 13, Ex. L at 85:7-11.  Lucky Bunny's App was advertised as having the following features: "[1] Accessorize your selfie photos and GIFs with an assortment of fun images!  [2] Crop around your face in a perfect circle to give yourself that perfect emoji look!  [3] GIFs can be converted into other formats for even more sharing options! [4] Googly eyes, people! Googly eyes!"  Hecht Decl. ¶ 14, Ex. M at LB000955; Ex. L at 177:24-178:7.   A picture of the title of the app is reproduced below:



Ex. M at LB000953.   On October 29, 2014, Lucky Bunny filed a trademark application with the PTO, serial number 86438926, for the word mark "MEmoji" across two categories:

> 1) "Computer application software for mobile phones and other computing devices, namely, software for creating and sending emoticons; Downloadable computer software for creating and sending emoticons;" and
> 2) "Baseball caps and hats; Shirts; T-shirts."

Hecht Decl. ¶ 15, Ex. N at 1.  Lucky Bunny's trademark application was abandoned just over a year later, on December 28, 2015.  Hecht Decl. ¶ 16, Ex. O at 1; Ex. L at 138:10-139:14.  Lucky Bunny LLC's corporate witness testified that Lucky Bunny took no steps to salvage the abandoned trademark application.[1]  *Id.*  Consistent with its later trademark application abandonment, Lucky Bunny stopped updating its app November 22, 2014, with version 1.1.1 of the app, which remained on the App Store unchanged (and never updated again) until it was finally removed in July 2018.  *Id*. at 100:8-19; 178:11-179:24.  Further, aside from its initial marketing push via free mentions by Howie Mandel and other "influencers," Lucky Bunny did not spend anything or make any effort to promote its MEmoji App after mid-2015 at the latest. Ex. L at 117:20-120:9; 217:4-9.

### D.   Apple's Attempts to Purchase the Rights in MEMOJI

Apple hired an agent to contact Social Tech and Lucky Bunny regarding their rights in the Memoji mark.  *See* Dkt. 32 ¶¶ 32-33.  On May 21, 2019, the Apple agent left a voicemail for Mr. Bonet, one of Social Tech's co-founders.  Ex. F at 136:10-138:21.  When Mr. Bonet returned the call, the agent did not identify himself or the company he represented.  *Id.*  The Apple agent asked Mr. Bonet if Social Tech would be willing to sell its rights to the MEMOJI mark, and Mr. Bonet responded that Social Tech was not interested in selling them.  *Id.*; *see also* Dkt. 32 ¶ 33.

The Apple agent also contacted Lucky Bunny about its alleged rights to "MEmoji."  Ex. L at 155:14-161:11.  Lucky Bunny proposed $110,000 to sell whatever rights it had in MEmoji to Apple's agent, which the agent accepted.  *Id.* at 163:14-15; Ex. M at LB000953.  In 2018, the MEmoji App's active user base was only Lucky Bunny's developer and his mother.  Ex. L at

---

[1] On April 3, 2017, a year after Social Tech filed its intent-to-use application with the PTO, and prompted by another app's success using the name Memoji, Lucky Bunny filed a new trademark application of its own: serial number 87397135.  Ex. L at 152:2-153:1.  This application was assigned to MEMOFUN APPS, LLC, an Apple shell company, after Memofun, LLC purchased Lucky Bunny's alleged trademark rights in May 2018.  Hecht Decl. ¶ 17, Ex. P.  The application was not granted and was suspended on December 26, 2018 (Hecht Decl. ¶ 18, Ex. Q); Social Tech remains the sole own of any federal registration for MEMOJI.

168:17-20.  Lucky Bunny discovered that the agent was working on behalf of Apple only once the PTO website was updated with the trademark assignments.  *Id.* at 169:24-170:9.  Other than the $110,000 made from the assignment, Lucky Bunny made "maybe a couple thousand dollars" from the MEmoji App over the lifetime of the app.  *Id.* at 134:13-18.

On May 31, 2018, Lucky Bunny executed the assignment to MEMOFUN Apps LLC ("MEMOFUN"), an Apple-controlled shell company, which was formed solely ███████████ ██████████████████████████████████████████  Ex. M; Hecht Decl. ¶ 18, Ex. R at 75:18-21.  Apple did not purchase the MEmoji App through the assignment from Lucky Bunny – i.e. no source code for the app was included.  Ex. R at 100:6-8.  Apple's Senior Director of Trademark and Copyright even testified that he had never downloaded or used Lucky Bunny's App nor was he aware of anyone at Apple that downloaded the app.  *Id.* at 77:21-78:4.  Through the assignment, MEMOFUN purchased only the alleged trademark rights from Lucky Bunny, along with the then-pending, now suspended, Lucky Bunny trademark application for MEMOJI, a domain name of thememojiapp.com, and the formulaic "goodwill connected with the use of any symbolized by" Lucky Bunny's use of MEmoji.  Ex. M at LB000948; Ex. Q.  Apple's witness could not identify what goodwill (which he defined as the "symbolism and consumer association of a trademark with the particular product") Lucky Bunny had in MEmoji, but he was certain Apple "got all of it" while admitting Apple ███████████████████████████████████████████████ ████████████  Ex. R at 102:21-103:21.  Apple was also unaware of whether Lucky Bunny had re-released its same MEmoji App under a different name.  *Id.* at 103:22-104:6.  MEMOFUN assigned whatever rights it purchased from Lucky Bunny to Apple on June 4, 2018.  Hecht Decl. ¶ 20, Ex. S at 2. ██████████████████████████████████████████████████ ████████  Ex. R at 61:14-17.

**E.      Apple Releases Its Memoji Operating System Software Feature**

Apple announced its Memoji operating system software feature during its June 4, 2018 Worldwide Developers Conference – the same date the MEMOFUN assignment was executed. Dkt. 16-1 at 2.  The Apple Memoji operating system software feature was initially released as part of iOS 12.  Ex. R at 146:20-147:7.  The Apple Memoji operating system software feature is not a standalone app that consumers can purchase or download separately from iOS; instead, it is "part of a suite of different software and features . . . part of the iOS that [comes] . . . preloaded on the iPhone and iPad and other products."  *Id.* at 147:8-15.

On June 13, 2018, Social Tech, through counsel, sent a letter to Apple re-affirming Social Tech's intention to proceed with its MEMOJI app and trademark application.  Hecht Decl. ¶ 21, Ex. T at 2.  On June 14, 2018, counsel for Apple responded, stating that it believed it had superior rights in light of its purchase from Lucky Bunny.  Hecht Decl. ¶ 22, Ex. U.  On June 22, 2018, Social Tech again told Apple, through counsel, that it believed it had superior rights through its intent-to-use application and that Social Tech would be releasing its planned MEMOJI app in short order.  Hecht Decl. ¶ 23, Ex. V.

Since that time, Apple has persisted in its use of the Infringing Memoji, expanding to additional features and devices, including earlier generation devices, in its recent iOS 13 release. *See* Hecht Decl. ¶ 24, Ex. W at SocialTech_0001088-90; Hecht Decl. ¶ 25, Ex. X at 1.  Apple has also used the Memoji operating system software feature, along with the Infringing Memoji, to advertise Apple Music and Apple as a whole.  *See, e.g.* Hecht Decl. ¶¶ 26-32, Exs. Y-EE.  Apple has even gone so far as to ***fraudulently represent*** that it owns a U.S. registered trademark in MEMOJI knowing that Social Tech owns the only PTO-registered trademark in MEMOJI. Compare Hecht Decl. ¶ 33, Ex. FF at 5 (not listing MEMOJI), Ex. R at 41:2-25, with Hecht Decl. ¶ 3, Ex. GG at 6 (Apple listing "MEMOJI®" described as a "messaging feature" among its trademarks).  Social Tech filed the instant action against Apple on September 27, 2018.  Dkt. 1.

1

### III.   LEGAL STANDARD FOR SUMMARY JUDGMENT

"Claims or affirmative defenses in a trademark infringement action that lack a sufficient evidentiary basis under the applicable standard of proof, or for which there are only questions of law for the court to resolve, are appropriate for summary resolution." *Marketquest Grp., Inc. v. BIC Corp.*, 316 F. Supp. 3d 1234, 1255–56 (S.D. Cal. 2018).   A district court has the authority, inherent in Federal Rule of Civil Procedure 56, to grant "partial summary judgment, i.e., on a particular claim or a particular affirmative defense, even if doing so would leave other triable issues." *Boston Sci. Corp. v. Cordis Corp.*, 422 F. Supp. 2d 1102, 1106 (N.D. Cal. 2006). Summary judgment is proper where the pleadings, discovery, and any affidavits "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The moving party bears the burden of demonstrating the absence of a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).   An issue of fact is "genuine" if it can reasonably be resolved in favor of either party and "material" if it "might affect the outcome of the suit under governing law." *Id*. at 248.   A party opposing a properly made and supported motion for summary judgment may not rest upon mere denials but "must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 248.   Where, as here, the non-moving party bears the burden of proving an essential element of its case, that party must make a showing sufficient to establish a genuine issue of material fact with respect to the existence of that element or be subject to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).   However, a "mere 'scintilla' of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some significant probative evidence tending to support the complaint." *Echo Drain v. Newsted*, 307 F. Supp. 2d 1116, 1120-21 (C.D. Cal. 2003) (quoting *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997)).

"Partial summary judgment on an affirmative defense is governed by the same standard which applies to summary judgment of a claim". *Boston Sci,* 422 F. Supp. 2d at 1106. A plaintiff moving for partial summary judgment on an affirmative defense is thus entitled to have the defense determined in the plaintiff's favor as a matter of law "when there is no genuine dispute over the material historical facts and under the governing law." *Id.* (citing *Celotex*, 477 U.S. at 323-24). On a particular defense where the nonmoving party will have the burden of proof at trial, "the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case'" to be entitled to summary judgment. *Kaufman & Broad Monterey Bay v. Travelers Prop. Cas. Co. of Am.*, No. 5:10-CV-02856-EJD, 2013 WL 144491, at *6 (N.D. Cal. Jan. 11, 2013) (quoting Celotex, 477 U.S. at 325).

## IV.   ARGUMENT

### A.   Summary Judgment Should Be Granted in Favor of Social Tech Regarding Apple's Fifth Affirmative Defense and Legal Defense of Priority

Courts can make determinations of priority at the summary judgment stage. *See Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.*, 69 F. Supp. 3d 175, 208 (D.D.C. 2014) (finding priority where challenger to federal registrant could not show use of the mark prior to the federal registration date in the particular market at issue); *Nexsan Techs., Inc. v. EMC Corp.*, 260 F. Supp. 3d 68, 75 (D. Mass. 2017) ("This Court concludes that EMC has not carried its burden to establish prior use, and thus Nexsan has priority to the UNITY mark based on its intent-to-use applications."). Apple asserts as a legal defense and as its Fifth Affirmative Defense that it has priority in the Memoji mark based on its assignment from Lucky Bunny (Compl. ¶26 (incorrectly alleging that "Apple's rights date back to September 22, 2014")). Social Tech is entitled to summary judgment on Apple's priority affirmative and legal defense because: 1) Social Tech has priority at least by virtue of its April 1, 2016 intent-to-use application; and 2) Apple cannot rely on Lucky Bunny's prior use of MEmoji to claim priority

because i) the assignment from MEMOFUN to Apple was in gross because it was not

accompanied by any goodwill in "MEmoji"; and ii) even if the assignment from MEMOFUN

was not in gross, Apple cannot show a continuing commercial impression from the viewpoint of

the consumer between Lucky Bunny's MEmoji App and Apple's Memoji operating system

software feature and therefore, Apple cannot claim priority by tacking its use of the Infringing

Memoji to Lucky Bunny's earlier use of MEmoji.

        **1.**      **Social Tech Has Priority in MEMOJI at Least Through Its April 1, 2016 Intent-to-Use Application**

Social Tech's constructive use of the MEMOJI mark under 15 U.S.C. § 1057(c), conferring

a right of priority, nationwide in effect, dates to the filing of its intent-to-use application in April

2016.[2]  Ex. B at APL-STECH_00000170-175.  While a trademark cannot be registered before

formal use, an intent-to-use application allows an applicant to anticipatorily apply for registration

based on an intent to use the mark to be registered.  15 U.S.C. § 1063(b).  Once the PTO issues a

"notice of allowance" for an intent-to-use application, an applicant has a certain time period to file

a statement of use with the PTO, a period which may be extended by the applicant.  15 U.S.C. §

1051(d)(1)-(2).  Once an applicant files the statement of use with the PTO and the PTO registers

the mark, the intent-to-use application date is treated as the constructive-use date for the applicant.

15 U.S.C. § 1057(c).  This gives the registrant priority-of-use over those who infringe the mark

after the constructive-use date – the date of the intent-to-use application.  *Id.*

The policy considerations behind the intent-to-use application are strong.  As stated by

the Trademark Review Commission Report:

> Constructive use is  essential  for  an intent-to-use application.  Without  it,
> the application would be an easy target for pirates, vulnerable also to priority claims
> of anyone else whose use began after an applicant's filing date but before
> applicant's use.  This would strongly discourage filing intent-to-
> use applications and also defeat our objective of reducing uncertainty.

---

[2] While Social Tech also has priority of use as early as August of 2014, by virtue of Christopher Anthony's trademark assignment (as discussed above), for purposes of this Motion, Social Tech relies exclusively on its constructive use date of April 1, 2016 via its intent-to-use application.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

*WarnerVision Entm't Inc. v. Empire of Carolina Inc.*, 919 F. Supp. 717, 720 (S.D.N.Y. 1996) (quoting 77 Trademark Rep. at 397, reprinted in The Trademark Law Revision Act of 1988, at 37).

A bona fide intent to use the mark in commerce is a statutory requirement of a valid intent-to-use trademark application under § 1(b) of the Lanham Act. *See* 15 U.S.C. § 1051(b)(1) ("person who has a bona fide intention, under circumstances showing the good faith of such person, to use a trademark in commerce may request registration of its trademark on the principal register"). Typically, an applicant demonstrates his bona fide intent to use by producing "a written plan of action" for a new product or service. 3 J, Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 19:14, at 19–46, 47 (4th ed. rev. 2011).

Not only did Social Tech's witnesses testify regarding Social Tech's intent to use the MEMOJI mark, Social Tech has produced several documents that evidence a bona fide intent to use contemporaneous with the filing of its intent-to-use application. For example, Social Tech began meeting with potential investors shortly after filing the application, presenting a fleshed-out PowerPoint with sketches of its envisioned MEMOJI app and created video commercials for its planned app the same year. *See* Dkt. 4-16 ¶ 8; Ex. C at SocialTech_0000655-667; Exs. D-E.

It is uncontested that Social Tech filed its intent-to-use application on April 1, 2016 and that the trademark was registered on September 18, 2018 after Social Tech began using the mark in commerce in June 2018. Ex. F at 202:11-13; 213:15-24; Ex. B at APL-STECH_00000170-175; APL-STECH_00000228-29; APL-STECH_00000248. There is no question of material fact regarding Social Tech's intent to use to the MEMOJI mark based on the contemporaneous evidence. Therefore, Social Tech is entitled to a finding on summary judgment that Social Tech has priority in the MEMOJI mark.

    **2.**    **Apple Cannot Rely on Lucky Bunny's MEmoji Use to Claim Priority**

**and Must Rely on Its Own Use Date Only as Early as June 2018.**

To rely on Lucky Bunny's use of MEmoji in connection with Lucky Bunny's App[3] to claim priority of use prior to its own first use of the Infringing Memoji in June 2018, Apple must show: First, that the assignments of whatever rights Lucky Bunny had in MEmoji to MEMOFUN and subsequently Apple were valid and not in gross; and second, that consumers view both Lucky Bunny's MEmoji and Apple's Infringing Memoji as the same mark giving a continuing commercial impression.  There is no genuine issue of material fact that Lucky Bunny's assignment to MEMOFUN was in gross and the assignment to Apple was invalid.  Alternatively, there is no evidence in the record regarding consumers' impressions of Lucky Bunny's MEmoji and Apple's Infringing Memoji and therefore no genuine issue of material fact that Apple cannot tack Lucky Bunny's MEmoji use to its own Infringing Memoji use.

> **a.**   **Apple's Use of the Infringing Memoji Is Different from and Far Broader than Lucky Bunny's Use of MEmoji.**

In this case, the Lucky Bunny use of MEmoji is entirely different from Apple's use of the Infringing Memoji in the visual representation of the marks, the categories and functions of the products themselves, and the products advertised using the mark.

***First***, Lucky Bunny's MEmoji and Apple's Infringing Memoji are different on their faces.  Lucky Bunny consistently emphasized the first two letters of the term "MEmoji" using capital letters for both the "M" and the "E" for example: MEmoji - GIF selfies with emoji accessories!  Ex. M at LB000953.  Apple, however, does not present the word in this manner—instead it always uses the first letter capitalized with the remaining letters lowercase for example: New Memoji +  Ex. X at 1.

Lucky Bunny used "MEmoji" in the name of its downloadable app, which was entitled,

---

[3] Social Tech disputes that Lucky Bunny's use of MEmoji amounted to trademark protection and that, even if it garnered trademark protection, Lucky Bunny abandoned those rights.  However, for the purposes of this Motion, Social Tech focuses on the form of assignment and actual use.

MEmoji – GIF selfies with emoji accessories! or as an abbreviated version of, or short-hand reference to, that app title. Ex. M at LB000953. Apple uses the Infringing Memoji in conjunction with its Memoji operating system software feature, which is simply called Memoji (not MEmoji – GIF selfies with emoji accessories!). Ex. R at 147:8-149:24; Ex. X at 1-2.

**_Second_**, while both products use iPhones, the products are entirely different in access and interface.  Apple's Memoji is embedded and only available through other software features, iMessage and Facetime, and **_not downloable_** on the Apple App Store.  *See* Ex. R at 147:8-149:24; Ex. X at 1-2.  Lucky Bunny's App was standalone exclusively available for download on the Apple App Store.  Ex. L at 85:7-11; Ex. M at LB000953.  Lucky Bunny's trademark applications even specified, inter alia, for goods and services class: "**Downloadable computer software** for creating and sending emoticons."  *See* Ex. N at 1.  Apple has consistently referred to its Memoji as a software **_feature_** – not a downloadable software itself.  *See, e.g.*, Dkt. 16-1 ¶ 9.

**_Third_**, the functions of Lucky Bunny's App and Apple's Infringing Memoji operating system software feature are very different.  Lucky Bunny's App took pictures or created GIFs of the users of the app and allowed for virtual images to be placed on top, while the Apple Infringing Memoji feature transforms the users into animated avatars in real-time.  Apple's Memoji feature also has a completely different function set from Lucky Bunny's app, which was advertised as having the following functions:

- Accessorize your selfie photos and GIFs with an assortment of fun images!
- Crop around your face in a perfect circle to give yourself that perfect emoji look!
- GIFs can be converted into other formats for even more sharing options!
- Googly eyes, people! Googly eyes!

Ex. M at LB000955.  Apple's software feature does not have any of the Lucky Bunny advertised features.  First, it does not create "GIF selfies."  That feature of Lucky Bunny's app was set forth in the app's very title, MEmoji – GIF selfies with emoji accessories!.  Apple, on the other hand, has not presented any evidence that it uses the GIF format to send a Memoji generated by its

software feature.  Second, Apple's Memoji software feature does not create selfies and Apple has

never suggested that it does.  While Apple's Memoji is used to mirror the user's facial

expressions in an animated avatar, it is not used to create a selfie picture of the user.  *See* Ex. II at

1.  This is fundamentally different from Lucky Bunny's app, which is used to create or edit selfie

pictures that can be embellished with images.  Ex. M at LB000955.  The screenshot below, from

Lucky Bunny promotional material, shows that a MEmoji in Lucky Bunny's app is simply a

selfie photo of a user's face that can be accessorized using the images at the bottom:



Ex. M at LB000955.  Unlike Apple's Memoji software feature, Lucky Bunny's app does not permit

users to create animated versions of their own faces.  Instead, Lucky Bunny's App crops a user's

actual face a "perfect circle" – something that Apple's Memoji software feature does not permit.

*Id.*  Nor has Apple presented any evidence that it Memoji software feature allows for conversion

"into other formats for even more sharing options" or includes "[g]oogly eyes."  *Id.*

    **_Fourth_**, Apple uses the Infringing Memoji beyond its operating system software feature

to advertise its iPhones, its Apple Music product, and Apple generally, and, in doing so, Apple

has made the Infringing Memoji into its version of Disney's "Mickey ears."  The animated

avatars generated by, or inspired by, Apple's software feature are used to transform people into

an animated avatar reflecting their own identity (as an Apple user).  Ex. II at 1.  Instead of using

1

the Infringing Memoji to promote solely the feature or even the features in which it is housed or

2

Apple's iOS devices, Apple has gone much broader in its use of Memoji.  For example, Memoji

3

is used to promote all things Apple, starting with its own executives.  Ex. Y at 1-2.

4

Apple has also recently and very prominently used Memoji in commercials for its Apple

5

Music product that is worlds away from Lucky Bunny's app.  *See, e.g.* Exs. Y-EE.  Apple Music

6

is a streaming music service not restricted to iOS devices but also available on Android devices

7

through the Google Play Store.  *See* Hecht Decl. ¶ 35, Ex. HH at SocialTech_0001194.  These

8

ads have a disclaimer that the Memojis were "professionally animated," implying that they were

9

not created on iOS itself and indicating the use is not with the Memoji operating system software

10

feature.  *See* Exs. AA at 1; EE at 1.  The ads feature Memoji versions of famous artists, including

11

Ariana Grande, Florida Georgia Line, and Khalid, and the artist's name in text next to the word

12

Memoji, and conclude with the Apple Music logo.  *See* Exs. AA at 1-2; CC at 1-2; EE at 1-2.

13

At no point during the videos is an iPhone, iPad, iMessage, or Facetime shown nor are

14

iPhone, iPad, iMessage, or Facetime mentioned on the YouTube webpages where the videos may

15

be accessed.  Rather, Memoji is clearly used to promote Apple Music.  *Id.*  Any consumer would

16

plainly recognize that Lucky Bunny's App was not a music platform like Apple Music,

17

stretching Apple's use of Memoji out to a completely different dimension (and a different goods

18

and services class).

19

### b.    The Lucky Bunny Assignment Was in Gross and Invalid

20

As an initial matter, there is no dispute that MEMOFUN did not actually use, plan to use,

21

or attempt to use in commerce any of whatever rights Lucky Bunny may have had in MEmoji

22

during the time that MEMOFUN was singularly assigned those rights.  *See* Ex. R at 75:18-21.

23

This assignment was itself in gross, and therefore, the later assignment to Apple was also invalid.

24

*Haymaker Sports, Inc. v. Turian*, 581 F.2d 257, 261 (C.C.P.A. 1978) ("Notwithstanding that the

25

agreement recited pro forma that goodwill was transferred along with the mark, [the initial

26

assignees of the mark] never played an active role in the business of [the assignor], never used the mark themselves, and never acquired any tangible assets or goodwill of [the assignor]. Therefore, we conclude that, as a matter of substance, the assignment was invalid as an assignment in gross, rendering the latter assignment to [the defendant] also invalid.").

Further, the MEMOFUN assignment to Apple was in name only because Apple does not use any of the alleged goodwill associated with Lucky Bunny's MEmoji App with Apple's Memoji software feature. "There are no rights in a trademark apart from the business with which the mark has been associated; they are inseparable." *Marshak v. Green*, 746 F.2d 927, 929 (2d Cir. 1984). While a trademark assignment along with its goodwill may entitle the assignee to "step into the shoes" of the assignor, an assignment without accompanying goodwill is in gross and invalid. *Clark & Freeman Corp. v. Heartland Co.*, 811 F. Supp. 137 (S.D.N.Y. 1993). Where that is the case, the assignee must rely on its own use to establish priority in the mark. *Id.* "To determine whether the goodwill was assigned with the mark, the Court makes a case-by-case determination whether the products or services offered by the assignee under the mark are 'substantially similar' to those that were offered by the assignor under the mark." *Brady v. Grendene USA, Inc.*, No. 3:12-CV-0604-GPC-KSC, 2015 WL 3539702, at *7 (S.D. Cal. June 3, 2015). "[A] mere recitation in the assignment agreement 'that the mark was assigned "together with the good will of the business symbolized by the mark"' is not sufficient to establish a valid transfer." *Glow Indus., Inc. v. Lopez*, 273 F. Supp. 2d 1095, 1108 (C.D. Cal. 2003) (quoting *Money Store v. Harriscorp Fin., Inc.*, 689 F.2d 666, 676 (7th Cir. 1982)). Where an assignment is in gross: "Any subsequent use of the mark by the assignee will necessarily be in connection with a different business, a different good will and a different type of product. The continuity of the things symbolized by the mark is broken." *Money Store*, 689 F.2d 666, 676 (7th Cir. 1982). "[T]he 'central purpose' of the various invalidity provisions 'is protection against consumer confusion.'" *Brady*, 2015 WL 3539702 at *8 (quoting *Syntex Labs., Inc. v. Norwich Pharmacal Co.*, 315 F.Supp. 45, 54 (S.D.N.Y.1970)).

Here, Lucky Bunny's assignment to Apple's shell company MEMOFUN and MEMOFUN's assignment to Apple did not include any rights to the Lucky Bunny app or its code – the actual business product with which Lucky Bunny used MEmoji; Apple's hope was simply to create the appearance of a valid common law mark by entering into the assignment, as it was only days away from announcing the software feature that it hoped to call Memoji; and Apple was not familiar with and did not intend to use any Lucky Bunny's goodwill in the Lucky Bunny app, to the extent any existed.   *See* Ex. R at 61:14-17; 77:21-78:4; 100:6-8.  There is absolutely no evidence in the record to support a finding that Apple is currently using MEmoji in a manner that demonstrates continuity between the businesses of Apple and Lucky Bunny or that Apple ever intended to use MEmoji in continuity between the two businesses and different product types.

As discussed above, the product types fall into entirely different categories and the marks are used in entirely different ways.  Although in the MEMOFUN assignment to Apple, Apple purchased Lucky Bunny's thememojiapp.com website – a website MEMOFUN has never used – there is no evidence in the record that consumers of the MEmoji App, which was exclusively available on the Apple App Store, visited the website or accessed the MEmoji App through Lucky Bunny's website or that the website carried with it all of the goodwill Lucky Bunny had allegedly developed in MEmoji.  *See* Ex. L at 85:7-11; Ex. M at LB000953.

Clark is instructive here.  811 F. Supp. 137.  In that case, Sears assigned a trademark in "Heartland" to the plaintiff.  Sears had previously sold only "women's pixie books" with the mark.  The plaintiff, however, applied the mark to men's shoes and hiking boots only.  The court found that the assignment was, therefore, in gross and for the name only without the associated goodwill. *Id.*  Here, Apple is trying to shoehorn its own Infringing Memoji operating system software feature into the very different Lucky Bunny MEmoji App without incorporating any of the MEmoji App's features or even being the same type of product.

Similarly, in *Pepsico, Inc. v. Grapette Co.*, 416 F.2d 285 (8th Cir. 1969), the court found

an assignment to be in gross where the mark "Peppy" had previously been used in connection with a cola beverage and, after assignment, was used in connection with a pepper-type beverage. The assignment was not accompanied by any tangible assets or a formula for the Peppy beverage previously in use. *Id.* The assignment from Lucky Bunny to Apple also came with no formula for the actual product Lucky Bunny used with the Memoji mark – the app itself. Apple's witness was clear that he was not interested in purchasing the product that accompanied any alleged goodwill from the Lucky Bunny app and was unaware of whether Lucky Bunny had begun promoting its app with a different name. *See* Ex. R at 61:14-17; 77:21-78:4; 100:6-8.

### c. Apple Cannot Show Continuing Commercial Impression to Tack Lucky Bunny MEmoji Use to the Infringing Memoji

Apple also cannot meet its burden to show that it can take advantage of Lucky Bunny's use of MEmoji to assert a priority of use date prior to its own use of the Infringing Memoji because the uses of the different marks cannot be tacked. *Navistar Int'l Transp. Corp. v. Freightliner Corp.*, No. 96 C 6922, 1998 WL 911776, at *3 (N.D. Ill. Dec. 28, 1998) (the party asserting tacking bears the burden). "[T]wo marks may be tacked when the original and revised marks are 'legal equivalents.' This term refers to two marks that 'create the same, continuing commercial impression" so that consumers 'consider both as the same mark.'" *Hana Fin., Inc. v. Hana Bank*, 574 U.S. 418, (2015) (internal quotations omitted). The two marks must be "so similar that consumer generally would regard them as essentially the same" and used on products that are "substantially identical." *See Big Blue v. IBM*, 19 U.S.P.Q.2d 1072, 1075, 1991 WL 326549 (Trademark Tr. & App. Bd.1991); *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1048 (9th Cir. 1999); 15 U.S.C. § 1127; *Hana Financial, Inc. v. Hana Bank*, 735 F.3d 1158, 1166 (9th Cir. 2013), *aff'd*, 135 S. Ct. 907 (2015). "[T]he later mark should not materially differ from or alter the character of the mark attempted to be tacked." *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1048 (9th Cir. 1999). "Commercial

impression" is to be determined through the "eyes of the consumer" meaning the "perspective of the ordinary purchaser of these kinds of goods or services." *Hana Fin., Inc.*, 574 U.S. 418 (quoting 3 J. McCarthy, Trademarks and Unfair Competition § 17:26, p. 17–71 (4th ed. 2014)).

The test for tacking is different from and more stringent than the test for infringement:

> The test for infringement is whether there is a likelihood that consumers would confuse the marks (or, more precisely, a likelihood that the marks would confuse the consumers). The test for tacking is whether two marks make the same commercial impression—not whether it is likely that they will make the same commercial impression.

*Navistar Int'l Transp. Corp. v. Freightliner Corp.*, No. 96 C 6922, 1998 WL 911776, at *4 (N.D. Ill. Dec. 28, 1998). *See also Hansen Beverage Co. v. Cytosport, Inc.*, No. CV 09-0031-VBF(AGRX), 2009 WL 5104260, at *5 (C.D. Cal. Nov. 4, 2009) ("The standard of 'similarity' for purposes of determining 'tacking' is different and more stringent than the analysis for determining whether two marks are "confusingly similar" for purposes of trademark infringement."). "The Supreme Court's plain language makes clear that the tacking doctrine was designed for, and is applied to, scenarios involving an entity that makes slight changes to a mark that it is already using in commerce." *Talent Mobile Dev., Inc. v. Headios Grp.*, No. EDCV180156DOCDFMX, 2018 WL 3830904, at *8 (C.D. Cal. June 4, 2018).

While fact intensive, "[i]f the facts warrant it, a judge may decide a tacking question on a motion for summary judgment or for judgment as a matter of law." *Hana Fin., Inc. v. Hana Bank*, 574 U.S. 418 (2015). Specifically, Courts may require evidence of commercial impression from the viewpoint of the consumer to overcome a motion for summary judgment with respect to an assertion of priority based on a tacked mark: "In determining whether the marks have the same continuing commercial impression, the visual or aural appearance may be instructive. Commercial impression, however, should be resolved by considering a range of evidence, *ideally including consumer survey evidence*." *Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A.*

1    *DE C.V.*, 188 F. Supp. 3d 22, 58 (D.D.C. 2016), *aff'd*, 743 F. App'x 457 (D.C. Cir. 2018) (quoting

2    *Hana Fin., Inc.*, 735 F.3d 1158, 1164 (9th Cir.2013)) (emphasis added).

3        Here, as discussed above, Apple's Infringing Memoji is visually different from Lucky

4    Bunny's MEmoji, and the types of products being advertised could not be considered substantially

5    identically, much less in the same category (especially now that Apple is expanding Memoji's use

6    to Apple Music). In cases where a party has asserted tacking for purposes of priority, the

7    capitalization and font of the marks sought to be tacked has mattered to the priority determination.

8    *See, e.g., Data Concepts*, 150 F.3d at 623–24 (finding "DCI" and "dci" too dissimilar to support

9    tacking); *Fifth Ave. of Long Island Realty Assocs. v. Caruso Mgmt. Co.*, 718 F. Supp. 2d 292, 309

10   (E.D.N.Y. 2010) (finding tacking inapplicable where marks sought to be tacked used "different

11   styles and fonts" for some of the same words).  Even if the two marks looked the same, the visual

12   appearance of the two marks alone does not amount to evidence of consumers' commercial

13   impression.  More importantly, it does not rise to the level of creating a genuine issue of material

14   fact regarding Apple's tacking assertion.  "The Court's consideration of these marks, side-by-side

15   and without any evidence concerning how consumers in the marketplace perceive them, does not

16   compel the conclusion that they present the same continuing commercial impression." *Paleteria*

17   *La Michoacana, Inc.*, 188 F. Supp. 3d at 58.

18       In addition to Lucky Bunny's MEmoji and Apple's Infringing Memoji being used in

19   completely different manners and on completely different goods, Apple has presented no

20   ***affirmative evidence*** regarding consumer impression of those uses, including any survey evidence,

21   testimonials, or other evidence.  There is not even evidence in the record regarding who the

22   "ordinary consumer" of Lucky Bunny's App was.  Courts have determined that survey evidence

23   is not always necessary; however, where, as here, the party asserting tacking for priority purposes

24   has presented no evidence of consumer impression of the marks, summary judgment is proper.

25   *See Newmark Realty Capital, Inc. v. BGC Partners, Inc.*, No. 16-CV-01702-BLF, 2017 WL

26

8294175, at *19 (N.D. Cal. Nov. 16, 2017), *order suspended*, No. 16-CV-01702-BLF, 2017 WL 8314663 (N.D. Cal. Dec. 18, 2017), and *appeal dismissed*, No. 18-15776, 2019 WL 1975883 (9th Cir. Jan. 7, 2019) ("At this juncture, consumer surveys are not required to show perception in order to evaluate tacking. That said, the Court agrees with Plaintiff that Defendant has not sufficiently shown by other evidence that consumers view NEWMARK and its other marks as identical because it has not pointed to supporting evidence."); *Paleteria La Michoacana, Inc.*, 188 F. Supp. 3d at 59 ("Courts have widely recognized that the key question in a tacking analysis is how consumers perceive the marks. The Court cannot find that the marks create the same continuing commercial impression based on visual appearance alone; more is needed.").

Apple does not present any evidence that consumers would regard Lucky Bunny's MEmoji as the same as Apple's Infringing Memoji, and thus they cannot be considered the same or a continuation of the same commercial impression. *Cf. Levi Strauss & Co. v. GTFM, Inc.*, 196 F. Supp. 2d 971, 984 (N.D. Cal. 2002) ("Tacking is allowed, therefore, where the two marks are so similar that consumers would regard them as essentially the same.").  Because Lucky Bunny's assignment to Apple is the basis for Apple's assertion of priority dating back to 2014 but Apple cannot tack Lucky Bunny's prior use onto its own actual use of the Infringing Memoji, Social Tech is entitled to summary judgment on this affirmative defense.

**B.     Summary Judgment Should Be Granted in Favor of Social Tech Regarding Apple's Counterclaim for Trademark Infringement**

"In order to prevail on a common law trademark infringement [counter]claim, a trademark holder must show, inter alia, priority of use." *Spin Master, Ltd. v. Zobmondo Entm't, LLC*, 944 F. Supp. 2d 830, 849 (C.D. Cal. 2012) (citing *Am. Petrofina, Inc. v. Petrofina of Cal., Inc.*, 596 F.2d 896, 897 (9th Cir.1979)).  As discussed above, there is no question of material fact regarding Apple's claim of priority based on the assignment from Lucky Bunny.  Instead, Apple must rely on its own first use of the mark for priority, allegedly in June 2018.  And, as discussed above,

Social Tech's constructive first use date is April 1, 2016, more than two years before Apple even announced its Memoji software feature.  Dkt. 16-1 at 2.  Because priority is a requirement to prevail on a trademark infringement claim, summary judgment should be granted in favor of Social Tech with respect to Apple's counterclaim for trademark infringement.

### C.  Social Tech Is Entitled to Summary Judgment on Apple's Laches, Estoppel, and Acquiescence Affirmative Defenses

In addition to publicly filing an extension with the PTO on its intent-to-use application in March 2016, Social Tech informed Apple's agent directly that it was not willing to sell Social Tech's rights in its MEMOJI intent-to-use application or future registered trademark in May 2018, prior to Apple's announcement of its Memoji software feature in June 2018.  Dkt. 32 ¶¶ 32-33; Ex. B at at APL-STECH_00000217-20, 225; Ex. F at 136:10-138:21.  Shortly after Social Tech learned of Apple's decision to move forward using the Infringing Memoji, Social Tech sent a letter to Apple on June 13, 2018, informing Apple of Social Tech's continued intention to use its MEMOJI mark.  Ex. T.  Social Tech did, in fact, release its MEMOJI app on the Google Play Store on June 28, 2018.  Ex. F at 202:11-13; 213:15-24.  On September 18, 2018, the PTO registered Social Tech's MEMOJI mark, and Social Tech filed the present action within nine days.  Ex. B at 248; Dkt 1. Despite this short and reasonable period of time, Apple has raised the affirmative defenses of laches, acquiescence, and estoppel, arguing that Social Tech unreasonably delayed in bringing this lawsuit.

### 1.  Laches Is Inapplicable Because Social Tech Did Not Unreasonably Delay in Bringing Its Claims

A successful laches affirmative defense requires that a defendant show: "(1) the claimant unreasonably delayed in filing suit based on when the claimant knew or should have known of the allegedly infringing conduct; and (2) as a result of the delay, the defendant suffered prejudice." *Novadaq Techs., Inc. v. Karl Storz GmbH & Co. K.G.*, 143 F. Supp. 3d 947, 955 (N.D. Cal. 2015), on reconsideration sub nom. *Novadaq Techs., Inc. v. Karl Storz Gmbh & Co.*, No. 14-CV-

04853-PSG, 2015 WL 11110632 (N.D. Cal. Dec. 11, 2015).

Courts grant a strong presumption that a claim brought within the most closely analogous state law claim statute of limitations period is not unreasonably delayed. *Novadaq Techs.*, 143 F. Supp 3d at 955; *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1138-39 (9th Cir. 2006). Under California law, the applicable statute of limitations for a claim of state trademark infringement is four years. Cal. Bus. & Prof. Code ¶ 17200; *Novadaq Techs.*, 143 F. Supp 3d at 955. Further, while a registration based on a previous intent-to-use application confers a constructive use date of the trademark as of the date of the intent-to-use application, prior to actual use in commerce, an intent-to-use trademark applicant cannot bring an action for trademark infringement. *See, e.g.*, *Kelly Servs., Inc. v. Creative Harbor, LLC*, 124 F. Supp. 3d 768, 778 (E.D. Mich. 2015) ("an intent-to-use application does not, by itself, confer any rights enforceable against others." (internal quotations omitted)); *Dunn Computer Corp. v. Loudcloud, Inc.*, 133 F. Supp. 2d 823, 832 (E.D. Va. 2001) ("no statutory trademark rights to preclude others from using a mark vest in the applicant until the PTO registers the trademark"). The limitations period for laches starts when the plaintiff "knew or should have known about the likelihood of confusion between its mark and [the defendant's] mark." *Internet Specialties W., Inc. v. Milon-DiGiogio Enters., Inc.*, 559 F.3d 985, 990 (9th Cir. 2009). The Ninth Circuit only applies laches to trademark infringement claims "where the trademark holder knowingly allowed the infringement mark to be used without objection for a lengthy period of time." *Brookfield*, 174 F.3d at 1061.

Because Social Tech's trademark was registered as of September 18, 2018 (Ex. B at APL-STECH_00000248), that is the appropriate start date for the laches analysis. Social Tech filed the instant action nine days after the PTO registered its trademark (*see* Dkt. 1), which is far less than the four-year statute of limitations applicable to the laches analysis here. In any event, Social Tech informed Apple's agent that Social Tech was not willing to sell its MEMOJI intent-to-use application well before Apple even announced its intent to use the Memoji name for its software

feature.  Dkt. 16-1 at 2; Dkt. 32 ¶¶ 32-33; Ex. F at 136:10-138:21.  Further, just after learning that Apple intended to use "Memoji" for its software feature, Social Tech sent a letter to Apple stating that Social Tech continued with the intention to use the MEMOJI mark via a phone app.  Ex. T.  Nevertheless, Apple pressed forward with its determination to call its software feature Memoji.  Apple cannot conjure a delay or prejudice where it knew of Social Tech's continued intent to use its MEMOJI mark prior to Apple's own use of Memoji in commerce.

### 2.    Acquiescence Is Inapplicable

Because Apple's laches affirmative defense fails as a matter of law, its acquiescence defense fails as well.  The acquiescence affirmative defense includes the two elements of laches and adds an additional element of an "*affirmative act*" and that the "senior user actively represented it would not assert a right or claim."  *Eat Right Foods Ltd. v. Whole Foods Mkt., Inc.*, 880 F.3d 1109, 1121 (9th Cir. 2018) (emphasis in original) (quoting *Seller Agency Council, Inc. v. Kennedy Ctr. for Real Estate Educ., Inc.*, 621 F.3d 981, 988 (9th Cir. 2010)).

Apple's affirmative acquiescence defense also fails for the independent reason that Apple has not and cannot produce any evidence that Social Tech affirmatively consented to Apple's infringement of Social Tech's MEMOJI mark.  There is no evidence in this case that, in the two and one-half months after Social Tech learned of Apple's intended infringing use of Social Tech's MEMOJI mark and before Social Tech brought this lawsuit regarding that infringement, Social Tech did *anything* that could be construed as consenting to Apple's infringing use.  Summary judgment should therefore be granted on the acquiescence affirmative defense.

### 3.    Estoppel Is Inapplicable

Similar to its laches defense, Apple's estoppel affirmative defense fails because Apple has failed to present any evidence that it suffered prejudice as a result of Social Tech's actions.

> A defendant in a trademark infringement lawsuit claiming estoppel must show (1) that the plaintiff knew the defendant was selling potentially infringing products; (2) the plaintiff's actions or failure to act led the defendant to reasonably believe that

the plaintiff did not intend to enforce its trademark right against defendant; (3) that defendant did not know the plaintiff actually objected to the sale of its potentially infringing product; and (4) due to its reliance on the plaintiff's actions, defendant will be materially prejudiced if the plaintiff is allowed to proceed with its claim.

*Novadaq Techs.*, 143 F. Supp 3d at 955 (internal quotations omitted).  Where a defendant cannot show any "legally cognizable prejudice as a result of [the plaintiff's] inaction" in the context of laches, its estoppel defense also must fail as a matter of law.  *Adidas-Am., Inc. v. Payless Shoesource, Inc.*, 546 F. Supp. 2d 1029, 1075 (D. Or. 2008).

Apple's affirmative estoppel defense additionally fails because nothing about Social Tech's conduct could reasonably be interpreted to suggest that it did not intend to enforce its trademark rights upon registration.  To the contrary, Social Tech's actions were clearly indicated intention to use MEMOJI mark when it: 1) filed for an extension to submit its Statement of Use in March 2018; 2) told Apple's agent that it did not want to sell any rights to MEMOJI in May 2018; 3) sent a letter to Apple stating that Social Tech intended to proceed with its MEMOJI app and registration of its MEMOJI mark nine days after Apple's first public announcement; and 4) filed the instant action just days after it was granted the MEMOJI trademark registration as soon as it could assert trademark rights against infringing Apple.  *See* Ex. B at at APL-STECH_00000217-20, 225, 248; Dkt. 32 ¶¶ 32-33; Ex. F at 136:10-138:21; Ex. T; Ex. V; Dkt. 1.

Apple's estoppel defense also fails because Apple cannot and has not presented any evidence that Social Tech's alleged inaction caused Apple to infringe Social Tech's mark.  There is, therefore, no evidence that Apple "actually relied on [Social Tech's] alleged inaction." *Adidas-Am., Inc.*, 546 F. Supp. 2d at 1075.  Because Apple cannot present any evidence to support the required elements of the estoppel affirmative defense, summary judgment should be granted in favor of Social Tech.

## V.	CONCLUSION

For the foregoing reasons, Social Tech should be granted partial summary judgment.

1

2

3

4    Dated: October 3, 2019                      Respectfully submitted,

5                                                PIERCE BAINBRIDGE BECK
                                                 PRICE & HECHT LLP
6
                                                 /s/ David L. Hecht
7                                                David L. Hecht (admitted pro hac vice)
                                                 dhecht@piercebainbridge.com
8                                                277 Park Avenue, 45th Floor
                                                 New York, New York 10172
9                                                Attorney for Plaintiff Social
                                                 Technologies LLC
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1
2

### CERTIFICATE OF SERVICE

3

On October 3, 2019 I electronically filed the foregoing with the Clerk of the Court by using

4

CM/ECF system which will send a notice of electronic filing to all persons registered for ECF.  All

5

copies of documents required to be served by Fed. R. Civ. P. 5(a) and L.R. 5-1 have been so served.

6
7

_____/s/ David L. Hecht_____
David L. Hecht

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28