Diana M. Torres (S.B.N. 162284)
diana.torres@kirkland.com
Lauren J. Schweitzer (S.B.N. 301654)
lauren.schweitzer@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400

Dale M. Cendali (S.B.N. 1969070)
dale.cendali@kirkland.com
Mary Mazzello (admitted *pro hac vice*)
mary.mazzello@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800

Megan L. McKeown (admitted *pro hac vice*)
megan.mckeown@kirkland.com
KIRKLAND & ELLIS LLP
609 Main Street
Houston, TX 77002
Telephone: (713) 836-3499

Attorneys for Defendant Apple Inc.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| SOCIAL TECHNOLOGIES LLC, a Georgia limited liability company, <br><br> Plaintiff, <br><br> vs. <br><br> APPLE INC., a California corporation, <br><br> Defendant. | ) CASE NO.: 3:18-cv-05945-VC <br> ) <br> ) **DEFENDANT APPLE INC.'S NOTICE OF** <br> ) **MOTION AND MOTION FOR SUMMARY** <br> ) **JUDGMENT; OPPOSITION TO SOCIAL** <br> ) **TECHNOLOGIES LLC'S MOTION FOR** <br> ) **SUMMARY JUDGMENT; AND** <br> ) **MEMORANDUM OF LAW IN SUPPORT** <br> ) **THEREOF** <br> ) <br> ) Hearing: December 12, 2019 <br> ) Time: 10:00 a.m. <br> ) Courtroom: 04, 17th Floor <br> ) Judge: Hon. Vince Chhabria |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on December 12, 2019 at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 4, 17th Floor, of the above-captioned Court, located at 450 Golden Gate Avenue, San Francisco, California 94102, defendant Apple Inc. ("Apple") hereby moves for an order pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56-1 for summary judgment on plaintiff Social Technologies LLC's ("Social Tech") claims for (i) Trademark Infringement – Lanham Act (Count I), (ii) Trademark Infringement – Common Law (Count II), (iii) Unfair Competition – Cal. Bus. & Prof. Code § 17200 and Common Law (Count III), and (vi) Declaratory Judgment that Social Tech's Trademark Registrations are Valid and Enforceable Under the Requirements of the PTO and the Lanham Act (Count IV), as well as Apple's counterclaim for Petition for Cancellation of Social Tech's Trademark Registration (Count I).  If Apple's motion is granted, Apple intends to withdraw its counterclaim for infringement (Count II), resolving Social Tech's claim for Declaration of Non-Infringement Under Common Law (Count V).  Thus, summary judgment for Apple effectively will resolve the entire dispute.

*First*, summary judgment on Social Tech's claims (Counts I–IV) and Apple's cancellation counterclaim (Count I) is proper because (i) Social Tech does not have common law trademark rights to assert against Apple, (ii) Social Tech cannot rely on any alleged common law rights from Christopher Anthony, and (iii) Social Tech's trademark registration is invalid.

*Second*, summary judgment on Social Tech's claims (Counts I–IV) and Apple's cancellation counterclaim (Count I) is appropriate for the independent reason that Apple, via an acquisition of the common law rights of its predecessor in interest, has priority in the MEMOJI mark.

*Third*, summary judgment on Social Tech's infringement claims (Counts I–III) is appropriate because Social Tech cannot meet its burden of establishing a likelihood of confusion between its mark and Apple's.

This motion is based on this Notice, the Memorandum of Law in Support of Apple Inc.'s Motion for Summary Judgment that follows, the declarations of Diana Torres, Anindya Ghose, Garry Kitchen, and Itamar Simonson and exhibits thereto, the pleadings and other materials on file

in this action, and on such other and further evidence or argument as the Court may consider at or

before the hearing on this motion.

Dated: October 30, 2019                             KIRKLAND & ELLIS LLP


                                                   */s/ Dale M. Cendali*
                                                   Dale M. Cendali (S.B.N. 1969070)

                                                   Attorney for Defendant Apple Inc.

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ................................................................ 1

II.   FACTUAL BACKGROUND .................................................................... 4

    A.    Apple's MEMOJI Software Feature. .......................................... 4

    B.    Lucky Bunny's Prior Use of MEMOJI And Assignment to Apple. ........................... 4

        1.    Lucky Bunny's Use of MEMOJI. ................................... 5

        2.    Apple's Acquisition of Lucky Bunny's Rights. ................. 6

        3.    Apple's MEMOJI Software Feature Announcement and Launch. .................. 6

    C.    Social Tech's Fraudulent Registration of the Memoji Design Mark to Sue Apple. ................................................................ 7

        1.    Intent-to-Use Application. ......................................... 7

        2.    Social Tech Rushes an App to Market to Reserve Trademark Rights. .............. 8

        3.    Social Tech Sends Baseless Demands to Apple. ............... 8

    D.    Social Tech's Acquisition of Anthony's Alleged Rights. .............. 9

III.  APPLE IS ENTITLED TO SUMMARY JUDGMENT BECAUSE SOCIAL TECH HAS NO RIGHTS IN THE WORD MEMOJI OR THE MEMOJI DESIGN MARK ......... 10

    A.    Social Tech's Common Law Claims Fail Because It Has No Common Law Rights That Predate Apple's Use. .................................. 10

    B.    Summary Judgment Is Proper Because Social Tech's Registration Is Invalid. .......... 10

        1.    Social Tech Procured Its Registration through Fraud on the PTO. ............ 10

        2.    Social Tech's Use is Not Bona Fide. ........................... 12

IV.   APPLE HAS PRIOR RIGHTS TO THE TRADEMARK MEMOJI ................... 14

    A.    Apple Is the Prior User of MEMOJI. ......................................... 14

    B.    Social Tech's Argument That Apple's Assignment Was in Gross Fails as a Matter of Law. ..................................................... 15

    C.    Social Tech's Tacking Argument Fails Because Apple and Lucky Bunny Used the Same Mark in Virtually Identical Formats On Similar Software. ............ 17

        1.    Tacking Is Not An Issue As Apple and Lucky Bunny Use the Same Mark. ................................................... 18

        2.    Social Tech's Arguments Against Tacking Fail. ............... 19

### TABLE OF CONTENTS (CONT'D)

|  |  | Page |
|---|---|---|
| V. | SOCIAL TECH HAS PRODUCED NO EVIDENCE TO MEET ITS BURDEN OF ESTABLISHING A LIKELIHOOD OF CONFUSION | 21 |
| | A. Social Tech's Own Survey Shows There Is No Likelihood of Reverse Confusion. | 21 |
| | B. Social Tech Cannot Meet Its Burden of Showing That Apple's MEMOJI Mark Is Similar to Social Tech's MEMOJI Design Mark. | 22 |
| | C. Social Tech's Purported Mark Is At Best Weak. | 23 |
| | D. Social Tech Cannot Meet Its Burden of Establishing that the Parties' Products Are Proximate. | 24 |
| | E. Social Tech Cannot Meet Its Burden of Showing that the Parties Use The Same Marketing Channels. | 24 |
| | F. Social Tech Cannot Meet Its Burden of Showing that Its Consumers Do Not Exercise Care In Downloading Its App. | 24 |
| | G. Social Tech Cannot Meet Its Burden of Showing that Apple Acted In Bad Faith. | 24 |
| | H. Social Tech Cannot Meet Its Burden of Showing that the Parties Are Likely To Expand Into One Another's Markets | 25 |
| VI. | SOCIAL TECH'S MOTION FOR SUMMARY JUDGMENT ON APPLE'S LACHES, ESTOPPEL, AND ACQUIESCENCE DEFENSES SHOULD BE DENIED AS MOOT | 25 |
| VII. | CONCLUSION | 25 |
| | CERTIFICATE OF SERVICE | 27 |

**TABLE OF EXHIBITS**

| Declaration | Exhibit No. | Description of Document |
|---|---|---|
| Torres | 1 | Email chain among Social Technologies LLC ("Social Tech"), Justin Grant, and Idrees Ashraf dated from July 6, 2018 to July 14, 2018 bearing the subject line "Memoji Translations," produced as SocialTech_0000796–799, and used as Exhibit 80 during the depositions of Mr. Bonet and Mr. Grant |
| Torres | 2 | Email chain among Social Tech, Justin Grant, and Idrees Ashraf from June 7, 2018 to June 18, 2018 re "MEMOJI | Stage 1," produced as SocialTech_0000752–758, and used as Exhibit 75 during the depositions of Mr. Bonet and Mr. Grant |
| Torres | 3 | File Wrapper for Social Tech's trademark application for the MEMOJI design mark, Serial No. 86/961,925, MEMOJI, produced as APL-STECH_00000165–286, and marked as Exhibit 227 during the deposition of Mr. Bonet |
| Torres | 4 | Excerpts from the Transcript of Deposition of Samuel E. Bonet, Social Tech's 30(b)(6) witness and co-founder, dated July 3, 2019 |
| Torres | 5 | Homepage for the domain thememojiapp.com, the website for Lucky Bunny LLC's and Big 3 Ent., LLC's (collectively, "Lucky Bunny") MEMOJI app, from Dec. 20, 2014, produced as APL-STECH_00000023–25 and used as Exhibit 21 during the deposition of Lucky Bunny |
| Torres | 6 | Excerpts from Apple Inc.'s ("Apple") Responses and Objections to Social Tech's First Set of Interrogatories and verification page, dated March 18, 2019 |
| Torres | 7 | Apple webpage titled "Use Memoji on your iPhone X or iPad Pro," dated Sept. 19, 2019, produced as SocialTech_0001279–1282 |
| Torres | 8 | Compendium of publicly available articles describing Apple's Memoji software feature |
| Torres | 9 | Excerpts from the Transcript of Deposition of Kurt Knight, Apple's Senior Director, iOS Product Marketing and 30(b)(6) witness on topics related to the marketing of Apple's Memoji software feature and Apple's selection of the name Memoji, dated June 21, 2019 |

| Declaration | Exhibit No. | Description of Document |
|---|---|---|
| Torres | 10 | Excerpts from the Transcript of Deposition of Thomas R. La Perle, Apple's Director, Legal and 30(b)(6) witness on Apple's clearance and acquisition of the trademark MEMOJI, among other things, dated June 18, 2019 |
| Torres | 11 | Excerpts from the Transcript of Deposition of Cameron Ehrlich, Lucky Bunny's 30(b)(6) witness and founder, dated June 8, 2019 |
| Torres | 12 | Spreadsheet showing the "[t]otal number of downloads by year and state" for Lucky Bunny's MEMOJI app, which was attached to the Declaration of Michael Jaynes, Apple's Senior Finance Manager, Dkt. No. 34-1, filed in support of Apple's Opposition to Social Tech's Motion for Preliminary Injunction, and marked as Exhibit No. 119 in Mr. Jaynes' deposition. A version of this document also was produced under Bates number APL-STECH_00000843–853 |
| Torres | 13 | Spreadsheet containing data from 2014 through 2018 concerning Apple's App Store, and marked as Exhibit 130 during Mr. Jaynes' deposition. A version of this document also was produced as APL-STECH_00006226–6227 |
| Torres | 14 | Lucky Bunny's Press Kit for its app, produced as LB000339–342, and marked as Exhibit 14 at Mr. Ehrlich's deposition |
| Torres | 15 | Compendium of social media posts for Lucky Bunny's MEMOJI app from celebrities and other endorsers of the app |
| Torres | 16 | Video Clip of *The Ellen DeGeneres Show* during which Lucky Bunny's MEMOJI app was promoted, produced as APL-STECH_00006230 |
| Torres | 17 | Audio Clip of *The Howard Stern Show* during which Lucky Bunny's MEMOJI app was promoted, produced as APL-STECH_00006225 |
| Torres | 18 | Compendium of promotional materials for Lucky Bunny's MEMOJI app from national press sources such as *USA Today*, *AdWeek*, and *The Huffington Post* |
| Torres | 19 | File Wrapper for Lucky Bunny's trademark application for the word mark MEMOJI filed on October 29, 2014, Serial No. 86/438,926, produced as APL-STECH_00000138–164 |

| Declaration | Exhibit No. | Description of Document |
|---|---|---|
| Torres | 20 | File Wrapper for Lucky Bunny's trademark application for the word mark MEMOJI filed on April 3, 2017, Serial No. 87/397,135, produced as APL-STECH_00000287–382, and marked as Exhibit 231 during Mr. Bonet's deposition |
| Torres | 21 | Trademark Agreement between Lucky Bunny and Apple's subsidiary, Memofun Apps LLC, concerning the MEMOJI mark, dated May 31, 2018, produced as APL-STECH_00000867–876, marked as Exhibit 101 in Mr. La Perle's deposition |
| Torres | 22 | Trademark Assignment between Memofun Apps LLC and Apple, dated June 4, 2018, produced as APL-STECH_00000855, marked as Exhibit 107 in Mr. La Perle's deposition |
| Torres | 23 | Apple's Press Release, dated June 4, 2018, concerning its Memoji software feature, titled "Apple previews iOS12," produced as APL-STECH_00000578–591, a version of which was attached as Exhibit 1 to Mr. Knight's Declaration in Opposition to Social Tech's Motion for Preliminary Injunction |
| Torres | 24 | Apple Press Release titled "Apple previews iOS13," dated Aug. 2, 2019, and marked as Exhibit 335 during the deposition of Social Tech's expert, Andreas Groehn |
| Torres | 25 | Excerpts from the Transcript of Deposition of Robert Long, Social Tech's co-founder, dated June 11, 2019 |
| Torres | 26 | Social Tech's Objections and Responses to Defendant's Second Set of Interrogatories, dated May 10, 2019 |
| Torres | 27 | Social Tech's LinkedIn Page, preserved Oct. 1, 2018, produced as APL-STECH_00000512–513, and marked as Exhibit 235 in Mr. Bonet's deposition |
| Torres | 28 | Excerpts from the Transcript of Deposition of Justin Grant, founder of FlexDev, Social Tech's app developer for the MEMOJI app, dated June 12, 2019 |
| Torres | 29 | Email from Justin Grant to Social Tech re Payment, dated Dec. 9, 2018, produced as FlexDevGrant_0543–546, and used as Exhibit 72 during the depositions of Mr. Bonet and Mr. Grant |
| Torres | 30 | Email dated June 7, 2018 from Social Tech to Idrees Ashraf and Justin Grant with the subject line "MEMOJI | Stage 1," produced as SocialTech_0000774 |

| Declaration | Exhibit No. | Description of Document |
|---|---|---|
| Torres | 31 | Letter from Social Tech's prior counsel, Gregori Mavronicolas, to Mr. La Perle re "'MEMOJI' Trademark," dated June 13, 2018 |
| Torres | 32 | Letter from Apple's counsel, Glenn Gunderson, to Gregori Mavronicolas re "MEMOJI trademark - Apple / Social Technologies," dated June 14, 2018 |
| Torres | 33 | Letter from Gregori Mavronicolas to Glenn Gunderson re "'MEMOJI' Trademark," dated June 22, 2018 |
| Torres | 34 | Apple Press Release titled "Highlights from WWDC 2018," dated June 4, 2019, produced as APL-STECH_00000461–466 |
| Torres | 35 | Google Report re "Install Counts" for Social Tech's MEMOJI app, produced as GOOG-MEMO-00000009, and used as Exhibit 252 during the deposition of Mr. Bonet |
| Torres | 36 | Excerpts from Transcript of Deposition of Christopher Anthony, dated June 25, 2019 |
| Torres | 37 | Log concerning the status and availability of Mr. Anthony's app, which used the word "Memoji," marked as Exhibit 215 during the deposition of Stoney Gamble, and produced as APL-STECH_00012764–12766 |
| Torres | 38 | Excerpts from Transcript of Deposition of Stoney Gamble, Apple's Application Support Manager and 30(b)6) witness on App Store procedures, dated June 27, 2019 |
| Torres | 39 | Spreadsheet concerning downloads of Mr. Anthony's app from the App Store, produced as APL-STECH_00001335–1337 and marked as Exhibit 129 during the deposition of Mr. Jaynes |
| Torres | 40 | Excerpts from the Transcript of Deposition of Michael Jaynes, Apple's Senior Finance Manager and 30(b)(6) witness on App Store data, dated June 20, 2019 |
| Torres | 41 | Trademark Agreement between Christopher Anthony and Social Tech, dated May 13, 2019, produced as SocialTech_0000870–886, and used as Exhibit 189 in the depositions of Mr. Bonet and Mr. Anthony |
| Torres | 42 | Screenshot of SocialTechnologiesLLC/Memoji-iOS GitHub, produced as SocialTech_0000887, and used as Exhibit 233 during the deposition of Mr. Bonet |

| Declaration | Exhibit No. | Description of Document |
|---|---|---|
| Torres | 43 | Email Alert from Wells Fargo to S. Bonet titled "You sent money with Zelle" concerning payment to "Justin Grant" and other payment alerts related to Social Tech's Memoji App, produced as SocialTech_0000905–907 and FlexDevGrant_0231, and marked as Exhibit 279 during the deposition of Mr. Bonet. |
| Torres | 44 | Email from Social Tech to Justin Grant re "Memoji Functionality Description," dated June 6, 2018, produced as FlexDevGrant_0176, and marked as Exhibit 237 during the deposition of Mr. Bonet |
| Torres | 45 | Email chain among Social Tech, Justin Grant, and Idrees Ashraf dated from June 26, 2018 to June 28, 2018 re "Memoji Release for iOS and Android," produced as FlexDevGrant_0430–441 and used as Exhibit 79 during the depositions of Mr. Bonet and Mr. Grant |
| Torres | 46 | The Apple App Store Preview Page for Lucky Bunny's MEMOJI app, produced as LB000818 |
| Torres | 47 | Excerpt of MEMOJI announcement from June 4, 2018 Apple WWDC 2018 Keynote presentation in San Jose, California, available at https://www.youtube.com/watch?v=UThGcWBIMpU. |
| Torres | 48 | Twitter page for Lucky Bunny's MEMOJI app, @Thememojiapp, attached as Exhibit 13 to Social Tech's Motion for Preliminary Injunction |
| Torres | 49 | Declaration of Andreas Groehn, Social Tech's expert, dated July 31, 2019 |
| Torres | 50 | Excerpts from Transcript of Deposition of Andreas Groehn, dated Sept. 20, 2019 |
| Torres | 51 | Screenshot displaying Apple's Memoji software feature, produced as APL-STECH_00008926 |
| Torres | 52 | Screenshots from Apple's iPhone X Animoji demonstration, available at: https://www.youtube.com/watch?v=VPWQrNQICU0, released Sept. 14, 2017 |
| Torres | 53 | Facebook Ads Manager for S. Bonet, produced as SocialTech_0000854 |

| Declaration | Exhibit No. | Description of Document |
|---|---|---|
| Torres | 54 | Invoice FlexDev to S. Bonet, dated Sept. 10, 2018, produced as FlexDevGrant_0067–68, and marked as Exhibit 87 during Mr. Grant's deposition |
| Torres | 55 | Apple Webpage titled "Apple Trademark List" as of Oct. 21, 2019 |
| Torres | 56 | Google Play Webpage for Social Tech's MEMOJI app, dated Oct. 21, 2019 |
| Ghose | 1 | Expert Report of Apple's expert, Dr. Anindya Ghose, dated July 31, 2019 |
| Ghose | 2 | Rebuttal Expert Report of Apple's expert, Dr. Anindya Ghose, dated Sept. 6, 2019 |
| Kitchen | 1 | Rebuttal Expert Report of Apple's expert, Garry Kitchen, dated Sept. 6, 2019 |
| Simonson | 1 | Rebuttal Expert Report of Apple's expert, Dr. Itamar Simonson, dated Sept. 6, 2019 |

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alpha Indus., Inc. v. Alpha Steel Tube & Shapes, Inc.*,
   616 F.2d 440 (9th Cir. 1980) ................................................................23, 24

*AMF, Inc. v. Sleekcraft Boats*,
   599 F.2d 341 (9th Cir. 1979) ...........................................................................21

*Barrio Fiesta, LLC v. Northridge Foods Int'l, Inc.*,
   No. 15-cv-02669, 2017 WL 1832008 (N.D. Cal. May 5, 2017)...................14

*Beech-Nut Packing Co. v. P. Lorillard Co.*,
   299 F. 834 (D.N.J. 1924), *aff'd*, 273 U.S. 629 (1927).........................19, 20

*Campbell v. Acuff-Rose Music, Inc.*,
   510 U.S. 569 (1994)...........................................................................................25

*Casual Corner Assocs., Inc. v. Casual Stores of Nev., Inc.*,
   493 F.2d 709 (9th Cir. 1974) ...........................................................................10

*Chance v. Pac-Tel Teletrac Inc.*,
   242 F.3d 1151 (9th Cir. 2001) ...................................................................12, 13

*Chasse v. Humphreys*,
   No. 07-cv-189, 2009 WL 3334912 (D. Or. Oct. 13, 2009) .........................25

*City of N.Y. v. Tavern on the Green, L.P.*,
   427 B.R. 233 (S.D.N.Y. 2010)..........................................................................11

*Clark & Freeman Corp. v. Heartland Co.*,
   811 F. Supp. 137 (S.D.N.Y. 1993)...................................................................17

*Data Concepts, Inc. v. Digital Consulting, Inc.*,
   150 F.3d 620 (6th Cir. 1998) ...........................................................................20

*Dropbox, Inc. v. Thru Inc.*,
   No. 15-cv-01741, 2016 WL 7116717 (N.D. Cal. Dec. 7, 2016),
   *aff'd*, 728 F. App'x 717 (9th Cir. 2018)........................................................15

*E. & J. Gallo Winery v. Gallo Cattle Co.*,
   967 F.2d 1280 (9th Cir. 1992) ....................................................................15, 17

*eMachines, Inc. v. Ready Access Memory, Inc.*,
   No. 00-cv-00374, 2001 WL 456404 (C.D. Cal. Mar. 5, 2001).................16, 17

*Farmasino, Inc. v. Farmasino Pharms. (Jiangsu) Co., Ltd,*
No. 15-cv-01877, 2016 WL 7655740 (C.D. Cal. June 20, 2016)............................................14, 15

*Fifth Avenue of Long Island Realty Assocs. v. Caruso Mgmt. Co.,*
718 F. Supp. 2d 292 (E.D.N.Y. 2010) ....................................................................................20

*Freedom Card, Inc. v. JP Morgan Chase & Co.,*
432 F.3d 463 (3d Cir. 2005)....................................................................................................23

*Groupion, LLC v. Groupon, Inc.,*
826 F. Supp. 2d 1156 (N.D. Cal. 2011) ..................................................................................24

*Haggar Clothing Co. v. Merve Optik Sanyi Ve Ticaret Anonim Sirketi,*
No. 91221844, 2016 WL 837732 (T.T.A.B. Feb. 2, 2016) ......................................................19

*Hana Fin., Inc. v. Hana Bank,*
574 U.S. 418 (2015)............................................................................................................18, 19

*Humble Oil & Ref. Co. v Sekisui Chem. Co. Ltd.,*
165 U.S.P.Q. 597 (T.T.A.B. 1970) ..........................................................................................19

*J.T. Colby & Co., Inc. v. Apple Inc.,*
No. 11-cv-4060, 2013 WL 1903883 (S.D.N.Y. May 8, 2013),
*aff'd,* 586 F. App'x 8 (2d Cir. 2014).......................................................................................23

*Jack Wolfskin Ausrustung Fur Draussen GmbH & Co. KGAA v. New Millennium*
*Sports, S.L.U.,*
797 F.3d 1363 (Fed. Cir. 2015)................................................................................................19

*Kabushiki Kaisha Megahouse v. Anjar Co. LLC,*
No. 14-cv-00598, 2014 WL 5456523 (C.D. Cal. Oct. 20, 2014) .................................................16

*La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc.,*
495 F.2d 1265 (2d Cir. 1974)...............................................................................................13, 14

*Lang v. Ret. Living Publ'g Co. Inc.,*
949 F.2d 576 (2d Cir. 1991) ....................................................................................................24

*Mach. Head v. Dewey Glob. Holdings Inc.,*
No. 99-cv-04326, 2001 WL 1747180 (N.D. Cal. Dec. 13, 2001).................................................24

*Main St. Outfitters, Inc. v. Federated Dep't Stores, Inc.,*
730 F. Supp. 289 (D. Minn. 1989).......................................................................................16, 17

*Marketquest Grp., Inc. v. BIC Corp.,*
316 F. Supp. 3d 1234 (S.D. Cal. 2018)....................................................................................19

*Matrix Motor Co., Inc. v. Toyota Jidosha Kabushiki Kaisha,*
290 F. Supp. 2d 1083 (C.D. Cal. 2003) ...............................................................................23, 24

*Melodrama Publ'g LLC v. Santiago,*
   No. 12-cv-7830, 2013 WL 1700929 (S.D.N.Y. Apr. 11, 2013) ...................................11

*Metro Publ'g, Ltd. v. San Jose Mercury News, Inc.,*
   861 F. Supp. 870 (N.D. Cal. 1994) .....................................................................21, 23

*Miyano Mach. USA, Inc. v. MiyanoHitec Mach., Inc.,*
   576 F. Supp. 2d 868 (N.D. Ill. 2008) ...........................................................................19

*MPC Franchise, LLC v. Tarntino,*
   826 F.3d 653 (2d Cir. 2016).................................................................................11, 12

*Nat'l Bakers Servs., Inc. v. Hain Pure Food Co., Inc.,*
   207 U.S.P.Q. (BNA) 701 (T.T.A.B. Aug. 29, 1980) ...................................................20

*Newmark Realty Capital, Inc. v. BGC Partners, Inc.,*
   No. 16-CV-01702-BLF, 2017 WL 8294175 (N.D. Cal. Nov. 16, 2017).......................20

*Niche Audio, Inc. v. Munro Inv. Grp.,*
   No. 91228347, 2018 WL 5173101 (T.T.A.B. Sept. 29, 2018) ......................................19

*Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. DE C.V.,*
   188 F. Supp. 3d 22 (D.D.C. 2016), *aff'd,* 743 F. App'x 457 (D.C. Cir. 2018)............20

*PepsiCo, Inc. v. Grapette Co.,*
   416 F.2d 285 (8th Cir. 1969) .......................................................................................17

*Robi v. Five Platters, Inc.,*
   918 F.2d 1439 (9th Cir. 1990) ...............................................................................10, 11

*Scott Fetzer Co. v. House of Vacuums Inc.,*
   381 F.3d 477 (5th Cir. 2004) .................................................................................21, 22

*Sengoku Works Ltd. v. RMC Int'l, Ltd.,*
   96 F.3d 1217 (9th Cir.), *as modified,* 97 F.3d 1460 (9th Cir. 1996).............................14

*Stark v. Diageo Chateau & Estate Wines Co.,*
   907 F. Supp. 2d 1042 (N.D. Cal. 2012) ......................................................................10

*Stonefire Grill, Inc. v. FGF Brands, Inc.,*
   987 F. Supp. 2d 1023 (C.D. Cal. 2013) .......................................................................22

*Surfvivor Media, Inc. v. Survivor Prods.,*
   406 F.3d 625 (9th Cir. 2005) .................................................................................21, 25

*Visa, U.S.A., Inc. v. Birmingham Tr. Nat'l Bank,*
   696 F.2d 1371 (Fed. Cir. 1982)...............................................................................16, 17

**Statutes**

15 U.S.C. § 1051.....................................................................................................................11

15 U.S.C. § 1057..................................................................................................................2, 14

15 U.S.C. § 1064...............................................................................................................10, 14

15 U.S.C. § 1127............................................................................................................2, 12, 13

**Other Authorities**

McCarthy on Trademarks and Unfair Competition (5th Ed.)....................................20, 21, 22

Trademark Manual of Examining Procedure § 1207.01 (Oct. 2018) ..................................18

## I.      PRELIMINARY STATEMENT

This Court denied Social Technologies LLC's ("Social Tech") motion for a preliminary injunction, finding that Social Tech's claims were "shaky" and its likelihood of success on the merits "questionable—at best."  Dkt. 43.  Discovery has confirmed that (a) Social Tech's trademark registration is not valid, (b) Social Tech does not have priority in the MEMOJI trademark, and (c) Social Tech cannot meet its burden of establishing a likelihood of confusion.  Discovery also has revealed that this case is more about opportunism than law.  In sharp contrast to the rhetoric in Social Tech's motion, rather than expressing concern about Apple Inc.'s ("Apple") alleged infringement, Social Tech's documents are replete with gleeful emails about █████████ ███████████ and buy "Lamborghinis."  Torres Decl., Ex. 1, at '796 & Ex. 2, at '752.  Social Tech clearly sees this lawsuit as a lottery ticket.  But the law and the facts make clear that Social Tech chose the wrong number.  Summary judgment for Apple should be granted and Social Tech's partial motion for summary judgment denied.[1]

*First*, summary judgment for Apple is proper because Social Tech does not have trademark rights to assert.  Social Tech cannot rely on common law rights; it made no use of the term "Memoji" in commerce prior to Apple's announcement of its own Memoji software feature.  Rather, Social Tech's claim is based entirely on its intent-to-use trademark registration for a design mark containing the word "Memoji" ("MEMOJI Design Mark").  But the undisputed facts show that this registration was obtained fraudulently.  To secure the registration, Social Tech twice swore under oath to the United States Patent and Trademark Office ("PTO") that "no other person[]" had "the right to use the mark in commerce."  *Id.*, Ex. 3, at '173, '231.  In discovery, however, Social Tech's co-founder and 30(b)(6) witness, Samuel Bonet, admitted that when he made these statements, he was aware that third parties Lucky Bunny LLC and Big 3 Ent LLC (collectively, "Lucky Bunny") already had an app called "Memoji."  Bonet admitted that he even had twice ***downloaded and***

---

[1] Apple specifically moves on (1) all of Social Tech's claims, other than Social Tech's fifth claim for a declaration that Social Tech does not infringe Apple's rights, as well as (2) Apple's counterclaim for cancellation of Social Tech's trademark registration.  If Apple's motion is granted, Apple intends to withdraw its counterclaim for infringement.  Thus, summary judgment for Apple effectively will resolve the entire dispute.

*opened* Lucky Bunny's app.  Nonetheless, Social Tech filed its intent-to-use trademark application anyway, hoping to deprive Lucky Bunny of its rights.  This fraudulent misrepresentation gave rise to this entire lawsuit; if Social Tech had not made this false statement, its trademark registration never would have issued.  Conduct like this should not be condoned.  Social Tech's registration should be cancelled for this reason alone.

*Second*, Social Tech's registration is invalid for the independent reason that Social Tech admitted in discovery that it did not engage in "bona fide use" of the MEMOJI Design Mark, which is required to secure a trademark registration.  15 U.S.C. § 1127.  "Bona fide use" means use "in the ordinary course of trade, and not made merely to reserve a right." *Id*.  Discovery has shown that after unsuccessfully attempting to obtain funders for its Memoji app concept in 2016, Social Tech did *nothing* to develop its proposed app.  It created no code, sought no other investors, and shifted its focus to creating unrelated YouTube videos.  Only after Apple announced its Memoji feature in 2018 did Social Tech suddenly rush to develop and release a subpar app under the MEMOJI Design Mark, admittedly to "reserve Social Tech's rights in the Memoji mark" and ▮▮▮▮▮ Torres Decl., Ex. 4, at 174:24–175:21 & Ex. 1, at '796.  This is exactly what the PTO prohibits.

*Third*, while the first and second points each are reason enough to grant summary judgment to Apple, Social Tech's claims also fail for the third, independent reason that Lucky Bunny (from whom Apple acquired rights in the MEMOJI mark) had rights that pre-dated Social Tech's intent-to-use trademark application.  It is trademark 101 that the owner of a trademark registration cannot assert its rights against a prior common law user.  15 U.S.C. § 1057(c).  Here, Lucky Bunny used the trademark MEMOJI continuously from October 2014—over a year and a half *before* Social Tech filed its intent-to-use trademark application—through Apple's acquisition in mid-2018.  Lucky Bunny's app was downloaded over 92,000 times, far exceeding ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮  It also had a substantial marketing campaign across many marketing channels with wide consumer reach.  For example, the app was the rare app to receive celebrity endorsements from numerous public figures, such as comedian and actor Howie Mandel, rapper Riff Raff, and influencer Liane V, who collectively have over 6 million social media followers.  The app also was promoted on *The Howard Stern Show* and in *USA Today* and *Adweek*, which collectively had over

40 million online visitors and Twitter followers around the time.  Mr. Mandel also promoted the app on *The Ellen DeGeneres Show*, which had over 3.8 million weekly viewers.  The segment was later posted on YouTube, where users posted comments about the segment well into 2019, confirming the extended impact of Lucky Bunny's marketing.  Accordingly, Apple, via Lucky Bunny, has priority in the MEMOJI mark, not Social Tech.

Social Tech's attempt to undermine Apple's priority by arguing that the assignment from Lucky Bunny is an invalid assignment in gross is inconsistent with both the facts and well-established law.  An assignment is not in gross as long as the new owner's product is substantially similar to the prior owner's product, such that the goodwill would transfer.  The undisputed facts show that both Lucky Bunny's and Apple's MEMOJI products allow users of Apple devices to "turn [themselves] into [] emoji" and share video or still images of those personalized characters via the Messages app.  Torres Decl., Ex. 5, at '23–24; Dkt. 33, Knight Decl., at 3 ¶ 9.  The trademark assignment agreement also explicitly included the transfer of goodwill from Lucky Bunny to Apple and a license-back period during which Lucky Bunny's use of the MEMOJI mark inured to Apple's benefit.  Apple also redirected Lucky Bunny's website to Apple following the assignment, further ensuring the transfer of goodwill.

Social Tech's tacking argument is similarly defective.  Marks are routinely updated over time without impacting the priority date.  Indeed, Social Tech **has cited no case** where a variation as minor as changing the capitalization of a **single (interior) letter,** *i.e.* from MEmoji to Memoji, has deprived a party of its priority date.  Indeed, Social Tech's argument would suggest that eBay would lose priority in the trademark EBAY simply by beginning to depict its name as EBay.  The law does not support this.  Moreover, Social Tech's argument is based on the mistaken premise that Lucky Bunny only had rights to "MEmoji" with a capital "ME."  In fact, Lucky Bunny's name was depicted in promotional materials as both "MEmoji" and "Memoji," and used orally without any spelling specifications.  Lucky Bunny's pending trademark application (which Apple acquired) also is for the word mark MEMOJI **in any form**.  Once Social Tech's application is invalidated for the reasons discussed above, that application will proceed to registration.

*Fourth*, to succeed on its claims, Social Tech must prove that there is a likelihood of reverse

confusion.  Social Tech has developed no evidence showing that anyone is confusing its trademark or its app with Apple.  Rather, what is striking about this case is that Social Tech's *own survey* shows a *negative* confusion rate—strong evidence that there is *no* likelihood of reverse confusion.

*Finally*, although Social Tech tellingly did not make its eleventh-hour acquisition of Christopher Anthony's purported rights in the MEMOJI mark part of its motion, it is part of Apple's motion because it is clear that Anthony had no valid rights to assign.  As this Court may recall, Anthony sought to intervene in this lawsuit.  In response, Social Tech argued that Anthony "fails to establish continuous use of any alleged mark" and "has no trademark rights related to Memoji." Dkt. 69, at 7–8.  Discovery has only confirmed this.  Anthony thus had no rights to assign.

In short, Social Tech's case was deficient at the preliminary injunction stage and remains so today.  Apple's motion should be granted, and Social Tech's denied.

## II.  FACTUAL BACKGROUND

### A.  Apple's MEMOJI Software Feature.

In 2017, Apple debuted an emoji software feature called "Animoji."  Torres Decl., Ex. 6, at 3 No. 1.  This feature allows users to mirror their facial expressions onto an array of animated characters and then send these characters via the Messages app.  *Id.*  The feature was well-received. *Id.*  Apple thus wanted to expand the feature to allow users to create personalized human characters based on their selection of various customizable options, such as skintone, hairstyle, and accessories, such as hats and glasses.  *Id.*, at 3–4 No. 1 & 10–11, No. 5, Ex. 7, at '1279, Ex. 8, at 10.  The new feature effectively allowed users to turn themselves into emoji.  Dkt. 33, Knight Decl., at 3 ¶ 9.  Because the new feature was a natural evolution of the Animoji feature, Apple wanted to find a name that consumers would connect with the Animoji feature's popularity and goodwill.  *Id.* at 4 ¶ 10.  "Memoji" emerged as an early frontrunner.  Torres Decl., Ex. 9, at 39:20–40:2, 58:11–60:19.

### B.  Lucky Bunny's Prior Use of MEMOJI And Assignment to Apple.

In April 2018, before adopting the name MEMOJI, Apple's outside counsel conducted a full, multinational trademark search on MEMOJI for selfie emoji applications.  *Id.*, Ex. 6, at 4 No. 1, 11 No. 5, & 16 No. 10.  It revealed an active app in the App Store owned by Lucky Bunny that was available since at least October 2014.  *Id.*, Ex. 10, at 65:19–67:17, 78:5–15 & Ex. 11, at 85:7–11.

1.      **Lucky Bunny's Use of MEMOJI.**

Lucky Bunny's app, like Apple's Memoji software feature, allowed users to "TURN [THEMSELVES] INTO AN EMOJI" and then text their "MEMOJI PHOTOS & VIDEOS TO [THEIR] FRIENDS." *Id.*, Ex. 5, at '23–24. Like Apple's feature, Lucky Bunny's app accessed the iOS camera to create personalized emoji, allowed users to customize their personalized emoji by selecting skin tone and accessories, and allowed users to share still or animated versions of their personalized emoji via Messages. Torres Decl., Ex. 11, at 64:23–65:3, 67:2–16 & Ex. 5, at '23–25; *see also* Kitchen Decl., Ex. 1, at 19–23 ¶¶ 47–55.

From 2014 to mid-2018, when it was acquired by Apple, Lucky Bunny's app received **92,862** downloads, including thousands of downloads **each year** over its first four years. Torres Decl., Ex. 12, at 9. This is ███████████████████████ *Id.*, Ex. 13, at 1; Ghose Decl., Ex. 1, at 8 ¶ 22. The app also had a large promotional campaign. Numerous influencers with over 6 million collective followers, including Howie Mandel, Los Angeles radio personality DJ Felli Fel, influencer Doc Hollywood, rapper Riff Raff, and influencer Liane V promoted the app on social media. Torres Decl., Ex. 14, at '339, Ex. 15, at 1–19, & Ex. 11, at 89:23–90:14; Ghose Decl., Ex. 1, at 12–22 ¶¶ 30–37. The app also received national public attention from *The Ellen DeGeneres Show*, *The Howard Stern Show*, *USA Today*, *AdWeek*, and *The Huffington Post*. Torres Decl., Ex. 16, at 0:08–0:15, Ex. 17, at 0:28–0:56, & Ex. 18, at 1–11; Ghose Decl., Ex. 1, at 12–22 ¶¶ 30–37. These promotional efforts had a significant long-term impact. Ghose Decl., Ex. 1, at 22–24 ¶¶ 38–41. Comments on Doc Hollywood's Instagram promotion continued for 200 weeks after the initial post. *Id.*, at 24 ¶ 41; Torres Decl., Ex. 15, at 18–19. Similarly, a YouTube video of Mr. Mandel's promotion on *The Ellen DeGeneres Show* received over 270,000 views after it was posted in 2015, and received comments into 2019. Ghose Decl., Ex. 1, at 24 ¶ 41; Torres Decl., Ex. 18, at 14. Lucky Bunny itself also promoted the app nationwide through Twitter, Instagram, and a website, all of which had a link to download the app. Torres Decl., Ex. 11, at 182:1–183:10.

Lucky Bunny also filed two trademark applications for the MEMOJI mark. The first (which was part use-based and part intent-to-use) was abandoned for technical reasons; though Lucky Bunny submitted a specimen showing use of the MEMOJI mark as a software application, it was

unable to show use in connection with the caps, hats, and shirts that were also identified in the application. *Id*., Ex. 19, at '138–149, '158–63 & Ex. 11, at 208:18–209:8; Dkt. 32, La Perle Decl., at 1–2 ¶ 6. The second, entirely use-based application was suspended pending resolution of this action because, as discussed *infra* § III.B.1, before Lucky Bunny filed this application, Social Tech filed an intent-to-use trademark application for its MEMOJI Design Mark without disclosing Lucky Bunny's prior use. Torres Decl., Ex. 20, at '292, '320–24. In addition, Lucky Bunny monitored its MEMOJI mark using Google Alerts from 2014 until it assigned its rights to Apple, and sought to enforce its trademark rights in 2017 against a third-party infringer. *Id*., Ex. 11, at 144:22–146:16, 191:20–192:10. It also pushed new code for its app on June 28, 2017. *Id*., at 106:4–8.

## 2.     Apple's Acquisition of Lucky Bunny's Rights.

Based on its clearance search, Apple identified Lucky Bunny as the prior user of the MEMOJI mark. *Id*., Ex. 6, at 12 No. 6. Apple's agent thus contacted Lucky Bunny about acquiring its rights. *Id*., at 9 No. 3. On May 31, 2018, Lucky Bunny transferred and assigned the MEMOJI mark, Lucky Bunny's domain name, and Lucky Bunny's pending MEMOJI trademark application, "together with the goodwill connected with the use of and symbolized by" the MEMOJI mark, to an Apple-owned entity, MemoFun Apps LLC ("MemoFun"), which subsequently assigned the rights to Apple. *Id*., Ex. 21, at '867 ¶ 1 & Ex. 22, at '855. On June 5, 2018, Apple recorded the assignments with the PTO. *Id*., Ex. 20, at '289. Pursuant to the assignment, MemoFun and then Apple licensed the MEMOJI mark back to Lucky Bunny to continue offering its app under this name until July 30, 2018. *Id*, Ex. 21, at '868 ¶ 3, Ex. 10, at 100:9–15, & Ex. 11, at 179:14–24; Dkt. 32, La Perle Decl., at 8 ¶ 34. Apple also redirected Lucky Bunny's domain name to Apple's website. Torres Decl., Ex. 10, at 100:1–5. Apple did not begin using the MEMOJI mark in commerce until the acquisition was complete. *Id*., Ex. 6, at 5 No. 1 & 11 No. 5. In fact, it was prepared to use a different name if the assignment could not be obtained. *Id.*, Ex. 9, at 94:25–95:8, 112:12–22.

## 3.     Apple's MEMOJI Software Feature Announcement and Launch.

On June 4, 2018, after the assignment from Lucky Bunny was complete, Apple announced its Memoji software feature as part of its iOS 12 operating system at its highly publicized Worldwide Developers Conference ("WWDC"). *Id*., Ex. 6, at 5 No. 1. Apple also released a beta version of its

iOS 12 software, including the Memoji software feature, to developers and managed seed audiences that same day. *Id.* Immediately following the event, the feature received substantial press coverage in numerous general interest publications such as *The Wall Street Journal*, *New York Magazine*, and *Salon*, and in tech-publications such as *Gizmodo*, *TechCrunch*, and *CNET*. *Id.* Apple also began featuring the MEMOJI mark on its website and promoted the Memoji software feature in its press release regarding the WWDC event. *Id.* & Ex. 23, at '579, '581–82. Shortly after, on June 25, 2018, Apple released the public beta version of iOS 12 through its Beta Software Program, which has millions of participants. *Id.*, Ex. 6, at 6 No. 1. On September 17, 2018, Apple made iOS 12 available for general public download. *Id.* It continues to include the Memoji software feature in its updated operating system, iOS 13. *See Id.*, Ex. 24, at 7–9.

### C. Social Tech's Fraudulent Registration of the Memoji Design Mark to Sue Apple.

#### 1. Intent-to-Use Application.

On April 1, 2016, Social Tech filed an intent-to-use trademark application for the MEMOJI Design Mark. *Id.*, Ex. 3, at '170–75. At the time, Social Tech's co-founders were both aware of Lucky Bunny's app. *Id.*, Ex. 25, at 192:5–24 & Ex. 4, at 98:1–17. In fact, Social Tech's co-founder, Samuel Bonet, downloaded and opened the app before submitting Social Tech's trademark application. *Id.*, Ex. 4, at 108:6–11, 114:7–11. Yet Social Tech did not contact Lucky Bunny about its app or disclose Lucky Bunny's MEMOJI use to the PTO. *Id.*, at 105:11–23 & Ex. 3. Instead, Social Tech submitted to the PTO sworn declarations attesting that "no other persons . . . have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely  . . . to cause confusion or mistake, or to deceive." *Id.*, Ex. 3, at '173–74, '231.

In 2016, Social Tech sought financing for its Memoji app concept. *Id.*, Ex. 4, at 131:24–132:11 & Ex. 26, at 5 No. 20. When that failed, it did ***nothing*** to develop the app, switching its focus to other projects. *Id.*, Ex. 4, at 136:5–9, 276:7–15. Though it claimed its app would launch in "the latter part of 2017," that date passed without any code being written or app launched. *Id.*, Ex. 27 at '512, Ex. 4, at 134:3–15, 136:5–9, 201:25–202:7, 276:7–15, & Ex. 28, at 142:5–10.[2]

---

[2] Apple's clearance search also showed that Social Tech had no use of the mark, and thus no rights. *Id.*, Ex. 6, at 16 No. 10. To clear the way for Apple to perfect Lucky Bunny's trademark application, Apple's agent nonetheless approached Social Tech about selling whatever rights it had to MEMOJI,

**2.      Social Tech Rushes an App to Market to Reserve Trademark Rights.**

Then, on June 4, 2018, Social Tech saw Apple's WWDC announcement. *Id*., Ex. 4, at 158:10–18. It partnered with developer FlexDev to hurriedly find counsel to assert a claim against Apple. *Id*., Ex. 28, at 151:6–153:9 & Ex. 4, at 161:8–162:14. FlexDev's principal, Justin Grant, introduced Bonet to an attorney, Peter Dee, in exchange for a portion of any recovery from Apple. *Id*., Ex. 28, at 65:13–66:9, Ex. 4, at 161:8–162:2, & Ex. 29, at '544. Dee was the first person to suggest that Social Tech release its app in June 2018. *Id*., Ex. 25, at 243:21–245:20. Social Tech thus began developing its Memoji app. *Id*., Ex. 4, at 136:5–9, 140:19–141:15, 201:25–202:7 & Ex. 2, at '754 (engineer noting he would "start the work"). Its purpose in doing so was to secure a registration in its MEMOJI Design Mark and sue Apple. *Id*., Ex. 4, at 174:24–176:8; *see also id*., Ex. 25, at 245:16–20. Indeed, the day of the WWDC, Bonet e-mailed Grant, stating, "[T]his is life changing . . . Time to get ***paid***, gentlemen." *Id*., Ex. 30, at '774 (emphasis added); *see also id.*, Ex. 2, at '752 ("We are lining up all of our information, in preparation for a ***nice lawsuit against Apple, Inc***! We are looking REALLY good. Get your ***Lamborghini*** picked out!") (emphasis added). FlexDev then raced to design Social Tech's app to deliberately conform to the product description in Social Tech's intent-to-use application. *Id*., Ex. 4, at 177:20–178:15 & Ex. 2, at '752.

**3.      Social Tech Sends Baseless Demands to Apple.**

On June 13, 2018, Social Tech contacted Apple, citing the WWDC event and demanding Apple cease use of the MEMOJI mark in light of Social Tech's unperfected intent-to-use application. *Id*., Ex. 31, at 1–3. Apple responded on June 14, 2018, explaining that Apple had prior rights, as it had acquired rights to MEMOJI that predated Social Tech's intent-to-use application, and that Social Tech had no rights because it had only an intent-to-use application. *Id*., Ex. 32, at 1. On June 22, 2018, Social Tech responded and reaffirmed its position. *Id*., Ex. 33, at 1–2.

After acknowledging in its June 13, 2018 letter that Social Tech had not yet perfected its intent-to-use trademark application, Social Tech rushed to launch its app on the Google Play Store on June 28, 2018—24 days *after* Apple began use. *Id*., Ex. 4, at 201:25–202:13 & Ex. 34, at '463. Two days later, Social Tech submitted its statement of use to the PTO (1) asserting that it was

---

but Social Tech refused. *Id*., Ex. 6, at 13 No. 6 & 16 No. 10.

engaging in "use in commerce," *i.e.*, bona fide use, of its MEMOJI Design Mark, and (2) reasserting that no other person had a right to use MEMOJI. *Id.*, Ex. 3, at '230–31. Social Tech's registration issued on September 18, 2018; Apple promptly petitioned to cancel it. *Id.*, at '165, '252.

Since its launch, Social Tech's app has been downloaded only ▮▮▮▮ times and received no press, except in connection with this case. *Id.* Ex. 35, at '9 & Ex. 4, at 273:21–274:11. The app suffered from crashes and was removed from the Google Play Store for violating Google's policies. *Id.*, Ex. 4, at 206:18–207:2, 221:17–222:8, 255:2–5. Social Tech could only resume distribution because Bonet set up a new account, also in violation of Google's policy. *Id.*, at 262:15–263:18.

**D.      Social Tech's Acquisition of Anthony's Alleged Rights.**

In August 2018, Grant learned that a person named Christopher Anthony once offered an app with "Memoji" in the name. *Id.*, Ex. 28, at 274:16–275:14. He thus contacted Anthony because he understood that first use of MEMOJI was significant, likely because Apple had described its prior rights in response to Social Tech's demands. *Id.*, at 275:15–276:8. Anthony admitted, however, that his app had been removed from the App Store since August 2016. *Id.*, Ex. 36, at 102:4–104:13; Dkt. 65, at 3.[3] It was not until at least late October 2018, four months *after* Apple's announcement, that Anthony relaunched his app. Dkt. 65, at 3; Torres Decl., Ex. 36, at 114:13–115:4. He then entered discussions with Grant about assigning his purported rights to Social Tech, for which he too was promised a "lottery" or "life changing" offer. Ex. 36, at 182:10–187:12. When negotiations stalled, *id.*, Anthony moved to intervene in this action, Dkt. 65. Social Tech opposed, stating:

> Anthony does not claim a federal registration at the PTO. Instead, his tenuous claim relies on common law trademark principles. . . Anthony does not allege and cannot establish any market penetration . . . Anthony also fails to establish continuous use of any alleged mark. . . Anthony has no trademark rights related to Memoji.

Dkt. 69 at 6–8; *see* Dkt. 70 at 2 ¶ 3; Torres Decl., Ex. 4, at 233:18–237:24. Yet one month later, after this Court denied Anthony's motion, Dkt. 75, Social Tech agreed to acquire Anthony's purported rights. Torres Decl., Ex. 41, at '870.

---

[3] Documents show it was removed in July 2015. *Id.*, Ex. 37, at 3 (gap from "pending contract" to "ready for sale"), Ex. 38, at 142:15–143:9 (app not available for download while contract pending), Ex. 39, at '1335–36 (no downloads Jul. 2015 to Nov. 2018), & Ex. 40, at 88:2–9, 92:5–19; *see also id.*, Ex. 36, at 115:22–116:1. And Mr. Bonet admitted that Anthony's app was not available when he learned about it following Apple's announcement, had been down for "a while," and was only put back up after Grant contacted Anthony. *Id.*, Ex. 4, at 225:14–226:12, 232:19–21, 246:13–23.

### III. APPLE IS ENTITLED TO SUMMARY JUDGMENT BECAUSE SOCIAL TECH HAS NO RIGHTS IN THE WORD MEMOJI OR THE MEMOJI DESIGN MARK

#### A. Social Tech's Common Law Claims Fail Because It Has No Common Law Rights That Predate Apple's Use.

It is undisputed that Social Tech does not have common law rights that predate Apple's use in either the word MEMOJI or the MEMOJI Design Mark. Social Tech did not launch its app until June 28, 2018—several weeks after Apple began use of the MEMOJI mark, let alone several years after Lucky Bunny did. *Id.*, Ex. 4, at 201:25–202:10, Ex. 34, at '463 & Ex. 1, at 85:7–11. Social Tech's 30(b)(6) witness also admitted that Social Tech "didn't have any common law" rights that predate Apple or Lucky Bunny. *Id.*, Ex. 4, at 175:22–176:8. Its "common law" trademark infringement and unfair competition claims fail as a matter of law.[4]

#### B. Summary Judgment Is Proper Because Social Tech's Registration Is Invalid.

As Social Tech has no common law rights, its trademark infringement and unfair competition claims are dependent on the validity of its trademark registration, which is for the MEMOJI Design Mark only.[5] Apple is entitled to summary judgment on these claims, and on its own cancellation claim, because Social Tech's registration is invalid for, at least, two independent reasons: (1) it was procured by fraud, and (2) Social Tech did not engage in bona fide use of its MEMOJI Design Mark but merely rushed a product to market to perfect its application, which is not permitted.[6]

#### 1. Social Tech Procured Its Registration through Fraud on the PTO.

Under the well-established "fraud on the PTO" doctrine, a trademark registration is subject to cancellation if it was obtained fraudulently. 15 U.S.C. § 1064(3). This occurs when an applicant knowingly makes a false representation of material fact in its application, with the intention that the statement be relied upon and such reliance results in damage. *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir. 1990). This doctrine helps ensure that applicants do not subvert the trademark

---

[4] Nor can Social Tech rely on any alleged common law rights from Anthony. *First*, it admitted that Anthony had no rights. Dkt. 69, at 5–8. *Second*, Anthony lacked the continuous use necessary for common law rights. *Supra* 9; *see also Casual Corner Assocs., Inc. v. Casual Stores of Nev., Inc.*, 493 F.2d 709, 712 (9th Cir. 1974) (no common law rights where mark was not in use for a year).
[5] Federal Lanham Act claims and unfair competition claims under California law are coextensive. *See Stark v. Diageo Chateau & Estate Wines Co.*, 907 F. Supp. 2d 1042, 1051 n.8 (N.D. Cal. 2012) (noting that a "claim under California's Unfair Competition Law based on infringement [is] subject to the same legal standards as [a] Lanham Act trademark claim").
[6] The registration also is invalid because Apple has priority as discussed *infra* 14.

registration system by failing to disclose key information.

One essential aspect of a trademark application is that the applicant must swear that "no other person has the right to use [the] mark in commerce." 15 U.S.C. § 1051(b)(3)(D). Where an applicant makes this statement knowing it to be false, cancellation is proper. *Robi*, 918 F.2d at 1444 (registration cancelled where markholder made knowing false statements to PTO); *MPC Franchise, LLC v. Tarntino*, 826 F.3d 653, 661 (2d Cir. 2016) (summary judgment and cancellation affirmed where registrant "knew that others had rights to use the mark that were at least equal, if not clearly superior, to his own"); *Melodrama Publ'g LLC v. Santiago*, No. 12-cv-7830, 2013 WL 1700929, at *5 (S.D.N.Y. Apr. 11, 2013) (cancellation ordered where registrant failed to mention another party's use of the mark in its application); *City of N.Y. v. Tavern on the Green, L.P.*, 427 B.R. 233, 242–43 (S.D.N.Y. 2010) ("deliberate omission in a trademark application of information regarding another's right to use the mark applied for is a material omission justifying cancellation").

Such is the case here. On April 4, 2016, when Social Tech filed its intent-to-use application, it swore that "no other persons . . . have the right to use [MEMOJI] in commerce." Torres Decl., Ex. 3, at '173–74. It made this representation despite being *aware* of Lucky Bunny's Memoji app, as its founder *admitted* that he had located the app through a Google search, and personally downloaded and opened it. *Id.*, Ex. 4, at 94:15–95:20, 98:1–17, 108:6–11, 114:7–11.

This was not a one-time event. After Apple's MEMOJI announcement, Social Tech rushed to file a "statement of use" to perfect its intent-to-use application, in which it *repeated* this false statement. *Id*, Ex. 3, at '231. Prior to making this *second* false statement, Social Tech's founder admittedly downloaded and opened Lucky Bunny's app *a second time*, and admitted he was aware that Lucky Bunny had filed a second application for its MEMOJI mark. *Id.*, Ex. 4, at 213:6–216:20.[7] Apple also had notified Social Tech just two weeks *before* it made this second false statement of the prior rights Apple had acquired from Lucky Bunny. *Id.*, Ex. 32, at 1. Yet Social Tech made the statement anyway to induce the PTO to grant its registration, to Lucky Bunny's and Apple's detriment. This alone is reason to dispose of this case. Cancellation of Social Tech's registration,

---

[7] Social Tech also falsely stated that its mark was in use with all of the goods in its application, when the app was not available for computers. Torres Decl., Ex. 4, at 218:2–7.

and summary judgment to Apple is appropriate.  *See MPC Franchise*, 826 F.3d at 661.

### 2.    Social Tech's Use is Not Bona Fide.

Social Tech's trademark registration should be cancelled for the additional reason that it is undisputed that Social Tech did not engage in bona fide use of the MEMOJI Design Mark prior to obtaining its registration.  Trademark law is clear that to obtain a registration, a party must use a mark in commerce.  This requires "bona fide use of a mark in the ordinary course of trade, and ***not made merely to reserve a right in a mark***." 15 U.S.C. § 1127 (emphasis added); *see also Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1157 (9th Cir. 2001) ("token use is not enough . . . 'adoption of a mark without bona fide use, in an attempt to reserve it for the future, does not create trademark rights'").  Social Tech's purported "use" of its MEMOJI Design Mark does not meet this standard.

Following failed pitch meetings in 2016, Social Tech admitted that it made *no effort* to develop its Memoji app.  Torres Decl., Ex. 4, at 276:7–15 (no documents showing work on Memoji in 2017 or 2018 before Apple's announcement exist because Social Tech "wasn't working on it"); *see also id.*, at 131:12–131:23, 134:3–136:9, 144:1–13 & Ex. 28, at 142:5–10.  Its documents also show that Social Tech began coding its app only after Apple's announcement.  *Id.*, Ex. 42, at 1, Ex. 43, at 1–4, & Ex. 4, at 144:1–13, 168:3–14 (explaining documents).  Social Tech's motivation for doing so is clear from the testimony of its principal and CEO: Social Tech wanted to "release a basic but functional version of its Memoji app in order to secure its trademark registration" and "***reserve Social Tech's rights in the Memoji mark***." *Id.*, Ex. 4, at 174:24–175:21.  This is exactly what trademark law prohibits.  15 U.S.C. § 1127.

Social Tech's lack of bona fide use is further confirmed by numerous emails and testimony explaining that Social Tech's motivation for launching its app was to procure the ███████████ it needed to ████████████████  Torres Decl., Ex. 1, at '796; *see also id.*, Ex. 4, at 171:2–172:13 (admitting that Apple's announcement was "life-changing" because Social Tech was "preparing to assert a claim against Apple and obtain a lot of money"), Ex. 2, at '752 ("We are lining up all of our information, in preparation for a nice lawsuit against Apple, Inc! We are looking REALLY good. Get your Lamborghini picked out!"), at '755 ("[T]his is life changing . . . Time to get paid, gentlemen."), Ex. 4, at 182:22–183:9 (Q. "[W]hen you wrote 'get your Lamborghini picked

out,' that was because you had high hopes to receive life-changing money from Apple, correct?" A. "We always do speak like that, but yeah."), *id.*, at 177:7–19 (admitting that "peace and wealth" referred to "getting money from Apple"), *id.*, at 184:17–185:20 (admitting that Social Tech's e-mails reflected "excitement about the possibility of getting a lot of money").

Documents also show that Social Tech designed its app around the description of goods in its trademark application, and manipulated app updates to manufacture evidence for this lawsuit. *Id.*, Ex. 4, at 164:21–165:12, Ex. 44, at '176, Ex. 2, at '752 ("we need to be able to apply some type of filter . . . to satisfy the 'editing' requirement of the trademark"), & Ex. 1, at '797 ███████████ ████████, '796 ███████████████████████████████ ███████████. Its app also suffered from crashes, displayed images upside down, and was removed from Google Play for violating Google's policies. *Id.*, Ex. 4, at 206:18–207:2, 221:17– 222:8, 255:2–5, 262:3–263:14. Social Tech could only resume offering the app because Bonet created a new developer account in his own name in express violation of Google's rules, yet another example of Social Tech bending requirements to suit itself. *Id.*, at 262:15–263:18. On these facts, Social Tech cannot credibly claim that it engaged in bona fide use of the MEMOJI Design Mark.

As this Court said in denying Social Tech's motion for a preliminary injunction, "[a]bsent any evidence regarding when or how many times [Social Tech's] app had been sold when Social Tech filed its statement [of use], it is unclear that Social Tech had used the mark 'in commerce' as necessary to secure a valid trademark registration." *See* Dkt. 43 at 2 (citing 15 U.S.C. § 1127). One year later, Social Tech still has not produced this evidence. Rather, the only evidence of sales of Social Tech's app (which Apple obtained only via third-party subpoena) ███████████████ ███████████████████████████████. Torres Decl., Ex. 35, at '9.

Further, even after filing its statement of use, in sharp contrast to Lucky Bunny's 92,000 downloads, Social Tech's app had only ████ downloads, including by employees and friends whom Social Tech encouraged to download the app to increase its numbers. *Id.*, Ex. 35, at '9, Ex. 4, at 270:4–12, Ex. 28, at 233:2–19, Ex. 25, at 268:18–269:24, & Ex. 45, at '431; *see Chance*, 242 F.3d at 1155, 1160. Cancellation of Social Tech's registration, and summary judgment to Apple, is proper. *See id.*, at 1157; *La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc.*, 495 F.2d 1265,

1273–74 (2d Cir. 1974) (89 sales not bona fide; courts "reluctan[t] to consider usage sufficient" when it is "contrived solely for trademark maintenance purposes").

## IV.    APPLE HAS PRIOR RIGHTS TO THE TRADEMARK MEMOJI

While cancellation of Social Tech's registration based on either fraud or lack of bona fide use alone resolves this case, summary judgment to Apple also is proper because Apple is the prior user of the MEMOJI mark by virtue of its assignment from Lucky Bunny to Apple. Given this prior use, Social Tech **cannot succeed** on its claims against Apple; rather, Social Tech's registration must be cancelled for this third reason. 15 U.S.C. §§ 1057(c), 1064.

### A.    Apple Is the Prior User of MEMOJI.

"It is axiomatic in trademark law that the standard test of ownership is priority of use." *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996), *as modified*, 97 F.3d 1460 (9th Cir. 1996). "[I]t is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." *Id*. Although a federal registration confers "a presumption of ownership, dating to the filing date of the application," ***this presumption can be rebutted*** "if the non-registrant can show that ***he used the mark in commerce first."*** *Id*. at 1219–20 (emphasis added). Summary judgment to a defendant is proper where a defendant engaged in prior use of a mark. *See, e.g.*, *Farmasino, Inc. v. Farmasino Pharms. (Jiangsu) Co., Ltd*, No. 15-cv-01877, 2016 WL 7655740, at *7–8 (C.D. Cal. June 20, 2016) (granting summary judgment to defendant on infringement claims where defendant used the mark first); *Barrio Fiesta, LLC v. Northridge Foods Int'l, Inc.*, No. 15-cv-02669, 2017 WL 1832008, at *3–4 (N.D. Cal. May 5, 2017) (same).

The undisputed facts show Lucky Bunny made continuous common law use of the MEMOJI mark beginning roughly ***a year and a half before*** Social Tech filed its intent-to-use application and ***nearly four years before*** Social Tech launched its app. Torres Decl., Ex. 12 & Ex. 4, at 201:25–202:3, 292:12–293:3. Lucky Bunny launched its app in October 2014. *Id*., Ex. 11, at 85:7–11. It was downloaded 16,548 times that year alone. *Id*., Ex. 12, at 9. Lucky Bunny then continued offering its app, without interruption, under the mark MEMOJI until July 2018, after a license-back period from Apple. *Id*. & Ex. 11, at 179:14–24, 206:1–7. During this time, it was downloaded over

92,000 times by consumers in every state.[8]  *Id.*, Ex. 12.  The app also was promoted extensively by celebrity endorsers, national press, radio broadcasts, dedicated Twitter and Instagram accounts, and a dedicated website.  *Supra* 5.  As Apple's expert, Dr. Ghose, explained, these efforts reached ***millions of consumers*** and had "persistent and long-term effects," with hundreds of thousands of people viewing Lucky Bunny's promotional materials over a year after the app launched.  Ghose Decl., Ex. 1, at 12–24 ¶¶ 33–41.  Lucky Bunny also continued investing in MEMOJI.  It filed a second trademark application for MEMOJI, had Google Alerts for MEMOJI through the date of the assignment, sought to enforce its rights in the MEMOJI mark in 2017, and pushed new code for its app in June 2017.  Torres Decl., Ex. 11, at 106:4–8, 144:22–146:16, 191:20–192:10, 209:6–210:20.

Given this uninterrupted use and widespread promotion of the MEMOJI Mark, Lucky Bunny had prior common law use of the MEMOJI mark that defeats Social Tech's priority claim.  *See Farmasino*, 2016 WL 7655740, at *7 (defendant showed prior use based on sales in ten states across 4 years and use of mark at trade shows and on its website).  And Apple, as Lucky Bunny's assignee, steps into Lucky Bunny's shoes—including its priority date.  *Dropbox, Inc. v. Thru Inc.*, No. 15-cv-01741, 2016 WL 7116717, at *6 (N.D. Cal. Dec. 7, 2016), *aff'd*, 728 F. App'x 717 (9th Cir. 2018).  Accordingly, Apple is entitled to summary judgment.  *See id.*, at *7 (assignee entitled to summary judgment on infringement and cancellation claims based on assignment of rights to "dropbox" from prior user); *Farmasino*, 2016 WL 7655740, at *7–8.

## B.  Social Tech's Argument That Apple's Assignment Was in Gross Fails as a Matter of Law.

In its opening brief, Social Tech argues that Apple does not have priority, claiming that the assignment from Lucky Bunny to Apple is an invalid assignment in gross.  Br. at 15.  Social Tech's argument fails as a matter of law.  An assignment is valid as long as it includes the transfer of the goodwill to which the mark pertains.  *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1289 (9th Cir. 1992).  This does not require transfer of "the entire business or its tangible assets."  *Id.*

---

[8] Social Tech asserts that, in 2018, the only "active user base" of Lucky Bunny's app was the developer and his mother.  Br. at 5.  The relevant inquiry for common law rights, however, is not some vague inquiry into "active user."  It is whether the mark has been used continuously in commerce.  *Farmasino*, 2016 WL 7655740, at *6–7.  Here, the unrefuted evidence shows not only continuous use, but continuous downloads well into 2018.  Ex. 12; *see also* Ghose Decl., Ex. 2, at 3.

Rather, goodwill is transferred as long as the assignee produces a "substantially similar product" as the assignor. *eMachines, Inc. v. Ready Access Memory, Inc.*, No. 00-cv-00374, 2001 WL 456404, at *11 (C.D. Cal. Mar. 5, 2001); *see also Visa, U.S.A., Inc. v. Birmingham Tr. Nat'l Bank*, 696 F.2d 1371, 1376 (Fed. Cir. 1982) (products need not be "identical," only "sufficiently similar").

Here, Lucky Bunny transferred its goodwill in MEMOJI to Apple. *First*, Lucky Bunny's and Apple's Memoji products are substantially similar as they share the same key feature: They allow users to "turn [themselves] into . . . emoji" that they can share via Apple's Messages feature. Torres Decl., Ex. 5, at '23–24; Dkt. 33, Knight Decl., at 3 ¶ 9. Third parties describe Apple's feature in like terms, confirming that the public perceives these products as similar. Torres Decl., Ex. 8, at 1, 7, 12. The apps also both: allow users to accessorize their animated emoji; enable users to select from a variety of skin tones; operate using the camera on Apple devices; and allow users to share video and still images. *Id.*, Ex. 11, at 63:9–21, 65:1–3, 67:5–16, Ex. 5, Ex. 46, & Ex. 7; Kitchen Decl., Ex. 1, at 19–24 ¶¶ 47–56. *Second*, the assignment explicitly transfers "the goodwill connected with the use of and symbolized by the [MEMOJI] Mark." Torres Decl., Ex. 21, at '876. *Third*, the assignment includes a license back provision, pursuant to which Lucky Bunny continued using the mark post-assignment. *Id.*, Ex. 21, at '868 ¶ 3, Ex. 10, at 100:9–15, & Ex. 11, at 166:25–167:9, 179:14–24. That use inured to Apple's benefit. *See Kabushiki Kaisha Megahouse v. Anjar Co. LLC*, No. 14-cv-00598, 2014 WL 5456523, at *5 (C.D. Cal. Oct. 20, 2014). *Finally*, Apple acquired Lucky Bunny's domain name and used it to redirect users interested in Lucky Bunny's app to Apple's website, further ensuring the transfer of goodwill.[9] *Id.*, Ex. 21, at '867 ¶ 1 & Ex. 10, at 100:1–5. Thus, the assignment was not in gross. *See Main St. Outfitters, Inc. v. Federated Dep't Stores, Inc.*, 730 F. Supp. 289, 291–92 (D. Minn. 1989) (assignment valid as the goods were "substantially the same" and assignment included a license back, which further substantiated the assignment's validity).

*eMachines, Inc. v. Ready Access Memory. Inc.* is instructive. There, both the assignor and assignee "were in the business of manufacturing and selling computer components, specifically notebooks and computer monitors for use with PC compatible systems." 2001 WL 456404, at *11.

---

[9] Social Tech argues that there is no evidence that consumers visited this website or that the website carried with it "all" of Lucky Bunny's goodwill. Br. at 17. It, however, cites no law to explain why this would matter given that ***no assets*** need to be transferred for an assignment to be valid. *Infra* 17.

The defendant, nonetheless, argued that the assignment was invalid because the prior owner "did not transfer information" to allow the new owner to "manufacture the E-Machine product line 'as it had existed.'"  *Id*.  The Court rejected this argument, holding, "[b]oth companies were in the business of manufacturing substantially similar products, and, as evinced by the agreement between them, intended good will to pass with the assignment."  *Id*.  The same is true here.

Social Tech's attempt to undermine the assignment by focusing on meaningless alleged differences between Apple's and Lucky Bunny's products fails.  It argues the two are not similar because Lucky Bunny had a standalone app whereas Apple's feature is embedded in iOS.  Br. at 13.  Apple's expert explained, this "makes no difference."  Kitchen Decl., Ex. 1, at 29 ¶ 72.  Social Tech also argues that Lucky Bunny's GIF selfies differ from Apple's animated avatars, as Apple did not present "evidence that it uses the GIF format to send a Memoji."  Br. at 13.  But as Apple's witness explained, regardless of whether the file is a GIF, the result is the same from a consumer's perspective.  Torres Decl., Ex. 9, at 21:6–12.  At bottom, both apps allow users to create and share customizable animated emoji with Apple devices.  *Id*., at 20:9–16, Ex. 46, Ex. 11, at 89:3–6, & Ex. 7.  This is sufficient; products need not be identical.  *See Visa*, 696 F.2d at 1376; *eMachines*, 2001 WL 456404, at *11.[10]

Social Tech's argument that the assignment is invalid because Lucky Bunny did not acquire Lucky Bunny's software code is similarly misplaced.  Transfer of assets **is not required** for a valid assignment.  *E. & J. Gallo*, 967 F.2d at 1289; *Main St. Outfitters*, 730 F. Supp. at 290.

### C.  Social Tech's Tacking Argument Fails Because Apple and Lucky Bunny Used the Same Mark in Virtually Identical Formats On Similar Software.

Social Tech also claims that Apple cannot tack its use of the MEMOJI trademark onto Lucky

---

[10] The cases on which Social Tech relies are inapposite.  In *Clark & Freeman Corporation v. Heartland Company*, there was no evidence of an express assignment of goodwill and the assignee used the mark on different goods directed toward different target consumers.  811 F. Supp. 137, 139–142 (S.D.N.Y. 1993).  Here, Apple and Lucky Bunny targeted the **same consumers**, Apple users, as both their products were available for Apple devices.  Torres Decl., Ex. 7 & Ex. 46.  In *PepsiCo, Inc. v. Grapette Co.*, the key fact was not the assignee's failure to acquire the assignor's formula or product, as Social Tech suggests; instead, the Court found the assignment invalid because the assignee used the mark on a "totally different product" such that consumers were likely to be "deceive[d]."  416 F.2d 285, 290 (8th Cir. 1969).  By contrast, Apple's and Lucky Bunny's products perform the same basic function.  There is no evidence consumers would be deceived about the type of product they are getting under the MEMOJI mark.

Bunny's use.  This argument fails.

     **1.**     **Tacking Is Not An Issue As Apple and Lucky Bunny Use the Same Mark.**

Tacking allows a party to "clothe a new mark with the priority position of an older mark" when "the original and revised marks are 'legal equivalents' in that they create the same, continuing commercial impression."  *Hana Fin., Inc. v. Hana Bank*, 574 U.S. 418, 420 (2015).  The purpose of the doctrine is to allow trademark owners to make certain modifications to their marks without losing priority.  *Id*.  Here, there is no question that Apple's and Lucky Bunny's mark create the same commercial impression, as Apple and Lucky Bunny use the same exact mark: MEMOJI.

*First*, Lucky Bunny had common law rights in the word MEMOJI—separate and apart from any particular visual representation of the mark—by virtue of its continuous use and promotion of this term in connection with its app.  *Supra* § II.B.1.  This promotion included references to the app orally on *The Howard Stern Show* and DJ Felli Fel's radio program.  Torres Decl., Ex. 17, at 0:28-0:56 & Ex. 11, at 89:23–24.[11]  It also included written references using a variety of capitalizations, confirming the interchangeability of these various forms of the MEMOJI mark.  *See, e.g., id.*, Ex. 15, at 4 ("Memoji"), Ex. 18, at 7 ("MeMoji"), Ex. 5, at '24 ("MEMOJI"), & Ex. 48, at 1, 3 ("#memoji", "@Thememojiapp").  Howie Mandel, for example, often referred to the app as "Memoji" in tweets. *Id*., Ex. 15, at 4–6, 9, 11.  Thus, the "common law rights" Lucky Bunny owned and transferred to Apple included the word MEMOJI "in any form."  *Id*., Ex. 21, at '867 ¶ 1.

*Second*, Lucky Bunny also had a use-based trademark application for the ***word*** MEMOJI that Apple acquired.  Torres Decl. Ex. 19, at '157 & Ex. 20.  This application is for a "standard character mark," meaning that regardless of how it is depicted, the rights claimed do not include any particular font style, size, or color; all that is claimed is the word MEMOJI.  *Id*., Ex. 20, at '287; TMEP § 1207.01(c)(iii).  Once Social Tech's registration is cancelled, this application will register.

Given the scope of Lucky Bunny's common law use, and its pending application which Apple now owns, Social Tech's argument that Apple is somehow using a "different mark[]" and therefore must "tack[]" its use onto Lucky Bunny's is simply wrong.  Br. at 18.  There is no new

---

[11] Apple pronounces its feature as ME-Moji, with a long "e" sound, the same as Lucky Bunny. Torres Decl., Ex. 47, at 0:10–0:14.

mark.  The mark Lucky Bunny used was MEMOJI, the mark Apple acquired was MEMOJI, the mark Apple uses is MEMOJI, and when Social Tech's fraudulent registration is cancelled, Apple will hold a registration for the word MEMOJI.  Social Tech's tacking argument is a non-issue.

### 2.  Social Tech's Arguments Against Tacking Fail.

Nonetheless, Social Tech makes four arguments against tacking Apple's use.  Each is meritless.  *First*, Social Tech argues that Apple cannot tack because Lucky Bunny depicted its mark as "MEmoji," whereas Apple uses "Memoji."  This argument misses the point that Lucky Bunny's rights were not limited to a particular visual depiction.  *Supra* § IV.C.1.  Regardless, changing the capitalization of the *second* letter of a word does not alter its commercial impression, as the "key elements" remain.  *Miyano Mach. USA, Inc. v. MiyanoHitec Mach., Inc.*, 576 F. Supp. 2d 868, 882 (N.D. Ill. 2008) ("Modernization of a mark or changes in styling generally do not change the commercial impression of the mark.").  Courts and the Trademark Trial and Appeals Board routinely permit tacking in cases involving far greater changes than the capitalization of one letter:

- BEECHNUT in  tacked with BEECH-NUT in .  *Beech-Nut Packing Co. v. P. Lorillard Co.*, 299 F. 834, 850 (D.N.J. 1924), *aff'd,* 273 U.S. 629 (1927).
- S-LON tacked with ESLON.  *Humble Oil & Ref. Co. v Sekisui Chem. Co. Ltd.*, 165 U.S.P.Q. 597, 603 (T.T.A.B. 1970).
-  tacked with .  *Miyano Mach. USA*, 576 F. Supp. 2d at 882.
-  legal equivalent of  despite change in capitalization.  *Haggar Clothing Co. v. Merve Optik Sanyi Ve Ticaret Anonim Sirketi*, No. 91221844, 2016 WL 837732, at *5 (T.T.A.B. Feb. 2, 2016).
-  and  tacked with .  *Niche Audio, Inc. v. Munro Inv. Grp.*, No. 91228347, 2018 WL 5173101, at *6 (T.T.A.B. Sept. 29, 2018).

Moreover, none of these decisions turn on consumer surveys or consumer testimony.  Even after *Hana Bank,* courts find litigants meet the test for tacking based solely on a comparison of the marks.  *E.g.*, *Jack Wolfskin Ausrustung Fur Draussen GmbH & Co. KGAA v. New Millennium Sports, S.L.U.*, 797 F.3d 1363, 1370 (Fed. Cir. 2015); *Marketquest Grp., Inc. v. BIC Corp.*, 316 F. Supp. 3d 1234, 1290 (S.D. Cal. 2018); *Niche*, 2018 WL 5173101, at *6; *Haggar*, 2016 WL 837732, at *5 .

19

No surprise then that Social Tech has not cited a single case in which a court refused to permit tacking based on the change in capitalization of a single (interior) letter. *Data Concepts, Inc. v. Digital Consulting, Inc.*, stands only for the unremarkable holding that "DCI" "as part of [an] Internet address" could not be tacked onto a *stylized* design mark in which the letters DCI were barely visible, ■. 150 F.3d 620, 623–624 (6th Cir. 1998).[12] *Fifth Avenue of Long Island Realty Associates v. Caruso Management Company* held that AMERICANA MANHASSET could not be tacked onto the *stylized* AMERICANA mark because it included an additional word and "completely different font." 718 F. Supp. 2d 292, 307–09 (E.D.N.Y. 2010). Neither is true here.[13]

*Second*, Social Tech argues that Apple cannot tack its use because Lucky Bunny occasionally used MEMOJI with the description "GIF selfies with emoji accessories!" Br. at 12–13. This is nonsense. Numerous documents show that Lucky Bunny used (and tried to register) MEMOJI with no other words. Torres Decl., Ex. 5, 15, 18, 20, & 48. "GIF selfies with emoji accessories!" was merely a descriptive phrase used to optimize the app's chance of appearing in response to keyword searches. *Id.*, Ex. 11, at 63:15–64:22. It is irrelevant to tacking. *See Nat'l Bakers Servs., Inc. v. Hain Pure Food Co., Inc.*, 207 U.S.P.Q. (BNA) 701, 707 (T.T.A.B. Aug. 29, 1980) (HOLLYWOOD HEALTH FOODS legal equivalent of HOLLYWOOD because "health foods" was descriptive).

*Third*, Social Tech argues that tacking is not permitted because Apple's software purportedly differs from Lucky Bunny's. Br. at 13–14. To the contrary, Lucky Bunny's and Apple's products are substantially similar, as both allow Apple users to create and share personalized emoji. *Supra* § II.B.1. Any minor differences relate to modernization, which is expected and does not change a mark's commercial impression. *See Beech-Nut*, 299 F. at 850 (marks tacked despite new formula); McCarthy § 17:24 (changes in car design would not defeat rights in FORD or CADILLAC).

---

[12] Image taken from 3 McCarthy on Trademarks and Unfair Competition § 17:27 (5th ed.).
[13] Social Tech's other cases are similarly unhelpful. In *Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. DE C.V.*, unlike here, the marks to be tacked were all design marks containing different words, images, and colors. 188 F. Supp. 3d 22, 58 (D.D.C. 2016), *aff'd,* 743 F. App'x 457 (D.C. Cir. 2018) (  ). *Newmark Realty Capital, Inc. v. BGC Partners, Inc.*, involved adding words to a prior mark, something Apple has not done. No. 16-CV-01702-BLF, 2017 WL 8294175 (N.D. Cal. Nov. 16, 2017) ("Newmark" vs. "Newmark Knight Frank" and "Newmark Grubb Knight Frank").

*Finally*, Social Tech makes the confusing claim that Apple allegedly uses its MEMOJI mark to promote iPhones and music products, and that this somehow relates to tacking. Br. at 14, 20. It cites no cases in support. And the evidence shows only that Apple occasionally used animated avatars like those made in the MEMOJI app along with the name MEMOJI, the feature consumers would use to create these avatars, in cross-promotions. This in no way prevents Apple from tacking its use of MEMOJI in connection with an application that allows users to create and send personalized emoji onto Lucky Bunny's use of the same name with a similar app.

## V.   SOCIAL TECH HAS PRODUCED NO EVIDENCE TO MEET ITS BURDEN OF ESTABLISHING A LIKELIHOOD OF CONFUSION

"District courts have had no hesitation in granting summary judgment in favor of a defendant on the issue of consumer confusion where, based on the undisputed facts, the plaintiff has failed to present a genuine issue of material fact for trial." *Metro Publ'g, Ltd. v. San Jose Mercury News, Inc.*, 861 F. Supp. 870, 874 (N.D. Cal. 1994). Such a result is proper here, as Social Tech failed to develop or produce evidence sufficient to show that the *Sleekcraft* factors, which courts use to evaluate confusion, favor it. *AMF, Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348–49 (9th Cir. 1979).

### A.   Social Tech's Own Survey Shows There Is No Likelihood of Reverse Confusion.

Surveys are often used to assess the likelihood of confusion. Social Tech's survey, which uses the well-accepted *Eveready* methodology, shows a ***negative 2.4%*** confusion rate. Torres Decl., Ex. 49, at 13–14 ¶¶ 26–30, 33 Table 2.[14] This number—*from Social Tech's expert*—is so low it "show[s] an absence" of confusion. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 629, 633 (9th Cir. 2005) (summary judgment to defendant on reverse confusion where survey had under 2% confusion); *see* McCarthy § 32:185. Apple's expert, Dr. Itamar Simonson, also found the survey shows a lack of confusion. Simonson Decl., Ex. 1, at 7, 18 ¶¶ 16, 42. Social Tech's attempt to rejigger the numbers by only counting some respondents is improper. *Id.*, at 12, 20 ¶¶ 7, 48. A survey universe should include all prospective purchasers, not just a subset. *See Scott Fetzer Co. v. House of Vacuums Inc.,* 381 F.3d 477, 487–88 (5th Cir. 2004) (survey of people "uniquely familiar"

---

[14] Only results for Android users are relevant because Social Tech's app is available for the Android operating system only. Simonson Decl., Ex. 1, at 13 ¶ 29; Torres Decl., Ex. 50, at 70:20–71:24.

with plaintiff's product improper; class of prospective purchasers was broader); McCarthy § 32:159.

Social Tech's purported real-world evidence of confusion fares no better. These alleged examples include three questions on Facebook directed to Social Tech about use of the "Memoji" app on an iPhone. Torres Decl., Ex. 4, at 249:9–250:7; Dkt. 4-16, Bonet Decl., at 5–7 ¶¶ 15–18. As Dr. Simonson explained, these questions do not indicate actual confusion, as the authors may well have been asking whether ***Social Tech's app*** could be used on an iPhone. Simonson Decl., Ex. 1, at 24 ¶¶ 59–60. Social Tech's expert agreed that is one possible interpretation. Torres Decl., Ex. 50, at 272:4–276:4. The remaining alleged evidence consists of two comments from one person complaining that Social Tech's app does not function like the "app on iPhone." Dkt. 4-16, Bonet Decl., at 5 ¶ 15. This person may simply have been saying that she could not use Social Tech's Android app to achieve the look of the iPhone Memoji app. This does not evidence confusion as the person is "aware of the distinction" between the two products. Simonson Decl., Ex. 1, at 25 ¶ 61. In any event, four allegedly confused individuals in over a year is *de minimis*. *Stonefire Grill, Inc. v. FGF Brands, Inc.*, 987 F. Supp. 2d 1023, 1053–54 (C.D. Cal. 2013) (eight in two years insufficient).

## B. Social Tech Cannot Meet Its Burden of Showing That Apple's MEMOJI Mark Is Similar to Social Tech's MEMOJI Design Mark.

Social Tech misleadingly suggests it has trademark rights in the word MEMOJI. Br. at 3. It does not. Social Tech's rights, at best, are limited to the MEMOJI Design Mark—the only mark it registered or identified in its Complaint. Compl. ¶¶ 1–2. Again, any common law use is irrelevant as it occurred ***after*** Apple's launch, let alone Lucky Bunny's. *Supra* § III.A. The MEMOJI Design Mark is dominated by visual elements. Social Tech itself describes it as follows:

> [T]he stylized wording 'MEMOJI' appearing in white on a black background with a white oval with gray highlighting replacing the letter 'O', a woman's cross-eyed face appearing within the oval with brown hair, tan skin, brown eyebrows, black and white eyes, pink cheeks and red lips. A partial reflection of the wording and design appears inverted directly below 'MEMOJI' in gray, tan, brown, black red and pink.

Torres Decl., Ex. 3, at '165. Apple's feature does not use any of these design elements:



| Social Tech's MEMOJI Design Mark, *Id.* | Apple's Memoji Mark, *Id.*, Ex. 51 |

Moreover, Apple uses its MEMOJI mark in connection with the monkey logo 🐵 it adopted in 2017 for its Animoji feature, from which the Memoji feature evolved. *Id.*, Ex. 7, Ex. 52; Dkt. 33, Knight Decl., at 3 ¶ 9. This further dispels confusion. *Matrix Motor Co., Inc. v. Toyota Jidosha Kabushiki Kaisha*, 290 F. Supp. 2d 1083, 1093 (C.D. Cal. 2003) (MATRIX & Design "considerably different" from Toyota MATRIX as "design" and "house mark" reduced confusion).

Considering that Social Tech has taken the position that "MEmoji" and "Memoji" are "entirely different" visually, Br. at 12, it cannot credibly argue that Apple's mark is similar to Social Tech's MEMOJI Design Mark when their differences are obviously more substantial. Sharing the term "Memoji" is not enough. *See, e.g.*, *Alpha Indus., Inc. v. Alpha Steel Tube & Shapes, Inc.*, 616 F.2d 440, 444 (9th Cir. 1980) (ALPHA with logo not similar to ALPHA with a word); *J.T. Colby & Co., Inc. v. Apple Inc.*, No. 11-cv-4060, 2013 WL 1903883, at *16–17 (S.D.N.Y. May 8, 2013) (IBOOKS marks not similar given context and logos), *aff'd*, 586 F. App'x 8 (2d Cir. 2014); *Metro Publ'g*, 861 F. Supp. at 877 (EYE marks sharing little visual similarity not similar).

### C.   Social Tech's Purported Mark Is At Best Weak.

Weak marks are entitled to a narrow scope of protection, even in reverse confusion cases. *See, e.g.*, *Matrix Motor Co.*, 290 F. Supp. 2d at 1091. This is particularly so in cases like this one where the plaintiff has "failed to produce any evidence of the commercial strength of its mark." *Freedom Card, Inc. v. JP Morgan Chase & Co.*, 432 F.3d 463, 477 (3d Cir. 2005).

> [P]art of what entitles a mark to protection is its ability to serve as an indicator of origin. Accordingly, to the extent a senior user has invested so little in its mark that it has failed to create an association in the minds of consumers between the mark and a source, there is correspondingly less reason to protect the mark.

*Colby*, 2013 WL 1903883, at *16. Social Tech's purported mark is exceedingly weak. Social Tech's app had fewer than ▮▮▮ downloads (all after Apple's announcement); its two promotional videos had only 457 and 70 views respectively; it spent only ▮▮▮▮ on Facebook ads and ▮▮▮ ▮▮▮▮▮▮▮▮ (also after the announcement); and its app was not mentioned in any publications (except in connection with this lawsuit). Torres Decl., Ex. 35, at '9, Ex. 4, at 272:7–25, 273:21–274:11, 303:2–304:3, Ex. 53, at '854, & Ex. 54, at '67. The purported mark is entitled to little protection. *Matrix Motor Co.*, 290 F. Supp. 2d at 1091.

### D.  Social Tech Cannot Meet Its Burden of Establishing that the Parties' Products Are Proximate.

Social Tech cannot meet its burden of showing that the parties' products are proximate. Social Tech's app is available only from the Google Play Store for use on Android devices.  Torres Decl., Ex. 4, at 202:11–13.  Apple's feature is ***not*** available on the Google Play Store and can be used only on Apple devices.  Dkt. 33, Knight Decl., at 7–8 ¶¶ 18–21; *see Alpha*, 616 F.2d at 445 (as tubing sold to "two distinct groups" of manufacturers, companies not proximate).

### E.  Social Tech Cannot Meet Its Burden of Showing that the Parties Use The Same Marketing Channels.

The only overlapping marketing channel is that both Social Tech and Apple advertise on the Internet and social media.  Dkt. 33, Knight Decl., at 5–7 ¶¶ 13–17; Dkt. 4-16, Bonet Decl., at 3–4 ¶¶ 8, 13.  This does not suffice.  *Groupion, LLC v. Groupon, Inc.,* 826 F. Supp. 2d 1156, 1164 (N.D. Cal. 2011) ("internet as a marketing channel is ubiquitous," so "does not shed much light").

### F.  Social Tech Cannot Meet Its Burden of Showing that Its Consumers Do Not Exercise Care In Downloading Its App.

In reverse confusion cases, the more care the senior user's consumers exercise in selecting a product, the less likely they are to be confused.  *See, e.g.*, *Mach. Head v. Dewey Glob. Holdings Inc.*, No. 99-cv-04326, 2001 WL 1747180, *10 (N.D. Cal. Dec. 13, 2001).  Social Tech has neither produced nor developed any evidence concerning the degree of care its consumers exercise. Therefore, it cannot establish that this factor favors it.

### G.  Social Tech Cannot Meet Its Burden of Showing that Apple Acted In Bad Faith.

Social Tech has no evidence that Apple acted in bad faith.  Rather, Apple's conduct in running a clearance search, acquiring rights from the earliest rights holder, and selecting a mark that relates to the nature of its product and prior ANIMOJI mark reflects good faith.  Torres Decl., Ex. 6, at 4–5 No. 1; Dkt. 33, Knight Decl., at 3–4 ¶¶ 9–11; *Lang v. Ret. Living Publ'g Co. Inc.*, 949 F.2d 576, 583 (2d Cir. 1991) (selection of a mark reflecting product's characteristics good faith).

That Apple contacted Social Tech concerning whether it would be interested in selling whatever rights it might have in MEMOJI for purposes of clearing the trademark register, Dkt. 32, La Perle Decl., at 8 ¶ 33, does not show bad faith.  The Supreme Court encourages such behavior as

it may be a "good-faith effort to avoid this litigation." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 585 n.18 (1994). Apple's brief, inadvertent use of the "R" symbol, meaning "registered," with the MEMOJI mark on its online "Trademark List," not in connection with advertising or packaging, does not show bad faith either. Br. at 7. Apple corrected the error promptly. Torres Decl., Ex. 55. Notably, Social Tech is incorrectly using the "R" symbol itself, as it uses this symbol in connection with the word MEMOJI when its registration is for its purported design mark only. *Id.*, Ex. 56, at 1.

### H. Social Tech Cannot Meet Its Burden of Showing that the Parties Are Likely To Expand Into One Another's Markets.

Social Tech has no "concrete evidence" showing an intent to expand to the Apple market. *Surfvivor,* 406 F.3d at 634. In fact, the evidence is that when Social Tech launched its app, it chose *not to* release it on the App Store, and has not expanded since. Torres Decl., Ex. 4, at 202:8–13; Dkt. 4-16, Bonet Decl., at 7 ¶ 19. Nor is there evidence that Apple intends to expand to Android.

## VI. SOCIAL TECH'S MOTION FOR SUMMARY JUDGMENT ON APPLE'S LACHES, ESTOPPEL, AND ACQUIESCENCE DEFENSES SHOULD BE DENIED AS MOOT

This Court need not reach the issue of affirmative defenses given that Social Tech's registration is invalid and it cannot show infringement. In any case, Apple does not intend to pursue laches, estoppel, or acquiescence to the extent Social Tech's claims are based on the MEMOJI Design Mark or any purported common law rights Social Tech developed in "Memoji."[15] Social Tech's motion for summary judgment on these defenses should be denied as moot. *See Chasse v. Humphreys*, No. 07-cv-189, 2009 WL 3334912, at *12 (D. Or. Oct. 13, 2009).[16]

## VII. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment should be granted and Social Tech's motion denied.

---

[15] Social Tech's motion was limited to its rights, not those it purportedly acquired from Anthony. Should Social Tech try to assert Anthony's rights, Apple reserves its right to assert these defenses. Anthony delayed more than *four years* from when Lucky Bunny launched its app, and *seven months* from when Apple announced its Memoji software feature, to send a cease and desist letter attempting to enforce its rights, during which time Apple invested in its MEMOJI mark. Torres Decl., at 7 ¶ 61 & Ex. 11, at 85:7–11; Dkt. 33, Knight Decl., at 5, 8 ¶¶ 12, 24–27.

[16] If Social Tech seeks a permanent injunction, however, its delay weighs against it.

Dated: October 30, 2019

Respectfully submitted,

KIRKLAND & ELLIS LLP

*/s/ Dale M. Cendali*

Dale M. Cendali (S.B.N. 1969070)

Attorney for Defendant Apple Inc.

<u>**CERTIFICATE OF SERVICE**</u>

On October 30, 2019, I electronically filed the foregoing with the Clerk of the Court by using CM/ECF system which will send a notice of electronic filing to all persons registered for ECF.  All copies of documents required to be served by Fed. R. Civ. P. 5(a) and L.R. 5-1 have been so served.

*/s/ Dale M. Cendali*
Dale M. Cendali
