# EXHIBIT 6

Diana M. Torres (S.B.N. 162284)
diana.torres@kirkland.com
Lauren J. Schweitzer (S.B.N. 301654)
lauren.schweitzer@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400

Dale M. Cendali (S.B.N. 1969070)
dale.cendali@kirkland.com
Mary Mazzello (*pro hac vice*)
mary.mazzello@kirkland.com
Megan L. McKeown (*pro hac vice*)
megan.mckeown@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800

Attorneys for Defendant Apple Inc.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SOCIAL TECHNOLOGIES LLC,<br><br>               Plaintiff,<br><br>  - against -<br><br>APPLE INC.,<br><br>               Defendant. | Civil Action No. 3:18-cv-05945-VC |

**APPLE INC.'S RESPONSES AND OBJECTIONS TO**
**SOCIAL TECHNOLOGIES LLC'S FIRST SET OF INTERROGATORIES**

Pursuant to Rule 33, Defendant Apple Inc. (hereinafter, "Apple") submits the following responses and objections to Plaintiff Social Technologies LLC's (hereinafter, "Social Tech") First Set of Interrogatories (hereinafter, the "First Interrogatories," and each individual Interrogatory, an "Interrogatory").

of Interrogatories as appropriate and/or to supplement, modify, or otherwise change or amend these objections with any additional information that emerges through discovery or otherwise.

## RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:**

List with specificity all facts on which You intend to rely for Your counterclaim for trademark infringement, including by identifying all persons with knowledge of such facts.

**RESPONSES TO INTERROGATORY NO. 1:**

In addition to its general objections, Apple objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case, at least because it seeks "all facts" on which Apple intends to rely for its counterclaim for trademark infringement and asks Apple to identify "all persons" with knowledge of such facts. Apple objects to this Interrogatory to the extent it seeks information not in Apple's possession, custody, or control. Additionally, Apple objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the work-product immunity doctrine, or other applicable privilege. Apple further objects to this Interrogatory to the extent it is premature. This case is in the early phases of discovery and Apple's investigation is not complete. Apple responds to this Interrogatory based on currently available information and reserves all rights to supplement, amend, or modify this response. Apple further objects to this Interrogatory to the extent it calls for legal conclusions and is compound.

Subject to and without waiver of the foregoing objections, Apple responds as follows: In 2017, Apple debuted a novel emoji software feature called Animoji, which allows users to mirror their facial expressions onto an array of animated characters (such as a unicorn, cat, alien, or dog) and then send these characters via the Messages app in a digital sticker or as a video file with the user's own voice. The Animoji feature was well received, and Apple wanted to expand it to allow

users to create characters that resemble themselves. Apple thus designed a new feature that allows users to create personalized characters based on their selection of various customizable options, such as face and hair, which users can then share. Effectively, the new feature allows users to create emojis in their own likenesses and then send these self-emojis to one another. Because the new feature was a natural evolution of the Animoji feature, and only accessible within the Animoji feature, Apple wanted a name that was a natural evolution of "Animoji." It came up with "Memoji."

Before adopting the name Memoji, Apple conducted a clearance search. The search revealed an app owned by Lucky Bunny LLC and Big 3 Ent LLC ("Lucky Bunny"), which was active in the App Store (the "MEmoji App"[1]), and had been available to users since September 22, 2014. The MEmoji App allowed users to "TURN [THEMSELVES] INTO AN EMOJI" and then text their "MEMOJI PHOTOS & VIDEOS TO [THEIR] FRIENDS." The results of Apple's search indicated that, at the time of Apple's search, Lucky Bunny had prior rights to the MEMOJI mark for use in connection with a personalized emoji app to operate under the trademark MEMOJI.

Lucky Bunny's MEmoji App received **92,862** downloads from the App Store—16,548 in 2014; 11,850 in 2015; 59,720 in 2016; 4,366 in 2017; and 378 in 2018—and had 80,000 users. Also consumers from every state downloaded Lucky Bunny's MEmoji App in each year from 2014 through 2016, and consumers from at least 45 states downloaded it each year in 2017 and 2018. According to a publicly available article, just before Lucky Bunny's MEmoji App launched, the average app was downloaded only 40,000 times from Apple's App Store and, outside the top 6% of apps, the median user base was only 27,500 users.

---

[1] Apple uses "the MEmoji App" synonymously with the "Lucky Bunny App" as that term is defined in Social Tech's First Set of Interrogatories.

The MEmoji app received national media attention, including from *The Ellen Degeneres Show*, *The Howard Stern Show*, *USA Today*, *AdWeek*, and *The Huffington Post*. It was promoted by comedian and actor Howie Mandel and received significant attention on social media. Lucky Bunny also promoted the app nationwide on Twitter via a dedicated account and on its website, thememojiapp.com. Lucky Bunny used the MEMOJI mark continuously in connection with its app from launch until late July 2018.

On May 31, 2018, Lucky Bunny transferred "all right, title and interest in" the MEMOJI mark and Lucky Bunny's pending trademark application "together with the goodwill connected with the use of and symbolized by" the MEMOJI mark to an Apple-owned entity called MemoFun Apps LLC ("MemoFun"). Apple then recorded at the U.S. Patent & Trademark Office ("PTO") the assignment of the Prior Owners' rights in the MEMOJI mark to MemoFun, and the assignment of those rights from MemoFun to Apple. Apple also allowed Lucky Bunny to continue offering the MEmoji App until July 30, 2018.

On June 4, 2018, after acquiring Lucky Bunny's rights to the MEMOJI mark, Apple announced its Memoji software feature as part of its iOS 12 operating system at its high-profile Worldwide Developers Conference ("WWDC") keynote event. It also released a beta version of its iOS 12 software, including the Memoji software feature, to developers and managed seed audiences that same day. Immediately after, the Memoji software feature received substantial press coverage in numerous general interest publications such as *The Wall Street Journal*, *New York Magazine*, *Salon*, *Slate*, and *CNBC.com*, and in tech publications such as *Gizmodo*, *TechCrunch*, and *CNET*. Apple also began featuring the MEMOJI mark on its website immediately following the keynote and promoted the Memoji software feature in its press release regarding the WWDC event.

Nine days after Apple announced its Memoji software feature, Social Tech contacted Apple, citing the WWDC event and demanding that Apple immediately cease its use of the MEMOJI mark in light of Social Tech's intent-to-use application. Apple responded on June 14, 2018, explaining that Apple had prior rights, as Apple had acquired rights to the MEMOJI mark that predated Social Tech's intent-to-use application. Apple further notified Social Tech that it would cancel any trademark registration Social Tech obtained. On June 22, 2018, Social Tech responded and reaffirmed its position. Social Tech did not contact Apple again before filing suit.

On June 25, 2018, before Social Tech launched its app, Apple released the public beta version of iOS 12 through its Beta Software Program, which has millions of members and is open to all iPhone X users. On September 17, 2018, Apple made iOS 12 available for public download. All existing iPhone X users could download iOS 12 and use the Memoji software feature. As of October 2018, iOS 12 was installed on roughly 53% of active devices introduced in the past four years. iOS 12 is also pre-loaded on the iPhone XS, iPhone XS Max, and iPhone XR mobile devices that were released in September and October of 2018.

On June 28, 2018, following Apple's announcement and beta release of its Memoji software feature, Social Tech hurriedly launched its free app on Google Play. Its apparent purpose in doing so was to engage—for the first time—in "use" of the MEMOJI Design Mark in commerce to perfect its dormant intent-to-use application for a specific design mark incorporating the word "Memoji" (the "MEMOJI Design Mark"). Social Tech had filed its intent-to-use application on April 1, 2016. According to Social Tech's application, "[t]he mark consists of white reflective letters spelling 'MeMOJI' on a black background, with a female face inside the 'o'." Social Tech has admitted that, when it filed its intent-to-use application, it knew of Lucky Bunny's MEmoji App but but claims it ignored Lucky Bunny's rights because it believed Lucky Bunny had ceased

using the mark (even though a search would have shown that Lucky Bunny's MEmoji App was still available on the App Store).[2]  Two days later, Social Tech filed a statement of use with the PTO.  On September 18, 2018, Social Tech obtained its registration.  Eight days later, Apple petitioned to cancel Social Tech's registration based on Apple's prior rights.  On September 27, 2018, four months after Apple's announcement and launch of the Memoji software feature, Social Tech filed this suit.

The persons who have knowledge of some or all of this information include: Kurt Knight, Michael Jaynes, and Thomas R. La Perle.  Messrs. Knight, Jaynes, and La Perle can each be contacted care of Kirkland & Ellis, LLP, whose contact information appears on the caption page of these responses.  Apple further believes that Samuel Bonet has knowledge of this information.

**INTERROGATORY NO. 2:**

List with specificity all facts on which You intend to rely for Your affirmative defenses, including by identifying all persons with knowledge of such facts.

**RESPONSES TO INTERROGATORY NO. 2:**

In addition to its general objections, Apple objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case, at least because it seeks "all facts" on which Apple intends to rely for its counterclaim for trademark infringement and asks Apple to identify "all persons" with knowledge of such facts.  Apple objects to this Interrogatory to the extent it seeks information not in Apple's possession, custody, or control.  Additionally, Apple objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the work-product immunity doctrine, or other applicable privilege.

---

[2] Apple also notes that although Social Tech's LinkedIn page stated that it expected to launch its app in "the latter part of 2017," Social Tech did not launch an app using the MEMOJI Design Mark until June 28, 2018.

Apple further objects to this Interrogatory to the extent it is premature.  This case is in the early phases of discovery and Apple's investigation is not complete.  Apple responds to this Interrogatory based on currently available information and reserves all rights to supplement, amend, or modify this response.  Apple further objects to this Interrogatory to the extent it calls for legal conclusions and is compound.

Subject to and without waiver of the foregoing objections, Apple responds as follows: Apple incorporates by reference its response to Interrogatory No. 1.  Apple further states that after Social Tech's June 22, 2018 letter to Apple, Social Tech did not contact Apple any further for over three months.  Apple next heard from Social Tech on September 28, 2018, when Social Tech informed Apple that it had filed this lawsuit.  Apple reasonably relied on Social Tech's inaction to alter its position and release iOS 12 using Memoji as the name of the software feature.

The persons who have knowledge of some or all of this information include: Kurt Knight, Michael Jaynes, and Thomas R. La Perle.  Messrs. Knight, Jaynes, and La Perle can each be contacted care of Kirkland & Ellis, LLP, whose contact information appears on the caption page of these responses.  Apple further believes that Samuel Bonet has knowledge of this information.

**INTERROGATORY NO. 3:**

Describe in detail all of Your communications with Lucky Bunny, MemoFun, and Robert Jackson and Associates regarding the MEMOJI trademark and the Lucky Bunny Trademark.

**RESPONSES TO INTERROGATORY NO. 3:**

In addition to its general objections, Apple objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case, at least because it seeks "all of [Apple's] communications."  Additionally, Apple objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the work-product immunity doctrine, or other applicable privilege.  Apple further objects to this Interrogatory as compound.

Apple also objects to this Interrogatory to the extent it is not reasonably limited as to time or scope. Apple therefore responds to this Interrogatory only insofar as it seeks communications that occurred in connection with MemoFun's acquisition of Lucky Bunny's rights to the MEMOJI mark up to and including the date on which that acquisition was complete.

Subject to and without waiver of the foregoing objections, Apple responds as follows:

***CONFIDENTIAL***

Apple did not have any direct communications with Lucky Bunny in connection with MemoFun's acquisition of Lucky Bunny's rights to the MEMOJI mark (and associated goodwill). Instead, Apple's agent contacted Lucky Bunny about acquiring its rights and communicated with Lucky Bunny to facilitate that acquisition. Apple's agent first contacted Lucky Bunny on or about May 19, 2018. Apple's agent thereafter had various email and telephonic communications with Lucky Bunny about the terms of the acquisition agreement. On May 31, 2018, Lucky Bunny sent to Apple's agent the signed acquisition agreement. Thereafter, on June 4, 2018, MemoFun assigned the rights and goodwill to the MEMOJI mark to Apple.

***END CONFIDENTIAL DESIGNATION***

**INTERROGATORY NO. 4:**

Describe in detail all of Your communications, including communications by any person on Your behalf, with Alphabet Inc., including any Google employee in the Google Play or Google Play Developer divisions, regarding Social Tech's MEMOJI app.

**RESPONSES TO INTERROGATORY NO. 4:**

In addition to its general objections, Apple objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case, at least because it seeks "all of [Apple's] communications."

Subject to and without waiver of the foregoing objections, Apple responds as follows: None.

**INTERROGATORY NO. 5:**

Describe in detail Your decision to use the word memoji in connection with the Apple Memoji software, and all reasons therefor.

**RESPONSES TO INTERROGATORY NO. 5:**

In addition to its general objections, Apple objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case, at least because it seeks information about "all reasons" why Apple used the word memoji in connection with the Apple Memoji software feature. Additionally, Apple objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the work-product immunity doctrine, or other applicable privilege.

Subject to and without waiver of the foregoing objections, Apple responds as follows: In 2017, Apple debuted the Animoji feature in iPhone X mobile devices. The Animoji feature, available within the Messages app on the iPhone X mobile device, maps a user's facial expressions and allows the user to mirror the user's facial expressions onto an array of animated characters (such as a unicorn, chicken, robot, cat, alien or dog). It creates animated characters mimicking the user's facial expressions. The user can save and send these animated characters in a digital sticker or as a video file with the user's own voice, thus enabling the user to send a talking animated emoji as a video message. The Animoji feature was well-liked among users, as was reported by numerous news sources, including *The Washington Post*, *Chicago Daily Herald*, *Cnet.com*, *Wired.com*, *LA Times*, *Forbes*, *Time*, *PC Mag*, and *Mashable.com*.

Following on the heels of Animoji's popularity amongst consumers, Apple wanted to expand the Animoji feature even further to provide users the ability to create customizable

personalized characters that resemble the individual. With the new personalization feature, users would be able to create a personalized character based on the user's selection of face, hair, and other customizable features. The user can access this feature through the Messages app by clicking on the "New Memoji" button within the Animoji feature on devices with Apple's TrueDepth camera (released as part of the iPhone X mobile device). Once the user creates his or her personalized character, the user can then create and save an animated video message or a digital sticker and share it with others through the Messages app of the user's iPhone mobile device. Effectively, the app allows users to turn themselves into animated emojis by selecting character features to design an alter ego that matches their personality and mood.

Since this new feature would reside within the Animoji feature (*i.e.*, the user would have access to the new feature only as a feature within the Animoji feature), and since the new feature was a natural evolution of the Animoji feature, Apple wanted to pick a name that would also be a natural evolution of the Animoji name. In addition, by the time Apple started the naming process for this new feature, the Animoji feature had already been in use by Apple for several months, and was already widely popular with a tremendous amount of goodwill attached to it. Apple therefore wanted to find a name that would be connected with the Animoji feature's popularity. Finally, Apple needed a name with the functional advantage of being short enough to fit in a phone display. After conducting brainstorming sessions, Apple decided that the name "Memoji" met these criteria. The Legal Department completed the clearance prior to Apple's adoption of the Memoji name. Also, as discussed in response to Interrogatory No. 1, Apple acquired prior rights from Lucky Bunny before adopting the Memoji name for Apple's Memoji software feature.

**INTERROGATORY NO. 6:**

Describe in detail all efforts You made to acquire the rights to the MEMOJI trademark, including but not limited to the contact made with Social Tech on or around May 21, 2018, regarding Social Tech's interest in selling its MEMOJI trademark rights.

**RESPONSES TO INTERROGATORY NO. 6:**

In addition to its general objections, Apple objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case, at least because it seeks information about "all efforts" Apple made to acquire rights to the MEMOJI trademark. Additionally, Apple objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the work-product immunity doctrine, or other applicable privilege.

Subject to and without waiver of the foregoing objections, Apple responds as follows:

**\*\*\*CONFIDENTIAL\*\*\***

As a result of its clearance search, Apple identified Lucky Bunny's prior rights to the MEMOJI Mark. Apple also learned of Social Tech's pending but dormant intent-to-use trademark application. Based on the information available to it (including that Social Tech had never used its purported Memoji Design Mark in commerce and missed its self-stated deadline to launch its app), Apple concluded that Lucky Bunny was the prior user of the MEMOJI Mark and that Social Tech had no rights to the MEMOJI Mark.

Apple's agent contacted Lucky Bunny on or about May 19, 2018 to ask if it would sell the MEMOJI mark. On May 31, 2018, Lucky Bunny transferred "all right, title and interest in" the MEMOJI mark and Lucky Bunny's pending trademark application "together with the goodwill connected with the use of and symbolized by" the MEMOJI mark to an Apple-owned entity called

MemoFun. Apple then recorded at the PTO the assignment of Lucky Bunny's rights in the MEMOJI mark to MemoFun, and the assignment of those rights from MemoFun to Apple.

Despite the fact that Social Tech had no rights in the MEMOJI Mark, Apple recognized that acquiring Social Tech's application would help simplify the path for Apple to register the MEMOJI mark. Apple's agent thus contacted Social Tech on or about May 21, 2018 to inquire whether Social Tech was interested in selling whatever rights it might have in the MEMOJI mark (including its intent-to-use application). Social Tech responded that it was not interested. The agent did not make any further attempts to contact Social Tech, whose rights in the MEMOJI mark (if any) were junior to those that Apple acquired from Lucky Bunny.

***END CONFIDENTIAL DESIGNATION***

**INTERROGATORY NO. 7:**

Identify each unique download of the Lucky Bunny App from the date of its release to the present, including the location of each download, the date of each download, and the identification of multiple downloads of the Lucky Bunny App by the same user.

**RESPONSES TO INTERROGATORY NO. 7:**

In addition to its general objections, Apple objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case, at least because it seeks information about "each" unique download of Lucky Bunny's app. Apple objects to this Interrogatory to the extent it seeks information not in Apple's possession, custody, or control. Apple further objects to this Interrogatory as vague and ambiguous insofar as it uses the terms "unique download." Apple interprets "unique download" to refer to each instance in which an individual downloaded the Lucky Bunny App for the first time (as opposed to re-downloads). Apple further objects to this Interrogatory to the extent it seeks private information about third parties to this case. The identities of Lucky Bunny's users are not relevant to any issue in this case

in part due to the fact that Lucky Bunny's app ceased to be offered for download after July 30, 2018.

**\*\*\*END CONFIDENTIAL DESIGNATION\*\*\***

**INTERROGATORY NO. 9:**

Describe in detail any and all marketing efforts of the Lucky Bunny App.

**RESPONSES TO INTERROGATORY NO. 9:**

In addition to its general objections, Apple objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case, at least because it seeks information about "any and all" marketing efforts of the Lucky Bunny App. Apple objects to this Interrogatory to the extent it seeks information not in Apple's possession, custody, or control.

Subject to and without waiver of the foregoing objections, Apple responds as follows: From 2014 through the 2018 acquisition, Lucky Bunny promoted its MEmoji App on its website and via a dedicated Twitter account. The MEmoji App received national public attention in the media, including from *The Ellen Degeneres Show*, *The Howard Stern Show*, *USA Today*, *AdWeek*, and *The Huffington Post*. The app was promoted by the comedian and actor Howie Mandel, and received significant attention on social media.

**INTERROGATORY NO. 10:**

Describe in detail each search conducted on the availability for the use of the MEMOJI trademark.

**RESPONSES TO INTERROGATORY NO. 10:**

In addition to its general objections, Apple objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case, at least because it seeks information about "each" search conducted on the availability for the use of the MEMOJI trademark. Apple objects to this Interrogatory as vague and ambiguous insofar as it uses the term

15

"availability for the use of the MEMOJI trademark." Apple objects to this Interrogatory to the extent it seeks information not in Apple's possession, custody, or control. Additionally, Apple objects to this Interrogatory to the extent it seeks information protected from discovery by the attorney-client privilege, the work-product immunity doctrine, or other applicable privilege.

Subject to and without waiver of the foregoing objections, Apple responds as follows:

***CONFIDENTIAL***

In April of 2018, Apple's outside counsel conducted a full, multinational trademark search on the mark MEMOJI for selfie emoji applications and conducted follow-up investigations based on the results of that search as part of Apple's clearance process. Apple's search revealed Lucky Bunny's active app in the App Store (the MEmoji App), which had been available to users since September 22, 2014. As described above, the MEmoji App allowed users to "TURN [THEMSELVES] INTO AN EMOJI" and then text their "MEMOJI PHOTOS & VIDEOS TO [THEIR] FRIENDS." To the best of Apple's knowledge, at the time of Apple's search, Lucky Bunny had prior rights to the MEMOJI mark for use in connection with a personalized emoji app to operate under the trademark MEMOJI.

Apple's search also revealed Social Tech's intent-to-use application for the MEMOJI Design Mark, which Social Tech filed on April 1, 2016. Apple's investigation showed, however, that Social Tech was not using the MEMOJI Design Mark. It had no "Memoji" app on the App Store or Google Play, even though two years had passed since it filed its intent-to-use trademark application. In fact, although Social Tech claimed on LinkedIn that its product was expected to launch in "the latter part of 2017," that time had passed without Social Tech launching a product with the name "Memoji." Social Tech also had not submitted a specimen of use to the PTO showing use.

Dated:  March 18, 2019

*/s/ Lauren J. Schweitzer*
Dale M. Cendali
Mary Mazzello
Megan L. McKeown
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
dale.cendali@kirkland.com
mary.mazzello@kirkland.com
megan.mckeown@kirkland.com

Diana M. Torres
Lauren J. Schweitzer
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, CA 90071
Telephone: (213) 680-8400
Facsimile:  (213) 680-8500
diana.torres@kirkland.com
lauren.schweitzer@kirkland.com

*Attorneys for Apple Inc.*

## VERIFICATION

I, Thomas R. La Perle, declare as follows:

I am a Senior Director in Apple Inc.'s Legal Department managing Apple's Trademark and Copyright Group. I am duly authorized to make this verification for and on behalf of Apple Inc., and I make this verification solely in my capacity as an authorized agent.

I have read Apple's Objections and Responses to Plaintiff Social Technologies LLC's First Set of Interrogatories to Defendant Apple Inc., and know the contents thereof. The facts set forth therein are within Apple's knowledge and not entirely within my personal knowledge, but there is no one agent of Apple who has personal knowledge of all such facts, and such facts have been determined by Apple's authorized employees, agents, and counsel. I am, therefore, informed and believe, and on that ground, state that such facts are true.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at Sunnyvale, California, on March 28, 2019.

_____
Thomas R. La Perle