# EXHIBIT 10

# PUBLIC REDACTED VERSION

CONFIDENTIAL - ATTORNEY'S EYES ONLY

Page 1

1       UNITED STATES DISTRICT COURT
2       NORTHERN DISTRICT OF CALIFORNIA
3
4   SOCIAL TECHNOLOGIES LLC,      )
5             Plaintiff,          )
6         vs.                     ) Case No.
7   APPLE INC.,                   ) 3:2018-cv-05945
8             Defendant.          )
9   _____)
10
11      CONFIDENTIAL - ATTORNEY'S EYES ONLY
12
13  VIDEOTAPED DEPOSITION OF APPLE INC. THROUGH 30(b)(6)
14           WITNESS THOMAS ROSS LAPERLE
15              Palo Alto, California
16              Tuesday, June 18, 2019
17
18
19
20
21  Reported by:
22  ASHALA TYLOR, CSR #2436, CLR, CRR, RPR
23
24
25

CONFIDENTIAL - ATTORNEY'S EYES ONLY

Page 62

```
 1   it was early June.


 4            MS. CENDALI:  Outside the scope.
 5            You may answer.




11            MS. CENDALI:  Outside the scope.
12            You may answer.
13            THE WITNESS:  So I think some of the
14   documents you have would probably help me place the
15   dates where we did the acquisition of the
16   Lucky Bunny rights, but we had done the clearance
17   work.  We realized that Lucky Bunny had the
18   trademark rights to MEmoji, and we had to -- we had
19   to secure those rights before we adopted that name.
20   BY MR. HECHT:
21       Q.   So if Lucky Bunny had not sold the alleged
22   trademark rights to Apple, Apple would not have used
23   Memoji?
24       A.   That -- that would have been our advice,
25   and I believe that would have been the case, yes.
```

CONFIDENTIAL - ATTORNEY'S EYES ONLY

Page 65

1    THE WITNESS:  Well, I don't -- by
2    "interest," I'm not sure exactly what you mean
3    but --
4    BY MR. HECHT:
5        Q.   Did you become aware of Chris Anthony's
6    MEMOJI application following the clearance search?
7        A.   Chris Anthony's?  That's the Social Tech
8    or no?
9        Q.   There's another MEMOJI application.  Are
10   you aware of Chris Anthony's MEMOJI application?
11       MS. CENDALI:  The Anthony application.
12       THE WITNESS:  The trademark application.
13   BY MR. HECHT:
14       Q.   The app.
15       A.   Okay.
16       Q.   App Store app, yes.
17       A.   No.  We were not.  It did not show up in
18   the search, no.
19       Q.   Did you personally participate in the
20   clearance search?
21       A.   In what way do you mean?
22       Q.   Did you run any searches?
23       A.   I looked at some Google -- Google
24   searches.
25       Q.   Anything else besides Google?

CONFIDENTIAL - ATTORNEY'S EYES ONLY

Page 66

1    A.    I may have been done a USPTO search.
2    Q.    What did you search on Google?
3    A.    It would just -- "Memoji."
4    Q.    Did you search for "Memoji app" or just
5    "Memoji" by itself?
6    A.    I don't -- I don't recall.
7    Q.    But it would have at least included
8    "Memoji"?
9    A.    Yes.  But I want to clarify that we sent
10   this to our outside counsel who was doing a very
11   detailed search.  I often will do a little bit of
12   searching as well, and so I do recall that I did a
13   Google search, and I do recall seeing the
14   Lucky Bunny app coming up in the Google search.
15   Q.    Did Social Technologies come up in the
16   Google search?
17   A.    I do not -- no.  I do not believe so.
18   Q.    You don't believe so?
19   A.    I don't -- I don't have any recollection
20   of Social -- I've never -- I was aware of the
21   Social Technologies' intent to use application.
22   Q.    How?
23   A.    Well, both from my own USPTO search, but
24   also from Dechert's clearance search.
25   Q.    So is it fair to say that you performed an

Page 67

1  initial KO search, as you had named it before?
2       A.   I had looked at -- I have may done just a
3  US identical search, yeah.  But I don't -- I don't
4  have any record of that.  That's just my
5  recollection.
6       Q.   Did you use SAEGIS?
7       A.   I may have, but I just don't recall.
8       Q.   Did you search the App Store?
9       A.   I didn't -- I don't recall searching the
10 App Store because, again, I wasn't doing the search.
11 This was sent out for someone, you know, a
12 professional outside counsel to do a very detailed
13 search.  So I did a little bit of searching
14 primarily really the Google search, which showed
15 that the Lucky Bunny was very clearly the most
16 prominent or the only prominent mark that was
17 revealed in those searches -- or that search.
18      Q.   Did you have anything to add to -- did you
19 accept -- scratch that.
20           Did you accept counsel's advice regarding
21 the trademark clearance, or did you do your own deep
22 dive clearance search?
23           MS. CENDALI:  Objection to form and
24 objection with regard to attorney-client privilege.
25           And instruct you not to answer as phrased.

CONFIDENTIAL - ATTORNEY'S EYES ONLY

Page 78

1  BY MR. HECHT:
2      Q.   You said you did not, you never downloaded
3  that?
4      A.   I did not.
5      Q.   Were you aware of a 2014 Lucky Bunny
6  trademark application?
7      A.   Yes.
8      Q.   When did you become aware of that
9  application?
10     A.   Also around that same time, either did my
11 own USPTO search that we talked about or during
12 Glenn's -- you know, reading Glenn's search and
13 doing it.  I just don't recall which happened first.
14     Q.   And Glenn's search was in May 2018?
15     A.   Either late April or May, yeah.
16     Q.   Okay.  Did you ever communicate directly
17 with Yarborough --
18     A.   No.
19     Q.   -- in connection with this matter?
20     A.   No.
21     Q.   Did you provide instructions to counsel to
22 relay to Yarborough?
23     A.   Yes.
24     Q.   What instructions did you give Yarborough
25 through counsel?

Page 100

1    Q.   What -- what happened to the domain name,
2  the Lucky Bunny domain name?
3    A.   It's -- Apple owns it.  It's appointed
4  to -- I think it's appointed by iOS website where
5  the MEmoji feature is discussed.
6    Q.   Was there any transfer of source code from
7  Lucky Bunny to Apple or to Memofun?
8    A.   No.
9    Q.   And under the assignment agreement,
10  Lucky Bunny was permitted to continue to offer its
11  MEmoji app until July 30, 2018?
12    A.   I believe that date is correct, but they
13  had a period where they could continue the app to
14  phase out the use.  So they had a license back
15  during that period.
16    Q.   Did they express why they wanted to wind
17  down?
18    A.   I -- I don't recall exactly if they had --
19  if they gave a reason for it.  They -- they were the
20  ones that requested it, which again made us feel,
21  you know, confident in their -- their statement that
22  there were 80,000 users of the -- of their software,
23  that there must have been a reason why they
24  needed -- if there weren't any users, they wouldn't
25  need a phaseout period.

1   Lucky Bunny, for example, might have sold in
2   New York but not in Idaho?
3        A.   No.  We did not.
4        Q.   So Apple had no information regarding
5   where Lucky Bunny had actually made any sales?
6             MS. CENDALI:  Objection to form.
7   Foundation.
8             THE WITNESS:  Well, the information we had
9   was that they were clearly using the mark.  We had
10  confirmed that they had used it since 2014, that
11  they had an active website, they had an active
12  Twitter site.  They had represented to our agent
13  that they had 80,000 users.
14            So from that perspective, it was clear to
15  us that they had established common law rights.
16  BY MR. HECHT:
17       Q.   As of May 31, 2018, did Apple know, for
18  example, if Lucky Bunny had sold anything in Texas?
19            MS. CENDALI:  Objection to form.
20  Foundation.  Excuse me.  Objection to form.  Scope.
21            THE WITNESS:  So I think I've already
22  testified that we did not look into different
23  geographical locations, but we did know that there
24  were 80,000 downloads; so -- or they had represented
25  that -- I'm sorry, 80,000 users.  And it -- it

CONFIDENTIAL - ATTORNEY'S EYES ONLY

Page 185

## DECLARATION

I hereby declare I am the deponent in the within matter; that I have read the foregoing transcript and know the contents thereof; and I declare that the same is true of my knowledge except as to the matters which are therein stated upon my information or belief, and as to those matters, I believe them to be true.

I declare under the penalties of perjury under the laws of the United States that the foregoing is true and correct.

This declaration is executed this 22nd day of July, 2019, at Sunnyvale, California.

_____
THOMAS ROSS LAPERLE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

SOCIAL TECHNOLOGIES LLC, a Georgia limited liability company,

    Plaintiff,

vs.

APPLE INC., a California corporation,

    Defendant.

CASE NO.: 3:18-cv-05945-VC

**ERRATA FOR JUNE 18, 2019 DEPOSITION OF THOMAS R. LA PERLE**

| PAGE:LINE | CHANGE | REASON |
| --- | --- | --- |
| 10:20 | Change to "It should." | TE |
| 31:4-5 | Change to ". . . rarely would it be -- would it be substantive email." | TE |
| 37:4 | Change to "And so we would not have to . . ." | TE |
| 46:6 | Change "cleared search" to "clearance search" | TE |
| 49:10 | Change to "Apple's" | TE |
| 53:3 | Change "robot" to "Worldwide" | TE |
| 60:22 | Change "screen" to "chain" | TE |
| 73:2 | Change to ". . . wouldn't be surprised . . ." | TE |
| 100:3-4 | Change "appointed" to "pointed" | TE |
| 110:14 | Change to ". . . and also the application . . ." | TE |
| 111:11 | Change "intend" to "intent" | TE |
| 120:22 | Change "IT" to "ITU" | TE |
| 146:25 | Change to ". . . iOS 12 beta was . . ." | TE |
| 155:1-2 | Change "social technology" to "Social Technologies" | TE |
| 157:1 | The speaker should be myself, not Ms. Cendali. | TE |
| 159: | Change to "It was not an intent to . . ." | TE |
| 162:8 | Change to "registrants'" | TE |
| 162:9 | Change to "registrants'" | TE |
| 171:5 | Change to ". . . in any style or font." | TE |

*TE = Transcription Error

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 23nd day of July 2019 at Sunnyvale, California.

Thomas R. La Perle