Diana M. Torres (S.B.N. 162284)
diana.torres@kirkland.com
Lauren J. Schweitzer (S.B.N. 301654)
lauren.schweitzer@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400

Dale M. Cendali (S.B.N. 1969070)
dale.cendali@kirkland.com
Mary Mazzello (admitted *pro hac vice*)
mary.mazzello@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800

Megan L. McKeown (admitted *pro hac vice*)
megan.mckeown@kirkland.com
KIRKLAND & ELLIS LLP
609 Main Street
Houston, Texas 77002
Telephone: (713) 836-3499

Attorneys for Defendant Apple Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SOCIAL TECHNOLOGIES LLC, a Georgia limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>APPLE INC., a California corporation,<br><br>Defendant. | ) CASE NO.: 3:18-cv-05945-VC<br>)<br>)<br>) **APPLE INC.'S REPLY MEMORANDUM**<br>) **OF LAW IN SUPPORT OF ITS**<br>) **MOTION FOR SUMMARY JUDGMENT**<br>)<br>)<br>)<br>) |

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     PRELIMINARY STATEMENT ............................................................................ 1

II.    SOCIAL TECH HAS NOT SHOWN THAT ITS REGISTRATION IS VALID .................. 1

     A.    Social Tech's Registration is Not Valid Because Social Tech Knew That Lucky Bunny Had Prior Trademark Rights. .................................................. 1

     B.    Apple's Reliance on Lucky Bunny's Rights is Proper. ................................. 3

     C.    Social Tech Did Not Engage in Bona Fide Use of the MEMOJI Design Mark. .......... 4

III.   APPLE HAS PRIOR RIGHTS TO MEMOJI AND SOCIAL TECH HAS NONE ................. 5

     A.    Apple Need Not Show Market Penetration. ................................................. 5

     B.    Even if Market Penetration Were Required, Lucky Bunny (and Apple) Has It. .......... 6

     C.    Lucky Bunny Validly Assigned Its Rights to Apple. ................................... 9

IV.   SOCIAL TECH HAS NOT SHOWN A LIKELIHOOD OF CONFUSION ......................... 9

     A.    Social Tech's Survey Does Not Support a Likelihood of Confusion. ......................... 9

     B.    Social Tech Has Not Established Any Actual Confusion. .......................................... 11

     C.    Social Tech Has Not Shown that the Parties' Marks Are Similar. ............................ 13

     D.    Social Tech Cannot Establish Any of the Other Likelihood of Confusion Factors. ..................................................................................................... 14

**REPLY MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT**    **CASE NO. 3:18-cv-05945-VC**

## TABLE OF CITATION REFERENCES

| Short Cite | Dkt. No. | Description of Document |
|---|---|---|
| Apple Br. | 124 | Defendant Apple Inc.'s Notice of Motion and Motion for Summary Judgment; Opposition to Social Technologies LLC's Motion for Summary Judgment; and Memorandum of Law in Support Thereof, filed Oct. 30, 2019 |
| Bonet PI Decl. | 4-16 | Declaration of Samuel Bonet in Support of Plaintiff's Motion for Preliminary Injunction, filed Sept. 28, 2018 |
| Bonet SJ Decl. | 133 | Declaration of Samuel Bonet in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment, filed Nov. 14, 2019 |
| Ghose Decl. | 126 | Declaration of Dr. Anindya Ghose in Support of Apple Inc.'s Motion for Summary Judgment and in Opposition to Social Technologies LLC's Motion for Summary Judgement, filed Oct. 30, 2019 |
| Hecht 2d Decl. | 132-01 | Declaration of David L. Hecht in Support of Plaintiff and Counterclaim Defendant Social Technologies LLC's Reply Motion for Partial Summary Judgment and Opposition to Apple Inc.'s Cross Motion for Summary Judgment, filed Nov. 14, 2019 |
| Hecht Decl. | 115-01 | Declaration of David L. Hecht in Support of Plaintiff and Counterclaim Defendant Social Technologies LLC's Motion for Partial Summary Judgment, filed Oct. 3, 2019 |
| Jaynes Decl. | 34 | Declaration of Michael Jaynes in Support of Apple Inc.'s Opposition to Plaintiff's Motion for Preliminary Injunction, filed Oct. 19, 2018 |
| Knight Decl. | 33 | Declaration of Kurt Knight in Support of Apple Inc.'s Opposition to Plaintiff's Motion for Preliminary Injunction, filed Oct. 19, 2018 |
| Mazzello Decl. | Pending | Declaration of Mary Mazzello in Support of Apple Inc.'s Reply Memorandum of Law in Support of Its Motion for Summary Judgment, filed contemporaneously on Nov. 26, 2019 |
| PI Order | 43 | Order Denying Motion for Preliminary Injunction |

| Short Cite | Dkt. No. | Description of Document |
|---|---|---|
| Simonson Decl. | 128 | Declaration of Dr. Itamar Simonson in Support of Apple Inc.'s Motion for Summary Judgment and in Opposition to Social Technologies LLC's Motion for Summary Judgment, filed Oct. 30, 2019 |
| ST Opp. Br. | 132 | Plaintiff Social Technologies LLC's Reply Memorandum and Memorandum of Law in Opposition to Defendant Apple Inc.'s Cross Motion for Summary Judgment, filed Nov. 14, 2019 |
| Torres Decl. | 125 | Declaration of Diana M. Torres in Support of Apple Inc.'s Motion for Summary Judgment and in Opposition to Social Technologies LLC's Motion for Summary Judgment, filed Oct. 30, 2019 |

## AMENDED TABLE OF EXHIBITS

| Declaration | Ex. No. | Dkt. No.[1] | Description of Document |
|---|---|---|---|
| Torres Decl. | 1 | 125-01 | Email chain among Social Technologies LLC ("Social Tech"), Justin Grant, and Idrees Ashraf dated from July 6, 2018 to July 14, 2018 bearing the subject line "Memoji Translations," produced as SocialTech_0000796–799, and used as Exhibit 80 during the depositions of Mr. Bonet and Mr. Grant |
| Torres Decl. | 2 | 125-02 | Email chain among Social Tech, Justin Grant, and Idrees Ashraf from June 7, 2018 to June 18, 2018 re "MEMOJI \| Stage 1," produced as SocialTech_0000752–758, and used as Exhibit 75 during the depositions of Mr. Bonet and Mr. Grant |
| Torres Decl. | 3 | 125-03 | File Wrapper for Social Tech's trademark application for the MEMOJI design mark, Serial No. 86/961,925, MEMOJI, produced as APL-STECH_00000165–286, and marked as Exhibit 227 during the deposition of Mr. Bonet |
| Torres Decl. | 4 | 125-04 | Excerpts from the Transcript of Deposition of Samuel E. Bonet, Social Tech's 30(b)(6) witness and co-founder, dated July 3, 2019 |
| Torres Decl. | 5 | 125-05 | Homepage for the domain thememojiapp.com, the website for Lucky Bunny LLC's and Big 3 Ent., LLC's (collectively, "Lucky Bunny") MEMOJI app, from Dec. 20, 2014, produced as APL-STECH_00000023–25 and used as Exhibit 21 during the deposition of Lucky Bunny |
| Torres Decl. | 6 | 125-06 | Excerpts from Apple Inc.'s ("Apple") Responses and Objections to Social Tech's First Set of Interrogatories and verification page, dated March 18, 2019 |
| Torres Decl. | 7 | 125-07 | Apple webpage titled "Use Memoji on your iPhone X or iPad Pro," dated Sept. 19, 2019, produced as SocialTech_0001279–1282 |
| Torres Decl. | 8 | 125-08 | Compendium of publicly available articles describing Apple's Memoji software feature |

---

[1] Docket numbers for all previously filed exhibits are listed here for ease of cross-reference by the Court.

| Declaration | Ex. No. | Dkt. No.[1] | Description of Document |
|---|---|---|---|
| Torres Decl. | 9 | 125-09 | Excerpts from the Transcript of Deposition of Kurt Knight, Apple's Senior Director, iOS Product Marketing and 30(b)(6) witness on topics related to the marketing of Apple's Memoji software feature and Apple's selection of the name Memoji, dated June 21, 2019 |
| Torres Decl. | 10 | 125-10 | Excerpts from the Transcript of Deposition of Thomas R. La Perle, Apple's Director, Legal and 30(b)(6) witness on Apple's clearance and acquisition of the trademark MEMOJI, among other things, dated June 18, 2019 |
| Torres Decl. | 11 | 125-11 | Excerpts from the Transcript of Deposition of Cameron Ehrlich, Lucky Bunny's 30(b)(6) witness and founder, dated June 8, 2019 |
| Torres Decl. | 12 | 125-12 | Spreadsheet showing the "[t]otal number of downloads by year and state" for Lucky Bunny's MEMOJI app, which was attached to the Declaration of Michael Jaynes, Apple's Senior Finance Manager, Dkt. No. 34-1, filed in support of Apple's Opposition to Social Tech's Motion for Preliminary Injunction, and marked as Exhibit No. 119 in Mr. Jaynes' deposition.  A version of this document also was produced under Bates number APL-STECH_00000843–853 |
| Torres Decl. | 13 | 125-13 | Spreadsheet containing data from 2014 through 2018 concerning Apple's App Store, and marked as Exhibit 130 during Mr. Jaynes' deposition.  A version of this document also was produced as APL-STECH_00006226–6227 |
| Torres Decl. | 14 | 125-14 | Lucky Bunny's Press Kit for its app, produced as LB000339–342, and marked as Exhibit 14 at Mr. Ehrlich's deposition |
| Torres Decl. | 15 | 125-15 | Compendium of social media posts for Lucky Bunny's MEMOJI app from celebrities and other endorsers of the app |
| Torres Decl. | 16 | 125-16 | Video Clip of *The Ellen DeGeneres Show* during which Lucky Bunny's MEMOJI app was promoted, produced as APL-STECH_00006230 |
| Torres Decl. | 17 | 125-17 | Audio Clip of *The Howard Stern Show* during which Lucky Bunny's MEMOJI app was promoted, produced as APL-STECH_00006225 |

| Declaration | Ex. No. | Dkt. No.[1] | Description of Document |
|---|---|---|---|
| Torres Decl. | 18 | 125-18 | Compendium of promotional materials for Lucky Bunny's MEMOJI app from national press sources such as *USA Today*, *AdWeek*, and *The Huffington Post* |
| Torres Decl. | 19 | 125-19 | File Wrapper for Lucky Bunny's trademark application for the word mark MEMOJI filed on October 29, 2014, Serial No. 86/438,926, produced as APL-STECH_00000138–164 |
| Torres Decl. | 20 | 125-20 | File Wrapper for Lucky Bunny's trademark application for the word mark MEMOJI filed on April 3, 2017, Serial No. 87/397,135, produced as APL-STECH_00000287–382, and marked as Exhibit 231 during Mr. Bonet's deposition |
| Torres Decl. | 21 | 125-21 | Trademark Agreement between Lucky Bunny and Apple's subsidiary, Memofun Apps LLC, concerning the MEMOJI mark, dated May 31, 2018, produced as APL-STECH_00000867–876, marked as Exhibit 101 in Mr. La Perle's deposition |
| Torres Decl. | 22 | 125-22 | Trademark Assignment between Memofun Apps LLC and Apple, dated June 4, 2018, produced as APL-STECH_00000855, marked as Exhibit 107 in Mr. La Perle's deposition |
| Torres Decl. | 23 | 125-23 | Apple's Press Release, dated June 4, 2018, concerning its Memoji software feature, titled "Apple previews iOS12," produced as APL-STECH_00000578–591, a version of which was attached as Exhibit 1 to Mr. Knight's Declaration in Opposition to Social Tech's Motion for Preliminary Injunction |
| Torres Decl. | 24 | 125-24 | Apple Press Release titled "Apple previews iOS13," dated Aug. 2, 2019, and marked as Exhibit 335 during the deposition of Social Tech's expert, Andreas Groehn |
| Torres Decl. | 25 | 125-25 | Excerpts from the Transcript of Deposition of Robert Long, Social Tech's co-founder, dated June 11, 2019 |
| Torres Decl. | 26 | 125-26 | Social Tech's Objections and Responses to Defendant's Second Set of Interrogatories, dated May 10, 2019 |
| Torres Decl. | 27 | 125-27 | Social Tech's LinkedIn Page, preserved Oct. 1, 2018, produced as APL-STECH_00000512–513, and marked as Exhibit 235 in Mr. Bonet's deposition |

| Declaration | Ex. No. | Dkt. No.[1] | Description of Document |
|---|---|---|---|
| Torres Decl. | 28 | 125-28 | Excerpts from the Transcript of Deposition of Justin Grant, founder of FlexDev, Social Tech's app developer for the MEMOJI app, dated June 12, 2019 |
| Torres Decl. | 29 | 125-29 | Email from Justin Grant to Social Tech re Payment, dated Dec. 9, 2018, produced as FlexDevGrant_0543–546, and used as Exhibit 72 during the depositions of Mr. Bonet and Mr. Grant |
| Torres Decl. | 30 | 125-30 | Email dated June 7, 2018 from Social Tech to Idrees Ashraf and Justin Grant with the subject line "MEMOJI \| Stage 1," produced as SocialTech_0000774 |
| Torres Decl. | 31 | 125-31 | Letter from Social Tech's prior counsel, Gregori Mavronicolas, to Mr. La Perle re "'MEMOJI' Trademark," dated June 13, 2018 |
| Torres Decl. | 32 | 125-32 | Letter from Apple's counsel, Glenn Gunderson, to Gregori Mavronicolas re "MEMOJI trademark - Apple / Social Technologies," dated June 14, 2018 |
| Torres Decl. | 33 | 125-33 | Letter from Gregori Mavronicolas to Glenn Gunderson re "'MEMOJI' Trademark," dated June 22, 2018 |
| Torres Decl. | 34 | 125-34 | Apple Press Release titled "Highlights from WWDC 2018," dated June 4, 2019, produced as APL-STECH_00000461–466 |
| Torres Decl. | 35 | 125-35 | Google Report re "Install Counts" for Social Tech's MEMOJI app, produced as GOOG-MEMO-00000009, and used as Exhibit 252 during the deposition of Mr. Bonet |
| Torres Decl. | 36 | 125-36 | Excerpts from Transcript of Deposition of Christopher Anthony, dated June 25, 2019 |
| Torres Decl. | 37 | 125-37 | Log concerning the status and availability of Mr. Anthony's app, which used the word "Memoji," marked as Exhibit 215 during the deposition of Stoney Gamble, and produced as APL-STECH_00012764–12766 |
| Torres Decl. | 38 | 125-38 | Excerpts from Transcript of Deposition of Stoney Gamble, Apple's Application Support Manager and 30(b)6 witness on App Store procedures, dated June 27, 2019 |

**REPLY MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT**        **CASE NO. 3:18-cv-05945-VC**

| Declaration | Ex. No. | Dkt. No.[1] | Description of Document |
|---|---|---|---|
| Torres Decl. | 39 | 125-39 | Spreadsheet concerning downloads of Mr. Anthony's app from the App Store, produced as APL-STECH_00001335–1337 and marked as Exhibit 129 during the deposition of Mr. Jaynes |
| Torres Decl. | 40 | 125-40 | Excerpts from the Transcript of Deposition of Michael Jaynes, Apple's Senior Finance Manager and 30(b)(6) witness on App Store data, dated June 20, 2019 |
| Torres Decl. | 41 | 125-41 | Trademark Agreement between Christopher Anthony and Social Tech, dated May 13, 2019, produced as SocialTech_0000870–886, and used as Exhibit 189 in the depositions of Mr. Bonet and Mr. Anthony |
| Torres Decl. | 42 | 125-42 | Screenshot of SocialTechnologiesLLC/Memoji-iOS GitHub, produced as SocialTech_0000887, and used as Exhibit 233 during the deposition of Mr. Bonet |
| Torres Decl. | 43 | 125-43 | Email Alert from Wells Fargo to S. Bonet titled "You sent money with Zelle" concerning payment to "Justin Grant" and other payment alerts related to Social Tech's Memoji App, produced as SocialTech_0000905–907 and FlexDevGrant_0231, and marked as Exhibit 279 during the deposition of Mr. Bonet. |
| Torres Decl. | 44 | 125-44 | Email from Social Tech to Justin Grant re "Memoji Functionality Description," dated June 6, 2018, produced as FlexDevGrant_0176, and marked as Exhibit 237 during the deposition of Mr. Bonet |
| Torres Decl. | 45 | 125-45 | Email chain among Social Tech, Justin Grant, and Idrees Ashraf dated from June 26, 2018 to June 28, 2018 re "Memoji Release for iOS and Android," produced as FlexDevGrant_0430–441 and used as Exhibit 79 during the depositions of Mr. Bonet and Mr. Grant |
| Torres Decl. | 46 | 125-46 | The Apple App Store Preview Page for Lucky Bunny's MEMOJI app, produced as LB000818 |
| Torres Decl. | 47 | 125-47 | Excerpt of MEMOJI announcement from June 4, 2018 Apple WWDC 2018 Keynote presentation in San Jose, California, available at https://www.youtube.com/watch?v=UThGcWBIMpU. |
| Torres Decl. | 48 | 125-48 | Twitter page for Lucky Bunny's MEMOJI app, @Thememojiapp, attached as Exhibit 13 to Social Tech's Motion for Preliminary Injunction |

| Declaration | Ex. No. | Dkt. No.[1] | Description of Document |
|---|---|---|---|
| Torres Decl. | 49 | 125-49 | Declaration of Andreas Groehn, Social Tech's expert, dated July 31, 2019 |
| Torres Decl. | 50 | 125-50 | Excerpts from Transcript of Deposition of Andreas Groehn, dated Sept. 20, 2019 |
| Torres Decl. | 51 | 125-51 | Screenshot displaying Apple's Memoji software feature, produced as APL-STECH_00008926 |
| Torres Decl. | 52 | 125-52 | Screenshots from Apple's iPhone X Animoji demonstration, available at: https://www.youtube.com/watch?v=VPWQrNQICU0, released Sept. 14, 2017 |
| Torres Decl. | 53 | 125-53 | Facebook Ads Manager for S. Bonet, produced as SocialTech_0000854 |
| Torres Decl. | 54 | 125-54 | Invoice FlexDev to S. Bonet, dated Sept. 10, 2018, produced as FlexDevGrant_0067–68, and marked as Exhibit 87 during Mr. Grant's deposition |
| Torres Decl. | 55 | 125-55 | Apple Webpage titled "Apple Trademark List" as of Oct. 21, 2019 |
| Torres Decl. | 56 | 125-56 | Google Play Webpage for Social Tech's MEMOJI app, dated Oct. 21, 2019 |
| Ghose Decl. | 1 | 126-01 | Expert Report of Apple's expert, Dr. Anindya Ghose, dated July 31, 2019 |
| Ghose Decl. | 2 | 126-02 | Rebuttal Expert Report of Apple's expert, Dr. Anindya Ghose, dated Sept. 6, 2019 |
| Kitchen Decl. | 1 | 127-01 | Rebuttal Expert Report of Apple's expert, Garry Kitchen, dated Sept. 6, 2019 |
| Simonson Decl. | 1 | 128-01 | Rebuttal Expert Report of Apple's expert, Dr. Itamar Simonson, dated Sept. 6, 2019 |
| Mazzello Decl. | 1 | Pending | Apple's First Set of Requests for Production Directed to Plaintiff Social Tech, dated January 28, 2019 |
| Mazzello Decl. | 2 | Pending | Excerpts from the Transcript of Deposition of Mr. Long, Social Tech's co-founder, dated June 11, 2019 |

**REPLY MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT**          **CASE NO. 3:18-cv-05945-VC**

| Declaration | Ex. No. | Dkt. No.[1] | Description of Document |
|---|---|---|---|
| Mazzello Decl. | 3 | Pending | Excerpts from the Transcript of Deposition of Mr. La Perle, Apple's Director, Legal and 30(b)(6) witness on Apple's clearance and acquisition of the trademark MEMOJI, among other things, dated June 18, 2019 |
| Mazzello Decl. | 4 | Pending | Excerpts from the Transcript of Deposition of Tyler Droll, purported expert witness for Social Tech, dated Sept. 11, 2019 |
| Mazzello Decl. | 5 | Pending | Excerpts from the Transcript of Deposition of Andreas Groehn, purported expert witness for Social Tech, dated Sept. 20, 2019 |
| Mazzello Decl. | 6 | Pending | Excerpts from the Transcript of Deposition of Mr. Ehrlich, Lucky Bunny's 30(b)(6) witness and founder, dated June 8, 2019 |

**REPLY MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT**        **CASE NO. 3:18-cv-05945-VC**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A & H Sportswear Co., Inc. v. Victoria's Secret Stores, Inc.*,
    926 F. Supp. 1233 (E.D. Pa. 1996) ................................................12

*Alpha Indus., Inc. v. Alpha Steel Tube & Shapes, Inc.*,
    616 F.2d 440 (9th Cir. 1980) ....................................................13

*Americana Trading Inc. v. Russ Berrie & Co.*,
    966 F.2d 1284 (9th Cir. 1992) ..................................................12

*Amusement Art, LLC v. Life Is Beautiful, LLC*,
    768 F. App'x 683 (9th Cir. 2019) ...............................................2

*Amusement Art, LLC v. Life is Beautiful, LLC*,
    No. 14-cv-08290, 2016 WL 6998566 (C.D. Cal. Nov. 29, 2016),
    *aff'd*, 768 F. App'x 683 (2019) ...............................................3, 4

*Armida Winery Inc. v. The Cuban, LLC & Poison Spirits, Inc.*,
    Cancellation No. 92065105, 2018 WL 3689355 (T.T.A.B. Aug. 1, 2018) ...................6

*B & B Hardware, Inc. v. Hargis Indus., Inc.*,
    135 S. Ct. 1293 (2015) ..........................................................13

*Balance Studio, Inc. v. Cybernet Entm't, LLC*,
    No. 15-cv-04038, 2017 WL 2473038 (N.D. Cal. June 8, 2017) ...................2, 3

*Barnhardt Mfg. Co. v. Wildwood Gin, Inc.*,
    Cancellation No. 92053237, 2013 WL 5407304 (T.T.A.B. June 17, 2013) ...................6

*Carter-Wallace, Inc. v. Procter & Gamble Co.*,
    434 F.2d 794 (9th Cir. 1970) ...................................................14

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) .............................................................1

*Chance v. Pac-Tel Teletrac Inc.*,
    242 F.3d 1151 (9th Cir. 2001) ...................................................5

*Checkpoint Sys., Inc. v. Check Point Software Techs., Ltd.*,
    Opp. Nos. 102,309, 105,259, 2002 WL 1181046 (T.T.A.B. May 31, 2002) ...............13

*City of N.Y. v. Tavern on the Green, L.P.*,
    427 B.R. 233 (S.D.N.Y. 2010) ..................................................3

*Cohn v. Petsmart, Inc.*,
   281 F.3d 837 (9th Cir. 2002) ..............................................................9, 13

*Commerce Nat. Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.*,
   214 F.3d 432 (3d Cir. 2000)...................................................................15

*ConsumerInfo.com, Inc. v. Money Mgmt. Int'l, Inc.*,
   374 F. App'x 696 (9th Cir. 2010) ............................................................6

*Echo Drain v. Newsted*,
   307 F. Supp. 2d 1116 (C.D. Cal. 2003) ..........................................9, 12, 14

*In re Electrolyte Labs., Inc.*,
   929 F.2d 645 (Fed. Cir. 1990)................................................................13

*Equinox Hotel Mgmt., Inc. v. Equinox Holdings, Inc.*,
   No. 17-cv-06393, 2018 WL 659105 (N.D. Cal. Feb. 1, 2018)..................11

*Farmasino, Inc. v. Farmasino Pharms. (Jiangsu) Co., Ltd*,
   No. 15-cv-01877, 2016 WL 7655740 (C.D. Cal. June 20, 2016 ...................6

*Georgia-S. Oil Inc. v. Richardson*,
   16 U.S.P.Q.2d 1723 (T.T.A.B. 1990) .......................................................5

*Glow Indus., Inc. v. Lopez*,
   252 F. Supp. 2d 962 (C.D. Cal. 2002) ............................................. *passim*

*Herbaceuticals, Inc. v. Xel Herbaceuticals, Inc.*,
   86 U.S.P.Q.2d 1572 (T.T.A.B. 2008) ....................................................3, 5

*Interstellar Starship Servs., Ltd. v. Epix Inc.*,
   184 F.3d 1107 (9th Cir. 1999) ...............................................................15

*J.T. Colby & Co., Inc. v. Apple Inc.*,
   No. 11-cv-4060, 2013 WL 1903883 (S.D.N.Y. May 8, 2013) ..................13

*JL Beverage Co., LLC v. Beam, Inc.*,
   899 F. Supp. 2d 991 (D. Nev. 2012).......................................................12

*Karl Storz Endoscopy–Am., Inc. v. Surgical Techs., Inc.*,
   285 F.3d 848 (9th Cir. 2002) .................................................................12

*M2 Software, Inc. v. Madacy Entm't*,
   421 F.3d 1073 (9th Cir. 2005) .............................................................9, 15

*Malletier v. Dooney & Bourke, Inc.*,
   561 F. Supp. 2d 368 (S.D.N.Y. 2008).....................................................12

*Marketquest Grp., Inc. v. BIC Corp.*,
   862 F.3d 927 (9th Cir. 2017) .................................................................15

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ............................................................................................... 11

*Metro Publ'g, Ltd. v. San Jose Mercury News, Inc.*,
861 F. Supp. 870 (N.D. Cal. 1994) .......................................................................... 9

*MPC Franchise, LLC v. Tarntino*,
826 F.3d 653 (2d Cir. 2016) ..................................................................................... 2

*Newton v. Thomason*,
22 F.3d 1455 (9th Cir. 1994) .................................................................................... 9

*Paco Sport, Ltd. v. Paco Rabanne Parfums*,
86 F. Supp. 2d 305 (S.D.N.Y. 2000),
*aff'd sub nom.*, 234 F.3d 1262 (2d Cir. 2000) ....................................................... 10

*Pinterest, Inc. v. Pintrips, Inc.*,
140 F. Supp. 3d 997 (N.D. Cal. 2015) .................................................................... 15

*Pollution Denim & Co. v. Pollution Clothing Co.*,
547 F. Supp. 2d 1132 (C.D. Cal. 2007) ................................................................... 6

*Professional's Choice Sports Medicine Prods., Inc. v. Eurow & O'Reilly Corp.*,
No.13-cv-1484, 2014 WL 524007 (S.D. Cal. Feb. 10, 2014) .................................. 4

*QVC Inc. v. Your Vitamins Inc.*,
439 F. App'x 165 (3d Cir. 2011) ............................................................................ 11

*Rearden LLC v. Rearden Commerce, Inc.*,
683 F.3d 1190 (9th Cir. 2012) ................................................................................ 12

*Reinsdorf v. Skechers U.S.A.*,
922 F. Supp. 2d 866 (C.D. Cal. 2013) .................................................................... 10

*Robi v. Five Platters, Inc.*,
918 F.2d 1439 (9th Cir. 1990) .................................................................................. 3

*Scott Fetzer Co. v. House of Vacuums Inc.*,
381 F.3d 477 (5th Cir. 2004) .................................................................................. 10

*Seal Shield, LLC v. Otter Prods., LLC*,
13-cv-2736, 2014 WL 11350295 (S.D. Cal. Nov. 4, 2014),
*aff'd sub nom.,* 680 F. App'x 560 (9th Cir. 2017) ................................................... 6

*Sebastian Brown Prods. LLC v. Muzooka Inc.*,
No. 15-cv-01720, 2016 WL 5910817 (N.D. Cal. Oct. 11, 2016) ............................. 5

*Sinco, Inc. v. Metro-N. Commuter R.R. Co.*,
133 F. Supp. 2d 308 (S.D.N.Y. 2001) .................................................................... 11

*Stonefire Grill, Inc. v. FGF Brands, Inc.*,
    987 F. Supp. 2d 1023 (C.D. Cal. 2013) ........................................................................11

*Surfvivor Media, Inc. v. Survivor Prods.*,
    406 F.3d 625 (9th Cir. 2005) ....................................................................9, 11, 13, 15

*THOIP v. Walt Disney Co.*,
    690 F. Supp. 2d 218 (S.D.N.Y. 2010)..........................................................................10

*Vantone Group Ltd. Liability Co. v. Yangpu NGT Industrial Co., Ltd.*,
    No.13-cv-7639, 2016 WL 4098564 (S.D.N.Y. July 28, 2016)....................................4

**Statutes**

15 U.S.C. § 1051 .............................................................................................................3

15 U.S.C. § 1057 .............................................................................................................6

15 U.S.C. § 1127 .............................................................................................................4

**Other Authorities**

McCarthy on Trademarks and Unfair Competition (5th ed.) ................................4, 5, 10, 13

Shari Diamond, *Control Foundations: Rationales and Approaches*, in Trademark and
    Deceptive Advertising Surveys..................................................................................10

William G. Barber, *The Universe*, in Trademark and Deceptive Advertising Surveys......................10

**REPLY MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT**     **CASE NO. 3:18-cv-05945-VC**

## I.     PRELIMINARY STATEMENT

Social Tech's brief confirms Apple's summary judgment motion should be granted, as Social Tech has failed to meet its burden under *Celotex Corp. v. Catrett* of coming forward with *evidence* to support its conclusory claims.[1]  477 U.S. 317, 322–23 (1986).  *First*, Social Tech does not dispute that it lacks common law rights to assert against Apple, thus conceding its common law claims.

*Second*, Social Tech has not shown that there is a triable issue of fact on Apple's cancellation counterclaim.  Despite admittedly knowing about Lucky Bunny's prior use and downloading Lucky Bunny's app, Social Tech swore to the PTO that no other person had the right to use MEMOJI.  Its president's self-serving, conclusory, declaration that he did not intend to deceive the PTO is legally insufficient to overcome this clear-cut evidence.  Similarly, Social Tech offers no evidence to rebut the strong documentary record establishing that Social Tech launched its app *to reserve a right* in the MEMOJI Design Mark, and thus lacked the bona fide use necessary to secure a registration.

*Third*, the undisputed facts demonstrate Apple has priority by its assignment from Lucky Bunny.  After focusing its opening brief on tacking, Social Tech fails to address Apple's refutation of this argument, tacitly recognizing that tacking is a non-issue.  Its focus now is market penetration.  This argument is misplaced.  Defendants need not show market penetration to defeat infringement claims.  Rather, they need only show priority of use, which is a lower standard.  Nevertheless, the undisputed facts also establish Lucky Bunny's nationwide market penetration.

*Finally*, Social Tech has not met its burden of showing a likelihood of confusion.  Its smattering of purported examples of actual confusion are too few to establish Social Tech's claim and do not evidence confusion at all.  And its survey—which showed a *negative* confusion rate— only supports Apple's position.  Summary judgment to Apple is proper.[2]

## II.    SOCIAL TECH HAS NOT SHOWN THAT ITS REGISTRATION IS VALID

### A.    Social Tech's Registration is Not Valid Because Social Tech Knew That Lucky Bunny Had Prior Trademark Rights.

---

[1] Apple moves on (1) Social Tech's claims, other than Social Tech's fifth claim for a declaration that Social Tech does not infringe Apple's rights, and (2) Apple's counterclaim to cancel Social Tech's trademark registration.  If Apple's motion is granted, it intends to withdraw its other counterclaim.

[2] Social Tech's motion for partial summary judgment should be denied.  With respect to Apple's laches, acquiescence, and estoppel defenses, to be clear, Apple agrees to drop them only if Anthony's purported rights are not in issue.  Apple Br. at 25 n.15.

Social Tech does not dispute that it twice swore under oath that "no other persons . . . have the right to use [MEMOJI] in commerce" even though Social Tech's founder twice downloaded and opened Lucky Bunny's Memoji app.  Apple Br. at 11; ST Opp. Br. at 2–6.  In response, Social Tech merely argues that it had no intent to defraud, and puts in a conclusory declaration from its co-founder and president Samuel Bonet.  ST Opp. Br. at 3–4; Bonet SJ Decl. ¶¶ 5–6.  A conclusory, self-serving declaration does not justify denial of summary judgment.  *See Amusement Art, LLC v. Life Is Beautiful, LLC*, 768 F. App'x 683, 686 (9th Cir. 2019) ("skeletal and conclusory" declarations "from the individuals who submitted the false affidavits suggesting those individuals lacked the required intent to deceive . . . do not create genuine issues of material fact").

Moreover, Bonet's statements are belied by his candid, under oath deposition admissions, which Social Tech does not dispute, showing that Social Tech was in fact ***aware*** that Lucky Bunny was using the mark when it filed its trademark application, as Bonet had not only located the app through Google searches, but ***personally downloaded and opened it***.  Apple Br. at 11; Torres Decl., Ex. 4, at 94:15–95:20, 98:1–17, 108:6–11, 114:7–11.  Social Tech thus had ***actual knowledge*** of Lucky Bunny's use.  *See MPC Franchise, LLC v. Tarntino*, 826 F.3d 653, 660 n.5 (2d Cir. 2016) (fraud established where defendant had "actual knowledge" that other users were using the mark).

Further, as Apple pointed out in its opening brief (and which Social Tech tellingly ignores), Social Tech ***repeated its false statement to the PTO*** when it filed its Statement of Use despite being aware that (a) Lucky Bunny was still using the MEMOJI mark (as Bonet had ***again*** downloaded and opened the app), (b) Lucky Bunny had filed a ***second use-based trademark application*** for the MEMOJI mark, and (c) Apple had acquired, and on June 14, 2018 asserted in response to Social Tech's demand letter, Lucky Bunny's rights.  Apple Br. at 11; Torres Decl., Ex. 3, at '231, Ex. 4, at 211:13–216:20, & Ex. 32, at 1.[3]  *Balance Studio, Inc. v. Cybernet Entertainment, LLC,* is inapposite.  No. 15-cv-04038, 2017 WL 2473038 (N.D. Cal. June 8, 2017).  There, the defendant asserting the

---

[3] That Lucky Bunny's trademark ***application*** was listed as "abandoned" and it had not released any updates for its app in a year, ST Opp. Br. at 4–5, does not relieve Social Tech of its obligation to provide truthful statements to the PTO.  Social Tech knew the name was in use.  Social Tech's citation to its purported expert's report to justify its conduct fails.  ST Opp. Br. at 4–5.  Among other things, Mr. Droll was unaware that Bonet had downloaded ***and opened*** Lucky Bunny's app before filing Social Tech's application, or that Lucky Bunny had filed a second trademark application. Mazzello Decl., Ex. 4, at 138:10–140:11, 179:20–183:9, 187:24–198:5, 199:21–201:19.

2

fraud claim relied solely on a declaration from its own founder that the "Plaintiff's founder was personally aware of Defendant's branding." *Id.* at *7. Here, Social Tech *itself admits its knowledge* of Lucky Bunny's use of the MEMOJI mark.

There is no genuine dispute that Social Tech knowingly made false statements with the intent to induce the PTO to rely on the misrepresentations by granting its registration. Nor is there any dispute that Social Tech's false statements were material. "[D]eliberate omission in a trademark application of information regarding another's right to use the mark applied for is a *material* omission justifying cancellation[.]" *City of N.Y. v. Tavern on the Green, L.P.*, 427 B.R. 233, 242 (S.D.N.Y. 2010) (emphasis added). Moreover, the PTO relied on the statements, as it granted the registration. *See id.* at 243; 15 U.S.C. § 1051 (statement required to obtain registration).

Finally, there is no question that Social Tech's false statements caused damage because Social Tech "falsely secur[ed] the registration" of the MEMOJI mark "and then later su[ed] [Apple] on the basis of" that mark. *Amusement Art, LLC v. Life is Beautiful, LLC*, No. 14-cv-08290, 2016 WL 6998566, at *4 (C.D. Cal. Nov. 29, 2016), *aff'd,* 768 F. App'x 683. Social Tech's registration also caused Lucky Bunny's application—which is now owned by Apple—and Apple's own application to be suspended. Torres Decl., Ex. 20, at '320–24; *see* Hecht 2d Decl., Ex. VV, at 3. These applications would have proceeded to registration if not for Social Tech's misrepresentations. As each element of fraud on the PTO has been established, and Social Tech has offered no contrary evidence, summary judgment for Apple and cancellation of Social Tech's trademark registration is proper. *See Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir. 1990).[4]

**B.     Apple's Reliance on Lucky Bunny's Rights is Proper.**

Social Tech appears to argue that Apple cannot raise Social Tech's failure to disclose Lucky Bunny's prior rights as a basis for fraud on the PTO because this argument is akin to the disfavored *jus tertii* defense, *i.e.*, the defense that a "third party's alleged rights" precludes a claim. ST Opp. Br. at 6. But Apple is not raising a "third party's" rights. It is raising its *own* rights that it acquired from Lucky Bunny. *See infra* 9. In any case, *jus tertii* doctrine is inapplicable here. Rather, it arises

---

[4] Cancellation also is warranted because Social Tech does not dispute that it falsely stated that its mark was in use with *all* of the goods listed in its application, even though that is not the case. *See Herbaceuticals, Inc. v. Xel Herbaceuticals, Inc.*, 86 U.S.P.Q.2d 1572, 1577–78 (T.T.A.B. 2008).

**REPLY MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT      CASE NO. 3:18-cv-05945-VC**

when a "[d]efendant in effect argues that, 'Somebody has a right to sue me, but it's not you,'" which has nothing to do with fraud on the PTO. 6 McCarthy on Trademarks and Unfair Competition § 31:157 (5th ed.). Social Tech has cited no case to the contrary.[5]

### C. Social Tech Did Not Engage in Bona Fide Use of the MEMOJI Design Mark.

Social Tech offers no evidence to rebut the panoply of documents Apple cited in its opening brief, which show that Social Tech's use of its MEMOJI Design Mark was not bona fide but instead made admittedly to "***reserve Social Tech's rights in the Memoji mark***." Apple Br. at 12–13. As trademark law is clear that use must be bona fide, *i.e.*, not "made merely to reserve a right in a mark," Social Tech's concession is fatal to its registration. 15 U.S.C. § 1127.

Social Tech also does not dispute that it had no sales or downloads of its app before filing its Statement of Use. Apple Br. at 13. This Court was clear that such evidence would be critical to showing that Social Tech's registration is valid. *See* PI Order at 2 (without evidence of "when or how many times the app had been sold when Social Tech filed its statement, it is unclear that Social Tech had used the mark 'in commerce' as necessary to secure a valid trademark registration").

Social Tech attempts to avoid its inevitable fate by pointing to its pre-sales conduct as evidence of its purported use of the mark. ST Opp. Br. at 7–8. This conduct does not change the undisputed, documentary evidence that the reason Social Tech launched its app was to reserve trademark rights and sue Apple.[6] Moreover, the "business plan" and investor "presentations" to which it points are from 2016, and its website and videos (which have been viewed by only 527 people) are from May 2016 and January 2017. ST Opp. Brief at 7–8; Hecht Decl., ¶¶ 4–6; Bonet PI Decl., ¶ 8; Torres Decl., Ex. 4, at 303:1–304:3. After that, it is undisputed that Social Tech did nothing to develop or promote its Memoji app. It created no code, developed no new marketing or advertising, and shifted its focus to other projects until it saw an opportunity to profit. Apple Br. at 7; Torres Decl., Ex. 4, at 134:3–15, 136:5–9, 201:25–202:7, 276:7–15, & Ex. 28, at 142:5–10. This

---

[5] In *Professional's Choice Sports Medicine Products, Inc. v. Eurow & O'Reilly Corp.*, the court rejected a traditional *jus tertii* argument. No. 13-cv-1484, 2014 WL 524007, at *6 (S.D. Cal. Feb. 10, 2014). The defendant also implied that the plaintiff improperly failed to disclose a third party user in its trademark application, but the court did "not address" that argument. *Id.* at *6 n.5.
[6] *Vantone Group Ltd. Liability Co. v. Yangpu NGT Industrial Co., Ltd.* has nothing to do with a plaintiff that launched a product for purposes of reserving trademark rights and suing another company. No. 13-cv-7639, 2016 WL 4098564, at *9 (S.D.N.Y. July 28, 2016).

minimal pre-sales activity years before anyone downloaded its app falls short of establishing use in commerce. *See Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1160 (9th Cir. 2001); *Sebastian Brown Prods. LLC v. Muzooka Inc.*, No. 15-cv-01720, 2016 WL 5910817, at *8–10 (N.D. Cal. Oct. 11, 2016) (pre-sales activities mere preparation, not use in commerce); McCarthy § 16:14.[7]

Social Tech also tries to undermine Apple's argument by noting that Lucky Bunny listed October 1, 2014 as the first use in commerce date for its mark, even though Lucky Bunny did not publicly release its app until October 22, 2014. ST Opp. Br. at 7–8. This argument rests on a fundamental misunderstanding of trademark law. For use-based applications, like Lucky Bunny's, all that matters is that the mark is "in use in commerce . . . ***as of the application filing date***," which Lucky Bunny's app was. Trademark Manual of Examining Procedure ("TMEP") § 901 (emphasis added); Torres Decl., Ex. 11, at 85:7–11, Ex. 19, at '138, & Ex. 20, at '287. The listed first use date is immaterial, as long as the mark is in use. *See, e.g.*, *Georgia-S. Oil Inc. v. Richardson*, 16 U.S.P.Q.2d 1723, 1726–27 (T.T.A.B. 1990). By contrast, for intent-to-use applications, like Social Tech's, the statement of use may be filed "***only when the applicant has made use of the mark in commerce***," which is "***certainly material to issuance of a registration***." *Herbaceuticals*, 86 U.S.P.Q.2d at 1576 (emphasis added); *see also* TMEP § 902. Thus, Lucky Bunny's misstatement is not equivalent to Social Tech's; one is legally immaterial, the other is not.

## III.   APPLE HAS PRIOR RIGHTS TO MEMOJI AND SOCIAL TECH HAS NONE

Apple is entitled to summary judgment because Apple has prior rights to MEMOJI. Social Tech does not deny that Lucky Bunny's use of MEMOJI predates Social Tech's own constructive priority date.[8] Instead, Social Tech argues that Apple cannot assert Lucky Bunny's rights because Lucky Bunny did not have legally sufficient market penetration and the assignment from Lucky Bunny to Apple was invalid. ST Opp. Br. at 9–11. These arguments fail as a matter of law.

### A.   Apple Need Not Show Market Penetration.

---

[7] Social Tech's undocumented, alleged "influx of funds" from Bonet's girlfriend is irrelevant to use in commerce as (a) it was for Social Tech's business in general (rather than Memoji alone), and (b) it did not actually result in any use of the MEMOJI Design Mark. Mazzello Decl., Ex. 2, at 73:12– 76:5; Hecht 2d Decl., Ex. JJ, at 29:2–16. Similarly, the other supposed facts Social Tech cites— speaking to its developer, filing an extension with the PTO, and developing an entirely *different* app called "Hellojis," ST Opp. Br. at 8—do not constitute use of the MEMOJI Design Mark either.
[8] Social Tech also does not dispute that Anthony had no rights. Apple Br. at 10 n.4.

Social Tech argues that Apple cannot avail itself of Lucky Bunny's prior rights to MEMOJI because Apple has not shown that Lucky Bunny achieved "'legally sufficient market penetration' in a certain geographic market." ST Opp. Br. at 9–11. But in the Ninth Circuit, market penetration is only required to ***bring*** a common law infringement claim, in order to assess the geographic scope of rights.[9] *E.g.*, *Glow Indus., Inc. v. Lopez*, 252 F. Supp. 2d 962, 983 (C.D. Cal. 2002) (the senior common law user "is entitled ***to assert trademark rights*** in all areas in which it has legally sufficient market penetration") (emphasis added)). By contrast, where (as here) a defendant asserts prior rights ***to rebut*** a plaintiff's priority claim, or cancel a registration, market penetration is ***not*** required. *See, e.g.*, *ConsumerInfo.com, Inc. v. Money Mgmt. Int'l, Inc.*, 374 F. App'x 696, 697 (9th Cir. 2010) (finding priority claim rebutted without requiring a showing of market penetration).[10] Instead, all that is required is prior use. *Id.*; 15 U.S.C. § 1057(c)(1) (registration confers priority against all ***except*** those who "used the mark" before the filing date and did not abandon it).

This rule is consistent with the Lanham Act, which has no market penetration requirement. 15 U.S.C. § 1057(a) & (c). It also is consistent with the PTO's practice in opposition and cancellation proceedings concerning trademark registrations. *See Armida Winery Inc. v. The Cuban, LLC & Poison Spirits, Inc.*, Cancellation No. 92065105, 2018 WL 3689355, at *10 n.24 (T.T.A.B. Aug. 1, 2018) ("A finding of priority before the Board does not require . . . market penetration") (non-precedential); *Barnhardt Mfg. Co. v. Wildwood Gin, Inc.*, Cancellation No. 92053237, 2013 WL 5407304, at *5 (T.T.A.B. June 17, 2013) (non-precedential). Thus, Apple need not show market penetration to overcome Social Tech's priority claim or cancel its registration.

**B.      Even if Market Penetration Were Required, Lucky Bunny (and Apple) Has It.**

Regardless of whether market penetration is required, Lucky Bunny (and thus Apple) has it. When evaluating market penetration, courts consider (1) the volume of sales and growth trends, (2) the number of persons buying the product in relation to the number of potential purchasers, and (3)

---

[9] To be clear, Apple is not moving on its infringement counterclaim. Apple Br. at 1 n.1. It asserts its prior use only defensively, to rebut Social Tech priority claim and cancel Social Tech's registration.
[10] *See also Farmasino, Inc. v. Farmasino Pharms. (Jiangsu) Co., Ltd*, No. 15-cv-01877, 2016 WL 7655740, at *7 (C.D. Cal. June 20, 2016); *Seal Shield, LLC v. Otter Prods., LLC*, 13-cv-2736, 2014 WL 11350295, at *6–7 (S.D. Cal. Nov. 4, 2014), *aff'd sub nom.*, 680 F. App'x 560 (9th Cir. 2017); *Pollution Denim & Co. v. Pollution Clothing Co.*, 547 F. Supp. 2d 1132, 1141 (C.D. Cal. 2007).

**REPLY MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT          CASE NO. 3:18-cv-05945-VC**

advertising.  *Glow*, 252 F. Supp. 2d at 983.  Social Tech argues—citing no cases—that Apple must show market penetration in *each individual state in the union* to establish common law rights.  ST Opp. Br. at 10.  Social Tech is wrong.  The only authority it cites regarding market penetration says that a markholder need *not* establish market penetration in *any* territory if it shows that its mark has "acquired a national reputation."  *Id*. at 985.  Social Tech also argues (again citing no cases) that Apple must show market penetration for each (virtually identical) capitalization format that Lucky Bunny used for MEMOJI.  This argument is both unsupported and belied by common sense.

The unrefuted evidence shows Lucky Bunny's MEMOJI mark had nationwide market penetration.  *See* Ghose Decl., Ex. 1 & Ex. 2, at 1, 4 ¶¶ 3, 5.  Lucky Bunny's MEMOJI app was downloaded over 92,000 times, with consumers from every state downloading the app in each year from 2014 through 2016, and consumers from at least 45 states downloading it in each year from 2017 to 2018.  *Id*., Ex. 1, at 10 ¶ 26; Torres Decl., Ex. 12; Jaynes Decl., at 1 ¶ 6.  The growth trends are also persuasive: downloads increased from approximately 28,000 in 2014 and 2015 to nearly 60,000 in 2016.  Torres Decl., Ex. 12, at 8; Ghose Decl., Ex. 1, at 10 ¶ 25.  While growth later slowed, this reflects the fact that once an app is downloaded, it remains on the user's phone and need not be downloaded again.  Ghose Decl., Ex. 1, at 10 ¶ 25.  Lucky Bunny's app also captured a significant portion of its potential audience, as downloads for the app were "far greater than the average number of downloads per app per year in 2014, 2015, and 2016, and approximately equal to the average number of downloads per app in 2017."  *Id*. at 4, 8–10 ¶¶ 14, 22–24; Torres Decl., Ex. 13 & Ex. 12, at 8.  And the total number of downloads for Lucky Bunny's app was "far greater than the average total number of downloads per app."  Ghose Decl., Ex. 1 at 4, 8–9, ¶¶ 14, 22–23.

Lucky Bunny's advertising also shows its nationwide reputation.  Lucky Bunny's app was promoted by influencers and celebrities (including comedian Howie Mandel) with over 6 million collective followers, and received national attention from *The Ellen DeGeneres Show*, *The Howard Stern Show*, and *USA Today*, among others.  Torres Decl., Ex. 14, at '339, Ex. 15, at 1–19, Ex. 11, at 89:17–90:14, Ex. 16, at 0:08–0:15, Ex. 17, at 0:28–0:56, & Ex. 18, at 1–11; Ghose Decl., Ex. 1, at 12–22 ¶¶ 30–37.  Lucky Bunny itself also promoted the app through Twitter, Instagram, and a website.  Torres Decl., Ex. 11, at 182:1–183:10.  As Apple's expert explained, these promotions had

a persistent impact that reached ***millions of consumers***, including long after the app launched. Ghose Decl., Ex. 1, at 12–24, ¶¶ 30–41.  This evidence is in stark contrast to that in *Glow Industries*, the ***sole case*** on which Social Tech relies.  252 F. Supp. 2d at 984–85.  There, there was ***no evidence*** of total sales of the product at issue, the level of sales in any location, or how Glow's performance compared to its competitors, and little marketing evidence.  *Id.*

Unable to dispute these facts, Social Tech instead points to the number of downloads in the two least populous states in the union[11] to accuse Apple of engaging in a "slight [*sic*] of hand" by arguing Lucky Bunny had nationwide market penetration.  ST Opp. Br. at 10.  But it is Social Tech that engaged in the sleight of hand, by ignoring Lucky Bunny's downloads in more populous states such as California, where the app had 15,345 downloads.  Torres Decl., Ex. 12.  Social Tech also tries (again without support) to diminish Lucky Bunny's advertising by arguing that Dr. Ghose lacked support for his conclusions.  ST Opp. Br. at 11.  In fact, his opinion is supported by myriad academic articles and "hard data," such as the number of followers for the relevant influencers and audience size for the various media outlets.  Ghose Decl., Ex. 1, at 12–24 ¶¶ 30–41 & Ex. 2, at 6 ¶ 10.  And Social Tech's citation to Riff Raff's recent promotion for Social Tech, ST Opp. Br. at 11, does not detract from the impact of Riff Raff's promotions for Lucky Bunny.

Social Tech also argues that Lucky Bunny abandoned its MEMOJI trademark because it did not update its app or website for over a year.  This argument is absurd.  Nothing in trademark law requires a markholder to ***change*** its product or promotional materials to retain rights.  No one would argue Coca-Cola abandoned its trademark rights by not updating its secret soda formula.  Moreover, it is undisputed that through the date of assignment, Lucky Bunny's app continued to be offered and downloaded.  Apple Br. at 14–15; Torres Decl., Ex. 12.  Lucky Bunny also maintained a website and social media accounts for its app, filed a second trademark application, had MEMOJI Google Alerts through the assignment date, sought to enforce its rights in 2017, and pushed new code in 2017, none of which Social Tech disputes (and about which its purported expert was largely unaware, rendering his opinion irrelevant, *supra* 2 n.4).  Apple Br. at 5–6, 14–15.  Moreover, contrary to Social Tech's unsupported claims, ST Opp. Br. at 10, Lucky Bunny testified that it "didn't intend to stop using" its

---

[11] *See* www.infoplease.com/us/states/state-population-by-rank.

mark.  Torres Decl., Ex. 11, at 209:16–210:4.  Lucky Bunny's insistence on a license back following the assignment confirms this.  Mazzello Decl., Ex. 3, at 100:9–100:25.

### C.      Lucky Bunny Validly Assigned Its Rights to Apple.

As explained in Apple's brief, the assignment from Lucky Bunny was valid as (a) the products are substantially similar; (b) the assignment explicitly transferred "goodwill;" (c) the assignment included a license back, such that Lucky Bunny's continued use inured to Apple; and (d) Apple acquired and redirected to Apple Lucky Bunny's domain name.  Apple Br. at 16.  Social Tech does not refute any of these points, tacitly conceding them.  Instead, it argues Lucky Bunny had no rights to assign.  ST Opp. Br. at 11.  For the reasons just described, Social Tech is wrong.

## IV.     SOCIAL TECH HAS NOT SHOWN A LIKELIHOOD OF CONFUSION

To avoid summary judgment on likelihood of confusion, Social Tech relies on the general proposition that trademark infringement is a "fact intensive" inquiry.  ST Opp. Br. at 11.  But when a plaintiff, like Social Tech, fails to come forward with "proof" of a likelihood of confusion, summary judgment is proper.  *Newton v. Thomason*, 22 F.3d 1455, 1461–62 (9th Cir. 1994) (affirming summary judgment; "mere possibility that a consumer may be misled" insufficient).[12]

### A.      Social Tech's Survey Does Not Support a Likelihood of Confusion.

Social Tech does not dispute that its survey resulted in a negative confusion rate.  *See* Apple Br. at 21.  Nor does it dispute that such a low rate establishes that there is no likelihood of confusion. *See id.*  Nonetheless, it claims that its survey is probative because it purportedly shows confusion among the subset of potential consumers who are aware of Apple's Memoji feature.  ST Opp. Br. at 12.  Based on this, Social Tech argues that, as awareness increases, confusion increases.  *Id.*

As a threshold matter, this argument makes no sense.  As Table 2 of Social Tech's expert report shows, the confusion rate among the subset of Social Tech's potential consumers who are aware of Apple's feature is only 8.3%.  Torres Decl., Ex. 49, at 33, Table 2.  This number is too low to establish confusion.  In fact, when results "dip below 10%, they can become evidence . . . that

---

[12] *See also M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1085 (9th Cir. 2005) (affirming summary judgment); *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 843 (9th Cir. 2002) (same); *See Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 633 (9th Cir. 2005) (same); *Echo Drain v. Newsted*, 307 F. Supp. 2d 1116, 1127–28 (C.D. Cal. 2003) (granting summary judgment); *Metro Publ'g, Ltd. v. San Jose Mercury News, Inc.*, 861 F. Supp. 870, 874–75 (N.D. Cal. 1994) (same).

confusion is **not** likely." McCarthy § 32:189 (emphasis added). Social Tech's claims that the confusion rate among this small subset of respondents is actually 18.8% is grossly misleading. ST Opp. Br. at 12. The 18.8% figure (which is based on responses from only 69 individuals) ***does not include a control***. Torres Decl., Ex. 49, at 31–33, ¶ 69 & Table 2. To get to 8.3%, the control confusion rate must be subtracted from this gross figure. *Id.* As Social Tech's own expert, and numerous academic and legal sources, have explained, a control is essential in any confusion survey to filter out noise, *i.e.*, the respondents who might say Apple for reasons other than the word "Memoji." *See id.* at 20 ¶ 46; McCarthy § 32:187; Shari Diamond, *Control Foundations: Rationales and Approaches*, in Trademark and Deceptive Advertising Surveys ("TM Surveys"), 202–204, Shari Diamond and Jerre Swann, Eds. (ABA 2012). Gross data, without a control, is irrelevant. *See Reinsdorf v. Skechers U.S.A.*, 922 F. Supp. 2d 866, 878 (C.D. Cal. 2013) (excluding survey without control); *THOIP v. Walt Disney Co.*, 690 F. Supp. 2d 218, 240 (S.D.N.Y. 2010) (survey that failed to use a proper control inadmissible, as it lacked a "benchmark for determining" if the "confusion estimate is significant or merely reflects flaws in the survey methodology").

Social Tech's argument is also legally and academically improper. It is Survey 101 that the universe in a reverse confusion case should include all of the senior user's potential customers, not a subset. *See, e.g.,* William G. Barber, *The Universe*, in TM Surveys, 31, 42–43. Surveys with underinclusive universes—such as those focused only on the portion of potential consumers with unique awareness of a mark—are improper and often rejected. *Id.* at 42–43; *see also Scott Fetzer Co. v. House of Vacuums Inc.,* 381 F.3d 477, 487–88 (5th Cir. 2004) (forward confusion survey limited to people familiar with plaintiff not probative); *Paco Sport, Ltd. v. Paco Rabanne Parfums*, 86 F. Supp. 2d 305, 322 & 323 n.17 (S.D.N.Y. 2000) (finding it was "inappropriate" to limit the universe to "consumers aware of [defendant's] products . . . the more appropriate practice is to survey all prospective purchasers")*, aff'd sub nom.*, 234 F.3d 1262 (2d Cir. 2000). Social Tech cites no law or academic support to the contrary. Rather, it relies on its purported expert's report to support its position. ST Opp. Br. at 12–13. But Dr. Groehn admitted that prior to this case he had never reviewed a trademark confusion survey, let alone conducted one. Mazzello Decl., Ex. 5, at 22:22–23:4, 63:24–65:12. His novice opinion does not overcome years of established authority.

In addition, Social Tech's argument is admittedly based only on the "assum[ption]" that awareness of Apple's Memoji product is going to increase. ST Opp. Br. at 13. Speculation and conjecture cannot defeat a motion for summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). There is simply no support for Social Tech's claim that because Apple's feature is now available for older iPhone and iPad models, there will be a marked increase in awareness of this product among Social Tech's target audience of Android users. Indeed, Apple's Memoji feature had already been promoted heavily for over a year and was available on millions of devices before Dr. Groehn conducted his survey. Knight Decl., ¶¶ 15–25.[13]

### B.   Social Tech Has Not Established Any Actual Confusion.

Social Tech's seven purported examples of actual confusion also are insufficient to meet its burden. ST Opp. Br. at 13–15. As a preliminary matter, at least one of those supposed examples could have been produced during fact discovery, and three others could have been produced before the close of expert depositions. Mazzello Decl., ¶¶ 3–10. Yet Social Tech did not disclose these documents until it filed its opposition brief. They should be rejected. *See Sinco, Inc. v. Metro-N. Commuter R.R. Co.*, 133 F. Supp. 2d 308, 311 n.3 (S.D.N.Y. 2001). The purported evidence also consists entirely of Internet posts and messages from unknown individuals. Given the proliferation of "false identities" online, and the "difficult[y]" authenticating Internet posts, courts in Lanham Act cases often refuse to rely on online comments as evidence. *QVC Inc. v. Your Vitamins Inc.*, 439 F. App'x 165, 168–69 (3d Cir. 2011). This court should do the same. Aside from Bonet's bare assertion that the posts were not made by Social Tech, Social Tech has made no effort to authenticate these communications or determine the identities of the persons making them.

Regardless, the documents are insufficient to establish Social Tech's claim. Seven purported instances of confusion in over a year and four months is simply too few to establish actual confusion, particularly given Apple's widespread use of the MEMOJI mark during this time. *See Surfvivor*, 406 F.3d at 633.[14] Moreover, the documents also do not show actual confusion for several reasons.

---

[13] It also is speculative to assume that as awareness increases, confusion will increase. If awareness of Apple's Memoji product and its associated logo increases, consumers may become more attuned to the differences between Social Tech's and Apple's product, thus dispelling confusion.
[14] *See also Equinox Hotel Mgmt., Inc. v. Equinox Holdings, Inc.*, No. 17-cv-06393, 2018 WL 659105, at *8 (N.D. Cal. Feb. 1, 2018) (eleven examples "scant"); *Stonefire Grill, Inc. v. FGF*

*First*, as confusion must impact a purchasing decision, only confusion among Social Tech's actual or potential consumers, their proxies, or those who influence them is relevant.  *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1216 (9th Cir. 2012).[15]  Several posts contain no information at all about whether the posters fall into these categories.  Hecht 2d Decl., Ex. TT; Bonet SJ Decl., Ex. 1.  Others ask about use of Social Tech's app on Apple devices, suggesting the posters are **not** in Social Tech's Android market.  Hecht 2d Decl., Ex. QQ; Bonet SJ Decl., Exs. 2–3.

*Second*, user complaints that they could not "customize [themselves]" or "create a memoji" do not indicate confusion.  Hecht 2d Decl., Ex. RR, at 1.  Wishing two apps would function similarly and believing they are affiliated is not the same.  Social Tech's app also purports to allow consumers to create "custom, personalized emoji."  Torres Decl., Ex. 56, at 1.  These users may have simply been disappointed that Social Tech's app does not perform as advertised.  Similarly, asking if Social Tech's app works on an iPhone, or "hop[ing]" it works on "facetime," does not indicate confusion.  Hecht 2d Decl., Ex. QQ; Bonet SJ Decl., Exs. 2–3.  These individuals may genuinely be asking whether Social Tech's app is compatible with Apple products.  Simonson Decl., Ex. 1 ¶ 60.

*Finally*, the comment "Apple did it first. And you stole the name" does not show confusion.  Hecht 2d Decl., Ex. TT.  Rather, believing one company "copied" another shows a **lack** of confusion because the speaker "recognize[s] that" the "products are distinct and originate from independent and unaffiliated sources."[16]  *Malletier v. Dooney & Bourke, Inc.*, 561 F. Supp. 2d 368, 387 (S.D.N.Y. 2008); *see also JL Beverage Co., LLC v. Beam, Inc.*, 899 F. Supp. 2d 991, 1005 (D. Nev. 2012).  *A & H Sportswear Co., Inc. v. Victoria's Secret Stores, Inc.* does not hold otherwise.  926 F. Supp. 1233 (E.D. Pa. 1996).  There, consumers "confuse[d] the maker of" the defendant's product "with the manufacturer of" the plaintiff's.  *Id.* at 1262.  Here, there has been no similar mistake concerning who makes the parties' respective products.

---

*Brands, Inc.*, 987 F. Supp. 2d 1023, 1053–54 (C.D. Cal. 2013) (eight instances de minimis); *Echo Drain*, 307 F. Supp. 2d at 1126 (a "few unauthenticated e-mails and webpostings" insufficient).
[15] Social Tech's cases are consistent with this rule.  *Americana Trading Inc. v. Russ Berrie & Co.*, 966 F.2d 1284, 1289 (9th Cir. 1992) (confusion by retailers/customer); *Karl Storz Endoscopy–Am., Inc. v. Surgical Techs., Inc.*, 285 F.3d 848, 855 (9th Cir. 2002) (surgeons who "affect" purchasing).
[16] Similarly, asking when Social Tech's app will "look and function" like "memoji app on iPhones" does not show confusion as the speaker understands there are two different apps.  Apple Br. at 22.

### C.   Social Tech Has Not Shown that the Parties' Marks Are Similar.

Apple does not use a design that looks the slightest bit like Social Tech's MEMOJI Design Mark, which features the image of a woman crossing her eyes and making a fish face: .[17] Moreover, in the marketplace, the parties' respective marks are surrounded by contextual clues that further dispel confusion.  Social Tech's unique design mark appears on the Google Play store along with the name "Social Technologies," its founder's name, images of its product, and its location in Atlanta (not Cupertino).  Torres Decl., Ex. 56.  By contrast, Apple's product appears in the Apple's Messages feature, in connection with Apple's monkey logo and "Animoji" feature, without the distinctive capitalization or design elements of Social Tech's mark.  *Id.*, Exs. 51–52.  Nonetheless, Social Tech argues that the parties' marks are similar because they share the word "Memoji."  ST Opp. Br. at 15.  That alone does not satisfy its burden.  *See Cohn*, 281 F.3d at 842 (identical logos not similar as "consumers will actually encounter the trademarks differently in the marketplace").[18]

Social Tech's citation to a PTO examiner's *ex parte* office action refusing to register Apple's trademark application for MEMOJI is misplaced.  ST Opp. Br. at 16.  Not only is this a ***non-final*** determination—meaning that Apple can present evidence and argument to change the examiner's opinion—but the PTO's analysis also is fundamentally different from the inquiry before this Court.  *See* McCarthy § 32:102.  To evaluate the likelihood of confusion, this Court "should analyze each mark within the context of other identifying features."  *Survfivor*, 406 F.3d at 633.  By contrast, in the PTO, "likelihood of confusion is determined . . . regardless of the context of actual usage."  *Checkpoint Sys., Inc. v. Check Point Software Techs., Ltd.*, Opp. Nos. 102,309, 105,259, 2002 WL 1181046, at *3 (T.T.A.B. May 31, 2002).  Consistent with the PTO standard, the examiner paid no attention to how the parties' marks are used in the real world.  Hecht 2d Decl., Ex. VV.  The initial determination is, thus, irrelevant.  *See B & B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1308 (2015) (if the PTO "does not consider the marketplace usage of the parties' marks, [its]

---

[17] Social Tech's conclusory claim that the word MEMOJI is the predominant aspect of its mark is misguided.  There "is no general rule as to whether letters or design will dominate in composite marks[,]" and in any case, marks must be considered as a whole, regardless of which part dominates. *In re Electrolyte Labs., Inc.*, 929 F.2d 645, 647 (Fed. Cir. 1990).

[18] *See also Alpha Indus., Inc. v. Alpha Steel Tube & Shapes, Inc.*, 616 F.2d 440, 444 (9th Cir. 1980); *J.T. Colby & Co., Inc. v. Apple Inc.*, No. 11-cv-4060, 2013 WL 1903883, at *16–17 (S.D.N.Y. May 8, 2013) (marks different given context and appearance); *Glow*, 252 F. Supp. at 997 (same).

decision should 'have no later preclusive effect in a suit where actual usage in the marketplace is the paramount issue'") (citation omitted); *Carter-Wallace, Inc. v. Procter & Gamble Co.*, 434 F.2d 794, 802 (9th Cir. 1970).  For similar reasons, Social Tech's reliance on TTAB decisions and appeals to support its argument that the parties' marks are similar is misplaced.  ST Opp. Br. at 15–16.

> **D.      Social Tech Cannot Establish Any of the Other Likelihood of Confusion Factors.**

**Strength.**  Social Tech does not deny that its mark has no commercial strength.  *See* Apple Br. at 23.  Instead, it argues that the strength factor favors it because (1) its purported mark is suggestive, and (2) Apple allegedly swamped its market.  ST Opp. Br. at 17–18.  Both arguments fail.  *First*, suggestive marks are "conceptually weak."  *Echo Drain*, 307 F. Supp. 2d at 1124.  Thus, in reverse confusion cases involving suggestive marks, courts often find that this factor favors the defendant.  *See, e.g., id.* (suggestive marks "cannot claim broad protection;" "some confusion with legitimate competitors" should be "anticipated"); *Glow*, 252 F. Supp. at 990–92; Mazzello Decl., Ex. 6, at 142:6–9.  *Second*, Social Tech's claim that Apple "saturated" Social Tech's market "with its continually expanding use of Memoji" is unsupported.  ST Opp. Br. at 17.  Social Tech claims that as of July 2019 only a "relatively small segment of the target population for" Social Tech's app knew of Apple's Memoji feature.  *Id.*  There is no proof awareness has changed since then.

**Proximity of the Products.**  Social Tech presented *no evidence* that the parties' products are proximate.  Its sole argument is that the PTO examiner stated in a non-final office action that the parties' products were "related."  ST Opp. Br. at 18.  As discussed, this is of no consequence.  The examiner's provisional assessment was based solely on the description of goods in the parties' respective trademark applications.  Hecht 2d Decl., Ex. VV, at 3.  The examiner, thus, was not aware that the parties' products are sold to different consumers through different channels of trade.  Social Tech's product is available only through the Google Play store for use on Android devices, whereas Apple's is not available through Google Play and can be used only with Apple devices.  Apple Br. at 24.  In the marketplace, this is a critical distinction.  *See, e.g.*, *Echo Drain*, 307 F. Supp. 2d at 1125 (bands not proximate where type of music differed and no evidence consumer bases overlapped).

**Marketing Channels.**  Social Tech offered no evidence or argument concerning whether the parties' marketing channels overlap, thus conceding that they do not.

**Degree of Care.**   On degree of care, Social Tech relies only on the oft-cited adage that when products are free, consumers exercise less care in purchasing them.  ST Opp. Br. at 18.  But it has no evidence of the care consumers take when downloading apps to their mobile devices, which may be vulnerable to viruses.  Just saying the app is free does not suffice.  *Pinterest, Inc. v. Pintrips, Inc.*, 140 F. Supp. 3d 997, 1019 (N.D. Cal. 2015) (factor neutral or favored defendant where service free).

**Intent.**   Apple acted in good faith in adopting MEMOJI as it conducted a clearance search, selected a mark consistent with its Animoji feature, and only used MEMOJI after acquiring rights to it.  Apple Br. at 24.  Social Tech does not dispute this evidence.  Instead, it argues that Apple acted in bad faith because Apple was aware of Social Tech's intent-to-use application when it adopted MEMOJI.  ST Opp. Br. at 19.[19]  Such awareness does not show bad faith.  The case on which Social Tech relies held that "bad faith does not arise from mere knowledge of a mark when the use is otherwise objectively fair, even in a case presenting reverse confusion."  *Marketquest Grp., Inc. v. BIC Corp.*, 862 F.3d 927, 937 (9th Cir. 2017); *see also M2 Software*, 421 F.3d at 1085.[20]  Social Tech's convoluted argument that it was bad faith for Apple to acquire Lucky Bunny's rights makes no sense and, unsurprisingly, is supported by no law.  Trademark assignments are common and authorized by the Lanham Act.  15 U.S.C. § 1060.

**Expansion.**   Social Tech offers no evidence that Apple is likely to expand its Memoji software feature to the Android market.  Its self-serving claim that it did not launch its app for Apple devices because of intellectual property concerns falls short of the "concrete evidence" of expansion plans necessary to support this factor.  *Surfvivor*, 406 F.3d at 634.  Indeed, Social Tech does not even claim that it plans to launch its app on the App Store if this case resolves favorably.  Nor has it shown that the iOS version of its app works or would meet Apple's rigorous developer standards.

---

[19] Social Tech also claims Apple was aware of its website and YouTube videos, but the cited testimony contains no such admission.  ST Opp. Br. at 19.

[20] *Interstellar Starship Servs., Ltd. v. Epix Inc.* is irrelevant.  184 F.3d 1107, 1111 (9th Cir. 1999).  Although the court stated that "[a]dopting a designation with knowledge of its trademark status permits a presumption of intent to deceive," Social Tech's MEMOJI Design Mark had no trademark status at the time Apple selected the name, as Social Tech had not perfected its intent-to-use application.  The statement in *Commerce Nat. Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.* that intent must focus on defendant's awareness "of the senior user's use of the mark" is similarly irrelevant, as Apple was not aware of any *use* of "Memoji" by Social Tech when it selected this name.  214 F.3d 432, 444 (3d Cir. 2000); Mazzello Decl., Ex. 3, at 110:8–111:1.

Dated: November 26, 2019

Respectfully submitted,

KIRKLAND & ELLIS LLP

*/s/ Dale M. Cendali*
Dale M. Cendali (S.B.N. 1969070)

Attorney for Defendant Apple Inc.

**REPLY MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT**            **CASE NO. 3:18-cv-05945-VC**

## <u>CERTIFICATE OF SERVICE</u>

On November 26, 2019, I electronically filed the foregoing with the Clerk of the Court by using CM/ECF system which will send a notice of electronic filing to all persons registered for ECF. All copies of documents required to be served by Fed. R. Civ. P. 5(a) and L.R. 5-1 have been so served.

*/s/ Dale M. Cendali*

Dale M. Cendali
