UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOCIAL TECHNOLOGIES LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>APPLE INC.,<br><br>    Defendant. | Case No.  18-cv-05945-VC<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 115, 124 |

1. Apple's motion for summary judgment on Social Tech's statutory trademark claim is granted. In April 2016, Social Tech filed an intent-to-use application for the trademark "MEMOJI" with the Patent and Trademark Office (PTO). 15 U.S.C. § 1051(b). To complete its registration, Social Tech filed a "verified statement that the mark is in use in commerce" with the PTO on June 30, 2018. § 1051(d)(1); *see* Trademark File 228–29, Dkt. No. 115-3. Apple challenges the validity of this filing and seeks cancellation of Social Tech's registration on the ground that Social Tech did not use the MEMOJI mark in commerce.

The Lanham Act defines the term "use in commerce" to mean "the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark." 15 U.S.C. § 1127. The definition further provides (in slightly circular fashion): "For purposes of this chapter, a mark shall be deemed to be in use in commerce" on goods when (i) the mark is affixed to or practically associated with the goods and (ii) "the goods are sold or transported in commerce." § 1127. This analysis is undertaken in light of the totality of the circumstances. *See Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1159 (9th Cir. 2001).

Here, no reasonable jury could find that Social Tech used the MEMOJI mark "in commerce" as the Ninth Circuit has applied that term. The undisputed evidence in the record points in only one direction: Social Tech developed and posted its app with a singular focus on securing registration to sue Apple, without any good-faith regard to the commercial viability of its product.

Take first the undisputed timeline by which Social Tech developed its app. On June 4, 2018, Apple announced a new iPhone function that it calls "Memoji." Social Tech, at this point, had written no code for its own MEMOJI app, despite its filing of an intent-to-use application in 2016. Bonet Dep. 134:8–20, Dkt. No. 123-8. After Apple made public its new iPhone function, Social Tech's CEO, Samuel Bonet, contracted with a software developer, which he directed to design the app to satisfy the product description in the trademark application. *Id.* 135:1–6, 178:3–15. Social Tech posted its app in the Google Play store on June 28, about three weeks after Apple's announcement. *Id.* 202:4–7. As Bonet admitted, Social Tech "had to rush" to "release a basic but functional version of its app" to "reserve Social Tech's rights in the Memoji mark." *Id.* 174:24–175:21. One week after launching the app, Bonet wrote: "It's better if we split up the updates, so it looks like we have more of them for the lawsuit. To show we are currently trying to build as we go." Ex. 1 at 3, Dkt. No. 123-6. Bonet noted a week later that the "app is crashing a lot," but he directed the software develop to "split" the fixes "up in to individual updates, so it appears like we are doing more work." *Id.* at 2. As this correspondence undisputedly illustrates, Social Tech was singularly concerned with laying the groundwork for a lawsuit—including manipulating the timing of updates with an eye to litigation—in contrast to releasing a commercially viable product.

Once posted, Social Tech's app did garner around 5,500 free downloads from the Google Play store. Ex. 35, Dkt. No. 123-20. But the mere existence of actual sales—while in many cases "highly persuasive"—is insufficient to constitute use of the mark in commerce. *New West Corp. v. NYM Co. of California, Inc.*, 595 F.2d 1194, 1200 (9th Cir. 1979). As Judge Friendly noted nearly half a century ago, those courts that had "treated the question have uniformly manifested

reluctance to consider usage sufficient when it is obviously contrived solely for trademark maintenance"—so too when "a particular shipment was made merely in token conformity with the statute in order to bolster [the plaintiff's] claim for the trademark registration." *La Societe Anonyme des Parfums LeGalion v. Jean Patou, Inc.*, 495 F.2d 1265, 1273 (2d Cir. 1974) (internal quotation marks omitted). The passage of time has not undermined this common-sense rule. Since the 1988 amendment of the Lanham Act's definition of "in commerce," the Ninth Circuit has endorsed Judge Friendly's reasoning, thus confirming that "the sale of a trademarked item cannot be a trademark use if not made in the ordinary course of trade." *Electro Source LLC v. Brandess-Kalt-Aetna Group, Inc.*, 458 F.3d 931, 939 n.6 (9th Cir. 2006).

This record compels the conclusion that Social Tech created and posted its app outside the ordinary course of trade. Most prominently, Social Tech released a defective product. Bonet knew at the time of the launch that the app crashed and did not properly edit images. Bonet Dep. 206:22–207:2. On this score, he wrote: "Of course this may take a little work to get perfect, but as long as we can get close initially, we can start to test and put *in commerce*." Ex. 2 at 4, Dkt. No. 125-2 (emphasis added). Social Tech's half-baked app is thus more akin to a "prototype," which is "insufficient to establish trademark rights." *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1052 (9th Cir. 1999). It's true that this prototype app was accessible to the public as a free download, but the posting of an unfinished, bad-faith app is basically costless in the digital marketplace.[1]

Likewise, contemporaneous evidence of Social Tech's purpose for posting the app underscores that its use of the mark was not in the ordinary course of trade. For example, Bonet wrote before the launch: "We are lining up all of our information, in preparation for a nice lawsuit against Apple, Inc! We are looking REALLY good. Get your Lamborghini picked out!" Ex. 2 at 2. After the launch, Bonet acknowledged that the app was not functioning properly but still remarked: "The lawsuit is coming together nicely. We should be done with the paperwork

---

[1] Google removed the app from its store for "violations of a developer program policy," but Bonet later reposted the app in violation of Google's rules. Bonet Dep. 262:3–14, 263:14–18.

and forms in the next several days, then we are just waiting for the trademark registration to file the lawsuit and get PAID." Ex. 1 at 2. This correspondence only confirms what is already apparent: the absence of a genuine commercial character to Social Tech's use of the mark. *See Chance*, 242 F.3d at 1159.

In response to the overwhelming evidence of its bad-faith use of the mark, Social Tech highlights its attempts to secure funding for a viable app before Apple's announcement. Among other preliminary steps, Social Tech made unsuccessful attempts to secure funding and posted a promotional video on YouTube. Social Tech also requested and received an extension in March 2018 to file its statement of use with the PTO. These activities tend to show that Social Tech had (at some point) a good-faith *intention* to use the mark in commerce. 15 U.S.C. § 1051(b). But this evidence does not speak to the question presented by Apple's motion: Was Social Tech's *actual use* of the mark in the ordinary course of trade and not merely to reserve its rights in the MEMOJI mark? *See* § 1051(d). It is well-settled law that "trademark rights are not conveyed through mere intent to use a mark commercially." *Brookfield*, 174 F.3d at 1052. As explained above, no reasonable jury could find that the rushed process to release a malfunctioning app was a good-faith attempt by Social Tech to make the mark "sufficiently public to identify or distinguish the marked [good] in an appropriate segment of the public mind as those of the holder of the mark." *Chance*, 242 F.3d at 1159.

When cancellation is sought within 5 years from the registration of the trademark, "any ground that would have prevented registration in the first place qualifies as a valid ground for cancellation." *Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.*, 894 F.3d 1015, 1021 (9th Cir. 2018); *see* 15 U.S.C. § 1064(1). Apple is therefore entitled to cancellation of registration 5,566,242 because Social Tech did not engage in bona fide use of the mark in commerce. 15 U.S.C. §§ 1051(d), 1064. For the same reason, Social Tech's request for a declaration of its registration's validity is denied.[2]

---

[2] Because no reasonable jury could find that Social Tech used the MEMOJI mark in commerce, the Court does not reach Apple's alternative grounds for summary adjudication of this claim.

2. Apple's motion for summary judgment on Social Tech's common-law trademark claim is granted. The only potential basis for Social Tech's claim is a putative assignment of rights from Christopher Anthony. Apple contends that Anthony had no remaining common-law rights to transfer. Apple Cross-Motion at 4, 10 n.4, Dkt. No. 123-4; Apple Reply at 5 n.8, Dkt. No. 134. For instance, Anthony's app was removed from the Apple Store in 2015, four years before he assigned his trademark rights to Social Tech. This fact would seem to refute the common-law element of continuous use of the mark, a point that Social Tech itself made to the Court on a prior occasion. *See* Dkt. No. 69.

Perhaps this is why, in its opposition to Apple's cross-motion, Social Tech did not mention—let alone defend—its common-law claim. Because of this failure, Social Tech forfeited consideration of the untimely arguments it attempted to make at the hearing and in its post-hearing letter. Contrary to Social Tech's representations, Dkt. No. 139, Apple made plain that it moved for summary judgment on each of Social Tech's infringement claims. Nor did Apple relegate its arguments to a lone footnote. *See* Apple Cross-Motion at 4. And Apple permissibly pointed to the absence of evidence in support of the common-law infringement claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). In short, this claim was squarely teed up by Apple's motion, and Social Tech did not take its swing.

3. Because Social Tech's claim under California's Unfair Competition Law is derivative of its two trademark infringement claims, Apple is entitled to summary judgment on the UCL claim as well.

4. Apple represented that it would withdraw its counterclaims for infringement if Social Tech's claims were summarily adjudicated. *See* Apple Cross-Motion at 1 n.1. Accordingly, Apple has seven days from this order to file a notice of dismissal of these claims. This notice should clarify whether Apple wishes to dismiss the claims with or without prejudice (and whether a court order is requested). *See* Fed. R. Civ. P. 41. At that time, the Court will address whether Social Tech's counterclaim for a declaration of non-infringement is moot and, if appropriate, enter final judgment.

**IT IS SO ORDERED.**

Dated: December 17, 2019

VINCE CHHABRIA
United States District Judge