Diana M. Torres (S.B.N. 162284)
diana.torres@kirkland.com
Lauren J. Schweitzer (S.B.N. 301654)
lauren.schweitzer@kirkland.com
KIRKLAND & ELLIS LLP
555 South Flower Street
Los Angeles, California 90071
Telephone: (213) 680-8400

Dale M. Cendali (S.B.N. 1969070)
dale.cendali@kirkland.com
Mary Mazzello (pro hac vice)
mary.mazzello@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800

Megan L. McKeown (pro hac vice)
megan.mckeown@kirkland.com
KIRKLAND & ELLIS LLP
609 Main Street
Houston, Texas 77002
Telephone: (713) 836-3499

Attorneys for Defendant Apple Inc.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| SOCIAL TECHNOLOGIES LLC, a Georgia limited liability company,<br><br>    Plaintiff,<br><br>  vs.<br><br>APPLE INC., a California corporation,<br><br>    Defendant. | ) CASE NO.: 3:18-cv-05945-VC<br>)<br>)<br>) **DECLARATION OF DALE M. CENDALI IN**<br>) **SUPPORT OF APPLE INC.'S MOTION FOR**<br>) **ATTORNEYS' FEES**<br>)<br>)<br>)<br>)<br>) |

I, Dale M. Cendali, declare as follows:

1.      I am admitted in the Northern District of California and am a partner at Kirkland & Ellis LLP ("Kirkland"), located at 601 Lexington Avenue, New York, New York 10022.

2.      I am counsel of record for Defendant Apple Inc. ("Apple").  I make this declaration pursuant to Civil Local 54-5(b) in support of Apple's Motion for Attorneys' Fees.

3.      This declaration is based on personal knowledge and/or knowledge from the review of facts and records in this case, and if called to testify as a witness, I could and would do so competently under oath.

**Apple Requests Reimbursement of Its Reasonable Attorneys' Fees**

4.      Social Tech sued Apple and sought a preliminary injunction against Apple's Memoji software feature, a critically important software application that is embedded in the operating system of Apple's iPhone mobile devices.  Apple had no choice but to mount a strong defense to that motion.  This Court then denied Social Tech's motion for a preliminary injunction in an opinion that called Social Tech's claims "shaky," holding that it was "unclear that Social Tech had used the mark 'in commerce' as necessary to secure a valid trademark registration." Dkt. 43, at 2.  Apple attempted to settle the matter after Social Tech's preliminary injunction motion was denied, only to have Social Tech instead retain new counsel and engage in extensive, prolonged, burdensome, and difficult discovery, involving substantial productions of party documents, service of third-party subpoenas, depositions of numerous fact witnesses and experts, motions to compel, and expert reports, culminating in cross-motions for summary judgment.  After oral argument on the parties' cross-motions for summary judgment, this Court denied Social Tech's motion and granted Apple's motion, leading to the filing of this motion for attorneys' fees.

5.      The Lanham Act authorizes an award of reasonable attorneys' fees to the prevailing party in exceptional cases.  15 U.S.C. § 1117(a).

6.      Apple has incurred a total of ▮▮▮▮▮ in reasonable attorneys' fees in connection with the defending of this case through summary judgment (*i.e.*, December 17, 2019). This number reflects the amount actually billed and/or recorded to be billed to Apple, taking into account any write-offs and discounts, and is based on the amount of time spent by timekeepers who worked on this case, as described below.  To be conservative, Apple has not requested fees incurred after December 17, 2019, including fees incurred in connection with the preparation of this motion.

7.      Notwithstanding the above attorneys' fees that Apple has actually incurred, Apple requests from this Court an award of only 80% of its total fees (*i.e.*, ▮▮▮▮▮), which is reasonable, as described further below.

**Contract Attorneys' Fees**

8.      ▮▮▮▮ of Apple's total fees (which is only ▮▮▮▮ after the 20% discount is applied) were billed directly to Apple by DiscoverReady (which was acquired by Consilio). DiscoverReady / Consilio supplied contract attorneys who were responsible for handling the first review of documents for privilege and responsiveness and supplying initial redactions of privileged and irrelevant information.  This was more efficient and cheaper than using Kirkland attorneys to perform these tasks in the first instance.

9.      DiscoverReady / Consilio's fees for these document review services were charged to Apple as follows:

| Service | Price / Rate |
|---|---|
| Managed Attorney Review (Per Doc) | ▮▮▮ per document |
| Managed Document Review Services - Privilege Log | ▮▮▮ per hour |
| Managed Review Hourly - DB2 | ▮▮▮ per hour |
| Privilege Log - DB2 | ▮▮▮ per hour |

The cost of the "Managed Attorney Review (Per Doc)" review for 2,950 documents was

███████. There were 107.63 hours spent on "Managed Document Review Services - Privilege

Log" services at a cost of ███████. There were 190.93 hours spent on "Managed Review Hourly -

DB2" services at a cost of ███████. There were 69.91 hours spent on "Privilege Log - DB2"

services at a cost of ███████. The total hours spent by the contract attorneys for all of these

services was thus 368.47 hours. After discounts and write offs for these services, Apple was billed a

total of ███████. A spreadsheet summarizing the fees incurred by DiscoverReady / Consilio

generated from Apple's records database is attached hereto as **Exhibit 1**. At the Court's request, I

am prepared to produce underlying supporting documentation if the Court deems it appropriate.

10.     The rates charged by DiscoverReady / Consilio for document review services by its

contract reviewers is reasonable, as the court in *In re Anthem, Inc. Data Breach Litigation*, found

that "$240.00 per hour for contract and staff attorney time is a reasonable rate." No. 15-MD-02617-

LHK, 2018 WL 3960068, at *20 (N.D. Cal. Aug. 17, 2018), *appeal dismissed sub nom. In re*

*Anthem, Inc., Customer Data Sec. Breach Litig.*, No. 18-16826, 2018 WL 7858371 (9th Cir. Oct. 17,

2018).

11.     Moreover, DiscoverReady / Consilio confirmed that the contract attorneys used in

this matter are all licensed lawyers who were engaged for the purpose of reviewing Apple's

documents and that the rates DiscoverReady / Consilio charged to Apple for its contract attorneys

are consistent with its standard hourly rates. DiscoverReady / Consilio also confirmed that its

contract attorneys enter their time on a daily basis and bill their time in quarter hour increments.

DiscoverReady / Consilio monitors its contract attorneys' time records on a daily basis and corrects

time issues by the following day to ensure accuracy.

12.     The time spent by the contract lawyers is reasonable as DiscoverReady / Consilio has

a relationship with Apple and is familiar with Apple's preferred procedures. Thus, using

DiscoverReady / Consilio was more efficient than engaging another vendor who would not have Apple-specific experience and familiarity.

### Kirkland's Attorneys' Fees

13.        ███████████ of Apple's total fees (which is only ████████████ after the 20% discount is applied) were incurred by Kirkland attorneys.

14.        Kirkland's billing statements for this litigation are directed to internal matter designation 34701-180.

15.        Pursuant to Local Rule 54-5(b)(3), below is a statement of the hourly rates for each time keeper who billed time to 34701-180 in connection with the defending of this case from the time that Kirkland was retained as counsel in 2018 through December 17, 2019 (*i.e.*, the date that the Court granted summary judgment to Apple).

| Name | Title | Billing Rate 2018 - 3/31/19 | Billing Rate 4/1/19 - 12/17/19 |
|------|-------|------------------------------|--------------------------------|
| Dale M. Cendali | Partner | ████ | ████ |
| Diana Torres | Partner | ████ | ████ |
| Mary Mazzello | Partner | ███ | ███ |
| Lauren Schweitzer | Associate | ███ | ███ |
| Megan McKeown | Associate | ███ | ███ |
| Yungmoon Chang | Associate | ███ | ███ |
| Erika Dillon | Paralegal | ███ | ███ |
| Karina Patel | Junior Paralegal | ███ | ███ |

16.     Pursuant to Local Rule 54-5(b)(2) and (b)(3), below is a statement and summary of the services rendered by each person for whose services fees are claimed, along with a brief description of the relevant qualifications and experience of each such person.

17.     True and correct copies of the Kirkland biographies of each of Apple's lawyers on this matter, which further describe the qualifications and experience of each attorney, are attached hereto as **Exhibit 2**.  The biography of Yungmoon Chang, which is included among these biographies, is an archived version from Kirkland's files, as Ms. Chang has since departed Kirkland to clerk for Judge S. James Otero of the Central District of California.

18.     The below time summaries are based on detailed time entries that reflect the actual, contemporaneous narratives written by Kirkland timekeepers and entered into Kirkland's time and billing system on a regular basis.  At the Court's request, I am prepared to produce Kirkland's contemporaneous time records or an abstract thereof for in camera inspection by the Court, if the Court deems it appropriate.  Attorneys and staff members billing to this matter record, in tenths of an hour, the time spent on specific tasks for their work that day, and enter their time directly into the firm's time management program.  This can be done either using a contemporaneous timer or by entering time directly into the system.  Occasionally, employees may not enter their time on the day it was performed; for example, due to travel or other obligations.  However, Kirkland's policies require that weekly time be entered and closed, at the very latest, by Tuesday evening of the following week.

19.     The Kirkland team divided up work on this matter as it made sense based on the topic, the geographic location, and level of the attorney.

### **Dale Cendali**

20.     I am a senior partner and co-lead trial counsel for Apple in this matter.  I am the firm-wide head of Kirkland's Copyright, Trademark, and Internet practice.  I have represented clients in

copyright and trademark matters for over 30 years and have argued before the United States Supreme Court in trademark cases, including, most recently, earlier this month. I have been recognized many times for my representation of clients in trademark cases. *Law360* named me as one of the 25 "Icons of IP" who have "made an indelible mark in the IP area." I was selected for the *Lawdragon* 500 Leading Lawyers in America "Hall of Fame." The *National Law Journal* named me as one of the "100 Most Influential Lawyers in America." I have also been recognized in the World's Leading Trademark Professionals report by *World Trademark Review*. Euromoney Legal Media Group named me "Best in Trademark [in] the Americas." In addition, I am an adjunct professor at Harvard Law School, where I teach copyright and trademark litigation. I am also active in bar associations and have served, among other roles, as chair of the Trademarks and Unfair Competition Committee and chair of the Council on IP of the New York City Bar Association.

21.     I have billed a total of **335.30** hours at a cost of ▮▮▮▮▮▮ to Apple in connection with my work on this matter from 2018, when I first billed work to this matter, through December 17, 2019. My billing rate from the inception of this matter through December 17, 2019 has been ▮▮▮▮▮ per hour.

22.     My role in this matter has been to serve as the overall strategist and planner for Apple's approach. I have taken the lead on key fact and expert depositions, argued key motions, and outlined and drafted Apple's approach on various motion briefing. Among the tasks that I particularly focused on for this matter included the following:

- setting overall strategy for the case;

- drafting and revising the key briefing, including briefs in opposition to Social Tech's motion for a preliminary injunction and motion for summary judgment;

- commenting on Apple's answer and strategizing on what counterclaims to bring;

- successfully arguing against Social Tech's motion for a preliminary injunction at the preliminary injunction hearing;

- preparing for and attending mediation, including coordinating Apple's settlement strategy;

- organizing and coordinating strategy for discovery;

- revising Apple's response to Christopher Anthony's motion to intervene;

- defending the deposition of key Apple 30(b)(6) witness, Thomas La Perle, including preparing Mr. La Perle for same;

- preparing for and taking the deposition of Social Tech's key 30(b)(6) witness, Samuel Bonet, including reviewing and commenting on deposition outline and strategizing regarding which key documents to introduce;

- commenting on Apple's opposition to Social Tech's motion to compel;

- commenting on Apple's motion to compel;

- attending meet and confers on discovery disputes teeing up Social Tech and Apple's cross motions to compel;

- providing strategy and oversight in the preparation of opening and rebuttal expert reports, including reports of Anindya Ghose, Itamar Simonson, and Garry Kitchen;

- preparing for and taking the deposition of Social Tech's lead expert, Tyler Droll, including reviewing and commenting on the deposition outline and strategizing regarding which documents to introduce;

- defending the deposition of Apple's opening and rebuttal expert, Anindya Ghose, including preparing Mr. Ghose for same; and

- successfully arguing against Social Tech's motion for summary judgment.

**Diana Torres**

23.     Ms. Torres is a senior partner and my co-lead trial counsel for Apple in this matter. She has consistently been recognized in *The Legal 500 U.S.* from 2010–2019 for excellence in copyright, trademark litigation, and trade secrets.  Ms. Torres also was listed in the *U.S. News and World Report, Best Lawyers* from 2010–2019 in the area of Intellectual Property Law and has been selected as a "California Super Lawyer" by *Super Lawyers* magazine every year since 2009.

24.     Ms. Torres has billed a total of **600.40** hours at a cost of ▮▮▮▮▮▮▮ to Apple in connection with her work on this matter from 2018, when she first billed work to this matter,

through December 17, 2019.  Ms. Torres's billing rate from the inception of this matter through

December 17, 2019 has been ███████ per hour.

25.     Ms. Torres's role in this matter was primarily to handle more of the day-to-day senior

partner work on the case.  She particularly focused on discovery and taking and defending

depositions of witnesses located in California.  Among the tasks that Ms. Torres particularly focused

on included the following:

- reviewing and revising the opposition to Social Tech's motion to shorten time on its motion for a preliminary injunction;

- revising the opposition to Social Tech's motion for a preliminary injunction and preparing for and attending the hearing on Social Tech's motion;

- revising Apple's answer and counterclaims to Social Tech's complaint;

- handling overall day-to-day case management;

- revising Apple's settlement conference statement and preparing for and attending mediation;

- overseeing the associates and junior partner in day-to-day discovery matters, including negotiating the protective order, revising various discovery documents and discovery requests, responses to discovery requests, and subpoenas;

- revising the opposition to Christopher Anthony's motion to intervene;

- reviewing and commenting on various fact discovery deposition outlines;

- preparing for and taking the depositions of various fact witnesses, including the deposition of Lucky Bunny's 30(b)(6) witness (Cameron Ehrlich) and Christopher Anthony;

- defending the depositions of key Apple fact witnesses, including Kurt Knight and Stoney Gamble, and preparing those witnesses for deposition;

- revising Apple's motion to compel and opposition to Social Tech's motion to compel;

- attending meet and confers related to discovery disputes;

- defending the deposition of Apple's rebuttal survey expert, Itamar Simonson, including preparing Mr. Simonson for deposition;

- defending the deposition of Apple's rebuttal tacking expert, Garry Kitchen, including preparing Mr. Kitchen for deposition;

- revising and commenting on the associates' first drafts of sections of Apple's draft cross-motion for summary judgment; and

- handling confidentiality issues, including reviewing and revising draft motions to seal and declarations in support in connection with discovery motions and summary judgment.

### Mary Mazzello

26.     Ms. Mazzello is a junior partner.  She has been recognized by *The Legal 500 United States* for excellence in trademarks, litigation, media and entertainment and recognized as a "Rising Star" in *Super Lawyers Magazine*.  She has represented numerous clients in trademark litigations, including her current representation of a client against trademark infringement claims in a case pending before the United States Supreme Court.

27.     Ms. Mazzello has billed a total of **668.30** hours at a cost of ▮▮▮▮▮▮ to Apple in connection with her work on this matter from 2018, when she first billed work to this matter, through December 17, 2019.  Of the 668.30 total hours that Ms. Mazzello spent billing to this matter, 212.6 hours were spent working on this matter at a billing rate of ▮▮▮▮ per hour, and 455.7 hours were spent at a billing rate of ▮▮▮▮ per hour.

28.     Ms. Mazzello's role in this litigation was to handle much of the day-to-day discovery work, attend meet and confers, take and defend depositions, draft and revise various motions and opposition briefing, and help me prepare for argument.  Among the tasks that Ms. Mazzello particularly focused on included the following:

- drafting the first draft of the opposition to Social Tech's motion for a preliminary injunction;

- assisting in preparation for preliminary injunction hearing, including preparing outline of arguments for hearing;

- revising the draft answer and counterclaims to Social Tech's complaint;

- communicating with client regarding Apple's strategy for various aspects of litigation;

- attending to various day-to-day discovery matters, including corresponding with opposing counsel regarding discovery disputes, attending meet and confers, and finalizing document productions and privilege logs;

- revising the draft opposition to Christopher Anthony's motion to intervene;

- defending deposition of Apple's fact witness Michael Jaynes;

- preparing for and taking the deposition of Social Tech's app developer, Justin Grant;

- providing second chair support during deposition of Social Tech's fact witness, Robert Long;

- working with Apple's experts on expert reports, including reports of Anindya Ghose, Garry Kitchen, and Itamar Simonson;

- assisting in preparation of Anindya Ghose for deposition;

- preparing for and taking the deposition of Social Tech's expert Andreas Groehn;

- drafting sections of Apple's summary judgment opposition and cross-motion for summary judgment;

- overseeing the drafting of and filing of the summary judgment opposition and cross-motion;

- assisting in summary judgment hearing preparation, including working on outline for summary judgment; and

- revising various motions to seal and declarations in support in connection with discovery motions and summary judgment.

**Lauren Schweitzer**

29.     Ms. Schweitzer is an associate.  She has represented clients across a variety of industries in trademark disputes in federal courts and before the Trademark Trial and Appeal Board. Ms. Schweitzer has represented multiple technology companies in trademark infringement disputes in federal courts within the Ninth Circuit, including her recent representation of a technology company in a Ninth Circuit appeal regarding a dispute over priority.  Ms. Schweitzer also clerked for the Honorable Judge Stephen V. Wilson of the Central District of California.

30.     Ms. Schweitzer has billed a total of **394.00** hours at a cost of ███████ to Apple in connection with her work on this matter from 2018, when she first billed work to this matter,

through December 17, 2019.  Of the 394.00 total hours that Ms. Schweitzer spent billing to this matter, 132.7 hours were spent working on this matter at a billing rate of ███ per hour, 259.1 hours were spent at a billing rate of ███ per hour, and 2.2 hours were spent at a billing rate of ███.

31.    Ms. Schweitzer's primary role on this matter was to draft the first draft of various documents, prepare partners for oral argument, attend to various discovery matters, and argue the parties' cross-motions to compel at the hearing before Magistrate Judge Kim.  Among the tasks that Ms. Schweitzer particularly focused on included the following:

- drafting Apple's opposition to Social Tech's motion to shorten time on its motion for a preliminary injunction;

- conducting research for opposition to Social Tech's motion for a preliminary injunction;

- assisting in preparation for and attending preliminary injunction hearing;

- drafting Apple's settlement conference statement;

- handling various day-to-day discovery matters, including drafting and negotiating the protective order, drafting discovery responses, drafting discovery dispute letters, meeting and conferring regarding Social Tech's discovery dispute issues, reviewing documents produced by Social Tech and third parties, and working with Apple's discovery vendor to address issues;

- preparing for and taking the deposition of Robert Long, including drafting outline for same;

- providing second chair support during the deposition of Social Tech's app developer, Justin Grant, from FlexDev;

- assisting in preparation to defend Apple's key 30(b)(6) witness Thomas La Perle;

- assisting in preparation to defend deposition of Apple's witness Kurt Knight;

- drafting Apple's portion of joint letter brief regarding Social Tech's motion to compel;

- successfully arguing on behalf of Apple at the hearing on the parties' cross-motions to compel;

- preparing confidentiality designations following depositions; and

- drafting portions of Apple's opposition and cross-motion for summary judgment and reply brief.

**Megan McKeown**

32.     Ms. McKeown is a mid-level associate.  She has experience litigating a variety of trademark cases for clients from a range of industries, including consumer products, insurance, and entertainment.  She also manages various clients' trademark portfolios, including clearance and prosecution.  Ms. McKeown served as the secretary to the Council on IP of the New York City Bar Association from 2016–2019.

33.     Ms. McKeown has billed a total of **<u>781.60</u>** hours at a cost of ▮▮▮▮▮ to Apple in connection with her work on this matter from 2018, when she first billed work to this matter, through December 17, 2019.  Of the 781.60 total hours that Ms. McKeown spent billing to this matter, 169.1 hours were spent working on this matter at a billing rate of ▮▮▮▮ per hour, and 612.5 hours were spent at a billing rate of ▮▮▮▮ per hour.

34.     Ms. McKeown's role in this matter has been primarily to prepare the first drafts of documents, including various briefing, review and prepare documents for production, identify key documents from Social Tech and third parties for deposition, and prepare partners to take and defend depositions.  Among the tasks that Ms. McKeown particularly focused on included the following:

- finalizing and filing the opposition to Social Tech's motion to shorten time on its motion for a preliminary injunction;

- working on opposition to Social Tech's motion for a preliminary injunction, including conducting research, drafting specific sections of opposition brief, and preparing declarations in support of Apple's opposition to Social Tech's motion;

- handling various discovery matters, including drafting the protective order declaration per Judge Kim's individual rules, drafting subpoenas, drafting Apple's 30(b)(6) topics and objections and responses to Social Tech's 30(b)(6) topics, reviewing Apple documents for production, reviewing documents produced by Social Tech and FlexDev, and summarizing Social Tech's document productions for case team;

- drafting first draft of the opposition brief opposing Christopher Anthony's motion to intervene and incorporating comments from partners;

- assisting in preparation for taking the deposition of Social Tech's 30(b)(6) witness, Samuel Bonet, including drafting deposition outline and identifying key documents;

- assisting in preparation of materials to prepare Apple's witness Thomas La Perle for deposition;

- conducting research to identify possible opening experts;

- working with Anindya Ghose in preparation of opening expert report;

- drafting Apple's motion for contempt and joint stipulation regarding Social Tech's protective order violation, including leading meet and confer and handling negotiations regarding same;

- assisting in preparation to take deposition of Social Tech's expert Tyler Droll, including drafting the deposition outline for same and identifying key documents;

- preparing confidentiality designations following various depositions;

- drafting portions of Apple's opposition and cross-motion for summary judgment, conducting research for same, and working on finalizing brief;

- preparing motions to seal and declarations in support in connection with discovery motions and summary judgment, including reviewing and highlighting exhibits for confidentiality; and

- assisting in preparation of outline of arguments for summary judgment hearing.

**Yungmoon Chang**

35.     Ms. Chang is a former Kirkland associate. She has litigated a variety of intellectual property matters, including a trademark litigation that resulted in a $1.8 billion judgment. She is a member of the Association of Business Trial Lawyers and a member of the Judge Paul R. Michel Intellectual Property American Inn of Court, and she has served as a member of the Young Lawyers Committee of the Los Angeles Intellectual Property Law Association. Ms. Chang is now clerking for Judge S. James Otero of the Central District of California.

36.     Ms. Chang has billed a total of **345.50** hours at a cost of ████████ to Apple in connection with her work on this matter from 2018, when she first billed work to this matter, through December 17, 2019. Of the 345.50 total hours that Ms. Chang spent billing to this matter,

71 hours were spent working on this matter at a billing rate of ▮▮▮▮ per hour, and 274.5 hours were spent at a billing rate of ▮▮▮▮ per hour.

37.     Ms. Chang's role in this matter was to draft various documents, handle discovery matters, and prepare partners for deposition.  Among the tasks that Ms. Chang was particularly focused on included the following:

- drafting the first draft of answer and counterclaims to Social Tech's complaint;

- assisting in the preparation of Apple's settlement conference statement and preparing partners for mediation;

- handling various discovery matters, including document collection calls, drafting discovery requests, responses to discovery requests, and subpoenas, reviewing Apple's documents for production, and reviewing documents produced by Social Tech and Christopher Anthony;

- assisting in preparation to defend the deposition of Stoney Gamble, including drafting the deposition preparation outline for same;

- assisting in preparation to take the deposition of Christopher Anthony, including drafting the deposition outline and identifying key documents for same;

- assisting in preparation to take the deposition of Lucky Bunny's 30(b)(6) witness (Cameron Ehrlich), including drafting the deposition outline and identifying key documents for same;

- drafting portions of Apple's response to Social Tech's motion to compel and portions of Apple's cross-motion to compel;

- conducting research to identify rebuttal experts;

- working with Apple's rebuttal experts on expert reports, including Itamar Simonson and Garry Kitchen;

- assisting in preparation to take the deposition of Social Tech's expert, Andreas Groehn;

- assisting in preparation to defend deposition of Apple's expert, Garry Kitchen; and

- preparation of confidentiality designations following depositions.

**Erika Dillon**

38.     Ms. Dillon is a highly skilled paralegal with over 11 years of experience, seven of which have been spent with Kirkland.  She is experienced with a variety of eDiscovery platforms

and regularly coordinates complicated high-volume discovery productions of confidential client information, all of which was at issue in this matter.  Ms. Dillon has assisted attorneys with trials and hearings before a variety of district courts and administrative boards, including specialized government agencies overseeing intellectual property matters (*i.e.*, the International Trade Commission and the Copyright Royalty Board), and has assisted in trial preparation in numerous matters.  In the last two years, Ms. Dillon has prepared supporting declarations and exhibits for summary judgment and preliminary injunction motions in at least a half dozen different district courts.

39.      She has billed a total of **375.80** hours at a cost of ███████ to Apple in connection with her work on this matter from 2018, when she first billed work to this matter, through December 17, 2019.  Of the 375.80 total hours that Ms. Dillon spent billing to this matter, 67.8 hours were spent working on this matter at a billing rate of █████ per hour, and 308 hours were spent at a billing rate of █████ per hour.

40.      Ms. Dillon's role in this matter has been to serve as the lead paralegal for the litigation, including finalizing and filing documents.  Among the tasks that Ms. Dillon was particularly focused on included the following:

- preparing exhibits for motions, including exhibits related to Apple's opposition to Social Tech's motion for a preliminary injunction, discovery motions, motions to seal, and Apple's opposition and cross-motion for summary judgment;

- finalizing motions and oppositions to motions, including proofreading, cite checking cases, and creating tables of authorities;

- preparing redacted and unredacted versions of documents sought to be sealed;

- handling electronic filing of documents;

- effectuating service of documents;

- coordinating courtesy copies of filed documents;

- coordinating lodging of physical exhibits filed in connection with Apple's opposition and cross-motion for summary judgment;

- calculating and calendaring case deadlines;

- organizing network of case files, including filed and served versions of documents;

- coordinating process servers for service of subpoenas;

- preparing shell documents of various draft pleadings, discovery requests, and discovery responses;

- coordinating and finalizing the production of documents with discovery vendor;

- preparing privilege logs for document productions;

- preparing binders for fact and expert witness preparation and depositions and court hearings;

- preparing exhibits for fact and expert depositions; and

- preparing table of exhibits for Apple's opposition and cross-motion for summary judgment.

### **Karina Patel**

41.     Ms. Patel is a skilled junior paralegal who has five years of experience working on civil litigation matters in the areas of intellectual property, foreclosure, eviction and bankruptcy across a variety of state and federal district courts.  Ms. Patel has assisted in preparing supporting documents and exhibits to numerous large filings related to motions for summary judgment, motions for a preliminary injunction, and motions to dismiss.  She also has supported Kirkland attorneys in preparing for numerous hearings and depositions.

42.     Ms. Patel has billed a total of **215.00** hours at a cost of ▮▮▮▮▮▮ to Apple in connection with her work on this matter from 2018, when she first billed work to this matter, through December 17, 2019.  Of the 215.00 total hours that Ms. Patel spent billing to this matter, 24.2 hours were spent working on this matter at a billing rate of ▮▮▮▮ per hour, and 190.8 hours were spent at a billing rate of ▮▮▮ per hour.

43.     Among the tasks that Ms. Patel was particularly focused on included the following:

- preparing exhibits for motions, including exhibits related to Apple's opposition to Social Tech's motion for a preliminary injunction and Apple's opposition and cross-motion for summary judgment;

- finalizing motions and oppositions to motions, including proofreading and cite checking;

- effectuating service of documents;

- preparing subpoenas;

- organizing network of case files, including filed and served versions of documents;

- gathering cases cited in various briefing;

- preparing shell documents of various draft pleadings, discovery requests, and discovery responses;

- preparing binders for fact and expert witness preparation and depositions; and

- preparing exhibits for fact and expert depositions.

44.     The reasonableness of Kirkland's billing rates is supported by the Thomson Reuters Legal Billing Report Volume 20, Number 2 (December 2018), which shows that Kirkland's rates are comparable to billing rates of California lawyers at peer law firms.  True and correct copies of excerpts from the Thomson Reuters report are attached hereto as **Exhibit 3**.

45.     The reasonableness of Kirkland's billing rates also is supported by the Valeo 2019 Attorney Hourly Rate Report, which shows that Kirkland's rates are comparable to the billing rates of other AM Law 10 firms, including in the area of intellectual property and among San Francisco lawyers.  True and correct copies of excerpts from the Valeo report are attached hereto as **Exhibit 4**.

46.     Finally, the reasonableness of Kirkland's billing rates also is supported by the numerous accolades that Kirkland's intellectual property litigation department has received in the last several years.  These include, for example, (1) a 2018 "Intellectual Property Practice Group of the Year" award from *Law360*, (2) "Trademark Contentious Firm of the Year: Northeast" and "Trademark Contentious Firm of the Year: West" awards from *Managing Intellectual Property* in

2018, and (3) a national Tier 1 ranking for intellectual property for the 12th consecutive year in the 2019 edition of *Benchmark Litigation*.  Attached as **Exhibit 5** is a compilation of these and other accolades.

47.     The time Kirkland has spent litigating this matter is reasonable.  Kirkland's eight timekeepers on this matter have collectively billed **3,715.90** hours at a cost to Apple of

████████.  The time spent is reasonable in light of the various tasks Kirkland performed to defend Apple.  Between the filing of the Complaint and summary judgment, Kirkland filed an answer and opposed several motions, including opposing Social Tech's motion to shorten time, Social Tech's motion for a preliminary injunction, Anthony's motion to intervene, Social Tech's motion to compel, and Social Tech's motion for summary judgment.  Apple also filed its own motion to compel and motion for summary judgment.  Nearly all of these motions—*i.e.*, every motion except Social Tech's motion to shorten time and Anthony's motion to intervene—had a hearing for which Kirkland needed to prepare.  During discovery, Kirkland had to defend or take 14 fact or expert depositions in numerous cities across the country.  Kirkland also had to review and respond to numerous discovery requests, prepare and serve its own discovery requests, review and produce responsive documents, review Social Tech's documents, attend meet and confers related to discovery disputes, prepare and serve third-party subpoenas, and review documents produced in response to those subpoenas.  After Social Tech acquired the alleged rights of Christopher Anthony (despite previously arguing to the Court that Mr. Anthony had "no rights" to assert related to the MEMOJI mark, Dkt. 69), Apple sought discovery to defend against those alleged rights, including serving a subpoena for documents, deposing Anthony, and investigating Anthony's app history, download numbers, and alleged examples of use.  Kirkland also had to prepare for and draft a mediation statement.

48.     Moreover, Apple's overall request for its fees is reasonable as it seeks only 80% of its total fees (*i.e.,* ███████ ).

**Social Tech's Unreasonable Litigation Conduct**

49.     Throughout this litigation, Social Tech engaged in repeated instances of unreasonable litigation conduct.

50.     After the Court denied Social Tech's motion for a preliminary injunction, Social Tech's (now previous) counsel sought to engage Apple in settlement discussions and indicated that Social Tech wanted to settle.  Instead of settling, Social Tech hired new counsel and proceeded with discovery.  That discovery was often conducted in an unreasonable manner.

**Reneging on Agreement to Bifurcate**

51.     Social Tech tried to rescind its agreement to bifurcate the case between issues of liability and damages, presumably to leverage the threat of obtaining Apple's financial information to coerce Apple to settle or risk disclosing the financial information associated with Apple's new iPhone and iOS releases.  Specifically, on January 2, 2019, the parties filed a Joint Case Management Statement in which Social Tech (and Apple) "request[ed] that this matter be bifurcated between issues of liability and damages, as both parties believe[d] such bifurcation would expedite this case."  Dkt. 48, at 7.  At the telephonic initial case management conference held on January 8, 2019, however, counsel for Social Tech argued that the Court should not bifurcate the case.  Apple pointed out Social Tech's change in position, and the Court still granted the request to bifurcate.  Dkt. 53.

**Failure to Produce Documents About Social Tech's Own Memoji App**

52.     On January 28, 2019, Apple served its First Set of Requests for Production.  Request for Production No. 1 requested "Documents sufficient to show each download of Social Tech's App since its launch, including the date (or, if the specific date is not available, then the year) and the

location from which each download occurred."  On March 13, 2019, Social Tech served its response

to this request stating that "Plaintiff does not have any responsive materials in his possession,

custody, or control.  Plaintiff has reached out to Google for the information, but Google has not

responded."  This was surprising because, upon information and belief, normally app developers

would routinely have access to this information through their account with Google.  While Apple

believed this information was within Social Tech's custody and control, Apple nevertheless

proceeded to prepare and serve a subpoena to Google.  A true and correct copy of an excerpt from

Social Tech's Responses and Objections to Defendant's First Set of Requests for Production, served

on March 13, 2019, is attached hereto as **Exhibit 6**.  A true and correct copy of Apple's April 30,

2019 subpoena to Google is attached hereto as **Exhibit 7**.

53.     In response to the subpoena, Google produced, among other things, the download

data chart for Social Tech's Memoji app appearing at Dkt. 123-20.

**Unusual Timing of Social Tech's Production of Key Email Chains**

54.     At the hearing on the parties' cross-motions for summary judgment, the Court asked

counsel for Social Tech when it became aware of certain email chains that stated, among other

things, that Social Tech was "lining up all of [its] information, in preparation for a nice lawsuit

against Apple, Inc! We are looking REALLY good.  Get your Lamborghini picked out!" and that

Social Tech was "waiting for [its] trademark registration to file the lawsuit and get PAID."  These

email chains are reflected in Dkt. 123-6 and Dkt. 125-2.

55.     Counsel for Social Tech admitted during the summary judgment hearing that Social

Tech had been aware of these email chains since "[e]arly on in discovery when [Social Tech] started

producing documents."  Social Tech produced its first production of documents to Apple on

February 20, 2019.  Attached hereto as **Exhibit 8** is a true and correct copy of the December 12,

2019 summary judgment hearing transcript.

56.     Yet Social Tech only initially produced the email chains reflected in Dkt. 123-6 and Dkt. 125-2 in its May 15, 2019 production.  It produced them under the Bates Nos. SocialTech0000580 and SocialTech0000427.  After Social Tech produced these documents, however, it clawed them back on May 28, 2019, stating that Social Tech produced the "incorrect production set" and that Social Tech was providing a "replacement production."  A true and correct copy of a May 28, 2019 email thread reflecting these statements is attached hereto as **Exhibit 9**.

57.     Social Tech's May 28, 2019 "replacement production" did not include the email chains reflected in Dkt. 123-6 and Dkt. 125-2.

58.     On June 7, 2019, which was the same day as the deadline for the parties to substantially complete their document productions, Dkt. 82, at 3, and a mere four days before the deposition of Social Tech's first fact witness (Robert Long) on June 11, 2019, Social Tech produced a subsequent production that included the email chains reflected in Dkt. 123-6 and Dkt. 125-2 under the Bates Nos. SocialTech_0000796 and SocialTech_0000752.

**Violation of the Protective Order**

59.     Upon service of Social Tech's opening expert reports on July 31, 2019, Apple discovered that Social Tech violated the Protective Order entered in this matter, Dkt. 74, by disclosing Apple-designated confidential and highly confidential materials to Social Tech's experts without first disclosing those experts to Apple and allowing Apple 14 days to object, as required by Section 7.4(a)–(b) of the Protective Order.

60.     When Apple confronted Social Tech regarding its disregard for the Protective Order, Social Tech produced signature pages of the Protective Order that indicated that Social Tech's experts signed the Protective Order on July 22, 2019 and July 25, 2019, respectively.  True and correct copies of the signed Protective Order signature pages from Social Tech's experts are attached hereto as **Exhibit 10**.

61.     Assuming Social Tech did not produce Apple-designated documents to its experts until after each of its experts had signed the Protective Order, there would have been insufficient time for Social Tech to provide Apple with 14 days to object to those experts as provided in the Protective Order before the July 31, 2019 deadline for opening expert reports.  Dkt. 82, at 1.  That Social Tech waited too long to retain its experts appears to be the reason that Social Tech disregarded the Protective Order (although Social Tech maintained at the time that the disclosure was "inadvertent").

62.     Counsel for the parties met and conferred on August 12, 2019 regarding Social Tech's Protective Order violation and spent the next few days preparing a joint letter brief to Judge Kim regarding Apple's motion for contempt of a court order.  As an alternative to the joint letter brief, Apple proposed that Social Tech could stipulate to its violation.  The parties then spent nearly two more weeks negotiating a Joint Stipulation to protect Apple from further violation.  *Id.*  A true and correct copy of an August 29, 2019 Joint Stipulation regarding Social Tech's protective order violation is attached hereto as **Exhibit 11**.

### Social Tech's Tacking Argument

63.     One of the experts that Social Tech disclosed during expert discovery was Tyler Droll.  In his expert report, Mr. Droll opined that "Lucky Bunny's app is Fundamentally Different From Apple's Memoji Feature and Use of Memoji."  This opinion was clearly designed to show that Apple could not tack its rights in MEMOJI back to Lucky Bunny.  As Social Tech had offered an expert on this issue, Apple had to retain its own expert—Garry Kitchen—to rebut these opinions.  *See* Dkt. 127-1.  A true and correct copy of an excerpt from the expert report of Tyler Droll is attached hereto as **Exhibit 12**.

64.     In its motion for summary judgment, Social Tech argued for the first time that Apple could not tack its rights back to Lucky Bunny.  Dkt. 115, at 18–21.  Apple spent time and effort

explaining why this was completely unfounded in its opposition to Social Tech's motion.  Dkt. 124, at 17–21.  Social Tech did not even mention the tacking issue again in its reply brief, thus conceding that tacking was a non-issue.  Dkt. 132.  Yet Apple still had to go through the time and effort of opposing that argument and hiring a rebuttal expert to rebut Mr. Droll's opinions on the issue.

### Mischaracterization of Apple's Motion for Summary Judgment Regarding Social Tech's Common Law Rights

65.     During the summary judgment hearing, the Court asked counsel for Social Tech whether it waived the ability to assert Christopher Anthony's rights as the basis for its common law claim, as Social Tech had not addressed the argument in its opposition to Apple's motion for summary judgment.  Counsel for Social Tech responded that "she didn't address this -- they conceded, they do -- not moving on summary judgment on their counterclaim or on their affirmative enforcement.  They were moving on an affirmative defense. . . Chris Anthony now has to be looked at."  *See* Exhibit 8, at 21:13–23:12.  In other words, Social Tech argued that Apple had not properly raised Mr. Anthony's rights in its motion for summary judgment.  Following the hearing, Social Tech then filed an untimely and improper supplemental letter with the Court again falsely representing that Apple did not "move for summary judgment on Plaintiff's common law rights based on Christopher Anthony's prior use of Memoji" and further arguing that Apple "only asserted facts related to Christopher Anthony's trademark rights in a footnote."  Dkt. 139, at 1.  Apple thus put together its own letter to correct the record and explain that Apple had moved for summary judgment on Social Tech's common law rights *in toto*.  Dkt. 141.  In the Court's summary judgment order, the Court stated that "*[c]ontrary to Social Tech's representations*, . . . Apple made plain that it moved for summary judgment on each of Social Tech's infringement claims.  Nor did Apple relegate its arguments to a lone footnote."  Dkt. 142, at 5.

**Joint Letter Regarding Mootness**

66.     On December 17, 2019, the Court granted Apple's motion for summary judgment and directed Apple to file a notice of dismissal of its counterclaims for infringement within seven days. Dkt. 142, at 5.  As Social Tech had a remaining claim seeking a declaratory judgment of non-infringement, on December 20, 2019, I emailed Social Tech's counsel a proposal whereby both parties could stipulate to dismiss their remaining claims without prejudice to save the parties the cost of trial.  Social Tech did not agree.  Apple thus filed a request to dismiss its counterclaims without prejudice.  Dkt. 147.

67.     On December 27, 2019, the Court granted Apple's motion to dismiss its infringement claims without prejudice and ordered the parties to meet and confer regarding whether Social Tech intended to press its claim for a declaration of non-infringement.  Dkt. 150.  Pursuant to that Order, the parties met and conferred on January 3, 2020.  Following the call, on January 7, 2020, Social Tech circulated a draft joint letter.  Apple revised the joint letter and sent it back to Social Tech for review.  On January 8, 2020, Social Tech circulated an updated joint letter with further proposed revisions, along with a proposed order that Social Tech had prepared.  On January 9, 2020, Apple responded with further edits to the joint letter and the proposed order.  On January 10, 2020, the day that the joint letter was due, Apple followed up with Social Tech to confirm that Social Tech intended to timely file the joint letter.  Social Tech responded informing Apple for the first time that, in light of the Court's order, Dkt. 150, Social Tech did not believe that the parties needed to file a joint letter because Social Tech did not "still intend[] to press its claim for declaration of non-infringement."  Apple thus filed a brief letter with the Court explaining that the parties had met and conferred and that Social Tech informed Apple that it did not intend to press its claim for a declaration of non-infringement.  Dkt. 152.  Social Tech then proceeded to file unilaterally as its own letter virtually the same joint letter the parties had been preparing, but without Apple's edits.

Dkt. 153.  A true and correct copy of the parties' email correspondence exchanging drafts of the joint letter is attached hereto as **Exhibit 13**.

68.     On January 15, 2019, the Court entered judgment and found that "Social Tech's remaining claim for declaratory judgment of noninfringement is moot in light of Apple dismissing its counterclaim for infringement and its representation that it does not intend to further pursue that counterclaim."  Dkt. 155.  The parties would not have needed to spend any time, let alone over a week, negotiating a joint letter had Social Tech agreed to dismiss its remaining declaratory judgment claim without prejudice as Apple had proposed in December.

### Social Tech's Inflammatory Social Media Posts About Apple and This Litigation

69.     Social Tech has posted inflammatory statements about Apple and this litigation numerous times on social media to gain exposure for itself and its app.  Some of these statements were posted on Facebook and include, for example, the following:

- **February 5, 2019:** "Hey everyone! As you may know, we are involved in litigation against Apple, who is infringing upon our registered trademark for Memoji.  Slowing iPhone sales and declining customer goodwill are not helping Apple.  We suspect foul play, and believe someone may have reported our initial Google Play account, so we had to re-launch our app.  Please re-download our app so we can continue our fight against Goliath! You won't have to pay for your in-app purchases again; they are credited in your Google Play account.  Thank you all!"

- **February 11, 2019:** "Help us in our fight against Apple, who is infringing upon our registered trademark for Memoji! Apple has made a name for itself by stealing the intellectual property of others for many years.  Download the app for free now! Also check out our amazing law firm, Pierce Bainbridge Beck Price & Hecht LLP."

True and correct copies of these and other statements from Social Tech's @memojitrademarked Facebook page are attached hereto as **Exhibit 14**.

70.     It is odd that Social Tech would accuse Apple in February 2019 of being responsible for Social Tech's app being taken down from the Google Play Store when Social Tech had learned from Google only a few weeks prior that the reason Social Tech's app had been removed was due to "multiple violations" of Google's "Developer Program Policies."  A true and correct copy of a

January 2019 email thread between Samuel Bonet (Social Tech's co-founder) and Google with the

Bates Number SocialTech_0000820 (Bonet Exhibit 248) is attached hereto as **Exhibit 15**.  Indeed,

during his deposition, Mr. Bonet admitted that his "best understanding" of why Google took Social

Tech's Memoji app down was due to "violations of a developer program policy" and that Social

Tech proceeded to get its app reinstated by opening a new developer account.  Dkt. 123-8, at 262:3–

21.  Moreover, Google's "Spam and Minimum Functionality" policy provides that Google does not

"allow apps that . . . are repetitive or low quality" and that "[a]t a minimum, apps should provide

users with a basic degree of functionality and a respectful user experience."  Mr. Bonet admitted at

his deposition that Social Tech's app "crash[ed] after its initial release" and that it sometimes

"would present the images upside down."  Dkt. 123-8, at 206:18–207:2.   It thus would make sense

that Social Tech's app was taken down because Social Tech violated Google's "Spam and Minimum

Functionality" policy.  A true and correct copy of Google's "Spam and Minimum Functionality"

policy, which was introduced during Mr. Bonet's deposition as Bonet Exhibit 249, is attached hereto

as **Exhibit 16**.

71.    Social Tech also has referred to Apple and this lawsuit on its @socialtechnologiesllc

Facebook page stating, among other things, that "Apple has a long and colored history of

'commandeering' any intellectual property they see fit, as made evidence by the cases David

mentions below, and Steve Jobs' Infamous quote: 'Picasso had a saying.  Good artists copy.  Great

artists steal.  And we have always been shameless about stealing great ideas.' Bang the gavel. #ip

#trademarkinfringement #davidvsgoliath #memoji #piercebainbridge #socialtechnologiesllc."  A

true and correct copy of Social Tech's @socialtechnologiesllc Facebook page, including this

statement, is attached hereto as **Exhibit 17**.

72.    On LinkedIn, Samuel Bonet—Social Tech's co-founder—commented on a post made

by Social Tech's counsel regarding Apple and this litigation in which Mr. Bonet states, "Luckily for

us, Goliath's Achilles' heel is David…pun intended! Wouldn't have anyone else at the helm!"  A true and correct copy of this LinkedIn post with Mr. Bonet's comment is attached hereto as **Exhibit 18**.

73.     Mr. Bonet has also "liked" posts from his counsel about this litigation that have accused Apple of being a "TRADEMARK BULLY" and referred to Apple as a "#naughtyinfringer." True and correct copies of these LinkedIn posts are attached hereto as **Exhibits 19–20**.

### Social Tech's New York Lawsuit Against Apple Related to MEMOJI

74.     In the midst of summary judgment briefing in this California action against Apple related to the MEMOJI mark, Social Tech filed yet another lawsuit accusing Apple of violating its rights in MEMOJI.  This time, Social Tech filed its lawsuit in the Southern District of New York alleging (i) false designation of origin under 15 U.S.C. § 1125, (ii) dilution under New York law, (iii) unfair competition, and (iv) violation of NY General Business Law § 349 based upon Apple's inadvertent use of an ® sign (which indicates that a mark is registered) next to the MEMOJI mark on a single, general webpage listing Apple's various trademarks (Apple's "Trademark List").  The case is captioned *Social Technologies LLC v. Apple Inc. et al*, No. 1:19-cv-09050 (S.D.N.Y. Sept. 30, 2019).  In the Complaint, Social Tech named Thomas La Perle, a Director in Apple's Legal Department who manages Apple's Trademark and Copyright Group, personally, even though Mr. La Perle's alleged conduct giving rise to the action would have occurred in California, not New York, and Mr. La Perle had no contacts with New York.  This was particularly egregious because Social Tech had already taken Mr. La Perle's deposition in this litigation, in which Mr. La Perle testified that both his home and work addresses were in California.  Social Tech's filing of the lawsuit in New York and against Mr. La Perle personally thus seemed to be a pressure tactic to encourage Apple to settle this case.  Pursuant to the New York court's individual rules, Apple wrote a detailed letter explaining that the New York action should be dismissed in its entirety, as it was meritless.

Apple also explained that it intended to move to dismiss for lack of personal jurisdiction.  After causing Apple to do this additional work, Social Tech did not even submit a response to the letter and simply withdrew the lawsuit by filing a notice of voluntary dismissal.  A copy of Apple's letter to the court in Social Tech's New York action against Apple is attached hereto as **Exhibit 21.**

75.     Although Kirkland's billing statements for the New York litigation had a different billing number and Apple is not requesting its attorneys' fees incurred in connection with that matter, Social Tech's filing of that lawsuit nevertheless reflect Social Tech's unreasonable litigation tactics in this case.

76.     Pursuant to Local Rule 54-5(a) and 54-5(b)(1), on January 27, 2019, counsel for Apple and counsel for Social Tech met and conferred for the purpose of attempting to resolve any dispute related to Apple's motion for attorneys' fees.  However, the parties were not able to reach agreement.

I declare under penalty of perjury that the foregoing is true and correct.

DATED:  February 5, 2020

Respectfully submitted,

*/s/ Dale M. Cendali*
Dale M. Cendali (S.B.N. 1969070)
dale.cendali@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800

Attorney for Defendant Apple Inc.