Diana M. Torres (S.B.N. 162284)
diana.torres@kirkland.com
Lauren J. Schweitzer (S.B.N. 301654)
lauren.schweitzer@kirkland.com
KIRKLAND & ELLIS LLP
555 South Flower Street
Los Angeles, California 90071
Telephone: (213) 680-8400

Dale M. Cendali (S.B.N. 1969070)
dale.cendali@kirkland.com
Mary Mazzello (admitted *pro hac vice*)
mary.mazzello@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800

Megan L. McKeown (admitted *pro hac vice*)
megan.mckeown@kirkland.com
KIRKLAND & ELLIS LLP
609 Main Street
Houston, Texas 77002
Telephone: (713) 836-3499

Attorneys for Defendant Apple Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SOCIAL TECHNOLOGIES LLC, a Georgia limited liability company, <br><br> Plaintiff, <br><br> vs. <br><br> APPLE INC., a California corporation, <br><br> Defendant. | ) CASE NO.: 3:18-cv-05945-VC <br> ) <br> ) **DEFENDANT APPLE INC.'S NOTICE OF** <br> ) **MOTION AND MOTION FOR** <br> ) **ATTORNEYS' FEES; MEMORANDUM OF** <br> ) **LAW IN SUPPORT THEREOF** <br> ) <br> ) Hearing: April 9, 2020 <br> ) Time: 10:00 a.m. <br> ) Courtroom: 04, 17th Floor <br> ) Judge: Hon. Vince Chhabria <br> ) <br> ) |

---

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on Thursday, April 9, 2020 at 10:00 a.m., or as soon

thereafter as the matter may be heard, in Courtroom 4, 17th Floor, of the above-captioned Court,

located at 450 Golden Gate Avenue, San Francisco, California 94102, defendant Apple Inc.

("Apple") hereby moves for an order pursuant to Federal Rule of Civil Procedure 54(d) and 15

U.S.C. § 1117(a) for the Court to award attorneys' fees to Apple due to the exceptional nature of this

case.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities

in support thereof, the Declaration of Dale M. Cendali, Esq. submitted herewith, the pleadings in this

matter, the arguments of counsel, and all other material which may properly come before the Court

at or before the hearing on this Motion.

Pursuant to Local Rule 54-5(b)(1), the undersigned certifies that counsel for Apple and

counsel for Plaintiff Social Technologies LLC ("Social Tech") met and conferred and attempted to

resolve any disputes with respect to this Motion but reached no resolution.


Dated: February 5, 2020                    KIRKLAND & ELLIS LLP


                                          */s/ Dale M. Cendali*
                                          Dale M. Cendali (S.B.N. 1969070)
                                          dale.cendali@kirkland.com
                                          KIRKLAND & ELLIS LLP
                                          601 Lexington Avenue
                                          New York, New York 10022
                                          Telephone: (212) 446-4800

                                          Attorney for Defendant Apple Inc.

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I. PRELIMINARY STATEMENT ........................................................................ 1

II. FACTUAL BACKGROUND ........................................................................... 3

    A. Social Tech Rushes to Release Its Half-Baked App to Market ................................. 3

    B. Social Tech Procures Its Trademark Registration to Sue Apple................................ 5

    C. Social Tech Acquires and Asserts Anthony's Alleged Trademark Rights ................. 6

    D. Social Tech Continues Its Objectively Unreasonable Litigation Conduct ................. 7

        1. Social Tech's Unreasonable Discovery Tactics................................................. 7

        2. Social Tech Disregards the Protective Order.................................................... 7

        3. Social Tech Misrepresents Scope of Apple's Summary Judgment Motion.......................................................................................................... 8

        4. Additional Unreasonable Conduct .................................................................. 9

III. ARGUMENT.................................................................................................. 10

    A. This Case Is Unquestionably "Exceptional," as It "Stands Out from Others" .......... 10

        1. This Case Is Exceptional and Warrants Attorneys' Fees Because Social Tech's Trademark Claims Were Groundless ....................................... 10

        2. This Case Also Is Exceptional Because Social Tech's Litigation Conduct Was Unreasonable ........................................................................... 12

    B. The Fees Apple Expended in Defending This Case Were Reasonable ...................... 14

IV. CONCLUSION............................................................................................... 15

CERTIFICATE OF SERVICE ..................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amusement Art, LLC v. Life is Beautiful, LLC*,
 768 F. App'x 683 (9th Cir. 2019) ..................................................................................10

*In re Animation Workers Antitrust Litig.*,
 No. 14-CV-4062-LHK, 2016 WL 6663005 (N.D. Cal. Nov. 11, 2016).........................15

*Apple, Inc. v. Samsung Elecs. Co.*,
 No. 5:11-CV-01846-LHK (PSG), 2014 WL 12596470 (N.D. Cal. Jan. 29, 2014) .........8

*Cairns v. Franklin Mint Co.*,
 115 F. Supp. 2d 1185 (C.D. Cal. 2000), *aff'd*, 292 F.3d 1139 (9th Cir. 2002)..............15

*City of Burlington v. Dague*,
 505 U.S. 557 (1992)......................................................................................................14

*Elem Indian Colony of Pomo Indians of the Sulphur Bank Rancheria v. Ceiba Legal, LLP*,
 230 F. Supp. 3d 1146 (N.D. Cal. 2017) ...................................................10, 12, 13, 14

*Express LLC v. Forever 21*,
 CV 09-04514 ODW (VBKx), 2010 WL 11512410 (C.D. Cal. Nov. 15, 2010) ...........11

*Gutierrez v. Wells Fargo Bank, N.A.*,
 No. C 07-05923 WHA, 2015 WL 2438274 (N.D. Cal. May 21, 2015)........................15

*Ketab Corp. v. Mesriani & Assocs., P.C.*,
 734 F. App'x 401 (9th Cir. 2018) ..........................................................................10, 14

*Ketab Corp. v. Mesriani Law Grp.*,
 CV 14-7241-RSWL-MRWx, 2016 WL 4425714 (C.D. Cal. Aug. 17, 2016) ..............14

*LifeScan Scotland, Ltd. v. Shasta Techs., LLC*,
 No. 11-CV-04494-WHO, 2013 WL 5949629 (N.D. Cal. Nov. 6, 2013) ......................13

*Masimo Corp. v. Tyco Health Care Grp., L.P.*,
 No. CV 02-4770 MRP, 2007 WL 5279897 (C.D. Cal. Nov. 5, 2007) .........................15

*Murillo v. Pac. Gas & Elec. Co.*,
 No. CIV. 2:08-1974 WBS GGH, 2010 WL 2889728 (E.D. Cal. July 21, 2010)...........15

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
 572 U.S. 545 (2014).....................................................................................................1, 10

*Regeneron Pharm., Inc. v. Merus N.V.*,
 14-cv-1650 (KBF), 2018 WL 3425013 (S.D.N.Y. June 25, 2018)...............................15

*Stan Lee Media, Inc. v. Walt Disney Co.*,
No. 12-cv-02663-WJM-KMT, 2015 WL 5210655 (D. Colo. Sept. 8, 2015) ..................................3

*Subramanian v. QAD Inc.*,
No. C 06-3050 VRW, 2008 WL 11387036 (N.D. Cal. Nov. 20, 2008) ........................................12

*SunEarth, Inc. v. Sun Earth Solar Power Co.*,
839 F.3d 1179 (9th Cir. 2016) ....................................................................................................10

*Take-Two Interactive Software, Inc. v. Perez*,
No. 1:18-cv-07658-PKC (S.D.N.Y. Feb. 5, 2019) ......................................................................15

**Statutes**

15 U.S.C. § 1051 ..........................................................................................................................5

15 U.S.C. § 1117 ..................................................................................................................10, 14

15 U.S.C. § 1127 ............................................................................................................5, 10, 11

**Rules**

Fed. R. Civ. P. 37 ........................................................................................................................12

Fed. R. Civ. P. 69 ..........................................................................................................................3

Local Rule 54-5(b) ......................................................................................................................14

I.      PRELIMINARY STATEMENT

If ever there were a case that should be considered exceptional, this is it.  Under the Lanham Act, an exceptional case warranting an award of attorneys' fees to the prevailing party is "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014). This case stands out from others on *both* its lack of substantive strength and the manner in which Plaintiff Social Technologies LLC ("Social Tech") litigated it.

*First*, this case was exceptional because it was baseless from the outset—and Social Tech knew it but chose to litigate in the hopes of extorting a huge payout.  In June of 2018—after Apple announced its new Memoji feature—Social Tech concocted a plan to create the appearance of bona fide trademark use for the express purpose of using the legal system to con Apple into paying Social Tech millions of dollars.  To do so, it misrepresented its rights to the United States Patent & Trademark Office (the "PTO") to obtain a registration and then, based on that registration, filed meritless trademark claims, which it pursued through summary judgment, despite being given every opportunity to drop its case.

Indeed, Social Tech could have, and should have, dropped its case in November 2018 when the Court denied Social Tech's preliminary injunction motion, calling Social Tech's claims "shaky" and noting that, "it [was] unclear that Social Tech had used the mark 'in commerce' as necessary to secure a valid trademark registration."  Dkt. 43, at 2.  Despite the Court's clear warning that it was "questionable—at best—whether Social Tech [would] succeed on the merits," Social Tech changed counsel and continued to litigate.  *Id.*; Dkt. 51.

Social Tech then continued to pursue its claims even after Apple discovered damning evidence confirming that Social Tech had not, in fact, used the mark in commerce in a bona fide way as required to obtain a registration.  As its own emails showed, Social Tech had used the MEMOJI Design Mark in connection with the release of its Memoji app solely for the purpose of suing Apple to "get PAID" and buy "Lamborghini[s]."  Dkt. 123-6, at '796; Dkt. 125-2, at '752.  As the Court held, Social Tech's correspondence confirmed "the absence of a genuine commercial character to

Social Tech's use of the mark." Dkt. 142, at 4 (discussing emails).[1]

As it realized its original deceptive theory was likely to be exposed and thus fail, Social Tech began to pursue a new but equally groundless theory of infringement. Immediately after opposing the motion of third party Christopher Anthony to intervene in this litigation on the basis that Anthony had "no rights" to assert related to MEMOJI, Dkt. 69, Social Tech entered an agreement with Anthony to acquire and assert Anthony's (nonexistent) rights against Apple and share the windfall from any recovery. Dkt. 125-41. Social Tech's disingenuous about-face on this issue as the increasingly obvious flaws in its original claims came to light was frivolous and resulted in substantial needless discovery and motion practice.

*Second*, this case meets the definition of "exceptional" because of the cavalier, objectively unreasonable, and costly way in which Social Tech litigated it. For example:

- Social Tech sought broad and irrelevant but highly sensitive discovery, including seeking personal identifying consumer information, forcing Apple to oppose Social Tech's motion to compel, which was denied in its entirety. Dkt. 106, at 3–5.

- Social Tech tried to rescind its agreement to bifurcate, Dkt. 48, at 7, in an apparent attempt to leverage the threat of obtaining Apple's financial information. Cendali Decl. ¶ 51.

- Social Tech initially failed to produce download data for its own app, forcing Apple to seek that information via a third-party subpoena to Google. Cendali Decl. ¶¶ 52–53; Dkt. 123-20.

- Social Tech produced but then clawed back its most damaging emails, only to produce them again right before the cut-off. Cendali Decl. ¶¶ 56–58.

- Social Tech disregarded the Protective Order's requirement to allow Apple the opportunity to object to its experts before providing them with Apple confidential information, apparently because Social Tech waited too long to retain those experts. Cendali Decl. ¶¶ 59–62.

- Social Tech hired an expert to provide opinions related to tacking (causing Apple to hire its own expert to rebut those opinions), only for Social Tech to concede the issue when faced with Apple's tacking arguments on summary judgment. Cendali Decl. ¶¶ 63–64.

- Social Tech falsely represented that Apple had not moved for summary judgment on Social Tech's common law claims, requiring Apple to correct the record. Dkt. 139; Cendali Decl. Ex. 8, at 21:13–23:12; Dkt. 141.

- Social Tech negotiated a proposed joint letter with Apple to dismiss its declaratory judgment claim and then filed it unilaterally without Apple's edits. Cendali Decl. ¶¶ 66–68.

Lurking in the background of Social Tech's baseless claims and unreasonable litigation

---

[1] At the summary judgment hearing, the Court suggested that Social Tech was "in danger of getting sanctioned" for litigating in the face of these documents. Cendali Decl. Ex. 8, at 14:2–7.

conduct is the fact that Social Tech (and its counsel) has used this litigation for publicity.  In the majority of its social media posts since filing its complaint, Social Tech trumpeted itself as a wronged small company taking on the "infringer" "Goliath" (*i.e.*, Apple), seeking publicity and soliciting users to download its app, ostensibly as a means of helping out "the little guy."  Cendali Decl. Exs. 14, 17–20.  In many respects, these efforts suggest that at least part of the motivation for continuing the lawsuit was to be able to continue these marketing efforts, regardless of the merits.  That is not a proper, let alone reasonable, basis for litigation.  In short, this case was far from an ordinary one and, in fact, was quite "exceptional," warranting an attorneys' fees award.

Moreover, Social Tech should not be heard to complain that Apple's fees are excessive, or that it cannot afford to pay them.  Apple should be entitled to the full amount of its requested fees and will take discovery in aid of execution pursuant to Federal Rule of Civil Procedure 69 to identify whether there are other sources available to satisfy a judgment (including litigation funders).  *Stan Lee Media, Inc. v. Walt Disney Co.*, No. 12-cv-02663-WJM-KMT, 2015 WL 5210655, at *2 (D. Colo. Sept. 8, 2015) ("When a separate person or entity funds litigation costs, . . . the funding person or entity . . . can be deemed a party for purposes of paying . . . attorneys' fees.").

## II.      FACTUAL BACKGROUND

### A.      Social Tech Rushes to Release Its Half-Baked App to Market

This is the rare trademark case where the plaintiff acknowledged that it "didn't have any common law" trademark rights before the defendant adopted the mark at issue.  Dkt. 123-8, at 175:22–176:8.  On June 4, 2018, Apple announced a feature in Messages called Memoji that allows users to create animated emojis that look like themselves.  Dkt. 125-6, at 5 No. 1 & 10–11 No. 5; Dkt. 125-34, at '463.  At that time, Social Tech had no trademark rights because it had not used the mark in commerce and had done nothing whatsoever to develop the app for which it previously intended to use the mark.  Dkt. 142, at 2 (citing Dkt. 123-8, at 134:8–20); Dkt. 123-8, at 175:5–9; Dkt. 125-2, at '754.  Social Tech also had developed no marketing or advertising in the time since it had first thought about launching an app, and in fact had shifted its focus to other projects.  Dkt. 123-8, at 134:3–15, 136:5–9, 201:25–202:7, 276:7–15; Dkt. 125-28, at 142:5–10.

But then Social Tech saw an opportunity to profit through an extortionist lawsuit.  Following

Apple's announcement, Social Tech engaged in a plan to resurrect and appear to perfect a dormant 2016 trademark application for a limited design mark consisting of a highly stylized logo incorporating the word MEMOJI:  (the "Memoji Design Mark") for purposes of extracting a payout from Apple.  Dkt. 125-3, at '165–'166.  Specifically, just days after Apple's announcement, on June 7, 2018, Social Tech's founder emailed its newly hired Memoji app developers saying "Well, it appears our collective moment has finally arrived! As I'm sure you guys have discussed . . . this is life changing, you gentlemen included. . . Time to get paid, gentlemen."  Dkt. 125-2, at '755. In exchange for developing its Memoji app, Social Tech agreed to pay its app developer "5% of the gross settlement/payment from Apple[]" after attorneys' fees.  Dkt. 123-18, at '545.  Social Tech's developer responded indicating that he would "start the work" on June 8, 2018.  Dkt. 125-2 at '754.

Once Social Tech's app was in progress, on June 12, 2018, Social Tech's app founder emailed that "as long as [Social Tech] [could] get close initially," Social Tech could "start to test [the app] and put [it] in commerce."  *Id.*  On June 18, 2018, Social Tech's founder wrote that Social Tech was "lining up all of [its] information, in preparation for a nice lawsuit against Apple, Inc! We are looking REALLY good.  Get your Lamborghini picked out!"  *Id.* at '752.  Social Tech proceeded to launch its app on the Google Play Store on June 28, 2018—24 days *after* Apple began use. Dkt. 123-8, at 201:25–202:13; Dkt. 125-34, at '461, '463.  As Social Tech's founder admitted, Social Tech "had to rush" to "release a basic but functional version of its app" to "reserve Social Tech's rights in the Memoji mark."  Dkt. 123-8, at 174:24–175:21.  Once Social Tech's app was launched, on July 7, 2018, Social Tech's founder discussed timing the releases of updates of the app stating "It's better if we split up the updates, so it looks like we have more of them for the lawsuit. To show we are currently trying to build as we go."  Dkt. 123-6, at '797.  One week later, on July 14, 2018, Social Tech's founder observed that the "app [was] crashing a lot" and directed his app developer to "split" the fixes "up in to individual updates, so it appears like we are doing more work."  *Id.* at '796.  Social Tech's founder further stated that "The lawsuit is coming together nicely. We should be done with the paperwork and forms in the next several days, then we are just waiting for the trademark registration to file the lawsuit and get PAID."  *Id.*

Social Tech then informed the PTO that it had made "bona fide" use of the mark in

commerce (*i.e.*, that such was use was "not made merely to reserve a right in a mark") and that "no other person[]" had the right to use the mark.  15 U.S.C. §§ 1127, 1051(b)(3)(D); Dkt. 125-3, at '173–74, '230–'231.  It made this representation despite the fact that Social Tech's founder, Samuel Bonet, admitted that he was aware that Lucky Bunny—the earliest rights holder—was using the mark, as he was aware of Lucky Bunny's trademark applications and had twice downloaded and opened Lucky Bunny's Memoji app.  Dkt. 123-8, at 94:12–95:13, 98:1–17, 108:6–11, 114:7–11, 213:6–216:20.  Social Tech also was aware at least as early as June 14, 2018 that Apple had acquired the trademark rights of Lucky Bunny—which predated Social Tech's intent-to-use trademark application—and thus that Apple had priority.  Dkt. 125-32.

> ### B.      Social Tech Procures Its Trademark Registration to Sue Apple

Social Tech secured its trademark registration for the MEMOJI Design Mark on September 18, 2018, Dkt. 125-3, at '165, sued Apple, and moved for a preliminary injunction seeking to enjoin Apple from using the MEMOJI mark in connection with the Memoji software feature, which Apple had released for certain iPhone devices and that was due to be shipped pre-installed on others.  Dkts. 1, 4, 9; Dkt. 33 (Knight Decl.), at ¶¶ 21–23.  After the Court denied Social Tech's preliminary injunction motion, Social Tech's (now previous) counsel sought to engage Apple in settlement discussions and indicated that Social Tech wanted to settle.  Cendali Decl. ¶ 50.

Instead of settling, Social Tech hired new counsel and proceeded with litigation.  Dkt. 51.  Although Social Tech had already agreed to bifurcate liability and damages, Dkt. 48, at 7, Social Tech then sought to avoid bifurcation, presumably to coerce Apple to settle or risk disclosing the financial information associated with its new iPhone and iOS releases.  Cendali Decl. ¶ 51.

During discovery, Social Tech produced the email chains from Social Tech's founder discussed above, Cendali Decl. ¶ 56, which clearly showed that "Social Tech developed and posted its app with a singular focus on securing registration to sue Apple, without any good-faith regard to the commercial viability of its product."  Dkt. 142, at 2.  At the summary judgment hearing, the Court asked Social Tech's counsel why it did not advise its client to "drop[] [the] case" upon learning of those email chains, stating "I would think a lot of lawyers would go to their client and say we're dropping our case, and if we move forward with this case, . . . we're in danger of getting

sanctioned, you're in danger of getting sanctioned[.]" Cendali Decl. Ex. 8, at 14:2–7. Social Tech's counsel admitted he had been aware of those email chains since "[e]arly on in discovery when [Social Tech] started producing documents" (*i.e.*, as early February 20, 2019 when Social Tech first produced documents). *Id.* ¶ 55 & Ex. 8, at 13:17–24.[2] Social Tech itself had been aware of those documents since June and July of 2018, before filing its complaint, because its principal had written them. Dkts. 123-6, 125-2. That these documents came to light further validated the Court's order denying Social Tech's preliminary injunction motion, which held that Social Tech's claims were "shaky" and warned that "[a]bsent any evidence regarding when or how many times [Social Tech's] app had been sold when Social Tech filed its statement [of use], it is unclear that Social Tech had used the mark 'in commerce' as necessary to secure a valid trademark registration." Dkt. 43, at 2.

### C.    Social Tech Acquires and Asserts Anthony's Alleged Trademark Rights

Meanwhile, at the end of May of 2019, Social Tech acquired the alleged trademark rights of Christopher Anthony, in exchange for a percentage of the gross recovery from this litigation, Dkt. 125-41, at '870–71, and asserted them against Apple. *Id.*; Dkt. 139. Social Tech acquired those rights ***after*** opposing Anthony's motion to intervene and arguing that Anthony had no rights, stating:

- Anthony does not allege and cannot establish any market penetration. . . . Dkt. 69, at 6–7.

- Anthony also fails to establish continuous use of any alleged mark. . . . Anthony lost any priority he allegedly had in the Memoji mark, and thus any enforceable claim against the Parties, through his lack of continuous use. . . . *Id.* at 7.

- Anthony has no trademark rights related to MEMOJI[.]  *Id.* at 8.

Social Tech's founder also admitted under oath that "Anthony held no rights of value," Dkt. 70 (Bonet Decl.), at ¶¶ 2–3, and that Anthony's app was put back up on the App Store only after Social Tech's developer contacted Anthony. Dkt. 123-8, at 246:18–23. By acquiring these rights and asserting them against Apple, however, Social Tech once again caused Apple to incur significant expense, including by deposing Anthony, investigating his app's history and downloads, and

---

[2] Social Tech initially produced those email chains to Apple on May 15, 2019, but then later clawed back the production with those emails and provided a "replacement production" without them. Cendali Decl. ¶¶ 56–57 & Ex. 9. It was not until the deadline for the parties to substantially complete their document productions, Dkt. 82 at 3, and only four days before the deposition of Social Tech's first fact witness—that Social Tech re-produced the email chains. Cendali Decl. ¶ 58.

addressing the issue on summary judgment.  Cendali Decl. ¶ 47; Dkt. 124, at 4, 9–10 n.4.

**D.      Social Tech Continues Its Objectively Unreasonable Litigation Conduct**

**1.      Social Tech's Unreasonable Discovery Tactics**

During discovery, Social Tech initially failed to produce download numbers for its app (as its app had been removed from the Google Play Store due to its own violations), forcing Apple to seek that information through a subpoena to Google.  Cendali Decl. ¶ 52 & Ex. 6, at 5, Ex. 7, at 8–9; Dkt. 123-20.  After the close of fact discovery, Social Tech attempted to gain leverage by seeking irrelevant and extraordinarily sensitive information from Apple in discovery.  Specifically, Social Tech moved to compel Apple to produce information regarding [1] the names, email addresses, and addresses of the people who downloaded the app created by Lucky Bunny, from whom Apple had acquired the MEMOJI trademark rights, [2] all information from the internal Apple App Store Review Guideline "Wiki," regardless of its subject matter, [3] information regarding Apple's efforts to test the functionality of apps on the App Store, [4] information about surveys Apple produced regarding Apple's use of the MEMOJI mark, including the "demographics of the participants of the survey, the dates the surveys were taken, native versions of the survey results, and which questionnaires correspond with which results," and [5] information regarding the database in which Apple stores information about App Store apps.  *See* Dkt. 93, at 2–4; Dkt. 106, at 3–5; Dkt. 96-10. Judge Kim denied Social Tech's motion to compel in its entirety, finding that four out of the five categories of documents Social Tech sought were "not relevant" and that the remaining category, which would involve "personally identifying information," was "not necessary."  Dkt. 106, at 3–5.

During expert discovery, Social Tech acted unreasonably in hiring purported expert Tyler Droll to provide opinions relating to tacking—which Apple then needed to hire its own expert to rebut—only for Social Tech to concede the issue when faced with Apple's tacking arguments on summary judgment.  Cendali Decl. ¶¶ 63–64; Dkt. 124, at 17–21; Dkt. 132.

**2.      Social Tech Disregards the Protective Order**

Social Tech also disregarded the parties' Protective Order, which requires a party seeking to disclose designated information to its expert to identify to the designating party the proposed expert and the categories of material sought to be disclosed to that expert, along with certain other

information about the expert, Dkt. 74, at 12–13 § 7.4(a), and provide a 14-day period to object to the request.  *Id.* at 14 § 7.4(b).[3]  Social Tech did not disclose its experts to Apple in accordance with this procedure prior to providing its experts with Apple-designated confidential and highly confidential information.  Cendali Decl. Ex. 11, at 3.  It appears Social Tech did so knowingly because it ran out of time to allow Apple to exercise its right to object and also meet the opening expert report deadline.  *Id.* ¶ 61 & Ex. 10.  The improper disclosure of Apple's confidential information is a serious issue to Apple as it risks exploitation by competitors.[4]  Counsel for the parties thus met and conferred, began preparing a joint letter brief to Judge Kim regarding Apple's motion for contempt of a court order, and then negotiated a joint stipulation.  *Id.* ¶ 62 & Ex. 11.

### 3.  Social Tech Misrepresents Scope of Apple's Summary Judgment Motion

On December 30, 2019, Apple moved for summary judgment on all of Social Tech's claims (except its declaratory relief claim), including its common law claim, whether or not based on Social Tech's acquisition of Anthony's alleged rights.  Dkt. 124, at 1 n.1.  Social Tech's opposition to Apple's motion failed to mention Anthony's alleged rights at all.  Dkt. 132.  Social Tech argued at the summary judgment hearing that Apple had not properly raised the issue.  Cendali Decl. Ex. 8, at 21:13–23:12.  Following the hearing, Social Tech filed an untimely and improper supplemental letter with the Court falsely representing that Apple did not "move for summary judgment on Plaintiff's common law rights based on Christopher Anthony's prior use of Memoji" and that Apple "only asserted facts related to Christopher Anthony's trademark rights in a footnote."  Dkt. 139, at 1.  Notwithstanding Social Tech's prior contrary position that Mr. Anthony had no rights, Social Tech further argued that its "common law priority of use [was] based on Christopher Anthony's trademark rights."  *Id.*  Apple responded with its own letter explaining that Apple moved on Social Tech's common law claims *in toto* and identifying the places in Apple's summary judgment motion where Apple specifically attacked Mr. Anthony's alleged rights.  Dkt. 141, at 1–2.[5]  The Court granted

---

[3] If no such objection is made, then the party may disclose the designated material to its expert.  *Id.*
[4] Indeed, courts have granted Apple's sanctions motion where Apple's confidential information was disclosed in violation of the protective order.  *See Apple, Inc. v. Samsung Elecs. Co.*, No. 5:11-CV-01846-LHK (PSG), 2014 WL 12596470, at *9 (N.D. Cal. Jan. 29, 2014).
[5] It is odd that Social Tech argued in summary judgment briefing that Lucky Bunny's Memoji app—which was continuously available on the App Store and had over 92,000 downloads between 2014 and 2018 (Dkt. 125-12, at 10)—had *no* common law rights, Dkt. 132, at 9–11, while simultaneously

Apple's motion for summary judgment on December 17, 2019.  *See* Dkt. 142.

### 4.    Additional Unreasonable Conduct

Even after summary judgment, Social Tech's unreasonable litigation conduct continued.

Specifically, following the Court's summary judgment order, Apple proposed that the parties could

stipulate to dismiss both Apple's remaining infringement counterclaims and Social Tech's remaining

declaratory judgment claim without prejudice.  Cendali Decl. ¶ 66.  Social Tech did not agree.  *Id.*

Apple thus filed a request to dismiss its counterclaims without prejudice.  Dkt. 147.  The parties then

met and conferred and exchanged multiple drafts of a joint letter in accordance with the Court's

December 27, 2019 Order.  On the day the joint letter was due, Apple followed up with Social Tech

to confirm the letter would be filed.  In response, Social Tech informed Apple for the first time that

it did not believe a joint letter was necessary because Social Tech did not intend to press its claim for

a declaration of non-infringement.  Cendali Decl. Ex. 13.  Apple filed a letter informing the Court

that it understood Social Tech did not intend to press its remaining claim.  Dkt. 152.  Social Tech

proceeded to file a letter virtually identical to the joint letter the parties had been preparing but

without Apple's edits; its claim was thus found moot.  Cendali Decl. ¶ 67; Dkts. 153, 155.

Throughout the litigation, Social Tech (and its counsel) also used the lawsuit to obtain

publicity and sympathy on social media.  Examples of Social Tech's (false) statements include:

- **February 5, 2019**: "Hey everyone!  As you may know, we are involved in litigation against Apple, who is infringing upon our registered trademark for Memoji.  Slowing iPhone sales and declining customer goodwill are not helping Apple.  We suspect foul play, and believe someone may have reported our initial Google Play account, so we had to re-launch our app.  Please re-download our app so we can continue our fight against Goliath!  You won't have to pay for your in-app purchases again; they are credited in your Google Play account.  Thank you all!"

- **February 11, 2019**: "Help us in our fight against Apple, who is infringing upon our registered trademark for Memoji!  Apple has made a name for itself by stealing the intellectual property of others for many years.  Download the app for free now!  Also check out our amazing law firm, Pierce Bainbridge Beck Price & Hecht LLP."

Cendali Decl. Ex. 14, at 4–5; *see also id.* Exs. 18–20 ("likes" or comments from Bonet).

---

arguing Anthony's app—which was unavailable for download between July 2015 and November 2018 and had less than 500 downloads (Dkt. 125-37, at 3; Dkt. 125-38 at 142:15–143:9; Dkt. 123-22, at '1335–36)—*did* have common law rights.  Cendali Decl. Ex. 8, at 23:5–12; Dkt. 115, at 3–4, 10 n.2.

## III.   ARGUMENT

### A.   This Case Is Unquestionably "Exceptional," as It "Stands Out from Others"

The Lanham Act permits an award of reasonable attorneys' fees to the prevailing party in "exceptional cases." 15 U.S.C. § 1117. An "'exceptional' case … is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness*, 572 U.S. at 545; *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1181 (9th Cir. 2016) (applying this standard in Lanham Act case); *Elem Indian Colony of Pomo Indians of the Sulphur Bank Rancheria v. Ceiba Legal, LLP*, 230 F. Supp. 3d 1146, 1150 (N.D. Cal. 2017) (same). Courts consider "the totality of the circumstances" using a "preponderance of the evidence standard" to determine whether the case is exceptional. *See SunEarth, Inc.*, 839 F.3d at 1181. Here, an award of attorneys' fees to Apple is warranted because (i) Social Tech's infringement claims were not just extraordinarily weak, they were groundless and (ii) Social Tech litigated this case unreasonably.

### 1.   This Case Is Exceptional and Warrants Attorneys' Fees Because Social Tech's Trademark Claims Were Groundless

When a plaintiff's trademark claims are found to be "extraordinarily weak," the Ninth Circuit has held that it is appropriate to find the case "exceptional" and to award fees to the defendant. *Amusement Art, LLC v. Life is Beautiful, LLC*, 768 F. App'x 683, 687 (9th Cir. 2019); *see also Ketab Corp. v. Mesriani & Assocs., P.C.*, 734 F. App'x 401, 411 (9th Cir. 2018) (fees appropriate where plaintiff "pursued groundless, frivolous, and unreasonable arguments" regarding its trademark claims). Here, Social Tech's claims were not only "extraordinarily weak," they were groundless.

*First*, Social Tech's claims were groundless because its use of the MEMOJI mark to procure its trademark registration was not bona fide. 15 U.S.C. § 1127. As the Court warned in denying Social Tech's motion for a preliminary injunction on its "shaky" claim, "[a]bsent any evidence regarding when or how many times [Social Tech's] app had been sold when Social Tech filed its statement [of use], it [was] unclear that Social Tech had used the mark 'in commerce' as necessary to secure a valid trademark registration." Dkt. 43, at 2. Although Social Tech knew in light of its

own activities at that time that it would be unable to show bona fide use of the mark and therefore unable to defend its registration as a valid one, Social Tech nevertheless continued to litigate.

There can be no question that Social Tech knew that it procured its registration without the requisite bona fide use. As set forth above, Social Tech's emails confirm that Social Tech had no concern for the commercial viability of its product but was instead concerned only with releasing an app on which it could slap the "Memoji" name to bring this lawsuit. Indeed, these emails confirm that Social Tech "rush[ed]" to release its "half-baked" app "with a singular focus on securing the registration to sue Apple," and the evidence of Social Tech's "bad-faith use" of the mark was "overwhelming" and thus "no reasonable jury could find that Social Tech used the MEMOJI mark 'in commerce' as the Ninth Circuit has applied that term." Dkt. 142, at 2–4 (finding Social Tech "did not engage in bona fide use of the mark in commerce"); 15 U.S.C. § 1127. Social Tech's decision to bring this lawsuit and continue litigating despite knowing it lacked any bona fide use was "objectively groundless, unreasonable, and pursued in bad faith," justifying fees. *See Express LLC v. Forever 21*, CV 09-04514 ODW (VBKx), 2010 WL 11512410, at *4 (C.D. Cal. Nov. 15, 2010).

***Second***, Social Tech's decision also to pursue a claim of infringement based on common law rights was equally groundless because Social Tech had ***no common law rights***. Social Tech's founder admitted that he believed Social Tech needed a registration to sue Apple because Social Tech "didn't have any common law" trademark rights that preceded Apple's own usage (independent of the rights that Apple acquired from Lucky Bunny). *See* Dkt. 123-8, at 175:22–176:8. It thus was frivolous for Social Tech even to include a common law claim in its complaint.

It was equally frivolous for Social Tech later to pursue its common law claim based on rights it purportedly acquired from Anthony, as Social Tech was well aware that Anthony also had no rights. Indeed, Social Tech and its founder had already submitted an opposition brief and declaration, respectively, outlining why Anthony had no rights. Dkt. 69, at 6–8; Dkt. 70 (Bonet Decl.), at ¶¶ 2–3. And, the Court had already found that Anthony failed to allege "'legally sufficient market penetration'—or, indeed, any market penetration—as necessary to assert common law trademark rights." Dkt. 75. Social Tech knew, as the Court found, that Anthony's app had been "removed from the App[] Store in 2015, four years before he assigned his trademark rights to Social

Tech," thus "refut[ing] the common-law element of continuous use of the mark."  Dkt. 142, at 5.[6]
Social Tech's decision, in the face of the increasingly obvious flaws in its original claims, to base its
common law claims on the very "rights" from Anthony it had already admitted did not exist was
objectively frivolous, and resulted in needless discovery.  Cendali Decl. ¶ 47.

In sum, Social Tech's trademark claims were not only exceptionally weak, they were
groundless (which Social Tech itself knew), making this case "stand out" from others such that a fee
award is appropriate.  *See, e.g.*, *Elem Indian Colony*, 230 F. Supp. 3d at 1151 (Lanham Act case
"stands out from others due to plaintiff's exceptionally meritless claims").

## 2. This Case Also Is Exceptional Because Social Tech's Litigation Conduct Was Unreasonable

Courts in Lanham Act cases award attorneys' fees not only where claims are exceptionally
weak but where a party litigates in an "unreasonable manner."  *See Elem Indian Colony*, 230 F.
Supp. 3d at 1150.  Here, there are several examples where Social Tech litigated unreasonably.

*First*, at the case management conference, Social Tech argued to the Court that bifurcation of
the case was not warranted, despite having already filed a joint case management statement agreeing
that bifurcation was appropriate.  Cendali Decl. ¶ 51; Dkt. 48, at 7; *see supra* 5.

*Second*, after the close of fact discovery, Social Tech moved to compel five (broad and
irrelevant) categories of documents—none of which had anything to do with whether or not Social
Tech had valid trademark rights.  *See supra* 7.  Judge Kim found that the documents Social Tech
sought were either "not relevant" or "not necessary."  Dkt. 106, at 3–5.  They were, however, highly
sensitive documents by nature, and thus the potential of having to produce them was designed to
place pressure on Apple to settle.  This alone justifies a fee award.  *See, e.g.*, *Subramanian v. QAD
Inc.*, No. C 06-3050 VRW, 2008 WL 11387036, at *2 (N.D. Cal. Nov. 20, 2008) (fees appropriate
pursuant to Rule 37 where a motion to compel is not "substantially justified").

*Third*, Social Tech initially failed to produce download numbers *for its own app*, forcing
Apple to seek that information via a third-party subpoena to Google.  *See supra* 7.

*Fourth*, Social Tech blatantly disregarded the parties' Protective Order by providing its

---

[6] Indeed, Anthony's app was put back up on the App Store only after Social Tech's developer
contacted Anthony.  Dkt. 123-8, at 246:18–23.

experts Apple-designated documents without first disclosing its expert to Apple and allowing Apple time to object, as the Protective Order required. *See supra* 7; Cendali Decl. Ex. 11. Social Tech apparently did so because it was too late to comply with the Protective Order and still meet the expert report deadline. Cendali Decl. ¶ 61. Social Tech's disregard of the Protective Order was inexcusable and further justifies fees. *See, e.g.*, *LifeScan Scotland, Ltd. v. Shasta Techs., LLC*, No. 11-CV-04494-WHO, 2013 WL 5949629, at *7 (N.D. Cal. Nov. 6, 2013) (ordering payment of attorneys' fees for violation of Protective Order pursuant to Rule 37).

**Fifth**, Social Tech hired an expert that provided opinions related to tacking, for which Apple then needed to rebut with its own expert. Cendali Decl. ¶ 63 & Ex. 12. Social Tech then moved for summary judgment on the issue, Dkt. 115, at 18–21, but did not respond in its reply brief to the tacking arguments made in Apple's opposition, Dkt. 124, at 17–21, thus conceding that its tacking argument failed. Social Tech's decision to pursue a tacking argument that it later did not defend needlessly ran up Apple's fees during expert discovery and summary judgment. Cendali Decl. ¶ 64.

**Sixth**, following summary judgment argument, Social Tech urged the Court to allow it to proceed to trial on its common law infringement claim by falsely claiming that Apple did not "move for summary judgment on Plaintiff's common law rights based on Anthony's prior use of Memoji" and that Apple "only asserted facts related to Anthony's trademark rights in a footnote." Dkt. 139, at 1. Apple thus spent time responding and filing its own letter to correct the false assertion. Dkt. 141; *see also* Dkt. 142, at 5 ("*[c]ontrary to Social Tech's representations*, . . . Apple made plain that it moved for summary judgment on each of Social Tech's infringement claims. Nor did Apple relegate its arguments to a lone footnote."). Such blatant "misrepresentations . . . to the Court" also make this case "exceptional." *See Elem Indian Colony*, 230 F. Supp. 3d at 1150–51.

**Seventh**, after summary judgment, Social Tech's unreasonable litigation conduct continued as counsel for Apple and Social Tech spent time exchanging drafts of a joint letter regarding Social Tech's remaining declaratory judgment claim, which it had refused to dismiss. On the day the joint letter was due, Social Tech informed Apple (only after Apple asked about the timing of filing) that no such letter was necessary, as it had decided *not* to pursue its claim, and then filed the same letter the parties had been negotiating, but without Apple's edits. *See supra* 9; Cendali Decl. ¶ 67. The

parties would not have needed to spend any time, let alone over a week, negotiating a joint letter had Social Tech agreed to dismiss its remaining declaratory judgment claim without prejudice as Apple had proposed.  Cendali Decl. ¶¶ 66–68 & Ex. 13.

*Finally*, Social Tech has been touting this lawsuit on social media to market itself and its app, regardless of whether its claims against Apple have any merit (which they do not).  For example, after Social Tech learned from Google that its app was taken down from the Google Play Store due to its own violation of Google's developer policies,[7] Cendali Decl. Ex. 15, Social Tech falsely accused Apple of being involved in alleged "foul play" and encouraged users to "re-download [its] app" so that Social Tech could "continue [its] fight against" Apple, which Social Tech referred to as "Goliath."  *See* Cendali Decl. Ex. 14, at 5.  Social Tech also wrote "Help us in our fight against Apple, who is infringing upon our registered trademark . . . Download the app for free now!"  *Id.* at 4.  Social Tech's apparent motivation to continue its lawsuit in order to promote its business and its app should be deterred and thus further justifies attorneys' fees.  *See, e.g.*, *Ketab Corp.*, 734 F. App'x at 409 ("motivation" and "deterrence" factors appropriate to consider).

In short, this is precisely the type of "exceptional" case that the Lanham Act contemplates is appropriate for fee shifting.  17 U.S.C. § 1117(a); *Elem Indian Colony*, 230 F. Supp. 3d at 1150.

**B.      The Fees Apple Expended in Defending This Case Were Reasonable**

When determining "reasonableness" of the requested attorneys' fee, courts start with the "lodestar" method, multiplying the number of hours reasonably expended on the litigation by a reasonably hourly rate.  *See City of Burlington v. Dague*, 505 U.S. 557, 559 (1992).  "The reasonable hourly rate corresponds to the prevailing market rate in the relevant community, considering the experience, skill, and reputation of the attorney in question."  *Ketab Corp. v. Mesriani Law Grp.*, CV 14-7241-RSWL-MRWx, 2016 WL 4425714, at *5 (C.D. Cal. Aug. 17, 2016).

Here, Apple's request for attorneys' fees is based on the reasonable time billed and charged at the reasonable hourly rates of Kirkland's attorneys and paralegals.  Pursuant to Local Rule 54-5(b), Apple has supported its claim for attorneys' fees by submitting an attorney declaration with a

---

[7] Social Tech most likely violated Google's "Spam and Minimum Functionality" policy, as Social Tech's app "crash[ed] after its initial release" and would "present . . . images upside down." Dkt. 123-8, at 206:18–207:2; Cendali Decl. ¶ 70 & Ex. 16.

summary of the time spent by each person, a statement describing the manner in which time records were maintained, each individual's billing rate, and a description of relevant qualifications and experience.  Cendali Decl. ¶¶ 8–43 & Ex. 2.  Moreover, courts have held that Apple's law firm, Kirkland & Ellis LLP, has a "reasonable" partner and associate billing rate and that the number of hours it spends on litigation is reasonable.  *Regeneron Pharm., Inc. v. Merus N.V.*, 14-cv-1650 (KBF), 2018 WL 3425013, at *4, 6 (S.D.N.Y. June 25, 2018) (finding that the "hours spent and the rates charged by Kirkland were both reasonable"; granting defendant's motion for attorneys' fees); *see also Take-Two Interactive Software, Inc. v. Perez*, No. 1:18-cv-07658-PKC (S.D.N.Y. Feb. 5, 2019) (Dkt. 29) (awarding Kirkland's attorneys' fees to Take-Two).  Rates that are comparable to Kirkland's also have been found reasonable in this District and by other California district courts.  *See In re Animation Workers Antitrust Litig.*, No. 14-CV-4062-LHK, 2016 WL 6663005, at *6 (N.D. Cal. Nov. 11, 2016) (rates between $845 and $1,200 found "fair and reasonable").[8]  Various billing reports show that Kirkland's billing rates are comparable to its peer law firms for similar services.  Cendali Decl. Exs. 3–4.  Moreover, that Apple is "willing to pay" Kirkland's hourly rates "is a strong indication" that Kirkland's rates are "reasonable . . . in this market."  *Murillo v. Pac. Gas & Elec. Co.*, No. CIV. 2:08-1974 WBS GGH, 2010 WL 2889728, at *11 (E.D. Cal. July 21, 2010).

Finally, the amount Apple has spent litigating this case through summary judgment—and consequently, the collective hours spent by Kirkland's timekeepers—is reasonable.  Cendali Decl. ¶ 47; *c.f. Cairns v. Franklin Mint Co.*, 115 F. Supp. 2d 1185 (C.D. Cal. 2000) (awarding $2.3M where 45 timekeepers billed 10,900 hours), *aff'd*, 292 F.3d 1139 (9th Cir. 2002).  This is particularly true as Kirkland took and defended, collectively, 14 depositions and filed and opposed numerous motions.  Cendali Decl. ¶ 47.  Moreover, Apple seeks only a percentage of its actual fees.  *Id.* ¶¶ 7, 48.  Thus, Apple's attorneys' fees are reasonable, and it respectfully requests reimbursement.

## IV.   CONCLUSION

For the foregoing reasons, Apple's Motion should be granted.

---

[8] *See also Gutierrez v. Wells Fargo Bank, N.A.*, No. C 07-05923 WHA, 2015 WL 2438274, at *5 (N.D. Cal. May 21, 2015) ($975 rate found reasonable); *Masimo Corp. v. Tyco Health Care Grp., L.P.*, No. CV 02-4770 MRP (AJWx), 2007 WL 5279897, at *7 (C.D. Cal. Nov. 5, 2007) ($1,100 rate found reasonable).

Dated: February 5, 2020                    Respectfully submitted,

                                           KIRKLAND & ELLIS LLP


                                           */s/ Dale M. Cendali*
                                           Dale M. Cendali (S.B.N. 1969070)
                                           dale.cendali@kirkland.com
                                           KIRKLAND & ELLIS LLP
                                           601 Lexington Avenue
                                           New York, New York 10022
                                           Telephone: (212) 446-4800

                                           Attorney for Defendant Apple Inc.

**MEMO ISO MOTION FOR ATTORNEYS' FEES**                    **CASE NO. 3:18-cv-05945-VC**

## <u>CERTIFICATE OF SERVICE</u>

On February 5, 2020, I electronically filed the foregoing with the Clerk of the Court by using CM/ECF system which will send a notice of electronic filing to all persons registered for ECF.  All copies of documents required to be served by Fed. R. Civ. P. 5(a) and L.R. 5-1 have been so served.

*/s/ Dale M. Cendali*
Dale M. Cendali
