**Pierce Bainbridge Beck Price & Hecht LLP**
John M. Pierce (SBN 250443)
jpierce@piercebainbridge.com
Brian J. Dunne (SBN 275689)
bdunne@piercebainbridge.com
Kathryn Lee Boyd (SBN 189496)
lboyd@piercebainbridge.com
355 S. Grand Ave 44th Floor
Los Angeles, California 90071
Telephone: (213) 262-9333

David L. Hecht (admitted *pro hac vice*)
dhecht@piercebainbridge.com
Melody L. McGowin (admitted *pro hac vice*)
mmcgowin@piercebainbridge.com
277 Park Ave. 45th Floor
New York, New York 10172
Telephone: (212) 484-9866

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Social Technologies LLC, <br><br> Plaintiff, <br><br> v. <br><br> Apple Inc., <br><br> Defendant. | No. 18-cv-05945-VC (SK) <br><br> PLAINTIFF SOCIAL TECHNOLOGIES LLC'S OPPOSITION TO DEFENDANT APPLE INC.'S MOTION FOR ATTORNEYS' FEES |

---

**PLAINTIFF'S OPPOSITION TO MOTION FOR ATTORNEYS' FEES
3:18-CV-05945-VC**

## **TABLE OF CONTENTS**

I.    INTRODUCTION ..................................................................................................1

II.    FACTUAL BACKGROUND ................................................................................2

      A.    Social Tech Files Its Intent-to-Use Application and Maintains Its
Application ................................................................................................2

      B.    Social Tech Asserts Its Federally Registered Trademark Against Apple ...............3

      C.    Apple Engages In Wasteful Litigation Gamesmanship While Social Tech
Seeks To Limit Fees For Both Sides .......................................................4

III.    LEGAL STANDARD .........................................................................................5

IV.    ARGUMENT ......................................................................................................6

      A.    Apple Is Not Entitled To Recover Its Attorneys' Fees Because This Is Not
An "Exceptional Case" ............................................................................6

            1.    Social Tech's Claims Are Based In Sound Law and Facts ........................6

            2.    Social Tech's Litigation Conduct Was Reasonable, Especially In Light
of Apple's Repeated Wasteful Litigation Tactics....................................9

      B.    Apple's Requested Fees Are Not Reasonable Because There Was Significant
Duplication of Effort By Apple's Attorneys And Apple's Time and Fee
Expenditure Is Unsupported ..................................................................12

      C.    Apple Is Not Entitled To Any Additional Discovery Regarding Fee Recovery, If
The Court Awards Any Fees ..................................................................15

      D.    The Court Should Exercise Its Discretion To Not Shift Fees To Social Tech, Or In
The Least Should Stay Any Award of Fees Pending Social Tech's Appeal of The
Summary Judgment Ruling ...................................................................17

V.    CONCLUSION ................................................................................................18

**PLAINTIFF'S OPPOSITION TO MOTION FOR ATTORNEYS' FEES**
**3:18-CV-05945-VC**

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases.**                                                                          **Page(s)**

3
*Amusement Art, LLC v. Life Is Beautiful, LLC,*
4
    768 F. App'x 683 (9th Cir. 2019) ........................................................................ 12

5
*Brookfield Communications, Inc. v. West Coast Entm't Corp.,*
    174 F.3d 1052 (9th Cir. 1999) ........................................................................... 7

6

7
*Doe v. Trump,*
    329 F.R.D. 262 (W.D. Wash. 2018) ................................................................. 14

8
*Elem Indian Colony of Pomo Indians of the Sulphur Bank Rancheria v. Ceiba*
    *Legal, LLP,*
9
    230 F. Supp. 3d 1146 (N.D. Cal. 2017) ............................................................ 12

10
*Emonster KK.et al. v. Apple Inc.,*
11
    No. 3:17-cv-05986-RS (N.D. Cal. Oct. 18, 2017) ............................................. 1

12
*Express LLC v. Forever 21,*
    No. CV0904514ODWVBKX, 2010 WL 11512410 (C.D. Cal. Nov. 15, 2010) ............... 5, 12
13

14
*Insituform Techs., LLC v. Cosmic TopHat, LLC,*
    959 F. Supp. 2d 1335 (N.D. Ga. 2013) ............................................................. 16

15
*Int'l Inst. of Mgmt. v. Org. for Econ. Cooperation & Dev.,*
    No. 218CV01748JCMGWF, 2019 WL 5578485 (D. Nev. Oct. 29, 2019) ............................ 14
16

17
*Ketab Corp. v. Mesriani & Assocs., P.C.,*
    734 F. App'x 401 (9th Cir. 2018) ................................................................. 12, 13
18

19
*Malletier v. Apex Creative Intern. Corp.,*
    687 F. Supp. 2d 347 (S.D.N.Y. 2010) ............................................................... 13

20
*Octane Fitness, LLC v. Icon Health & Fitness, Inc.,*
21
    572 U.S. 545 (2014) ........................................................................................ 5

22
*Planetary Motion, Inc. v. Techsplosion, Inc.,*
    261 F.3d 1188 (11th Cir. 2001) ......................................................................... 7
23

24
*Protection One Alarm Monitoring, Inc. v. Executive Protection One Security*
    *Service, LLC,*
    552 F.Supp. 2d 201 (E.D.N.Y. 2008) ............................................................... 13
25

26
*Scholastic, Inc. v. Stouffer,*
    246 F. Supp. 2d 355 (S.D.N.Y. 2003) ............................................................... 17

27

ii

28

**PLAINTIFF'S OPPOSITION TO MOTION FOR ATTORNEYS' FEES**
**3:18-CV-05945-VC**

*Subramanian v. QAD Inc.*,
    No. C 06-3050 VRW, 2008 WL 11387036 (N.D. Cal. Nov. 20, 2008) ..................................9

**Statutes**

15 U.S.C. § 1117(a) ..................................................................................................5, 12, 13

**Other Authorities**

Fed. R. Civ. P. 5(a) ....................................................................................................1

L.R. 5-1 .......................................................................................................................1

**PLAINTIFF'S OPPOSITION TO MOTION FOR ATTORNEYS' FEES**
**3:18-CV-05945-VC**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    INTRODUCTION

Plaintiff Social Technologies LLC ("Social Tech") brought this lawsuit against Defendant Apple Inc. ("Apple") for trademark infringement for the simple reason that Apple knowingly usurped Social Tech's trademark, an intent-to-use version of which was publicly on file years before Apple ever sought to use the Memoji mark—which *Apple sought to purchase from Social Tech* through a third-party agent.  Apple's Motion for Fees is nothing more than an attempt by one of the largest and most valuable companies in the world to snuff out a small business that tried to assert its rights – and intends to continue to assert its rights to appeal.  Apple knows full well that Social Tech, which already devoted the full extent of its limited resources to asserting its intellectual property in this case, cannot afford to pay Apple's fees—in fact, it would bankrupt the company, thereby obviating any further challenge.

In its Motion, Apple proclaims that this is an exceptional case but fails to provide a single example of any similar case that was found to be exceptional.  In fact, there is nothing exceptional about a trademark infringement lawsuit based upon a federally registered mark, as here.  This Court did *not* find that inequitable conduct occurred, or the mark was obtained through fraud, and Social Tech never engaged in the type of exceptional behavior laid out in Apple's cases (*i.e.* lying to the court, disregarding court rulings, failing to offer any evidence to prove any claim).  Rather, Social Tech followed the rules of the U.S. Patent and Trademark Office ("PTO") to obtain its mark.  Assertion of such a mark against Apple is routine—not exceptional.  Not even one year before Social Tech filed the instant litigation, another company with a registered trademark sued Apple for its infringing use of its Animoji trademark.  *Emonster KK.et al. v. Apple Inc.*, No. 3:17-cv-05986-RS (N.D. Cal. Oct. 18, 2017).

**PLAINTIFF'S OBJECTIONS TO MOTION FOR ATTORNEYS' FEES**
**3:18-CV-05945-VC**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

This case is simply not one for a punitive award of attorneys' fees. Social Tech's claims here were reasonably asserted, and Social Tech pursued this lawsuit in an efficient and reasonable fashion. The fact that Apple prevailed on its motion for summary judgment does not and should not make this an "exceptional" case for the purposes of imposing millions of dollars in attorneys' fees on Social Tech.

## II.   FACTUAL BACKGROUND

### A.   Social Tech Files Its Intent-to-Use Application and Maintains Its Application

In 2015, Samuel Bonet and Robert Long, the co-founders of Social Tech, began developing an app that would allow users to send their actual facial expressions in messages. Dkt. 115-2 at Declaration of David L. Hecht ("Hecht Decl.") ¶ 2, Ex. A at 181:14-182:11. They decided to call their app MEMOJI and, on April 1, 2016, Social Tech filed an intent-to-use application for MEMOJI with the PTO. Dkt. 115-3 at APL-STECH_00000170-175. The trademark was published for opposition on December 5, 2017. *Id.* at APL-STECH_00000214. On January 30, 2018, the PTO sent a notice of allowance. *Id.* at APL-STECH_00000215-16. Despite Apple's bald assertion that Social Tech's intent-to-use application was "dormant," on March 21, 2018, Social Tech filed for an extension of time to file a Statement of Use with the PTO, which was approved on March 23, 2018. *Id.* at APL-STECH_00000217-20, 225.

Social Tech secured an influx of funds to be able to develop its MEMOJI app, and Social Tech's president took steps to finish its app, including discussing the app technology and development with Social Tech's contracted app developer. Dkt. 132-2 at 29:12-22; 132:15-134:2; Hecht Decl. ¶ 2 Ex. 1 at 132:13-134:18. Social Tech took these steps before ever hearing about Apple's Memoji operating system software feature, which was not announced until June 2018.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Meanwhile, Apple was at work on the new version of its mobile operating system, iOS, and was deciding upon a name to call its new personalized Animoji feature. Dkt. 115-19 at 147:8-15. Apple hired an agent to contact each of Social Tech and Lucky Bunny regarding their perceived rights in the Memoji mark. See Dkt. 32 ¶¶ 32-33. On May 21, 2019, the Apple agent left a voicemail for Mr. Bonet, one of Social Tech's co-founders. Dkt. 115-7 at 136:10-138:21. When Mr. Bonet returned the call, the agent did not identify himself or the company he represented. *Id.* The Apple agent asked Mr. Bonet if Social Tech would be willing to sell its rights to the MEMOJI mark, and Mr. Bonet responded that Social Tech was not interested in selling them. *Id.*; see also Dkt. 32 ¶ 33.

On June 28, 2018, Social Tech released its MEMOJI app on the Google Play Store for public consumption. Dkt. No. 115-7 at 202:11-13; 213:15-24. On June 30, 2018, Social Tech filed its statement of use.[1] Dkt. No. 115-3 at APL-STECH_00000228-29. On September 18, 2018, Social Tech was granted a registered trademark in the MEMOJI mark. *Id.* at APL-STECH_00000248.

**B.      Social Tech Asserts Its Federally Registered Trademark Against Apple**

Apple announced its Memoji operating system software feature during on June 4, 2018. Dkt. 16-1 at 2. On June 13, 2018, Social Tech, through counsel, sent a letter to Apple re-affirming Social Tech's intention to proceed with its MEMOJI app and trademark application. Dkt. 115-21 at 2. On June 14, 2018, counsel for Apple responded, stating that it believed it had superior rights in light of its purchase from Lucky Bunny. Dkt. 115-22. On June 22, 2018, Social Tech again

---

[1] While Social Tech had discovered an app by Lucky Bunny LLC, Social Tech determined that the app had been abandoned just like its trademark application. Dkt. 115-13 at 100:8-19; 138:10-139:14; 178:11-179:24. The Court did not make any finding regarding Lucky Bunny's purported rights.

**PLAINTIFF'S OBJECTIONS TO MOTION FOR ATTORNEYS' FEES**
**3:18-CV-05945-VC**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

told Apple, through counsel, that it believed it had superior rights through its intent-to-use application and that Social Tech would be releasing its planned MEMOJI app in short order. Dkt. 115-23. Social Tech filed the instant action against Apple on September 27, 2018. Dkt. 1.

### C. Apple Engages In Wasteful Litigation Gamesmanship While Social Tech Seeks To Limit Fees For Both Sides

Since the beginning of this litigation, Social Tech has sought to limit fees and streamline discovery, motion practice, and post-judgment activities. Apple, on the other hand, has engaged in gamesmanship that has only increased its own fees as well as Social Tech's.

Social Tech changed counsel in the beginning of 2019. Dkt. No. 51. Apple attempts to paint Social Tech's shift in strategy regarding bifurcation as a violation of a purported agreement. Social Tech's litigation strategy is not controlled by Apple, nor did Social Tech's raising of the bifurcation issue during the hearing with Court cause Apple to incur any additional fees—as noted by the Court, the total hearing time was ten minutes. Dkt. No. 50.

Social Tech worked to ensure that it limited the discovery it sought in this action. Social Tech took only depositions of Apple 30(b)(6) designees and one Lucky Bunny 30(b)(6) designee. At the end of discovery, however, instead of negotiating in good faith regarding the document categories Social Tech sought, Apple forced Social Tech to file an emergency filing with the Court. Dkt. No. 87.

Five days after Social Tech served its expert reports, Apple raised an issue with the protective order, which Social Tech explained was inadvertent. (Hecht Decl. ¶ 3 Ex. 2 at 1.) Social Tech complied with every Apple request to destroy the limited confidential information that was shared with experts, provide a list of dates and exact information that was provided to each expert, and send all additional information Apple requested. Despite Social Tech's cooperation with

1   Apple's requests and the limited information that was provided to limited individuals that had

2   already agreed to be bound by the terms of the protective order, Apple instead sought to force

3   Social Tech to withdraw its expert reports.  (Hecht Decl. ¶ 4 Ex. 3 at 1.)   Apple further forced

4   Social Tech to draft a joint letter to the Court, which Apple ultimately did not file.  (Hecht Decl. ¶

5   5 Ex. 4 at 1.)

6

7        Social Tech's claims and actions in this litigation have been reasonable and do not qualify

8   as "exceptional."

9   **III.    LEGAL STANDARD**

10        The award of reasonable attorney fees under section 1117(a) requires the Court to examine

11   the "totality of the circumstances" to determine if the assertion of the claims by Social Tech against

12   Apple was "exceptional."   "[T]he exceptional case requirement must be construed narrowly."

13   *Express LLC v. Forever 21*, No. CV0904514ODWVBKX, 2010 WL 11512410, at *3 (C.D. Cal.

14   Nov. 15, 2010) (An exceptional case is one where "plaintiffs claims are either 'groundless,

15   unreasonable, vexatious, or pursued in bad faith.'").  "Exceptional" means a case "that stands out

16   from others with respect to the substantive strength of a party's litigating position (considering

17   both the governing law and the facts of the case) or the unreasonable manner in which the case

18   was litigated."  *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).

19   Here, the Court should deny Apple's motion; this case has no exceptional characteristics from any

20   other federally registered trademark infringement dispute and does not stand out from other cases.

21   The profit motives of the plaintiffs to acquire and enforce its trademarks is not remarkable from

22   any other trademark holder.  Furthermore, Social Tech litigated it in a reasonable and efficient

23   manner and its rights to appeal are intact.

24

25

26

27

28

**PLAINTIFF'S OBJECTIONS TO MOTION FOR ATTORNEYS' FEES**
**3:18-CV-05945-VC**

Accordingly, attorney's fees are unwarranted and indeed would act to chill Plaintiffs' valid procedural and substantive rights.

## IV.    ARGUMENT

### A.    Apple Is Not Entitled To Recover Its Attorneys' Fees Because This Is Not An "Exceptional Case"

#### 1.    Social Tech's Claims Are Based In Sound Law and Facts

The Court's decision was not based on exceptional facts.  It ruled solely that Social Tech's federally registered trademark was insufficient to establish that its submitted statement of use demonstrated *bona fide* use.  It did not rule that Social Tech had procured its registration fraudulently, as Apple argued.  The Court made no determination regarding Apple's tacking arguments.  Nor did the Court make any arguments regarding Social Tech's likelihood of confusion evidence.  Further, the Court did not take issue with Social Tech's initial intent-to-use application or any other aspect of Social Tech's registration process.  Therefore, the sole basis for this Court's summary judgment opinion regarding Social Tech's federal registration was a fact-intensive determination with the Court finding, for example, that Social Tech's app was "malfunctioning" and "defective" and that Social Tech released its app for the sole reason to reserve its mark.  Dkt. No. 142 at 3-5.  While Social Tech's app may have been "basic," the existence of bugs on certain phones that require updates or improvements does not signify that the app was not working or not *bona fide*.  In fact, Apple itself expects all app developers to regularly roll out updates to maintain functionality.  *See* Hecht Decl. ¶ 5 Ex. 5 at 2 (stating that for apps on the Apple App Store, developers "should update [their] app to ensure it remains functional and engaging to new and existing customers.")

**PLAINTIFF'S OBJECTIONS TO MOTION FOR ATTORNEYS' FEES
3:18-CV-05945-VC**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The Court also did not take into account that the determination of whether a use in commerce is *bona fide* is a "totality of the circumstances" analysis.  *Brookfield Communications, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1052 (9th Cir. 1999) ("trademark rights can vest even before any goods or services are actually sold if 'the totality of [one's] prior actions, taken together, [can] establish a right to use the trademark.'"); *see also Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1196 (11th Cir. 2001) (finding *bona fide* use in commerce where plaintiff made its free software available to end users via the Internet and broadly used the mark in a non-sporadic way).  Instead of looking to all the activity leading up to and including the release of the first version of Social Tech's MEMOJI app, the Court focused solely on a few lines of a few emails during a short time period just before and after the app's release.  However, Social Tech's marketing activities, including its Facebook page and website, remained active.  Such findings raise issues of law that will be heard on appeal, as is Social Tech's right.

Social Tech's actions relevant to the totality of the circumstances analysis indicate that its use was *bona fide* as a matter of law which the appeals court will review.  Specifically,  Social Tech *rejected* a discussion with an anonymous prospective purchaser; Social Tech's president and contracted app developer discussed technology for the app and exchanged communications about it prior to any announcement by Apple; and Social Tech extended its time period to file its statement of use all within **weeks** of Social Tech's developers writing the code for the MEMOJI app and prior to Apple's announcement of its Memoji software feature.  That is in addition to the previous work and investments Social Tech had already made into its product and brand development.  The fact-intensive question of *bona fide* use is much closer than Apple argues.  However, the Court's decision leaves intent-to-use applicants in a difficult situation when a much larger company swoops in to use their intended mark – either the applicant continues on the same

**PLAINTIFF'S OBJECTIONS TO MOTION FOR ATTORNEYS' FEES
3:18-CV-05945-VC**

timeline and be accused of laches or estoppel or the applicant speeds up development to get a "basic but functioning" product to market in part to protect their rights and be accused of failing to have *bona fide* use.  Further demonstrating that this case is not "exceptional," the Court did not find, as Apple argued, that Social Tech procured its registration fraudulently – only that Social Tech's use was not *bona fide*, which is a close factual question.

Social Tech's common law claims were also soundly based in facts and law.  As Social Tech detailed at summary judgment, Christopher Anthony explained in detail with documentary proof that he continued to work to get his app back onto the Apple App Store.  *See* Dkt. No. 115 at 3-4.  While Social Tech initially believed Christopher Anthony had no rights to the Memoji mark, upon further inspection, including the documentary evidence he provided after his Motion to Intervene was decided, Social Tech determined that Mr. Anthony had maintained his common law rights.  Apple itself felt the need to further investigate Mr. Anthony's compelling documentary evidence by seeking to subpoena the developers with whom Mr. Anthony corresponded regarding his app.  *See* Dkt. No. 160-4 at 6-7.  Here, again, Social Tech's common law claims are closer than Apple portrays in its Motion, and are worthy of the review which they will receive on appeal.

In any event, if Social Tech's claims were as weak as Apple claims—which they were not, Apple could have made a motion to dismiss the action or for summary judgment far earlier and prior to any depositions being taken, avoiding much of the attorneys' fees Apple's counsel charged.[2]  Apple chose not to do so.

---

[2] As discussed below, Social Tech cannot determine the amount of fees that could have been saved because Apple has failed to submit sufficient timekeeping records.

**PLAINTIFF'S OBJECTIONS TO MOTION FOR ATTORNEYS' FEES**
**3:18-CV-05945-VC**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 2.     Social Tech's Litigation Conduct Was Reasonable, Especially In Light of Apple's Repeated Wasteful Litigation Tactics

Social Tech's litigation conduct here was also unexceptional.  Social Tech endeavored to litigate this case as efficiently as possible.  For example, when Apple made clear that its designated 30(b)(6) witnesses would not be available until well after the close of fact discovery, Social Tech negotiated with Apple to extend the time for depositions.  Similarly, Social Tech repeatedly attempted to negotiate a fact and expert deposition schedule that would minimize travel time for all parties.  Social Tech took only three Apple party depositions in this case despite initially determining more fact witnesses would have relevant information, a 30(b)(6) deposition that was spread between several Apple designees, the head of Apple's trademark department involved with the decisions regarding the Memoji name (also a 30(b)(6) designee), and the Apple employee in charge of marketing of the Apple Memoji software feature (again, a 30(b)(6) designee).  Social Tech litigated this case efficiently because, as a very small business, it had limited means but still valued its intellectual property.  While Apple would have preferred to not be sued, Social Tech did nothing unreasonable to drive up the cost of this litigation for either party.

Moreover, Social Tech did not engage in unnecessary motion practice – only seeking Apple's cooperation on discovery matters that Apple withheld until *after* the close of fact discovery, which required Social Tech to see court intervention.  *See* Dkt. 93 at 1-2.  The case cited by Apple to support its position is also inapposite as it applies to a party's requests for fees in connection with cross discovery motions where the court found no substantial justification for failure to adequately respond to discovery requests and "convolution" of discovery requests—not a motion dealing with exceptionality under the Lanham Act.  *Subramanian v. QAD Inc.*, No. C 06-3050 VRW, 2008 WL 11387036, at *2 (N.D. Cal. Nov. 20, 2008).

Apple bizarrely faults Social Tech for not producing information not in Social Tech's possession, custody, or control.  As Social Tech clearly explained early in the discovery process, it lost access to download information.  (Hecht Decl. ¶ 7 Ex. 6 at 1.)  Social Tech did, in fact, produce all information in its possession, custody, and control relating to downloads of Social Tech's app.

Apple also wrongly argues that Social Tech did not oppose Apple's tacking arguments.  In fact, Social Tech's opening motion for summary judgment was focused on Apple's weak tacking argument. Dkt. No. 115 at 11-21.  Social Tech again opposed Apple's reliance on its purchase from a third-party in Social Tech's opposition brief.  Dkt. No. 132 at 9-11.

Similarly, Apple projects a revisionist history of documents Social Tech produced in this litigation.  Social Tech did not claw back any documents during this litigation.  While Social Tech did make a reproduction of documents on May 28, 2019 due to a mismatch of Bates in its document storage system, as Apple concedes, Social Tech made additional productions only ten days later that included more documents, including any documents about which Apple complains in its Motion and supporting declaration.  Dkt. 162-1 ¶¶ 56-58.

Apple also attempts to fault Social Tech for the parties' inability to agree on a filing relating to Social Tech's declaratory judgment claim.  While Social Tech would have preferred a joint filing, Apple disagreed with Social Tech's approach and understanding of the law, and the parties could not come to an agreement regarding the language.  Therefore, Social Tech informed Apple that a joint filing was unnecessary under the Court's order.  Dkt. No. 162-14.  Apple chose to file its own additional letter despite having no requirement to do so.  Dkt. No. 152.  There is nothing remarkable about this enforcement of Social Tech's registered trademark rights.

**PLAINTIFF'S OBJECTIONS TO MOTION FOR ATTORNEYS' FEES
3:18-CV-05945-VC**

Apple's projection of a fiction regarding the protective order issue in this action is belied by the testimony in this case.  While Apple conclusorily states that "Social Tech waited too long to retain [its] experts," that is a blatant misrepresentation of the facts of this case and contrary to the information Social Tech provided to Apple.  (Hecht Decl. ¶ 8 Ex. 7 at 1; Hecht Decl. ¶ 9 Ex. 8 at 18:4-7.)  Both of Social Tech's experts were retained in early June 2019.  *Id.*  As demonstrated by the signed protective orders in Apple's possession and the negotiated stipulation, Social Tech's oversight regarding the protective order's notice period was inadvertent.  Instead of negotiating in good faith, however, Apple attempted to use the protective order as a litigation strategy to silence Social Tech's experts and forced Social Tech to prepare briefing regarding the inadvertent and harmless oversight and then ultimately did not file the joint letter it threatened.  (Ex. 5 at 1.)  To the extent Apple determined that a fee motion was necessary, it could have filed the joint letter it threatened.  Instead, Apple and Social Tech reached a stipulated agreement.  Unlike the violation discussed in *LifeScan Scotland, Ltd. v. Shasta Techs., LLC*, Social Tech did not reveal any confidential information to companies outside of the litigation, and certainly not to any person with whom Apple has a business relationship, nor did Apple file any motion related to any protective order issue.  No. 11-CV-04494-WHO, 2013 WL 5949629, at *1 (N.D. Cal. Nov. 6, 2013).  In fact, Apple did not object to either of Social Tech's experts.

Social Tech's response to Apple's argument at the summary judgment hearing that Social Tech did not respond to arguments regarding Chris Anthony's common law rights was also proper and supported by law.  Dkt. No. 139.  That the Court disagreed with Social Tech's interpretation of the law does not make Social Tech's actions unreasonable.

Finally, Apple's complaints regarding social media posts by Social Tech strain reason.  Apple does not dispute that it is a larger company—nor can it.  Nor can Apple believably argue

**PLAINTIFF'S OBJECTIONS TO MOTION FOR ATTORNEYS' FEES**
**3:18-CV-05945-VC**

that the "basis for litigation" was solely a "marketing effort."  Apple disregards that Social Tech is the only party in this litigation with a federally registered trademark, and Apple disregards its own history of trademark infringement under quite similar circumstances.  While this Court has determined that Social Tech's statement of use was invalid, Social Tech has filed an appeal and respectfully contends that this Court's summary judgment determination was incorrect.

Social Tech's litigation does not approach unreasonableness or impropriety envisioned by the legal standard.  The cases cited by Apple demonstrate that Courts require unreasonable conduct.  *Elem Indian Colony of Pomo Indians of the Sulphur Bank Rancheria v. Ceiba Legal, LLP*, 230 F. Supp. 3d 1146, 1150–51 (N.D. Cal. 2017) (finding exceptionally unreasonable conduct where counsel acted "evasively and disingenuously before the Court" and bringing claims previously addressed in a related litigation); *Amusement Art, LLC v. Life Is Beautiful, LLC*, 768 F. App'x 683, 687 (9th Cir. 2019) ("The claims for registered marks were 'exceptional' because the registrations were procured fraudulently"); *Ketab Corp. v. Mesriani & Assocs., P.C.*, 734 F. App'x 401, 409 (9th Cir. 2018) (affirming fee award where party "realleged claims that the court had dismissed with prejudice without seeking the court's permission and failed to comply with local meet and confer rules" in addition to other factors); *Express LLC v. Forever 21*, No. CV0904514ODWVBKX, 2010 WL 11512410, at *4 (C.D. Cal. Nov. 15, 2010) (finding exceptionality where "Plaintiff failed to provide direct evidence of secondary meaning to support its claim that Defendants infringed on Plaintiff's trade dress" but rejecting exceptionality argument where Plaintiff had evidentiary support for two of five claims.).

**B.    Apple's Requested Fees Are Not Reasonable Because There Was Significant Duplication of Effort By Apple's Attorneys And Apple's Time and Fee Expenditure Is Unsupported**

In the event the Court concludes that Apple is entitled to an award of attorney fees in this case, then the Court must determine whether the amount requested is reasonable.  See 15 U.S.C. § 1117(a); *Hensley v.* Eckerhart, 461 U.S. 424, 437 (1983).  A fee applicant "should make a good-faith effort to exclude . . . hours that are excessive, redundant, or otherwise unnecessary." *Hensley,* 461 U.S. at 434.  The party seeking attorneys' fees bears the burden of producing evidence supporting the hours worked and a reasonable rate; the district court may reduce the award accordingly if insufficient evidence is produced.  *Id.*  The district court may also exclude compensation for time that was "not reasonably expended" in the case.  *Id.* at 434 (court may deny compensation for "hours that are excessive, redundant, or otherwise unnecessary"). While Apple may have paid the fees documented in support of this motion, the Court may reduce any award where hours expended were not justified.  *See Malletier v. Apex Creative Intern. Corp.*, 687 F. Supp. 2d 347, 363 (S.D.N.Y. 2010) (imposing a 15% across-the-board reduction in the hours sought); *Protection One Alarm Monitoring, Inc. v. Executive Protection One Security Service, LLC*, 552 F.Supp. 2d 201, 209 (E.D.N.Y. 2008) (imposing a 30% reduction in hours sought due to "vague entries and some duplicative and excessive work").

Here, even if the Court was to award fees (which it should not because the case is not exceptional) the billing records submitted by Apple demonstrate that the amount requested should be substantially reduced.  As an initial matter, Apple failed to produce billing records that would allow Social Tech to properly analyze the time spent for each task by each attorney or to identify the work done by Apple's attorneys and whether it was reasonable or unreasonable.  As Apple bears the burden of demonstrating that the over 3,000 hours of legal fees it seeks to charge to Social Tech are reasonable, Apple's Motion should fail on its face. Even so, there are at least apparent instances where it appears that Apple's attorneys had significant duplication of effort:

**PLAINTIFF'S OBJECTIONS TO MOTION FOR ATTORNEYS' FEES**
**3:18-CV-05945-VC**

- Apple had multiple attorneys attend most depositions and had duplication of effort in preparation.  Social Tech should not have to foot the bill for the duplication of time spent attending depositions, any travel time, and preparation for multiple attorneys.  Due to the lack of detail regarding the billing produced, Social Tech cannot estimate the amount of duplication.

- Apple includes multiple paralegals in its request for fees; however, Apple "has provided no evidence of the prevailing market rate for paralegal . . . services." *Int'l Inst. of Mgmt. v. Org. for Econ. Cooperation & Dev.*, No. 218CV01748JCMGWF, 2019 WL 5578485, at *7 (D. Nev. Oct. 29, 2019).

- Apple had several attorneys attend the oral arguments and court conferences, including the settlement conference, in this case and had duplication of effort in preparation.  Social Tech should not have to foot the bill for the duplication of time spent attending oral arguments, any travel time, and preparation for multiple attorneys.  Due to the lack of detail regarding the billing produced, Social Tech cannot estimate the amount of duplication.  However, by example, three partner-level attorneys attended the summary judgment hearing.  The argument was handled entirely by Ms. Cendali who also billed to preparing for and arguing the motions.  It is unreasonable for three partner-level attorneys to double bill this work when only one argued the motion.

- Apple also states that it used contract attorneys from a third-party vendor to review documents, including "redactions of . . . irrelevant information."  Cendali Decl. ¶ 8.  Redactions of "irrelevant information" on otherwise responsive documents is generally improper.  *Doe v. Trump*, 329 F.R.D. 262, 275 (W.D. Wash. 2018)

14

("Redaction is generally an inappropriate tool for excluding information that a party considers to be irrelevant or nonresponsive from documents that are otherwise responsive to a discovery request." (collecting cases)).   Further, based on the number of documents produced by Apple in this litigation—414 in total, most of which were publicly available or duplicative, the cost of the contract attorneys demonstrates a high level of duplication in effort and/or wastefulness.   Again, Apple failed to produce sufficient detail regarding the hourly work performed by these contract attorneys, and therefore, Social Tech is unable to fully analyze the claimed fees.

Based on the foregoing, any award of fees to Apple should be reduced significantly to meet the standard of "reasonable."   Apple itself already felt the need to discount the number of hours it charged in this action, demonstrating an apparent acknowledgement that duplication and wastefulness occurred.   Social Tech is unable to quantify the amount of "excessive, redundant, or otherwise unnecessary" fees included in Apple's motion simply because Apple has failed to provide the requisite information to perform that analysis.   However, as demonstrated above and in the supporting documents to Apple's Motion, the fees should be greatly reduced or denied in their entirety as unsupported and unsatisfactorily summarily presented.   Even the case cited by Apple demonstrates the excessiveness of Apple's fees.   Compared to the approximately 3,000 hours billed by Apple's counsel, the counsel in *Cairns v. Franklin Mint Co.* billed nearly 11,000 hours for similar fees.  115 F. Supp. 2d 1185 (C.D. Cal 2000).

**C.    Apple Is Not Entitled To Any Additional Discovery Regarding Fee Recovery, If The Court Awards Any Fees**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

Apple's brief reference to additional discovery into potential "other sources available to satisfy a judgment" is an unwarranted fishing expedition.   Social Tech is a limited liability company, which means that each member is "veiled from personal liability for the debts of the separately maintained LLC entity."  *Insituform Techs., LLC v. Cosmic TopHat, LLC*, 959 F. Supp. 2d 1335, 1345 (N.D. Ga. 2013) (*citing Bonner v. Brunson*, 585 S.E.2d 917, 918 (Ga. Ct. App. 2003)) (internal quotations omitted).  Even if Apple could show that it is entitled to pierce the veil of the LLC form, which it cannot, any additional discovery into the members of the LLC would be wasteful and duplicative.  As Apple is aware through background research and depositions Apple noticed and took, the two members of the Social Tech limited liability company do not have additional source of funding that could even approach the enormous amount Apple's attorneys billed and seek to charge to Social Tech.  (Hecht Decl. ¶ 10 Ex. 9 at 13:4-15; Hecht Decl. ¶ 11 Ex. 10 at 15:8-21).  Apple's 30(b)(6) witness referred to Social Tech's members' occupation as a reason that Social Tech could not be developing its planned applications.  (Hecht Decl. ¶ 12 Ex. 11 at 156:6-22 ("Based on the investigations, it did not seem like there was a focused developer entity that was working on this that you're—one of the clients was in the hospitality business."))

18

19

20

21

22

23

Apple's own argument indicates its belief that Social Tech itself does not have the seven-figure award Apple seeks in fees because Apple makes a baseless claim that it is entitled to discovery regarding possible "litigation funders."[3]  The only case Apple cites for this proposition is inapposite to the present action.  In *Stan Lee Media, Inc. v. Walt Disney Co.*, the court in the District of Colorado determined that discovery into an entity funding a litigation for the party

24

25

26

27

---

[3] This is not Apple's first attempt to improperly discover information regarding possible litigation funding in this action.  As just another example of Apple's wasteful litigation tactics, Apple pressed Social Tech for any funding information, discovery which the Northern District of California does not require and has found to be improper.  Hecht Decl. ¶ 13 Ex. 12 at 2.

16

**PLAINTIFF'S OBJECTIONS TO MOTION FOR ATTORNEYS' FEES**
**3:18-CV-05945-VC**

28

found liable for attorneys' fees was appropriate where: *i)* the funding entity was *related* to the liable party at least because the managing member of the funding entity was the registered agent for the party found liable for attorneys' fees; *ii)* the funding entity "ha[d] no activities other than funding [the party's] litigation;" *iii)* the funding entity "essentially had the ability to direct and control [the party's] litigations;" and *iv)* the funding entity and the party liable for fees were parties to a litigation funding agreement.  No. 12-CV-02663-WJM-KMT, 2015 WL 5210655, at *2 (D. Colo. Sept. 8, 2015).  No such funding relationship exists in the present action.  (Bonet Decl. ¶ 8.)

> **D.    The Court Should Exercise Its Discretion To Not Shift Fees To Social Tech, Or In The Least Should Stay Any Award of Fees Pending Social Tech's Appeal of The Summary Judgment Ruling**

Mr. Bonet and Mr. Long are the sole members of Social Tech, which was founded in 2015. (Ex. 9 at 53:15-54:14.)  Social Tech has never succeeded in turning a profit through its various ventures.  *Id.*  In 2020, Social Tech has generated no revenue to date.  (Bonet Decl. ¶ 5.) Other than their work for Social Tech in creating and maintaining all of Social Tech's apps, merchandise, and other products, Mr. Bonet is a full-time bartender (Ex. 9 at 13:4-15) and Mr. Long is independently involved in music and tech ventures (Ex. 10 at 15:8-21).  Social Tech's members are individuals of limited means, and Social Tech's resources have been exhausted by the expenses of their business and this lawsuit since it was filed in 2018.  (Bonet Decl. ¶¶ 6-7.)  Thus, in the event that this Court finds that this is an exceptional case, it should still act within its discretion to impose little or no attorney fees on Social Tech.  *See Scholastic, Inc. v. Stouffer*, 246 F. Supp. 2d 355, 359-60 (S.D.N.Y. 2003) (reducing a fee award by two-thirds because the party was of "limited means"). In the alternative that the Court determines that a substantial award is warranted, then Social Tech respectfully asks that the Court stay enforcement of the award and any related

1

2

discovery pending the outcome of Social Tech's appeal to the Ninth Circuit of the underlying order on the motions for summary judgment.

3

**V.     CONCLUSION**

4

5

For the foregoing reasons, Apple's Motion for Fees should be denied.  In the event this Court determines that Apple is entitled to fees, Social Tech requests that the fees be reduced to a reasonable amount, avoiding penalization against Social Tech for Apple's litigation gamesmanship.  Further, Social Tech requests that the enforcement of any fee award be stayed pending the resolution of Social Tech's appeal.

6

7

8

9

10

Dated: March 4, 2020

11

Respectfully submitted,

12

PIERCE BAINBRIDGE BECK
PRICE & HECHT LLP

13

/s/ David L. Hecht
David L. Hecht (admitted pro hac vice)
dhecht@piercebainbridge.com
277 Park Avenue, 45th Floor
New York, New York 10172
Attorney for Plaintiff Social
Technologies LLC

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S OBJECTIONS TO MOTION FOR ATTORNEYS' FEES**
**3:18-CV-05945-VC**

1

2
## CERTIFICATE OF SERVICE

3
On March 4, 2020, I electronically filed the foregoing with the Clerk of the Court by

4
using CM/ECF system which will send a notice of electronic filing to all persons registered for

5
ECF.  All copies of documents required to be served by Fed. R. Civ. P. 5(a) and L.R. 5-1 have

6
been so served.

7

8

9
                                  /s/ David L. Hecht
                                  David L. Hecht

10

11
I.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**
**3:18-CV-05945-VC**